OCT-27-2006 15:12 FROM:EARTHJU    CE HAWAII  8085216841          TO    34382570     P.2

OCT-27-2006 17:33 From:US COURT OF APPEALS                 To:8085216841    P.2/26

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

F I L E D

OCT 2 7 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| 'ILIO'ULAOKALANI COALITION, a Hawaii nonprofit corporation; NĀ 'IMI PONO, a Hawaii unincorporated association; KĪPUKA, a Hawaii unincorporated association,<br><br>    Plaintiffs - Appellants,<br><br>    v.<br><br>DONALD H. RUMSFELD, Secretary of Defense; et al.,<br><br>    Defendants - Appellees,<br><br>    and<br><br>LES BROWNLEE, Acting Secretary of the United States Department of the Army,<br><br>    Defendant. | No. 05-15915<br><br>D.C. No. CV-04-00502-DAE<br>District of Hawaii,<br>Honolulu<br><br><br>ORDER |

Before: B. FLETCHER, THOMPSON, and BEA, Circuit Judges.

We grant a temporary injunction enjoining Defendants-Appellees from

implementing, executing, or proceeding with the following activities associated

with the transformation of the 2nd Brigade of the 25th Infantry Division (Light) to

a Stryker Brigade Combat Team in Hawaii: grading, grubbing, other ground



EXHIBIT "A"

OCT-27-2006 15:12 FROM:EARTHJUS_CE HAWAII   8085216841          TO: 04382570          P.3

OCT-27-2006 17:33 From:US COURT OF APPEALS                     To:8085216841         P.3·26

disturbance, construction, land acquisition, project design, geotechnical testing, unexploded ordinance clearance, contract award, and Stryker Brigade Combat Team-specific training pending entry of an injunction by the district court. Stryker Brigade Combat Team-specific training is defined as that training specifically intended to familiarize soldiers with the Stryker combat vehicle and does not limit in any way the ability of the Army to train and qualify soldiers on and with weapons systems not mounted on Stryker combat vehicles, nor does it restrict the Army from providing training to soldiers that familiarizes them with the Stryker combat vehicle in a classroom or computer simulation setting, nor does it prevent the Army from entering into negotiations over non-Stryker Brigade Combat Team-specific training of soldiers at Makua Military Reservation or other locations not located on Schofield Barracks Military Reservation. Defendants-Appellees shall refrain from implementing, executing, or proceeding with the proscribed transformation-related activities until the district court has entered an interim injunction.

We otherwise remand Plaintiffs-Appellants' Emergency Motion Under Circuit Rule 27-3(a) For Interim Injunctive Relief Pending Decision Regarding Permanent Injunction to the district court for the purpose of determining the appropriate scope of an interim injunction and entering such injunction pending

2

OCT-27-2006 15:12 FROM:EARTHJUSTICE HAWAII  8085216841          TO:  1382570          P.4

OCT-27-2006 17:33 From:US COURT OF APPEALS                      To:8085216841          P.4/26

Defendants-Appellees' compliance with the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, as required by our opinion in this appeal filed October 5, 2006 at slip op. 17449.

We have considered Plaintiffs-Appellants' Emergency Motion For Interim Injunctive Relief, alleging that immediate injunctive relief is necessary to prevent irreparable harm because the Army will begin construction of the Battle Area Complex at Schofield Barracks on Oahu on November 1, 2006, and Defendants-Appellees' Opposition to any injunctive relief.

Properly balancing the parties' equities requires a fact-intensive inquiry best undertaken by the district court. It should consider, among other factors, which of the Stryker Brigade Combat Team transformation-related activities in Hawaii are time-critical and which activities can proceed without causing irreparable environmental and cultural harm. Since this matter is very time-sensitive, the district court shall proceed expeditiously.

Judge Bea indicates that he will file a dissent to the order to which the majority will respond.

**SO ORDERED.**

3

OCT-27-2006 15:12 FROM:EARTHJU_  _E HAWAII  8085216841          IU:   43825 70          P. 3

OCT-27-2006 17:33 From:US COURT OF APPEALS                      To:8085216841          P.5/26

FILED

OCT 27 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

*'Ilio'Ulaokalani Coalition v. Rumsfeld*, No. 05-15915

BEA, Circuit Judge, dissenting from the order:

I respectfully dissent from the panel's order regarding plaintiffs-appellants'

Emergency Motion Under Circuit Rule 27-3(a) For Interim Injunctive Relief

Pending Decision Regarding Permanent Injunction.

A.     *The panel's order is overbroad; it violates Circuit Rule 27-3.*

As a threshold matter, the order reaches too far because the motion's Circuit

Rule 27-3 Certificate of Counsel claims irreparable damage only with respect of

burial grounds and cultural sites. Mtn at i–iv. Even if an injunction were

warranted, it should touch only upon grubbing, grading, other ground disturbance,

and construction or other activities which require the excavation of ground that

contains burial grounds and cultural sites. *See* Ninth Circuit Rule 27-3(a)(3)(ii)

(counsel's certificate shall set forth the "[f]acts showing the existence and nature

of the claimed emergency"); *see also infra* part D (concluding injunction agreed

on in Joint Stipulation is not binding in this court). Since no irreparable damage to

such burial grounds and cultural sites is threatened by land acquisition, project

design, or contract award, the majority's order simply over-reaches our authority

under our Circuit Rules. Those rules require we decide only those issues invoked

by Counsel's Certificate purportedly justifying emergency action. *See id.*

OCT-27-2006 15:12 FROM:EARTHJUST<sub>.</sub>.CE HAWAII   8085216841                    TO:6.4382570          P.6

OCT-27-2006 17:34 From:US COURT OF APPEALS                    To:8085216841         P.6/26

B.    *The district court has already denied similar motions for injunction and made findings of fact that the balance of hardships favors the Army, and these findings should control on the present motion.*

Even as to the questions of grubbing, grading, other ground disturbance, and activities which require excavation, I oppose the issuance of the temporary injunction. Similar motions for preliminary injunction were denied by the district court November 5, 2004, and May 19, 2005. Another similar motion for injunction was denied by this court May 27, 2005. Nothing has changed since those denials as to the claimed irreparable harm to plaintiffs-appellants. The burial and cultural sites were there in 2004–05. But more importantly, nothing has changed from the irreparable harm found by the district court to be threatened to the Army and the Nation. The global War on Terror existed then and it hasn't abated now.

On the other hand, the considerations which the district court found on November 5, 2004 regarding the irreparable damage to be suffered by the Army and the Nation also remain the same: "Delaying or disrupting the conversion of the 2nd Brigade to SBCT 5 will significantly impact the sequence of Army transformation and reduce the overall effectiveness of Army forces currently fighting the Global War on Terrorism." November 5, 2004 Order at 17–18. It is axiomatic this court owes deference to the district court's fact finding of

2

OCT-27-2006 15:13 FROM:EARTHJUS  E HAWAII  8085216841                TU:        43825 TU
OCT-27-2006 17:34 From:US COURT OF  APPEALS                To:8085216841        P.7/26

irreparable injury to the Army and the Nation. Further, there is not one word in the plaintiffs-appellants' proof submitted with the application for this emergency injunction which in the slightest meets, much less rebuts, the finding of the district court that irreparable injury is threatened the defendant-appellants by the issuance of an injunction staying plans for transformation of the 2nd Brigade to Stryker status. Plainly stated, we have not the slightest basis for determining the district court's finding that an injunction would cause irreparable injury to the national security of the United States is an abuse of discretion. The majority does not cite any evidence to reverse the district court's finding of irreparable damage to the Nation should the injunction issue.

What has changed since then is this court's decision of October 5, 2006, which determined the district court had erred in finding the defendants had complied with the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* ("NEPA"). That decision found that failure to *consider* alternative sites for transforming the 2nd Brigade was a procedural failure committed during the administrative process. Rather than reverse the district court's judgement, this court chose to remand the case to the district court with instructions that further administrative proceedings regarding the Army's Site-Specific Environmental Impact Statement (Site-Specific "EIS") be held, during which the defendants

3

OCT-27-2006 02:41PM  FAX:              ID:EARTHJUSTICE HAWAII    PAGE:007  R=94%

OCT-27-2006 15:13 FROM:EARTHJUSTICE HAWAII   8085216841          TO:8034382570          P.8/26

OCT-27-2006 17:34 From:US COURT OF  APPEALS                      To:8085216841          P.8/26

should comply with the procedural steps required by this court, namely, *consider* alternative locations.

That determination of this court does not require the defendants to *choose* alternate locations for transforming the 2nd Brigade. Such substantive directions to the defendants would, of course, be beyond the power of this court under NEPA. The October 5, 2006 decision of this court merely prescribes additional procedures with which the Army must comply to satisfy NEPA; it does not alter the balance of hardships between the parties regarding whether an injunction should issue.

C.    *Plaintiffs-appellants attempts to show irreparable harm are faulty and fail.*

Further, the plaintiffs-appellants' evidentiary showing as to irreparable damage to burial sites and cultural sites is simply inadequate. The declarations of plaintiffs' archeologists and Cultural Monitor show that all of Hawaii is subject to Native Hawaiian burials. The location of such burials can be in the mountains, the plains, or the sea shores. Tengan Dec. ¶ 3. The Native Hawaiian custom is to keep the sites of the burials secret to prevent burial site defilement by enemies of the family doing the burial. *Id.* at ¶ 7. Indeed, Mr. Quitevis, a Cultural Monitor and a member of a Native Hawaiian family which he declares has inhabited the very area in question (Schofield Barracks BAX) from "time immemorial,"

4

OCT-27-2006 15:13 FROM:EARTHJUSTICE HAWAII    8085216841    TO:8 4382570    P.9/26

OCT-27-2006 17:34 From:US COURT OF APPEALS    To:8085216841    P.9/26

Quitevis Dec. ¶ 1, fails to locate either a single place in that area where burials occurred, or a place where burials did *not* occur, so to guide the Army in building in a manner to avoid defilement of Native Hawaiian burial sites. *See id.* This silence as to the burial locations may be in keeping with the Native Hawaiian custom of secrecy. On the other hand, it may be due to Quitevis's lack of knowledge of where his ancestors "iwi" are buried. The fact is that a majority of Native Hawaiians cannot locate the bones ("iwi") of their ancestors. Abad Dec. ¶ 8. Indeed, there is no evidence presented that Native Hawaiians buried their ancestors' bones in areas they inhabited or hid them elsewhere on the islands of the State.

Albeit rank hearsay, witness Tegan claims "[t]he above testimonies reveal that the living descendants today suffer spiritually, physically, culturally, and emotionally each time a burial or cultural site is desecrated." Tegan Dec. ¶ 11. "Years after the destruction of the Kukuiokāne Heiau in 1990 during the construction of the H-3 Freeway, Hawaiians still suffer deep despair and pain." *Id.* at ¶ 15. But one cannot improve for proof of utter lack of concrete damages, to say nothing of irreparable damage, to cultural resources, than Quitevis's own declaration: "Without prior identification and evaluation of all cultural resources, the full extent of harm to cultural resources is unknown, and likely can never be

5

OCT-27-2006 15:13 FROM:EARTHJUSTICE HAWAII  8085216841       TO:8 4382570        P.10/26

OCT-27-2006 17:34 From:US COURT OF APPEALS              To:8085216841       P.10/26

known." Quitevis Dec. ¶ 12.

However, one look at the development of Hawaii in the past, and the development taking place at the present, belies the extravagant claim that Native Hawaiian burial sites permeate the whole of the State and that excavation anywhere will cause the threatened defilement of such sites and that great emotional and spiritual damage to Native Hawaiians. If it were such as claimed by the Groups, the Native Hawaiian population of the State would present with symptoms of at least clinical depression, rather than the vibrant community it is. The elected representatives of these Native Hawaiians would surely prohibit the grant of any building permits for building foundations, streets, or underground utility installations for fear of defilement of Native Hawaiian burial sites. Clearly, the academics' declarations are subject to severe credibility criticism just on the basis of common sense.

Further, the declarations submitted by plaintiff are rife with hearsay and statements unfounded in personal knowledge. For example, the Abad declaration states: "Reports . . . reveal ongoing, widespread noncompliance by the Army with the letter and spirit of the [Programmatic Agreement]." Abad Dec. ¶ 22. Yet there is no foundational evidence that Abad wrote these "reports"; the reports were not even attached, eliminating the possibility they be self-authenticating and perhaps

6

OCT-27-2006 15:13 FROM:EARTHJUS...CE HAWAII  8085216841                 TO:8  4382570              P.11/26

OCT-27-2006 17:35 From:US COURT OF APPEALS                          To:8085216841             P.11 26

official records not subject to hearsay objections. Quitevis's declaration does not

explain who "we" are when he states that "we have found," Quitevis Dec. ¶ 7, that

initial Army surveys ignored cultural artifacts. It strips the credibility from the

initial personal knowledge statement and is, at best, vague and ambiguous: did he

find, or did some other person or persons with whom he might think he is

associated, find that the Army did as stated? That problem recurs in describing

new sites which "we have increased" to "191 and counting," *id.* at ¶ 8. This "we"

also discovered a bulldozer's activity, *id.* at ¶ 13, p. 9, and "we" found "that there

are numerous undocumented sites . . ." *Id.* at ¶ 18. Next, the facts related are

unacceptably vague: "*Some* of them [sites] lie within the supposed footprint of

construction . . ."; "*Elsewhere*, a streambed was filled and culvert installed . . . *Id.*

at ¶¶ 8; 13, p.10 (emphasis added).

  Finally, plaintiffs-appellants' motion is rife with half-truths and misleading

citations to the record. The Army's EISs do not establish "irreparable" harm as

plaintiffs-appellants assert; rather, those documents speak of "significant" harms

that can be lessened through mitigation measures. Plaintiffs-appellants' Counsel's

certificate claims the army's mitigation measures "would do nothing to eliminate

the irreparable cultural harm," but cites as authority only the Site-Specific EIS,

which contains no such admission or assertion. Mtn. at iv. Additionally, a careful

7

OCT-27-2006 15:13 FROM:EARTHJUSTICE HAWAII    8085216841    TO:8084382570    P.12/26

OCT-27-2006 17:35 From:US COURT OF APPEALS    To:8085216841    P.12/26

reading of the record reveals that the "historic buildings" that are alleged to be threatened in the SBCT transformation are mainly Nike Missile buildings and other Cold War relics. *See* AR-S 51525.

D.     *The Joint Stipulation is not binding in this court.*

The majority's order granting temporary injunction mirrors the November 22, 2004 Joint Stipulation entered into by the Army and the plaintiffs-appellants in the district court. However, this Stipulation is of no bearing in this court, any more than its provisions regarding discovery would be controlling or relevant in this court. The plaintiffs-appellants argue that the term "Court" should be interpreted according to its plain, ordinary and accepted use. Mtn. at 9. Apparently, the majority's order has bought the argument that "Court" can apply to this court. However, the plain, ordinary meaning of "Court" here is the district court. The Bluebook recognizes the significance of capitalizing "Court" in a motion:

> In addition to capitalizing "Court" when naming any court in full or when referring to the U.S. Supreme Court, also capitalize "Court" in a court document *when referring to the court that will be receiving that document.*

THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION (Columbia Law Review Ass'n et al. eds., 18th ed. 2005) at 21 (emphasis added). Here, the district court is "the" single "court" that "receiv[ed]" the Stipulation. This court "received" the

8

OCT-27-2006 02:41PM    FAX:    ID:EARTHJUSTICE HAWAII    PAGE:012    R=94%

Stipulation in the sense that it was submitted as an exhibit in the present motion,
but the Bluebook does not say "courts," it says "court."

The plaintiffs-appellants argue the Stipulation should be construed as a
whole. Mtn at 9. Construed as a whole, however, the Stipulation allows the Army
to avoid discovery requests it faced in district court by agreeing to refrain from
transformation activities if the same court found a NEPA violation. The
Stipulation states:

> The parties have negotiated and executed this Joint Stipulation in good faith
> in order to minimize litigation on whether discovery is appropriate in this
> action and to avoid the need to file a motion to quash the deposition notices
> served upon Mr. Bechtel and Mr. Swan.

November 22, 2004 Stipulation at ¶ 7. Once an appeal was taken, "the Court"
(*i.e.,* the district court) had made its determination that no NEPA violation was
present. The discovery requests referred to in the Stipulation then were moot. The
agreement then ceased to have practical effect, for it simply was not the case that
"the Court finds that defendants violated NEPA." *Id.* at ¶ 4. Contrary to
plaintiffs-appellants' position, there is nothing "absurd" about interpreting the
Stipulation to apply only in the district court. What is "absurd" is plaintiffs-
appellants' claim that under this interpretation, "the parties would never reach
'issues related to remedy.'" The paragraph cited by plaintiffs-appellants in this

9

OCT-27-2006 15:14 FROM:EARTHJUSTICE HAWAII   8085216841          TO:8084392570          P.14/26

OCT-27-2006 17:35 From:US COURT OF APPEALS                       To:8085216841         P.14/26

vein states:

> Resolution of the merits of plaintiffs' NEPA challenge is bifurcated from the determination of the appropriate remedy should the Court find a NEPA violation. The parties' cross-motions for summary judgment . . . shall focus solely on whether defendants violated NEPA, leaving issues related to remedy to a later date, should the Court find a NEPA violation.

November 22, 2004 Stipulation at ¶ 1. This purpose of this paragraph is to eliminate "issues related to remedy" from the parties' motions, which motions were the basis of this appeal. The parties will reach issues related to remedy, if at all, in the district court on remand, but that has nothing to do with whether a Stipulation agreed on before appeal should be deemed binding in this court.

On appeal, the parties could have entered into a similar stipulation providing for the Army to cease transformation activity. They did not. Given that they did not, the Army should not be held to have agreed to cease transformation activity if a panel of this court—or any other court, for that matter—were, at some point in this litigation, to find the Army had violated NEPA. The Army agreed to the Stipulation to avoid specific discovery requests in the district court, and we should not interpret the Stipulation any differently.

E.     *The lesson we were taught a week ago by the Supreme Court.*

Perhaps most importantly, the majority's order seems oblivious to the harsh lesson taught us a week ago when the Supreme Court filed its decision in *Purcell*

10

OCT-27-2006 15:14 FROM:EARTHJUSTICE HAWAII  8085216841        TO:8084382570        P.15/26

OCT-27-2006 17:35 From:US COURT OF  APPEALS             To:8085216841        P.15/26

*v. Gonzalez*, 549 U.S. ___ (October 20, 2006) (per curiam).

*1. The importance of District Court findings of fact and conclusions of law*

"These findings were important because resolution of legal questions in the Court of Appeals required evaluation of underlying factual issues," *Purcell*, Slip. Op. at 2.

Here we have District Court findings of fact and conclusions of law—but they support only a denial, not a grant of a temporary injunction. *See* Orders of November 5, 2004 and May 19, 2005.

The majority's order quite ignores such district court findings. It does not even attempt to invalidate them as abuses of discretion, or by changed conditions, if any.

"It was still necessary, as a procedural matter, for the Court of Appeals to give deference to the discretion of the District Court. We find no indication that it did so, and we conclude this was error." *Purcell*, Slip Op. at 4.

The majority's order, regrettably, does just that.

*2. The importance of offering an explanation or justification for the order of the Court of Appeals.*

The Supreme Court chastised our court in *Purcell* for issuing a two-judge order enjoining a state election in Arizona without analysis, citation of authority,

11

OCT-27-2006 15:14 FROM:EARTHJUSTICE HAWAII    8085216841                      TO:8684382570                P.16/26

OCT-27-2006 17:35 From:US COURT OF APPEALS                                   To:8085216841               P.16/26

or other explanation.

"The Court of Appeals offered no explanation or justification for its order."

*Id.* at 3.

The majority's order, regrettably, does just that. It is a diktat. It faithfully

follows plaintiffs-appellants' requested injunction, without a word of explanation

or justification.

> The Supreme Court pointed out why a reasoned explanation is necessary:
> [T]he Court of Appeals was required to weigh, in addition to the harms
> attendant upon issuance or nonissuance of an injunction, considerations
> specific to election cases and its own institutional procedures . . . .
> Furthermore, it might have given some weight to the possibility that the
> nonprevailing parties would want to seek en banc review. In the Ninth Circuit
> that procedure, involving the voting by all active judges and an en banc
> hearing by a court of 15, can consume further valuable time.

*Id.* at 4.

The majority's order, as it stands, will leave the Supreme Court in the same

position it was in in the *Purcell* case. "[Without] any factual findings or indeed

any reasoning of its own the Court of Appeals left this Court in the position of

evaluating the Court of Appeals' bare order in light of the District Court's ultimate

findings." *Id.* at 5.

The majority's order appears directly to contravene the Court's instruction

in *Purcell.*

12

OCT-27-2006 02:42PM    FAX:                    ID:EARTHJUSTICE HAWAII    PAGE:016  R=94%

OCT-27-2006 15:14 FROM:EARTHJUSTICE HAWAII   8085216841          TO:8004382570          P.17/26

OCT-27-2006 17:35 From:US COURT OF  APPEALS          To:8085216841          P.17/26

For all these reasons, I respectfully dissent.

13

OCT-27-2006 15:14 FROM:EARTHJUSTICE HAWAII  8085216841        TO:8084382570        P.18/26

OCT-27-2006 17:35 From:US COURT OF  APPEALS                   To:8085216841        P.18/26

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

# FILED

OCT 2 7 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

---

'ĪLIO'ULAOKALANI COALITION, a
Hawaii nonprofit corporation; NĀ 'IMI
PONO, a Hawaii unincorporated
association; KĪPUKA, a Hawaii
unincorporated association,

    Plaintiffs - Appellants,

  v.

DONALD H. RUMSFELD, Secretary of
Defense; et al.,

    Defendants - Appellees,

  and

LES BROWNLEE, Acting Secretary of
the United States Department of the Army,

    Defendant.

No. 05-15915

D.C. No. CV-04-00502-DAE
District of Hawaii,
Honolulu

Addendum to Order Granting
Temporary Injunction and
Remanding

---

Before: B. FLETCHER and THOMPSON, Circuit Judges.

    In light of the dissent, the majority feels it incumbent upon it to articulate

the reasons it finds the dissent's analysis wrong on both the law and the facts. The

dissent loses sight of the fact that the Army has violated NEPA and must come

into compliance *before* proceeding with its plan to transform the 2nd Brigade into

OCT-27-2006 15:14 FROM:EARTHJUSTICE HAWAII  8085216841          TO:8084382570          P.19/26
   OCT-27-2006 17:36 From:US COURT OF APPEALS               To:8085216841          P.19·26

a Stryker unit at its Hawaii base. We should not permit Defendants to render meaningless our holding that they should have considered reasonable alternatives to transformation in Hawaii by allowing them to continue with their implementation plan pending an interim injunction. No one disagrees that NEPA does not mandate particular substantive results, and the majority has not suggested otherwise. *Cf.* Dissenting Op. at 3-4. What NEPA does require is that reasonable alternatives be considered *before environmentally damaging projects are undertaken.* *Nat'l Parks and Conservation Ass'n v. Babbitt*, 241 F.3d 722, 737 (9th Cir. 2001). We have no way of predicting what the result of the Army's supplemental SEIS will be – nor should we guess the outcome in advance.

The dissent's argument that this court owes deference to the district court's fact-finding of irreparable injury to the Army and that we must find that the district court has abused its discretion is specious. *See* Dissenting Op. at 2-3. This court does not owe the district court's November 5, 2004 and May 19, 2005 findings of fact any deference, because we are not currently in the posture of reviewing the district court's denial of plaintiffs' preliminary injunction. *Cf. Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006) (reviewing district court's denial of preliminary injunction under abuse of discretion standard).

2

OCT-27-2006 02:42PM     FAX:                    ID:EARTHJUSTICE HAWAII     PAGE:019  R=94%

OCT-27-2006 15:14 FROM:EARTHJUSTICE HAWAII  8085216841          TO:8084382570          P.20/26

OCT-27-2006 17:36 From:US COURT OF APPEALS                     To:8085216841          P.20/26

The Plaintiffs have won on the merits of their NEPA claim. This is the fundamental difference between the preliminary injunction standard the district court applied and the standard we apply now. Now, we balance the equities and determine whether an injunction would be in the public interest. *See High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641-43 (9th Cir. 2004). By contrast, the district court denied Plaintiffs' *preliminary* injunction in large part because it determined that they did not have a strong likelihood of success on the merits. *See* November 5, 2004 Order at 11. Moreover, the Army has itself conceded that most of its activities are not critical to national security, and it has not provided convincing reasons why even the "critical" activities are "critical."[1] *See Pls.' Reply Br.* at 8-11.

*Harm to Cultural and Environmental Resources.* The Plaintiffs have shown irreparable harm. First, "[i]n the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of a major federal action." *High Sierra Hikers Ass'n*, 390 F.3d at 642. Thus, the very fact that the Army failed to consider reasonable alternatives has caused irreparable injury. Second, "[i]f

---

[1] For example, while the Army asserts that "all of its equipment and facilities" are "critical to national security," Defs.-Appellees' Opp. at 14, it also concedes that many of their projects, such as the imminent construction of the BAX at Schofield Barracks, are not "critical," *id.* at 15.

3

OCT-27-2006 15:14 FROM:EARTHJUSTICE HAWAII   8085216841          TO:80843825?0        P.21/26

OCT-27-2006 17:36 From:US COURT OF APPEALS                      To:8085216841        P.21-26

environmental injury is *sufficiently likely*, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Id.* (citing *Amooo Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (emphasis added)). This is because "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Nat'l Parks and Conservation Ass'n*, 241 F.3d at 737.

Plaintiffs have clearly shown that environmental and cultural injury are *sufficiently likely*. *See* Pls.' Mot. at 11-16 ("[t]he Army has conceded that Stryker activities threaten hundreds of Native Hawaiian cultural sites, . . . would destroy endemic plants and animals protected under the Endangered Species Act [] and degrade the habitat on which these species rely for their continued survival and eventual recovery."); Pls.' Reply Br. at 4-8. The threatened sites have deep cultural and religious significance to the native Hawaiians, *see* Abad Dec., Tengan Dec., and the Army's mitigation measures have serious limitations. *See, e.g.*, Abad Dec. at 6-7 (describing how the Programmatic Agreement "would . . . focus on how the burials are excavated and relocated, not whether they should remain at rest, in place"); Quitevis Dec. at 5-13, Abad Dec. at 13-14 (noting that the Army has not complied with the PA and sites can only be avoided if identified ahead of time). We deplore the dissent's denigration of Plaintiffs' claims that native

4

OCT-27-2006 15:15 FROM:EARTHJUSTICE HAWAII   8085216841          TO:8084382570          P.22/26

OCT-27-2006 17:36 From:US·COURT OF  APPEALS                      To:8085216841          P.22/26

Hawaiians "suffer spiritually, physically, culturally, and emotionally each time a
burial or cultural site is desecrated." Tengan Dec. at ¶ 11; *see* Dissenting Op. at 5-
6.

"Irreparable" means not able to be repaired or reversed. If the Army digs up
Native Hawaiian ancestors' bones, there is nothing that can be done to reverse that
harm. If the Army's activities cause a wildfire that results in the spread of
nonnative invasive species, damages ecosystems, and kills native Hawaiian plants
and animals that do not rebound from wildfires,[2] that harm is "irreparable." A
"careful reading of the record," Dissenting Op. 7-8, reveals that "Cold War relics"
are not the only resources that will be threatened by the Army's Stryker activities.
*See, e.g.,* Final SEIS at AR 0051516-19, 0051524-28, 0051725-27, 0051744-55,
0051756-57, 0052020-21, 0052029-43, 0052237-56 (describing hundreds of
federally listed species and other endemic plants and animals, cultural and
archeological sites, burials, ecosystems, and thousands of acres of habitat that will
be destroyed, lost, or irreparably damaged as a result of Stryker activities).

---

[2] *See Makua v. Rumsfeld*, 163 F. Supp. 2d 1202, 1208 (D. Haw. 2001) ("If
fire consumes native vegetation, especially trees that provide overstory shade,
alien weeds can more easily take over, extending the grass boundary and
increasing the risk to endangered species. Native Hawaiian plants are not known
to reclaim areas devastated by fire.").

TO:EARTHJUSTICE HAWAII    PAGE:022   R=94%

OCT-27-2006 15:15 FROM:EARTHJUSTICE HAWAII  8085216841          TO:8084382570          P.23/26

OCT-27-2006 17:36 From:US COURT OF APPEALS                     To:8085216841          P.23/26

*Harm to the Army and National Security*. "There is no national defense exception to NEPA." *No GWEN Alliance of Lane County, Inc. v. Aldridge*, 855 F.2d 1380, 1384 (9th Cir. 1988) (internal quotation marks omitted). There is no evidence that the entry of our temporary injunction pending the short amount of time needed to determine the scope of an interim injunction would irreparably harm the Army or national security. The Army has (1) conceded that many of its activities are not "critical," (2) claimed previously that certain of its Stryker transformation-related activities must proceed on-schedule, and yet "[t]he Army fails to explain why th[e] half-year delay [in construction of the Schofield BAX] – which allegedly posed such dire ramifications – did not, when it came to pass, have any adverse consequences. Instead, the Army simply . . . assert[s] once again that Stryker conversion must be completed on schedule (the newly minted one, that is), or else." Pls. Reply Br. at 11.

*November 22, 2004 Stipulated Order*. While it is true that Plaintiffs specifically base their emergency motion on the November 1, 2006 ground-breaking for the BAX at Schofield Barracks, they also base their request for an injunction on the November 22, 2004 Stipulated Order, in which the Army *agreed* that it would cease its activities pending finding of NEPA violation by the court. Paragraph 4 of the Stipulated Order states:

6

OCT-27-2006 02:43PM    FAX:          ID:EARTHJUSTICE HAWAII    PAGE:023  R=94%

OCT-27-2006  15:15 FROM:EARTHJUSTICE HAWAII   8085216841          TO:8084382570          P.24/26

OCT-27-2006  17:36 From:US COURT OF  APPEALS                      To:8085216841         P.24/26

> *If the Court finds that defendants violated NEPA*, defendants shall refrain from implementing, executing or proceeding with the following activities associated with the transformation of the 2nd Brigade of the 25th Infantry Division (Light) to an SBCT in Hawai'i: grading, grubbing, other ground disturbance, construction, land acquisition, project design, geotechnical testing, unexploded ordnance clearance, contract award, and SBCT-specific training (as defined in paragraph 5). *Defendants shall refrain from implementing, executing or proceeding with these transformation-related activities until the Court has ruled on whether a permanent injunction should issue and, if so, its scope.*

Pls.' Ex. 4 at 4 (emphasis added). This court has ruled that Defendants violated NEPA; thus, they should be held to the Stipulated Order. Under the plain language of the Stipulated Order, the word "Court" is not limited to the district court, but includes this court, and the Army's cramped interpretation of "Court" as "district court" should be rejected because the "agreement should be construed as a whole and its meaning determined from the entire context." *Maui Land and Pineapple Co., Inc. v. Dillingham Corp.*, 674 P.2d 390, 395 (Haw. 1984).

It makes no sense to interpret the Stipulated Order as requiring Defendants to cease its transformation-related activities if the district court ruled that the Army violated NEPA but not if this court so ruled. The purpose of the Stipulated Order was to address Plaintiffs' interest in maintaining the status quo while the litigation was pending as well as the Army's interest in deferring remedy-related discovery.

7

OCT-27-2006 15:15 FROM:EARTHJUSTICE HAWAII  8085216841        TO:8084382570        P.25/26

OCT-27-2006 17:37 From:US COURT OF APPEALS                    To:8085216841        P.25/26

*See* Pls.' Reply Br. at 2. The dissent asserts that the Army could have entered into an agreement to cease its activities pending appeal, but that it is significant that it did not. Dissenting Op. at 10. Of course the Army would not enter into an agreement to cease its activities *if no court found that it violated NEPA.* Thus, it simply does not follow that, as the dissent maintains, "[g]iven that they did not, the Army should not be held to have agreed to cease transformation activities if a panel of this court — or any other court, for that matter — were . . . to find that the Army had violated NEPA." *Id.* at 10.

The dissent argues that even if a temporary injunction were to issue, it should include only activities that require excavation of the ground since Plaintiffs mention only cultural sites in its Certificate of Counsel, *Id.* at 2. But it is not true that the only activities that would harm cultural resources are ones that disturb the ground — for example, land acquisition or Stryker combat vehicle training. The Plaintiffs have also shown that irreparable harm to environmental resources is sufficiently likely, such as the spread of wildfire and destruction of habitat, which would be caused by non-ground-disturbing activities. Pls.' Mot. at 11-17; Pls.' Reply Br. at 5-8. The Army uses technical terms to describe activities that sound harmless but in actuality mask potentially harmful activity. *See* Quitevis Dec. at ¶ 13. Plaintiffs included specific activities in the Joint Stipulation because they

8

OCT-27-2006 15:15 FROM:EARTHJUSTICE HAWAII   8085216841         TO:8084382570        P.26/26
   OCT-27-2006 17:37 From:US COURT OF  APPEALS                          To:8085216841       P.26/26

would harm cultural and environmental resources; the Army agreed to refrain from executing these activities because the harm that they risked was significant.

Reading the dissent, one would think that we have issued a permanent injunction. We have not. We have not even issued an interim injunction pending a ruling on a permanent injunction, which is what the Plaintiffs asked for. Rather, we have entered a temporary injunction pending the district court's expeditious resolution of the interim injunction. We have acknowledged that properly balancing the parties' equities is a fact-intensive inquiry best undertaken by the district court, and we have remanded to the district court to enter and determine the scope of an interim injunction.

9

OCT-27-2006 02:44PM   FAX:                       ID:EARTHJUSTICE HAWAII      PAGE:026   R=94%