EDWARD H. KUBO, JR. (2499)
United States Attorney
District of Hawai`i
HARRY YEE      (3790)
THOMAS HELPER  (5676)
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawai`i  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: harry.yee@usdoj.gov

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
BARRY A. WEINER
JAMES D. GETTE
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C.  20044-0663
Telephone: (202) 305-0469
Facsimile:  (202) 305-0274
Email: Barry.Weiner@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ILIO‘ULAOKALANI COALITION, a Hawaii, nonprofit corporation; NA‘IMI PONO, a Hawaii unincorporated association; and KIPUKA, a Hawaii unincorporated association,<br><br>               Plaintiffs,<br><br>   v.<br><br>DONALD H. RUMSFELD, Secretary of United States Department of Defense; and FRANCIS J. HARVEY, Secretary of the United States Department of the Army,<br><br>               Defendants. | CIVIL NO.04-00502 DAE BMK<br><br>FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO FILE SECOND AMENDED COMPLAINT AND TO JOIN NECESSARY PARTIES; TABLE OF CONTENTS; TABLE OF AUTHORITIES; CERTIFICATE OF SERVICE<br><br><u>Hearing</u>:<br><br>Date:    November 16, 2006<br>Time:    9:30 a.m.<br>Judge:   Hon. Barry M. Kurren |

I.    **INTRODUCTION**

At this late date – following entry of summary judgment, and after appeal to and remand from the Ninth Circuit – Plaintiffs now seek to amend the complaint to seek new relief that would "set aside land transactions" involving over 25,000 acres of land already acquired by the United States.  Pl. Motion at 2.  In particular, Plaintiffs seek to rescind the completed acquisition of land that was accomplished through condemnation of approximately 1,400 acres of the Campbell Estate and through voluntary purchase of 24,000 acres from the Parker Ranch.  To secure this relief, Plaintiffs also seek to join the former landowners to this law suit, arguing that complete relief (i.e., the newly requested rescission of the land transfers) cannot be accorded without them.  Id.  Finally, Plaintiffs have asked that their motion to amend be heard on an emergency basis.

Because the Ninth Circuit has not yet issued its mandate in this case pursuant to Civ. R. App. P. 41, this Court is without jurisdiction to rule on Plaintiffs' motion to amend the Complaint and to join new parties.  Even once this Court acquires jurisdiction to consider the instant motion – following issuance of the Ninth Circuit's mandate – for numerous reasons, the Court should summarily deny the motion.

Most notably, the Plaintiffs' motion should be denied because the proposed amendment is futile.  See Parker v. Joe

2

<u>Lujan Enterprises, Inc.</u>, 848 F.2d 118, 120 (9th Cir. 1988)
("futility of amendment" is a valid basis for the denial of a
request to amend a complaint).  As Plaintiff is well aware, the
first transfer they seek to rescind – the condemnation of the
Campbell Property – occurred in an action in which they
intervened and in which both this Court and the Ninth Circuit
rejected their argument that the land acquisition should be set
aside.  <u>See</u>, <u>United States v. 1,402 Acres of Land</u>, No. 05-15858
(9th Cir. Oct. 5, 2006).[1]  Plaintiffs' attempt to collaterally
attack that decision, by amending their complaint in this action,
is clearly improper and should be denied.

    Plaintiffs' attempt to rescind the Parker Ranch acquisition
has no better legal underpinning and also must be denied as
futile.  While a NEPA lawsuit, which is based on the APA, may
under certain limited circumstances be used to challenge the
conveyance of land out of federal ownership, it cannot be used to
contest the United States' existing ownership of land, such as
the former Parker Ranch land.  Instead, the Quiet Title Act
("QTA"), 28 U.S.C. § 2409a, is the exclusive means by which the
United States' ownership of land may be challenged.  <u>Block v.
North Dakota</u>, 461 U.S. 273, 286 (1983).  A plaintiff cannot

_____

    [1]Generally unpublished decisions of the Ninth Circuit lack
precedential value and may not be cited.  Cir. Rule 36-3(a)&(b).
Unpublished decisions, however, are treated as binding precedent
for purposes of the application of the doctrine of res judicata
and may, as here, be cited for that purpose.

circumvent the QTA by indirectly attacking title through an APA lawsuit or other artful pleading.  Id. at 285.  Moreover, the QTA remains the exclusive means to challenge ownership regardless of whether the plaintiffs are seeking title for themselves or instead are seeking to contest the United States' title for other purposes.

In this case, Plaintiffs have not pled a QTA claim, nor could they properly do so.  Moreover, even if a successful suit under the QTA could be asserted and litigated, the QTA specifically prohibits the issuance of preliminary injunctions and expressly allows the United States to maintain possession of the property.  Thus, under no circumstances can Plaintiffs get the relief they seek, and their motion to amend the complaint should be denied.

Plaintiffs' effort to add additional parties and issues at this stage of the litigation is also contrary to the Ninth Circuit's clear instructions to this Court to pursue an "expeditious resolution of the interim injunction."  Addendum to Order Granting Temporary Injunction and Remanding at p. 9 (9th Cir. October 27, 2006).  The delay attendant to the addition of new parties at this point in the litigation will not only interfere with this Court implementing the clear instructions of the Ninth Circuit, it will also severely prejudice the Army and will interfere with important national security interests.

4

The attempt to join new parties should also be rejected by the Court. Since the newly requested relief is frivolous, there can be no benefit from or reason for the addition of parties whose sole connection to the case is their prior ownership of the transferred land. Plaintiffs claim that these parties are necessary, but fail to identify a single right or interest held by these third parties that will be implicated in this Court's consideration of an interim injunction or permanent injunction to prevent future violations of NEPA. The only right held by these prior owners is the right to constitutionally just compensation. This issue has been fully adjudicated and the prior owners have been appropriately remunerated.

Plaintiffs must admit that any injunction issued by this Court will, at most, address training and construction activities by the Army on property that is now owned by the Army. Thus, the only necessary defendant is the United States Army. This conclusion comports with the Ninth Circuit's well-established rule that the government is the only appropriate defendant in a NEPA compliance case. None of the prior owners of the property will be conducting operations on the property, let alone operations subject to NEPA compliance. Simply put, the allegedly necessary parties hold no interest in the property and, thus, are not necessary to the prosecution of this case.

Finally, Plaintiffs' maneuver to add a new claim for relief

and to join additional parties at this late juncture of this
lengthy litigation should be seen for what it is, a thinly veiled
attempt to delay and obfuscate the proceedings.  Having claimed
at each juncture of this litigation that time is of the essence,[2]
the tempo of Plaintiffs' litigation strategy has changed markedly
now that Plaintiffs have obtained a temporary injunction.
Plaintiffs now favor efforts to slow further proceedings.
Plaintiffs' delay tactics include the instant motion, the failure
to apprise the Court at its recent hearing of their intent to
seek amendment of the Complaint, and their attempt to interject
lengthy discovery into the proceedings.  The Ninth Circuit has
cautioned that, in cases where joinder is premised on such
"dilatory motives," leave to join should be rejected.

## II.  BACKGROUND

On August 17, 2004, Plaintiff filed their original complaint
with this Court alleging that the Army violated NEPA by failing
to consider reasonable alternatives to the transformation of the
2nd Brigade from a light infantry to a Stryker Brigade Combat
Team ("SBCT") in Hawaii.  The focal point of a SBCT is the state-
of-the-art Stryker wheeled armored vehicle, which makes this unit

---

[2]See Motion for TRO and Preliminary Injunction, No. 04-0502
(D.Haw. Oct. 8, 2004) Dkt. No. 5; Order Denying Motion before
this Court for Injunction Pending Appeal, No. 04-0502 (D.Haw. May
19, 2005) Dkt. No. 76; Motion before the Ninth Circuit to Issue
an Injunction Pending Appeal, No. 05-15915 (9th Cir. Oct. 18,
2006); and Opinion of the Ninth Circuit Issuing Temporary
Injunction Pending Remand, No. 05-15915 (9th Cir. Oct. 27,2006).

more lethal and survivable than a traditional infantry brigade, but more mobile and versatile than a traditional armored brigade. Specifically, Plaintiffs argued that the Army should have considered the alternative of relocating the 2nd Brigade to the continental United States to effectuate the transformation to a SBCT. On November 5, 2004, this Court denied Plaintiffs' motion for a preliminary injunction.

This Court then granted the United States' motion for summary judgment on April 25, 2005. The Court entered final judgment on April 29, 2005 and, on May 19, 2005, denied Plaintiffs' motion for an injunction pending appeal. The Plaintiffs then moved for an injunction pending appeal in the Ninth Circuit, which similarly denied the injunction. On October 5, 2006, the Ninth Circuit reversed this Court and remanded to the Army to prepare a Supplemental Environmental Impact Statement examining the alternative of relocation of the 2nd Brigade to a facility outside of Hawaii for its transformation to a SBCT.

On October 27, 2006, a few weeks after the Ninth Circuit issued its Opinion concluding that the Army had violated NEPA, the Ninth Circuit issued a separate order entering a temporary injunction on further transformation and training of the 2nd Brigade as an SBCT and remanding the case to this Court for expedited fact finding and issuance of an interim injunction. In its October 27th Order, the Ninth Circuit issued a limited remand

7

to this Court for the sole purpose of determining on an expedited basis the appropriate scope of "interim injunctive relief" pending a decision by this Court on the scope of a permanent injunction following issuance of the mandate by the Ninth Circuit. Order of October 27, 2006, at 2-3 and Addendum to Order at 9. The Ninth Circuit has, to date, not entered the mandate transferring full jurisdiction back to this Court. Instead, it has only remanded for the limited consideration of an interim injunction pending further proceedings after the issuance of the mandate. Despite the lack of a mandate, Plaintiffs have now filed the instant motion to amend the complaint and to join additional parties.

This Court has already recognized that delay in the transformation of the 2nd Brigade to an SBCT will cause substantial harm to the Army. As the Court has previously concluded, the harm to the Army and its effort on the Global War on Terrorism from and injunction are both "demonstrative and sever." See Court's November 5, 2004 Order at 17. There is no question that "[d]elaying or disrupting the conversion of the 2nd Brigade to SBCT 5 will significantly impact the sequence of the Army transformation and reduce overall effectiveness of the Army forces currently fighting the Global War on Terrorism." Id. at 17-18.

**III. ARGUMENT**

A.   This Court Lacks Jurisdiction to Consider
     Plaintiffs' Motion to Amend and to Join Additional
     Parties Until the Ninth Circuit Has Issued Its
     Mandate

Because the Ninth Circuit has not yet issued its mandate, this Court lacks jurisdiction to hear Plaintiffs' motion to amend the Complaint and to join additional parties. See generally Fed. R. App. P. 41.  The Ninth Circuit has long held that an "appeal leaves the trial court without jurisdiction to proceed further in the case until it receives the mandate of the appellate court." Rogers v. Consolidated Rock Products, 114 F.2d 108, 111 (9th Cir. 1940).  This general rule has only limited exceptions – such as the ability to "suspend, modify, restore , or grant an injunction during the pendency of the appeal. . ." (Fed. R. Civ. P. 62(c)) – none of which apply to the instant motion.[3]

Indeed, the Ninth Circuit has previously set aside a district court's ruling on a motion to amend where the motion was submitted to the trial court after an appeal had been taken but before the Ninth Circuit's mandate had issued.  Moore v. Brewster, 96 F.3d 1240 (9th Cir. 1996) (Fletcher, J.); see also Smith v. Lujan, 588 F.2d 1304 (9th Cir. 1979) (district court

_____

[3]In contrast, this Court has been directed by the Ninth Circuit to adjudicate the issuance of an interim injunction on an expedited basis, an order that is fully consistent with F.R.C.P. 62.  Unlike the consideration of the interim injunction, there has been no instruction from the Ninth Circuit to proceed with consideration of proposed amendments to the Complaint prior to the issuance of a mandate by that court.

9

lacked jurisdiction to "dispose of [a] motion, after the notice of appeal had been filed, without a remand from [the Ninth Circuit]."). In <u>Moore</u>, like in the instant case, the trial court granted summary judgment for the defendants. While the case was pending on appeal, the plaintiff-appellant filed a motion to amend the complaint, which was considered and denied by the trial court. The Ninth Circuit held that "[b]y filing the notice of appeal, [plaintiff-appellant] had divested the district court of its jurisdiction over the matter." <u>Id.</u> at 1246 (citing <u>Davis v. United States</u>, 667 F.2d 822, 824 (9th Cir. 1982)). As a result, the Court of Appeals vacated the lower court's order on the motion to amend. <u>Id.</u>

The instant case is factually on all fours with the Ninth Circuit's decision in <u>Moore</u>. Plaintiffs are attempting to seek amendment of the Complaint while an appeal to the Ninth Circuit is still pending. As such, this Court lacks jurisdiction to consider Plaintiffs' motion, and must wait until issuance of the Ninth Circuit's mandate before it summarily rejects the motion on the grounds set forth below.

> B. Plaintiffs' Motion to Amend the Complaint to Add Futile, Indeed Frivolous, Claims for Relief Must Be Denied

Plaintiffs' proposed Second Amended Complaint includes new relief in the form of rescission of two transfers of property to

the Army.[4]  The additional relief is frivolous and, thus,
amendment of the complaint is both unnecessary and inappropriate.

> 1.    The Plaintiffs May Not Divest the United
>        States of Property through a NEPA Lawsuit

In their proposed amended complaint, Plaintiffs seek to "set
aside" the acquisition of over 25,000 acres of land currently
owned by the United States.  Plaintiffs' demand is laced with a
number of fatal defects, including the fact that they have
already litigated and lost their claim to set aside the
acquisition of one of the two estates at issue.  But even more
fundamentally, the Plaintiffs' proposed amendment is futile
because the Court does not have jurisdiction in this APA case to
divest the United States of ownership of property.

As noted in the introduction, the Quiet Title Act provides
the exclusive means by which the United States' title to real
property may be challenged.  Block v. North Dakota, 461 U.S. 273,
286 (1983).  Among other provisions, the QTA provides a strictly
construed, limited waiver of sovereign immunity to assert title
claims against the United States, prohibits the issuance of

_____

[4]/Plaintiffs' third prayer for relief has been amended to
request "preliminary and permanent injunctive relief. . .
including . . . *setting aside defendants' acquisitions of
interest in land* in connection with[ ] the proposed
transformation in Hawai'i of the 2nd Brigade of the 25th Infantry
Division (Light). . . ."  See Plaintiffs' Motion to File Second
Amended Complaint and to Join Necessary Parties, Exhibit A at p.
30 (emphasis added).

preliminary injunctions, and specifically allows the United States to "retain such possession or control of the real property or of any part thereof as it may elect" so long as just compensation has been paid.  See 28 U.S.C. § 2409a(b). Plaintiffs have not alleged jurisdiction under the QTA, could not properly assert a claim even if they did,[5] and could not be granted the relief they seek (divesting the United States of title) because of the express terms of the QTA.

Plaintiffs cannot circumvent the QTA by asserting that their claims arise under the Administrative Procedure Act.  The Ninth Circuit has succinctly explained that APA lawsuits which challenge title must be dismissed because of the exclusivity of the QTA:

> Section 702 of the APA waives sovereign immunity for suits against federal officers in which the plaintiff seeks nonmonetary relief. The APA, however, does not waive immunity as to any claims which are expressly or impliedly forbidden by "any other statute that grants consent to suit."  The Quiet Title Act (QTA), 28 U.S.C. § 2409a, is such an act.

Metropolitan Water Dist. v. United States, 830 F.2d 139, 143 (9th Cir. 1987) (per curiam), aff'd. sub nom. California v. United States, 490 U.S. 920 (1989)(citing Block v. North Dakota, 461 U.S. at 286, n. 22).  See also Alaska v. Babbit, 75 F.3d 449,

---

[5] See Long v. Area Manager, 236 F.3d 910, 915 (8th Cir. 2001) (no one can assert a Quiet Title Act claim who "does not claim a property interest to which title may be quieted.").

452-53 (9th Cir. 1996) (holding that a plaintiff cannot employ
officer suits under the APA, including ultra vires suits, to
divest the government's sovereign immunity in quiet title
actions).

Metropolitan Water District also establishes that it does
not matter whether the plaintiff actually seeks title for itself
– so long as the United States' title is challenged, the claims
are subject to the QTA.  In Metropolitan, the Water District
brought claims under the APA seeking to prevent an Indian tribe
from gaining additional water rights as the result of an
expansion in the Tribe's reservation boundaries. See
Metropolitan, 830 F.2d at 141.  Although recognizing that the
water district was "not seeking to quiet title in itself," the
court held that the QTA applied because the water district sought
a determination of the boundaries of the Reservation that could
affect the United States' (and thus the Tribe's) title.  Id. at
144.

While there are relatively few NEPA cases where plaintiffs
have even sought to divest the United States of property, where
such a claim has been brought the courts have recognized that the
QTA applies.  For example, in Neighbors For Rational Development,
Inc. v. Norton, 379 F.3d 956 (10th Cir. 2004), the plaintiff
organization sought a declaratory judgment declaring "null and
void" the acquisition of land by the Department of the Interior

that was placed in trust for an Indian Tribe.  The plaintiffs alleged that the acquisition violated NEPA, among other things, and thus should be set aside.  The Tenth Circuit held that the plaintiff organization's claims fell within the ambit of the Quiet Title Act.  Id. at 961 ("We conclude Neighbors' claim falls within the scope of the Quiet Title Act's limitations on suits.").

The one case relied upon by Plaintiffs provides no support whatsoever for their attempt to set aside the United States' title to federal land under NEPA.  Kettle Range Conservation Group v. United States Bureau Of Land Mgm't, 150 F.3d 1083 (9th Cir. 1998).  In Kettle Range, the plaintiffs sought to *restore* land to federal ownership, not divest the United States of title to land it had acquired.[6]  The court's opinion accordingly dealt with the issue of whether the third parties who had acquired land from the United States were necessary parties.[7]  Generally, a QTA issue does not arise in challenges to conveyances of land out of federal ownership, since in those cases plaintiffs are not contesting federal ownership.  Thus, the parties did not raise

_____

[6]Id. at 1084-86 (stating that plaintiffs seek to "rescind, pending BLM's compliance with NEPA, the contract [with the non-federal party] pursuant to which over 90% of the government's land involved in the exchange had already been transferred to private parties.")

[7]Although the title transfers at issue were part of a "land swap," there is no indication that the plaintiffs sought to divest the United States of title to land it had acquired.

14

and the court did not address the applicability of the Quiet
Title Act.

Even where plaintiffs do not seek to actually divest the
United States of title, as Plaintiffs here propose to do, the
courts reject APA claims that would require a title determination
to be made.  See Shawnee Trail Conservancy v. United States Dep't
of Agric. 222 F.3d 383, 386-88 (7th Cir. 2000), cert. denied, 531
U.S. 1074 (2001)(holding that the Quiet Title Act barred the
plaintiffs from bringing an APA challenge to the Forest Service's
decision to close certain lands covered by alleged easements,
even though the plaintiffs sought only to challenge the closure
of the lands and did not seek to quiet title to the lands).

In their proposed amended complaint, Plaintiffs directly
attack the ownership of the United States, asking for preliminary
and permanent injunctive relief "setting aside defendants'
acquisitions of interests in land . . . ."  Proposed Prayer for
Relief at ¶ 3.  For the reasons already discussed, this challenge
to the United States current ownership of land simply cannot be
made in an APA lawsuit.  Because the Plaintiffs have failed to
properly assert a QTA claim, their amendment is futile.[8]  See
Gardner v. Stager, 103 F.3d 886, 887-88 (9th Cir. 1996), cert.

---

[8]Even if Plaintiffs were to plead under the Quiet Title Act,
they could not satisfy its requirements since they do not claim
an interest in the land, and the relief they seek is expressly
prohibited by the Act.

denied, 118 S. Ct. 54 (1997)(dismissing claims alleging title to grazing rights on Humboldt National Forest for failure to bring suit under QTA).

    2.    Amendment of the Complaint to Seek Relief Concerning the Campbell Estate Property is <u>Barred by the Doctrine of Res Judicata</u>

The first transfer challenged by Plaintiffs was accomplished through the condemnation of approximately 1,400 acres known as the Campbell Property. This Court has already adjudicated that condemnation in a related action. <u>United States v. 1,402 Acres of Land</u>, No. 04-0574-DAE (D.Haw. April 26, 2005). The decision of this Court was then appealed to and sustained by the Ninth Circuit. <u>United States v. 1,402 Acres of Land</u>, No. 05-15858 (9th Cir. Oct. 5, 2006). Plaintiffs intervened in that condemnation proceeding and sought to "set aside" a stipulated judgement as to just compensation. After this Court denied Plaintiffs' motion to set aside the stipulated judgment, the Plaintiffs appealed. As stated by the Ninth Circuit, the Plaintiffs argued, among other things, "that the district court erred in holding that (1) even if the condemnation violated the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321-4347 (2006), the Army was still authorized to condemn the land . . . ." <u>Id.</u> at 1.

The Court of Appeals rejected that argument, along with others asserted by the Plaintiffs, and affirmed this Court. <u>Id.</u> In reaching its decision, the Court of Appeals specifically

addressed the challenge to the Army's NEPA analysis in this case, stating that "while the condemnation may proceed without judicial interference, the use to which the land may be put will be determined pending compliance with NEPA" in this case.  <u>Id.</u> at 4.

The Court of Appeals decision could not be more clear: the acquisition of the land may not be set aside, although the Army's use of the land may potentially be affected by this NEPA lawsuit. Plaintiffs may not now seek to rescind the Ninth Circuit's prior decision in this collateral action.  Plaintiffs were parties to the Campbell Property condemnation action and are, thus, collaterally barred from relitigating the Campbell Property condemnation by attempting to have the Ninth Circuit's decision set aside by this Court.

Here, the claim for relief that Plaintiffs attempt to interject into this case is unquestionably barred by the doctrine of res judicata, which applies when "the earlier suit . . . (1) involved the same claim or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies."  <u>Sidhu v. Flecto Co.</u>, 279 F.3d 896, 900 (9th Cir. 2002).  Each of these well-established rules for the application of res judicata apply here.  First, Plaintiffs sought the same relief in the related condemnation action, namely that the transfer of the property be "set aside" by this Court.  The prior adjudication precludes re-litigation of

17

the claimed relief.[9]  Second, the case was adjudicated to a final judgment, on the merits, with a complete appellate review. Third, the parties to this lawsuit were also parties to the prior condemnation action.

Given that the requested relief – setting aside the condemnation of the Campbell Property – cannot be granted by this Court, amendment would be futile.  The Ninth Circuit has consistently held that "futility of amendment" is a valid basis for the denial of a request to amend a complaint.  See e.g., Parker v. Joe Lujan Enterprises, Inc., 848 F.2d 118, 120 (9th Cir. 1988).  Here, because the issue of the legality and appropriateness of the transfer of the Campbell Property has been fully adjudicated, there is no justification for adding such a futile claim to the present lawsuit.

3.    Amendment of the Complaint to "Set Aside" the Completed Acquisition of Property from the Parker Ranch Would Also Be Futile

The Plaintiffs also seek to amend the Complaint in an attempt to rescind the sale of approximately 24,000 acres of property by the Parker Ranch to the Army.  As discussed earlier, this proposed amendment is barred by the Quiet Title Act.  In

---

[9]Even if Plaintiffs were to suggest that they are relying upon a new basis for avoiding the transfer, which they have not suggested thus far, they would be precluded from re-litigating the land transfer as part of the instant case.  Western Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir.1992) ("different theories supporting the same claim for relief must be brought in the initial action").

addition, the legal claim sought to be asserted is without merit as a matter of law, and the amendment would thus be futile on that basis too.

The claim that intervenors wish to present to this Court – that a completed land acquisition may be rescinded because of a NEPA violation in the underlying project – simply has no valid underpinning.  While the *use* of acquired land may be limited or enjoined pending NEPA compliance on the underlying project, and even accepting Plaintiffs' prior arguments that future acquisitions may be enjoined in certain circumstances, there is no basis for rescinding completed land acquisitions.  For example, in one of the cases primarily relied upon by Plaintiffs when they unsuccessfully sought to overturn the Campbell property acquisition, the Court of Appeals found that a NEPA violation had occurred and enjoined future acquisitions from occurring, but it did not rescind completed acquisitions.  See <u>Lathan v. Volpe</u>, 455 F.2d 1111, 1126 (9th Cir. 1971).

There are numerous reasons why completed acquisitions are not subject to the type of rescission sought by Plaintiffs in a NEPA case, including the limitations of the QTA, the distinction between prohibitory and mandatory injunctions, and the fact that acquisition alone is not a NEPA triggering action. In <u>United States v. 0.95 Acres of Land</u>, 994 F.2d 696, 698 (9th Cir. 1993), the Ninth Circuit held that the transfer of title by itself is

not a NEPA-triggering event:

> NEPA cannot be used as a defense to the condemnation
> action.  The filing of the condemnation action and the
> subsequent transfer of legal title are not major
> Federal actions significantly affecting the
> environment.

Id. (citations omitted); see also United States v. 255.25 Acres

of Land, 553 F.2d 571, 572 n.2 (8th Cir. 1977); United States v.

178.15 Acres of Land, 543 F.2d 1391, 1391 (4th Cir. 1976).

The acquisition of land by the Army through voluntary

purchase is no different analytically than the condemnation

action at issue in 0.95 Acres of Land – in both situations the

transfer of legal title is not a major federal action that

requires an analysis under NEPA; rather, the planned subsequent

use of those lands is the major federal action.  Thus, while the

future use of the property properly is an issue for this Court

pending compliance with NEPA, there is no basis to assert that

the land acquisition should be rescinded.  The Plaintiffs'

proposed amendment seeking to rescind the Parker Ranch

acquisition thus has no valid legal predicate, and the motion to

amend should be denied as futile.

>    C.    Plaintiffs' Attempt to Join Additional Parties At
>          this Late Stage of the Litigation Should be
>          Rejected

Plaintiffs' only argument in support of their attempt to

join the prior owners of the Campbell and Parker Ranch properties

is so the Court can adjudicate the newly sought remedy of setting

aside the prior land transfers.  Since amendment of the Complaint
to add this new relief should be denied, there is no need to add
additional parties.  Independently, however, the joinder sought
by Plaintiffs is also inappropriate and unnecessary.

Under Federal Rule of Civil Procedure 19(a) a party is
necessary "when the absent party claims a legally protected
interest in the action" or "when complete relief is not possible
without the absent party's presence."  In re County of Orange,
262 F.3d 1014, 1022 (9th Cir. 2001); accord Shermoen v. United
States, 982 F.2d 1312 (9th Cir. 1992), Pit River Home &
Agricultural Co-op. Ass'n v. United States, 30 F.3d 1088 (9th
Cir. 1994).  Neither of these standards is met in the instant
case.

First, the prior landowners have claimed no protected
interest in this action.  The attempt to join the parties is
purely that of the Plaintiffs, not the prior property owners.
This fact alone is dispositive of the first prong of the
necessary joinder rule.  More importantly, the prior property
owners retain no interest in the property that is the subject of
this litigation.  The only interest the prior property owners
could raise with respect to the transfer of their property to the
United States is whether they were paid constitutionally just
compensation.  With respect to one of the two properties at issue
here, that determination has already been fully adjudicated by

21

this court and the Ninth Circuit.  United States v. 1,402 Acres of Land, No. 05-15858 (9th Cir. Oct. 5, 2006).  In the other instance, the prior property owners willingly sold their property to the United States and retained no property interest.  Thus any claimed interest in this litigation by the prior property owners would be frivolous and a district court is not required to find a party to be necessary based on patently frivolous claims.  Shermoen v. United States, 982 F.2d at 1318.

Second, in this case, "complete relief" can be established without the joinder of the prior landowners.  As this Court has ruled – which ruling has already been affirmed by the Ninth Circuit – "condemnation may proceed without judicial interference" with respect to property required by the Army to carry out military construction projects.  United States v. 1,402 Acres of Land, No. 05-15858 (9th Cir. Oct. 5, 2006) at 4.  The Ninth Circuit clearly ruled that the only relief still to be considered by this Court is "the use to which the land may be put . . . pending compliance with NEPA."  Id.  Given the limited scope of relief that is still at play in this litigation, the only remaining necessary party is the current owner of the property, the United States Army.

Moreover the Ninth Circuit has consistently held that "[a]s a general rule, 'the federal government is the only proper defendant in an action to compel compliance with NEPA.'"

22

<u>Kootenai Tribe of Idaho v. Veneman,</u> 313 F.3d 1094, 1108 (9th Cir. 2002) (quoting <u>Wetlands Action Network v. United States Army Corps of Eng'rs,</u> 222 F.3d 1105, 1114 (9th Cir.2000)); <u>in accord</u>, <u>Forest Conservation Council v. United States Forest Service</u>, 66 F.3d 1489, 1499 n.11 (9th Cir. 1995). "[B]ecause NEPA requires action only by the government, only the government can be liable under NEPA. Because a private party can not violate NEPA, it can not be a defendant in a NEPA compliance action." <u>Id.</u> (quotations and citations omitted). This rule holds true even where the private party holds an interest in the property such as a permit or contract that provides the proposed intervenor with the right to use the property. <u>Wetlands</u>, 222 F.3d at 1114; <u>see also</u> <u>Churchill County v. Babbitt,</u> 150 F.3d 1072, 1083 (9th Cir. 1998).

As the Ninth Circuit has consistently held, this Court simply does not require the participation of individuals beyond the government in a NEPA compliance case.  In this case, the prior property owners are not needed to determine whether and to what extent an injunction should issue with respect to how the property held by the Army may be used pending a Supplemental Environmental Impact Statement.  The prior landowners are not participating in the effort to transform the 2nd Brigade, have no responsibility to participate in the effort to transform the 2nd Brigade, and, indeed, have no authority to participate in the effort to transform the 2nd Brigade.  These individuals simply

have no interest in the projects that are subject to NEPA and which Plaintiffs have sought to enjoin in the instant case.

Plaintiffs rely exclusively on Kettle Range Conservation Group v. United States Bureau Of Land Mgm't, 150 F.3d 1083 (9th Cir. 1998) in support of their argument that the prior landowners are necessary parties to this litigation. In that case, the court held that the Bureau of Land Management had transferred forest land to timber companies, which were seeking to commercially harvest the land, despite defective NEPA analysis of the land exchange. As a result of the NEPA violation, Plaintiffs sought injunctive relief that included the rescission of the sales contracts that transferred federal land to the timber companies. Based upon these unique facts, the court held that the current owners of the property – the timber companies – were necessary parties given the requested rescission of their sales contracts.

In the instant case, the Army does not dispute that the current owner of the relevant property is a necessary party. Since the Army is the current owner and the issue before the Court is how, if at all, the Army's use of the property may be enjoined, the Court has all of the necessary parties before it.

At its heart, the holding in Kettle Range was simply a reiteration of the long-standing rule that a party is "necessary" if "the district court could not grant complete relief without

24

'impair[ing] or imped[ing]' their interests." Id. at 1086.  In

the instant case, given that the property is owned by the Army,

this Court can issue all necessary injunctive relief regarding

the future transformation of the 2nd brigade to a SBCT without

the new parties whom Plaintiffs are attempting to add to this

litigation.

> D.   Plaintiffs' Motion to Amend the Complaint,
>      Including the Amendment to Join New Parties, Is
>      Untimely, Is Part of a Delay Tactic, and Will
>      Prejudice the Army

Even if the claim that Plaintiffs seek to add to the

complaint was proper, the delay in seeking the amendment along

with the attendant prejudice to the Army, support the denial of

the Plaintiffs' motion under the standard test applied in this

Circuit for the amendment of a complaint.  In determining whether

to grant a litigant leave to amend a complaint, the Ninth Circuit

has instructed district courts to consider undue delay, bad faith

or dilatory motive on the part of the movant, and undue prejudice

to the party opposing the amendment.  Parker v. Joe Lujan

Enterprises, 848 F.2d 118, 120 (9th Cir. 1988).  Similar

standards have been applied by the Ninth Circuit in sustaining

district court denials of joinder.[10]  See e.g., United States v.

_____

    [10]/The requirements for nonparty intervention under Rule 24
are similar to the requirements for the joinder of a nonparty by
a named party under Rule 19.  See 1966 Advisory Committee Notes
to Fed. R. Civ. P. 24.

State of Oregon, 913 F.3d 576 (9th Cir. 1990) (in considering timeliness of motions to intervene, court considers stage of proceeding, prejudice to other parties, and reason for and length of delay).  In the instant case, all of these factors weigh heavily against amendment of the Complaint at this late date.

First, Plaintiffs' delay in requesting the new relief is excessive.  This case was filed over two years ago on August 17, 2004.  Plaintiffs' attempt to amend the complaint comes after the United States answered the complaint, after briefing and argument on a motion for a preliminary injunction, after submission of cross-motions for summary judgment, and even after a final decision of this court and a decision on appeal by the Ninth Circuit.  United States v. State of Washington, 86 F.3d 1499 (9th Cir. 1996) (upholding district court denial of leave to intervene as of right where motion was filed three months after the district court had rendered its decision).

Moreover, there is no excuse for this delay.  Plaintiffs new about the acquisitions long before now.  For example, the condemnation of the Campbell property, in which Plaintiffs intervened, has been ongoing since 2004.  United States v. 1,402 Acres of Land, No. 05-15858 (9th Cir. Oct. 5, 2006).  Given the exceedingly lengthy and unnecessary delay in attempting to add the relief sought, Plaintiffs' motion should be denied.

Second, it is clear that Plaintiffs now seek to add remedies

and additional parties at this stage of the litigation purely in an attempt to delay the interim injunction proceedings while a favorable temporary injunction is in place.  Plaintiffs suggest that they are seeking leave to add the parties quickly so that the newly proposed parties can participate in the expedited consideration of an interim injunction.  Plaintiffs are well aware, however, that no party added to the case at this point could be prepared to proceed with briefing and argument in less than a week.

Moreover, why did Plaintiffs not apprise the Court and the Army of its intentions to amend the Complaint to seek new relief and to join new parties at the hearing with Judge Ezra on November 6, 2006, when the Court was considering the schedule for the interim injunction proceedings?  There can only be one reason for the late attempt to add a new type of relief and to join additional parties, to fail to apprise the Court of the intention to seek amendment of the complaint, and to simultaneously attempt to interject lengthy discovery into this litigation.  Plaintiffs have embarked upon a concerted effort to delay the Court's consideration of an interim injunction in order to keep the current temporary injunction in place as long as possible.  The Ninth Circuit has been clear that such dilatory behavior should not be countenanced.  See State of Washington, 86 F.3d at 1499; Conner v. Burford, 848 F.2d 1441, 1460 n. 47.

Finally, and most importantly, the amendment and joinder of additional parties at this late date would severely prejudice the Army. Clearly, the Court would be required to provide the new parties sufficient time to prepare and present their arguments in the interim injunction proceedings. As the Court is fully aware, such delay, even if it amounts to mere days, is highly prejudicial to the Army. As this Court has found, "delaying or disrupting the conversion of the 2nd Brigade to a SBCT will significantly impact the sequence of the Army transformation and reduce the overall effectiveness of Army forces currently fighting the Global War on Terrorism." See Court's November 5, 2004 Order at 17. As this Court is aware, the critical transformation has been halted since the Ninth Circuit's entry of an interim injunction on October 27, 2006. The "National security concerns in general, as well as the distinct harm the Army would incur in the Global War on Terrorism" as the result of these delays in the preparation of the 2nd Brigade as an SBCT "are both demonstrative and severe." See Court's May 19, 2005 Order at 3-4.

Even the Ninth Circuit has recognized the substantial harm that could ensue if this Court does not expeditiously resolve the issue of an interim injunction. In issuing it temporary injunction and remanding the consideration of an interim injunction to this Court, the Ninth Circuit cautioned that

"[s]ince this matter is very time-sensitive, the district court shall proceed expeditiously." Thus, both this Court and the Ninth Circuit recognized the urgency of this matter, and have effectively concluded that delay in the proceedings, like late amendment of the Complaint, would be prejudicial and manifestly unfair to the Army.

Prejudice to the opposing party is the "touchstone" in determining whether a party should be granted permission to amend their complaint. Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363, 368 (5th Cir. 2001); in accord Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973). As has been demonstrated, any delay occasioned by the late addition of new parties to this case will inflict undue and unnecessary harm on the Army. As such, the Court should deny Plaintiffs' untimely request to join new parties.

IV. **CONCLUSION**

Because (1) this Court lacks jurisdiction to hear the instant motion, (2) the QTA precludes the exercise of this Court's jurisdiction, (3) amendment of the complaint would be futile in this case, and (4) the delay attendant to amendment of the Complaint and joinder of additional parties would severely prejudice the United States, the Army respectfully requests that this Court deny Plaintiffs' Motion to File Second Amended Complaint and to Join Necessary Parties.

Respectfully submitted this 14th day of November 2006,

       EDWARD H. KUBO, JR. (2499)
       United States Attorney
       District of Hawai`I

       /s/ Thomas Helper

       _____

       HARRY YEE (3790)
       THOMAS HELPER (5676)
       Assistant United States Attorney
       Room 6-100, PJKK Federal Building
       300 Ala Moana Boulevard
       Honolulu, Hawai`I  96850
       Telephone: (808) 541-2850
       Facsimile: (808) 541-3752
       Email: harry.yee@usdoj.gov

       SUE ELLEN WOOLDRIDGE
       Assistant Attorney General

       BARRY A.  WEINER
       JAMES D. GETTE
       Trial Attorneys
       General Litigation Section
       Environment & Natural Resources
       Division
       U.S. Department of Justice
       P.O. Box 663
       Washington, D.C.  20044-0663
       Email: Barry.Weiner@usdoj.gov
       Telephone: 202-305-0469
       Facsimile: 202-305-0274

Of Counsel:
Robert M. Lewis
Senior Trial Attorney
Army Environmental Law Division
901 North Stuart Street, Suite 400
Arlington, VA 22203
Telephone:  (703) 696-1567
Facsimile:  (703) 696-2940

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| 'ILIO'ULAOKALANI COALITION, a Hawai'i nonprofit corporation; NA 'IMI PONO, a Hawai'i unincorporated association; and KIPUKA, a Hawai'i unincorporated association,<br><br>       Plaintiffs,<br><br>  vs.<br><br>DONALD H. RUMSFELD, Secretary of Defense; and FRANCIS J. HARVEY, Secretary of the United States Department of the Army,<br><br>       Defendants. | CIVIL NO. 04-00502 DAE-BMK<br><br>CERTIFICATE OF SERVICE |

<u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

    Served Electronically through CM/ECF:

        David L. Henkin     dhenkin@earthjustice.org

        Isaac H. Moriwake   imoriwake@earthjustice.org

          Attorneys for Plaintiffs

    DATED:  November 14, 2006, at Honolulu, Hawaii.

                /s/ Jan Yoneda

                _____