UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 27 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ʻĪLIOʻULAOKALANI COALITION, a Hawaii nonprofit corporation; NĀ ʻIMI PONO, a Hawaii unincorporated association; KĪPUKA, a Hawaii unincorporated association,<br><br>Plaintiffs - Appellants,<br><br>v.<br><br>DONALD H. RUMSFELD, Secretary of Defense; et al.,<br><br>Defendants - Appellees,<br><br>and<br><br>LES BROWNLEE, Acting Secretary of the United States Department of the Army,<br><br>Defendant. | No. 05-15915<br><br>D.C. No. CV-04-00502-DAE<br>District of Hawaii,<br>Honolulu<br><br>Addendum to Order Granting Temporary Injunction and Remanding |

Before: B. FLETCHER and THOMPSON, Circuit Judges.

In light of the dissent, the majority feels it incumbent upon it to articulate the reasons it finds the dissent's analysis wrong on both the law and the facts. The dissent loses sight of the fact that the Army has violated NEPA and must come into compliance *before* proceeding with its plan to transform the 2nd Brigade into

**EXHIBIT 1**

a Stryker unit at its Hawaii base. We should not permit Defendants to render meaningless our holding that they should have considered reasonable alternatives to transformation in Hawaii by allowing them to continue with their implementation plan pending an interim injunction. No one disagrees that NEPA does not mandate particular substantive results, and the majority has not suggested otherwise. *Cf.* Dissenting Op. at 3-4. What NEPA does require is that reasonable alternatives be considered *before environmentally damaging projects are undertaken. Nat'l Parks and Conservation Ass'n v. Babbitt*, 241 F.3d 722, 737 (9th Cir. 2001). We have no way of predicting what the result of the Army's supplemental SEIS will be – nor should we guess the outcome in advance.

The dissent's argument that this court owes deference to the district court's fact-finding of irreparable injury to the Army and that we must find that the district court has abused its discretion is specious. *See* Dissenting Op. at 2-3. This court does not owe the district court's November 5, 2004 and May 19, 2005 findings of fact any deference, because we are not currently in the posture of reviewing the district court's denial of plaintiffs' preliminary injunction. *Cf. Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006) (reviewing district court's denial of preliminary injunction under abuse of discretion standard).

2

The Plaintiffs have won on the merits of their NEPA claim. This is the fundamental difference between the preliminary injunction standard the district court applied and the standard we apply now. Now, we balance the equities and determine whether an injunction would be in the public interest. *See High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641-43 (9th Cir. 2004). By contrast, the district court denied Plaintiffs' *preliminary* injunction in large part because it determined that they did not have a strong likelihood of success on the merits. *See* November 5, 2004 Order at 11. Moreover, the Army has itself conceded that most of its activities are not critical to national security, and it has not provided convincing reasons why even the "critical" activities are "critical."[1] *See* Pls.' Reply Br. at 8-11.

*Harm to Cultural and Environmental Resources.* The Plaintiffs have shown irreparable harm. First, "[i]n the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of a major federal action." *High Sierra Hikers Ass'n*, 390 F.3d at 642. Thus, the very fact that the Army failed to consider reasonable alternatives has caused irreparable injury. Second, "[i]f

---

[1] For example, while the Army asserts that "all of its equipment and facilities" are "critical to national security," Defs.-Appellees' Opp. at 14, it also concedes that many of their projects, such as the imminent construction of the BAX at Schofield Barracks, are not "critical," *id.* at 15.

3

environmental injury is *sufficiently likely*, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Id.* (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (emphasis added)). This is because "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Nat'l Parks and Conservation Ass'n*, 241 F.3d at 737.

Plaintiffs have clearly shown that environmental and cultural injury are *sufficiently likely*. *See* Pls.' Mot. at 11-16 ("[t]he Army has conceded that Stryker activities threaten hundreds of Native Hawaiian cultural sites, . . . would destroy endemic plants and animals protected under the Endangered Species Act [] and degrade the habitat on which these species rely for their continued survival and eventual recovery."); Pls.' Reply Br. at 4-8. The threatened sites have deep cultural and religious significance to the native Hawaiians, *see* Abad Dec., Tengan Dec., and the Army's mitigation measures have serious limitations. *See, e.g.,* Abad Dec. at 6-7 (describing how the Programmatic Agreement "would . . . focus on how the burials are excavated and relocated, not whether they should remain at rest, in place"); Quitevis Dec. at 5-13, Abad Dec. at 13-14 (noting that the Army has not complied with the PA and sites can only be avoided if identified ahead of time). We deplore the dissent's denigration of Plaintiffs' claims that native

4

Hawaiians "suffer spiritually, physically, culturally, and emotionally each time a burial or cultural site is desecrated." Tengan Dec. at ¶ 11; *see* Dissenting Op. at 5-6.

"Irreparable" means not able to be repaired or reversed. If the Army digs up Native Hawaiian ancestors' bones, there is nothing that can be done to reverse that harm. If the Army's activities cause a wildfire that results in the spread of nonnative invasive species, damages ecosystems, and kills native Hawaiian plants and animals that do not rebound from wildfires,[2] that harm is "irreparable." A "careful reading of the record," Dissenting Op. 7-8, reveals that "Cold War relics" are not the only resources that will be threatened by the Army's Stryker activities. *See, e.g.*, Final SEIS at AR 0051516-19, 0051524-28, 0051725-27, 0051744-55, 0051756-57, 0052020-21, 0052029-43, 0052237-56 (describing hundreds of federally listed species and other endemic plants and animals, cultural and archeological sites, burials, ecosystems, and thousands of acres of habitat that will be destroyed, lost, or irreparably damaged as a result of Stryker activities).

---

[2] *See Makua v. Rumsfeld*, 163 F. Supp. 2d 1202, 1208 (D. Haw. 2001) ("If fire consumes native vegetation, especially trees that provide overstory shade, alien weeds can more easily take over, extending the grass boundary and increasing the risk to endangered species. Native Hawaiian plants are not known to reclaim areas devastated by fire.").

5

*Harm to the Army and National Security.* "There is no national defense exception to NEPA." *No GWEN Alliance of Lane County, Inc. v. Aldridge*, 855 F.2d 1380, 1384 (9th Cir. 1988) (internal quotation marks omitted). There is no evidence that the entry of our temporary injunction pending the short amount of time needed to determine the scope of an interim injunction would irreparably harm the Army or national security. The Army has (1) conceded that many of its activities are not "critical," (2) claimed previously that certain of its Stryker transformation-related activities must proceed on-schedule, and yet "[t]he Army fails to explain why th[e] half-year delay [in construction of the Schofield BAX] – which allegedly posed such dire ramifications – did not, when it came to pass, have any adverse consequences. Instead, the Army simply . . . assert[s] once again that Stryker conversion must be completed on schedule (the newly minted one, that is), or else." Pls. Reply Br. at 11.

*November 22, 2004 Stipulated Order.* While it is true that Plaintiffs specifically base their emergency motion on the November 1, 2006 groundbreaking for the BAX at Schofield Barracks, they also base their request for an injunction on the November 22, 2004 Stipulated Order, in which the Army *agreed* that it would cease its activities pending finding of NEPA violation by the court. Paragraph 4 of the Stipulated Order states:

6

> *If the Court finds that defendants violated NEPA, defendants shall refrain from implementing, executing or proceeding with the following activities associated with the transformation of the 2nd Brigade of the 25th Infantry Division (Light) to an SBCT in Hawai'i: grading, grubbing, other ground disturbance, construction, land acquisition, project design, geotechnical testing, unexploded ordnance clearance, contract award, and SBCT-specific training (as defined in paragraph 5). Defendants shall refrain from implementing, executing or proceeding with these transformation-related activities until the Court has ruled on whether a permanent injunction should issue and, if so, its scope.*

Pls.' Ex. 4 at 4 (emphasis added). This court has ruled that Defendants violated NEPA; thus, they should be held to the Stipulated Order. Under the plain language of the Stipulated Order, the word "Court" is not limited to the district court, but includes this court, and the Army's cramped interpretation of "Court" as "district court" should be rejected because the "agreement should be construed as a whole and its meaning determined from the entire context." *Maui Land and Pineapple Co., Inc. v. Dillingham Corp.*, 674 P.2d 390, 395 (Haw. 1984).

It makes no sense to interpret the Stipulated Order as requiring Defendants to cease its transformation-related activities if the district court ruled that the Army violated NEPA but not if this court so ruled. The purpose of the Stipulated Order was to address Plaintiffs' interest in maintaining the status quo while the litigation was pending as well as the Army's interest in deferring remedy-related discovery.

*See* Pls.' Reply Br. at 2. The dissent asserts that the Army could have entered into an agreement to cease its activities pending appeal, but that it is significant that it did not. Dissenting Op. at 10. Of course the Army would not enter into an agreement to cease its activities *if no court found that it violated NEPA*. Thus, it simply does not follow that, as the dissent maintains, "[g]iven that they did not, the Army should not be held to have agreed to cease transformation activities if a panel of this court – or any other court, for that matter – were . . . to find that the Army had violated NEPA." *Id.* at 10.

The dissent argues that even if a temporary injunction were to issue, it should include only activities that require excavation of the ground since Plaintiffs mention only cultural sites in its Certificate of Counsel. *Id.* at 2. But it is not true that the only activities that would harm cultural resources are ones that disturb the ground – for example, land acquisition or Stryker combat vehicle training. The Plaintiffs have also shown that irreparable harm to environmental resources is sufficiently likely, such as the spread of wildfire and destruction of habitat, which would be caused by non-ground-disturbing activities. Pls.' Mot. at 11-17; Pls.' Reply Br. at 5-8. The Army uses technical terms to describe activities that sound harmless but in actuality mask potentially harmful activity. *See* Quitevis Dec. at ¶ 13. Plaintiffs included specific activities in the Joint Stipulation because they

8

would harm cultural and environmental resources; the Army agreed to refrain from executing these activities because the harm that they risked was significant.

Reading the dissent, one would think that we have issued a permanent injunction. We have not. We have not even issued an interim injunction pending a ruling on a permanent injunction, which is what the Plaintiffs asked for. Rather, we have entered a temporary injunction pending the district court's expeditious resolution of the interim injunction. We have acknowledged that properly balancing the parties' equities is a fact-intensive inquiry best undertaken by the district court, and we have remanded to the district court to enter and determine the scope of an interim injunction.