IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 05-15915

'ĪLIO'ULAOKALANI COALITION; NĀ 'IMI PONO; and KĪPUKA,

Plaintiffs-Appellants,

v.

DONALD H. RUMSFELD, Secretary of Defense; and FRANCIS J. HARVEY, Secretary of the United States Department of the Army,

Defendants-Appellees.

On Appeal From the United States District Court for the District of Hawaii
(Civil No. 04-00502 DAE BMK)

**AMICUS CURIAE BRIEF OF THE OFFICE OF HAWAIIAN AFFAIRS IN SUPPORT OF 'ĪLIO'ULAOKALANI COALITION, NĀ 'IMI PONO AND KĪPUKA'S EMERGENCY MOTION UNDER CIRCUIT RULE 27-3(b)**

Attorneys for *Amicus Curiae*

PAUL, JOHNSON, PARK & NILES

SHERYL L. NICHOLSON #2998-0
ASB Twr., 1001 Bishop St., Ste. 1300
Honolulu, Hawai'i 96813
Telephone: (808) 524-1212
Facsimile: (808) 528-1654

CRUISE & YOST

COLIN A. YOST #7339-0
49 Hotel Street, Suite 305
Honolulu, Hawai'i 96813
Telephone: (808) 275-1200
Facsimile: (808) 275-8808

# EXHIBIT 7

# TABLE OF CONTENTS

|      |      |                                                                                                                 | Page |
|------|------|-----------------------------------------------------------------------------------------------------------------|------|
| I.   |      | INTRODUCTION                                                                                                    | 1    |
| II.  |      | STATEMENT OF INTEREST                                                                                           | 2    |
| III. |      | FACTUAL BACKGROUND                                                                                              | 3    |
| IV.  |      | ARGUMENT                                                                                                        | 6    |
|      | A.   | Temporary Injunctive Relief is Essential and Proper                                                             | 6    |
|      |      | 1. Continuing irreparable harm to cultural and natural resources is a certainty unless injunctive relief is granted | 6    |
|      |      | 2. A balance of harm analysis strongly favors imposition of injunctive relief against the Army                  | 7    |
|      | B.   | Nature and Scope of Injunctive Relief Requested                                                                 | 10   |
| V.   |      | CONCLUSION                                                                                                      | 10   |

# TABLE OF AUTHORITIES

**Cases**            Page(s)

*NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1568 (7th Cir. 1996) ......... 7

*'Ilio'ulaokalani Coalition, et al. v. Rumsfeld* 2006 WL 2838058 ........ 8, 9

*Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002) ................... 9

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 596 (3rd Cir. 2002) ................... 9

**Statutes**

Hawaii Revised Statutes, Section 10-3(1)-(4)................................. 2

I.  **INTRODUCTION**

The Office of Hawaiian Affairs ("OHA") respectfully submits this brief as *amicus curiae* in support of the emergency motion for injunctive relief filed by the 'Ilio'ulaokalani Coalition, Nā 'Imi Pono and Kīpuka (collectively, "the Hawaiian Groups").

In its opposition to the Hawaiian Groups' motion, the United States Army ("Army") promises to comply "fully" with the National Environmental Policy Act ("NEPA") and this Court's order, but then asserts that it will proceed without delay with Stryker Brigade construction projects which will permanently impact cultural and natural resources prior to completing the reasonable alternative analysis required by NEPA (and this Court) – an analysis which may conclude that no Stryker Brigade construction should occur in Hawai'i.  The Army's position is nonsensical.

Temporary injunctive relief is necessary, because the Army has demonstrated a chronic unwillingness to voluntarily comply with the law or its own voluntary agreements, including the January 2004 Programmatic Agreement (*see* AR 0053069-0053092) for compliance with the National Historic Preservation Act ("NHPA"), the Stipulated Order filed in the District Court of Hawai'i and the letter and spirit of this Court's order.  Put bluntly, OHA believes that the Army will not

1

comply with the law unless it is compelled to do so, and OHA therefore urges the Court to grant the Hawaiian Groups' emergency motion prior to the Army's construction commencement date of November 1, 2006.

## II. STATEMENT OF INTEREST

OHA is the official representative agency for 'ōiwi Hawai'i (indigenous Hawaiians), established by the State of Hawai'i in 1978. Under Section 10-3(1) – (4) of the Hawai'i Revised Statutes ("HRS"), the purposes of OHA include, among other things:

> The betterment of conditions of [indigenous] Hawaiians;
>
> Serving as the principal public agency in [Hawai'i] responsible for the performance, development, and coordination of programs and activities relating to [indigenous] Hawaiians . . .;
>
> Assessing the policies and practices of other agencies impacting on [indigenous] Hawaiians . . . , and conducting advocacy efforts for [indigenous] Hawaiians . . . [.]

OHA invests significant resources in programs, services and advocacy relating to the protection of cultural resources and the rights of indigenous Hawaiians to engage in traditional cultural practices. OHA is also a concurring (with reservations) signatory to the Programmatic Agreement entered into by the Army to ensure compliance with the NHPA. The issues raised in the emergency motion before the Court directly impact OHA's beneficiaries, and OHA submits this

brief as *amicus curiae* to provide its unique perspective and knowledge relevant to this matter to the Court for its consideration.

### III. FACTUAL BACKGROUND

The declarations of Leimaile Quitevis, Kēhaunani Cachola Abad, Ph.D., and Ty P. Kawika Tengan, Ph.D. submitted by the Hawaiian Groups in support of their emergency motion, along with their motion's many references to the evidentiary record on appeal, provide a clear description of the irreparable harm inherent in the destruction of irreplaceable cultural and natural resources that will occur unless the Army is compelled to comply with the letter and the spirit of NEPA and this Court's order. While it is not necessary to repeat all of the relevant facts discussed by the Hawaiian Groups, OHA believes it is important to emphasize certain aspects of the record and offer some additional details relevant to the Court's deliberations.

First, OHA wholeheartedly agrees with the assessment in the declaration of Cultural Monitor Ms. Quitevis that the Army has failed to comply with the Programmatic Agreement, and that irreparable damage to cultural resources has already taken place and will inevitably continue to occur unless a court order forces the Army to change its inadequate survey and mitigation practices. *See generally* Declaration of Lemaile Quitevis in support of the Hawaiian Groups' motion ("Quitevis Dec."). When confronted with its violations of the Programmatic

3

Agreement, the Army has been slow to respond or has ignored the problems altogether. *See* Declaration of Kai Markell ("Markell Dec.") at ¶ 5; *See generally* Quitevis Dec.

The example of the Army's treatment of Hale'au'au Heiau is one of the most disturbing; the core area of this sacred site is more than 30 feet in diameter and constructed from large boulders and stones, yet Army archeologists failed to notice it for several years despite the Army's construction of targets close to the heiau. *See* Markell Dec. at ¶ 6; Quitevis Dec., at ¶ 10. Once Cultural Monitors were allowed to survey the area, the heiau was discovered relatively quickly, but even now that its existence is acknowledged, it remains in the line of fire and the construction of several new targets nearby is planned. *See* Quitevis Dec., at ¶ 13. Further, in or around July 2006, the Army carelessly desecrated the heiau by bulldozing through the Army's own barrier designed to protect the heiau, thereby unearthing and destroying several large stones which were part of the larger heiau complex and infused with the *mana* of the sacred place. Id.; *See also* Letter from Clyde W. Nāmu'o, OHA Administrator, to Colonel Howard Killian, Garrison Commander, dated October 5, 2006, attached hereto as Exhibit "A," at pages 13-15.

It is not possible to overstate the cultural and religious significance of Hale'au'au Heiau and the surrounding area now scheduled to be irreparably

4

damaged by the inadequately planned construction of Stryker Brigade facilities and training grounds. As Professor Tengan and Dr. Abad eloquently explain in their declarations in support of the Hawaiian Groups' motion, the relationship between indigenous Hawaiian people, their gods and Hawaiian land is familial; ancestral burial grounds and sites of worship are not inanimate but are very much alive with spiritual energy ("*mana*") and can be permanently harmed by physical alteration. Abad Dec. at ¶¶ 4-5; Tengan Dec. at ¶¶ 5-6.

The *mana* in the vicinity of the proposed Stryker training is exceptionally strong and vital to indigenous Hawaiians. The Lihu'e area, which includes the land upon which Stryker activity would occur, is associated with legendary Hawaiian royalty and is close to one of only two known Royal Birthing Centers in the Hawaiian islands (the other being in Wailua on the island of Kaua'i), where the children of ali'i (the chiefs and nobles of Hawaiian society) were born. Markell Dec. at ¶ 7. Because of its nature as a Royal Birthing Center, the area is also known as the "piko" (Hawaiian word for navel) or life and *mana* sustaining source of the island of Oahu. Id. The extensive monitoring and mitigation procedures contained in the Programmatic Agreement were intended to address and preserve the unusually sensitive and revered character of this region. Regrettably, the record

demonstrates that the Army has repeatedly refused to comply with the terms of that Agreement.

## IV. ARGUMENT

### A. Temporary Injunctive Relief Is Essential And Proper

#### 1. Continuing irreparable harm to cultural and natural resources is a certainty unless injunctive relief is granted

The record before the Court demonstrates that cultural and natural resources have already been irreparably harmed and that these resources will suffer additional irreparable harm if the Army is allowed to proceed in a manner of its own choosing. Despite a long history of communications in writing and in person with the Army, OHA has only seen the list of concerns and damaging practices increase with time, and the Army has not responded to OHA's most recent request for information and good faith compliance by the Army with applicable law.[1] In its opposition to the Hawaiian Groups' motion, the Army wrongly claims that it has not damaged any cultural resources in the area. *See* Opposition at p. 19. To the contrary, the Cultural Monitors have reported at least the following specific instances of cultural resource damage:

- substantial damage to the Hale'au'au Heiau site by bulldozers and the substantial likelihood of future damage due to nearby

---

[1] *See* Exhibit "A," hereto; Markell Dec. at ¶ 8.

6

target structures (Quitevis Dec. at ¶ 13; OHA 10/5/06 letter, Exhibit "A" hereto at pp. 13-15);

- the displacement and damage of petroglyphs (Quitevis Dec. at ¶ 13; Exhibit "A" hereto at p. 11); and

- the filling of a streambed and installation of a culvert in areas known to contain cultural sites (Id.).

In addition, Cultural Monitors have reported numerous instances of intrusive, earth moving activities in areas which likely contain cultural resources and which have not been adequately surveyed. Quitevis Dec. at ¶ 13; Exhibit "A" hereto at pp. 12, 14, 18-21.

Given the Army's past conduct and the well documented inadequacy of their cultural and natural resource survey and mitigation efforts, the evidence of potential continuing irreparable harm to the interests of the Hawaiian Groups and OHA's beneficiaries cannot be seriously disputed.

2. A balance of harm analysis strongly favors imposition of injunctive relief against the Army

Under the federal courts' balance of harm analysis applied to requests for injunctive relief, an important factor is the movant's ultimate likelihood of success on the merits. See NLRB v. Electro-Voice, Inc., 83 F.3d 1559, 1568 (7th Cir. 1996)

7

(stating: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor."). In this matter, the merits have already been decided in the Hawaiian Groups' favor – this Court found the Army to be in violation of NEPA. The scale is therefore heavily weighted toward the Hawaiian Groups' request from the outset, the Army's opposition to the motion is insufficient to counterbalance the interests of the Hawaiian Groups.

At first glance, the Army's lengthy discussion of national security interests and the alleged harm they represent appears impressive, but in substance, the presentation is severely undermined by the Army's express assurance that it "remains committed to complying fully with NEPA and this Court's order[.]" *See* Opposition at p. 2. From the face of this Court's October 5, 2006 decision, it is evident that any true commitment to NEPA compliance requires the immediate suspension of the Stryker Brigade transformation pending the good faith preparation of a supplemental SEIS. As this Court stated at the close of its opinion: "[t]he Army's mistake here was to commit to the transformation of the 2nd Brigade in Hawaii without considering alternatives in either the PEIS or the SEIS." Ilio'ulaokalani Coalition, et al. v. Rumsfeld No. 05-15915, slip op. at 41 (9th Cir. Oct. 5, 2006). Now that this Court as apprised the Army of its "mistake," the Army cannot credibly contend that it may fully comply with NEPA by continuing to make

8

the very same mistake of implementing the Stryker transformation of the 2nd Brigade in Hawai'i without first considering the alternatives to that transformation. Such an approach is a direct violation of this Court's order, and the Army's adoption of this incongruous position is further cause to compel the Army's compliance with NEPA.

Another basis for deciding the balance of harms in the Hawaiian Groups' favor is the "self-inflicted nature of [the Army's alleged] harm," which "weighs in favor of granting preliminary injunctive relief." *See* Davis v. Mineta, 302 F.3d 1104, 1116 (10th Cir. 2002); *see also* Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 596 (3rd Cir. 2002). As this Court pointed out, the Army knew from its own personnel of its obligation to undertake a reasonable alternatives analysis in order to comply with NEPA, and the Army ignored the advice. Ilio'ulaokalani Coalition, No. 05-15915, slip op. at 32-35. If the Army had complied with the law in the first instance, it would not be in its present position. As a matter of law, the determination of whether reasonable alternatives exist can only be decided by a good faith SEIS – a process far more rigorous, comprehensive and objective than the Army's hastily constructed argument on pages 11-14 of its opposition that no viable alternatives to Hawai'i exist.

In sum, the balance of harm decisively favors the Hawaiian Groups, and temporary injunctive relief should issue.

    B.    Nature And Scope Of Injunctive Relief Requested

So long as the Army remains in violation of NEPA it should be enjoined from engaging in any Stryker activity. At the appropriate time, OHA is ready to assist the Army with the design and implementation of viable cultural and natural resource protection measures, including the provision of global positioning system ("GPS") equipment to Cultural Monitors, donating training and advisory services by OHA archeologists and assisting with the preparation of a comprehensive traditional cultural properties study and ethnographic study of the affected area.

## V.   CONCLUSION

For the reasons stated above, OHA requests that this Court grant the Hawaiian Groups' emergency motion for temporary injunctive relief.

Dated: October 25, 2006

Respectfully submitted,

SHERYL L. NICHOLSON
Paul Johnson Park & Niles
COLIN A. YOST
Cruise & Yost
*Attorneys for Amicus Curiae*
*The Office of Hawaiian Affairs*

10