IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ILIOULAOKALANI COALITION, et al., Plaintiffs, <br><br> v. <br><br> DONALD H. RUMSFELD, et al., <br><br> Defendants | Civil No. 05-0015915 <br><br> DECLARATION OF DR. LAURIE LUCKING |

I, Dr. Laurie Lucking, hereby declare that:

1.    I am the Cultural Resources Manager for the 25th Infantry Division (Light) and U.S. Army, Hawaii, Schofield Barracks, Oahu, Hawaii. I have served in this position since 14 September 1995. I received my PhD in 1984 from the University of Minnesota. I have 33 years of experience as an anthropologist/archeologist, including 32 years of working with and studying Pacific cultures, and have been employed by the U.S. government in that role since 1988.

2.    The Army takes its responsibility to preserve important historic, cultural, and natural aspects of our national heritage very seriously. In implementing this responsibility, the Army consults closely with state, local, and national advisory councils on the cultural effects of any proposed action and responsibly manages any cultural resources under its control in accordance with the National Historic Preservation Act, sections 106 and 110, NAGPRA and the National Environmental Policy Act. I and other Army environmental specialists such as archeologists and biologists are personally and actively involved from the beginning of the design process for all projects. We ensure

1

**EXHIBIT 8**

Oahu during the EIS process and members of the Board formed the core of the Oahu cultural monitoring group. A Cultural Advisory Board has been in place at Pohakuloa for the past four years. The claim that a lack of paid time for cultural monitors to do community liaison work has hampered the community response is problematic. If the liaison work was important it could have been done without pay while the administrative responsibilities were sorted out under the cultural monitor contract.

7. In order to ensure maximum protection of cultural sites and individual artifacts, the PA also required the development of a Cultural Monitoring program to facilitate observations and recommendations by Native Hawaiians regarding proposed developments for the SBCT projects. Cultural Monitors are used to monitor cultural sites and project areas during pre-construction and construction activities. Cultural Monitors are individuals who are knowledgeable about current and past Native Hawaiian activities in a particular area and represent the interests of other individuals, families, and groups. A majority of the Schofield Barracks Cultural Monitors are members of the Wahiawa Hawaiian Civic Club, many of whom have spent years studying the history of this area to promote retention of the Hawaiian culture. Their participation in this program is invaluable due to their knowledge of properties that have traditional religious and cultural importance. There are currently 20 cultural monitors for the Island of Oahu and 10 for the Island of Hawaii. Additional monitors are added to the list as the SBCT projects develop. The cultural monitoring program has worked, or is working, effectively on numerous projects covered by the PA. These include the SB BAX, Urban Assault Course, CACTF, Qualification Training Range #1, Qualification Training Range #2, the Multiple Deployment Facility, the SBCT Motorpool and associated warehouse area at

Schofield Barracks, the Tactical Vehicle Wash at Schofield, and UXO clearance at the Battle Area Complex at Pohakuloa Training Area.

8. Cultural Monitors are supposed to report daily and weekly on their observations of UXO clearance, construction, and other earth-disturbing activities and contribute to UXO detonation protection plans and long-term site management plans for archaeological and cultural sites. This information is to be given to the archaeological monitors, the Garrison staff and the Corps of Engineers to aid in project compliance and alert them immediately to the identification of new concerns in the projects areas. It is also supposed to be shared with other community members to solicit additional comment. Notes, videotape, and photography from observations and commentary are to be compiled separately from the cultural monitoring report and will be withheld from public release and maintained as confidential. The cultural monitors stopped sending written reports over 18 months ago citing a lack of administrative time in their contracts to write up notes. The Army has recently awarded a separate contract to cover these cultural monitor responsibilities. Their concerns have continued to be transmitted through emails and meetings but lack the specificity of the daily and weekly logs that would allow Garrison CRM staff to react quickly to matters of concern.

9. Consultation under Section 106 of the NHPA is only required when historic properties are present. Historic properties are sites, buildings, structures and objects that meet the criteria for listing on the National Register of Historic Places (NRHP). All sites that have been identified (through survey or inadvertent discoveries) are treated as though they are eligible for the National Register of Historic Places and therefore covered by the provisions of Section 106 of the National Historic Preservation Act of 1966, as amended,

off-limits. It is the policy of the Garrison to not deliberately disturb burials and to leave them in place if they are inadvertently located. The Army has left all inadvertently located burials in place in the eleven years I have been Cultural Resources Manager. If a burial is unearthed, meaning inadvertently discovered, it is treated in accordance with the Native American Graves Protection and Repatriation Act and left in place if that is the wish of the consulting parties. At no time does the Army have complete discretion over the disposition of any human remains. Cultural monitors would be present at any inadvertent discovery and would have an immediate say in how burials are treated. The reburials of *iwi* from Fort Shafter, Waianae Recreation Center, Fort DeRussy and Pohakuloa Training Area were of remains removed before the appointment of a Cultural Resources Manager at the Garrison. No remains have been removed/reburied from Kahuku.

_____    October 23, 2006
DR. LAURIE LUCKING                 DATE