# Attachment "1"

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| **ILIOULAOKALANI COALITION, et al.,** | Civil No. 05-0015915 |
| Plaintiffs, | |
| | DECLARATION OF DR. LAURIE LUCKING |
| v. | |
| **DONALD H. RUMSFELD, et al.,** | |
| Defendants | |

I, Dr. Laurie Lucking, hereby declare that:

1.    I am the Cultural Resources Manager for the 25th Infantry Division (Light) and

U.S. Army, Hawaii, Schofield Barracks, Oahu, Hawaii. I have served in this position

since 14 September 1995. I received my PhD in 1984 from the University of Minnesota.

I have 33 years of experience as an anthropologist/archeologist, including 32 years of

working with and studying Pacific cultures, and have been employed by the U.S.

government in that role since 1988.

2.    The Army takes its responsibility to preserve important historic, cultural, and

natural aspects of our national heritage very seriously. In implementing this

responsibility, the Army consults closely with state, local, and national advisory councils

on the cultural effects of any proposed action and responsibly manages any cultural

resources under its control in accordance with the National Historic Preservation Act,

sections 106 and 110, NAGPRA and the National Environmental Policy Act. I and other

Army environmental specialists such as archeologists and biologists are personally and

actively involved from the beginning of the design process for all projects. We ensure

1

that environmental concerns are taken into account and that cultural and natural resources are protected to the maximum extend feasible. Avoidance of these resources is the overriding goal.

3.    The Army chose to prepare a Programmatic Agreement (PA) to meet its obligations under Section 106 of the National Historic Preservation Act of 1966, as amended (NHPA) (Attachment 1). The use of a PA is discussed in 36 CFR Part 800, the implementing guidelines for Section 106. In Section 800.14 (b)(1)(ii), it states a PA may be used when effects on historic properties cannot be fully determined prior to approval of an undertaking. Under the PA, consultation continues throughout the process to ensure the protection of historic and cultural properties.

4.    The Army acknowledged in the Final EIS for the Transformation of 2d Brigade, 25th Infantry Division to a Stryker Brigade Combat team ("SBCT EIS") that there could be significant impacts on archeological resources from range and facilities construction at Schofield Barracks and Pohakuloa Training Area. The Army based its determination of "significant impact" primarily on the realization that the destruction of even one or two cultural sites, no matter the level of data recovery conducted, would be a significant impact to Native Hawaiians and on the understanding that many areas of concern to Native Hawaiians are not protected under the National Historic Preservation Act and could be significantly affected by certain projects.

5.    Under Stipulation III of the PA it calls for continuing consultation through letters, meetings and site visits with Native Hawaiian organizations, families and individuals to solicit their assistance in identifying and evaluating the significance of cultural sites. The record of Section 106 consultation on the 28 projects linked to the SBCT currently

fills more than five three- inch binders and includes documentation of correspondence, public notices, public meetings, meetings with specific groups such as the cultural monitors, site visits, email traffic, transmittals of reports of surveys, etc. All draft and final reports generated as part of the actions outlined in the PA have also been sent out for review and comment.   This is in addition to the numerous large and small scale public meetings during the EIS preparation where people were encouraged to express their concerns about areas that might be impacted by the projects.  The Garrison also funded a Traditional Cultural Places Survey for Schofield in 2000 that was finally terminated because the contractor did not appear to be acceptable to the lineal descendents from the areas being studied.  Another contract has been awarded but the contractor appears to be encountering the same problems, even though the contractor in this case is a member of the cultural monitor group.   A record of meetings with Native Hawaiians and cultural accesses to look at areas of concern is provided at Attachment 2.

6.      At present, all draft and final survey reports, monitoring plans and site protection plans are sent to the consulting parties that have expressed an interest in this information so they can comment on the information they contain.  The conclusions on site significance of at least two reports have been changed based on input from these consultations.  The core lists of consulting parties who receive these reports are provided at Attachment 3 and 4.  This list has changed as other people or groups express an interest in being placed on the list.  The response to these requests for review and comment has been minimal.  The Garrison Commander has also established quarterly meetings with Native Hawaiians and the community at large so they can bring their concerns with the treatment of cultural sites to him directly.  A Cultural Advisory Board was established for

Oahu during the EIS process and members of the Board formed the core of the Oahu

cultural monitoring group. A Cultural Advisory Board has been in place at Pohakuloa for

the past four years. The claim that a lack of paid time for cultural monitors to do

community liaison work has hampered the community response is problematic. If the

liaison work was important it could have been done without pay while the administrative

responsibilities were sorted out under the cultural monitor contract.

7.    In order to ensure maximum protection of cultural sites and individual artifacts, the

PA also required the development of a Cultural Monitoring program to facilitate

observations and recommendations by Native Hawaiians regarding proposed

developments for the SBCT projects. Cultural Monitors are used to monitor cultural

sites and project areas during pre-construction and construction activities. Cultural

Monitors are individuals who are knowledgeable about current and past Native Hawaiian

activities in a particular area and represent the interests of other individuals, families, and

groups. A majority of the Schofield Barracks Cultural Monitors are members of the

Wahiawa Hawaiian Civic Club, many of whom have spent years studying the history of

this area to promote retention of the Hawaiian culture. Their participation in this

program is invaluable due to their knowledge of properties that have traditional religious

and cultural importance. There are currently 20 cultural monitors for the Island of Oahu

and 10 for the Island of Hawaii. Additional monitors are added to the list as the SBCT

projects develop. The cultural monitoring program has worked, or is working, effectively

on numerous projects covered by the PA. These include the SB BAX, Urban Assault

Course, CACTF,   Qualification Training Range #1, Qualification Training Range #2, the

Multiple Deployment Facility, the SBCT Motorpool and associated warehouse area at

Schofield Barracks, the Tactical Vehicle Wash at Schofield, and UXO clearance at the Battle Area Complex at Pohakuloa Training Area.

8.     Cultural Monitors are supposed to report daily and weekly on their observations of UXO clearance, construction, and other earth-disturbing activities and contribute to UXO detonation protection plans and long-term site management plans for archaeological and cultural sites. This information is to be given to the archaeological monitors, the Garrison staff and the Corps of Engineers to aid in project compliance and alert them immediately to the identification of new concerns in the projects areas. It is also supposed to be shared with other community members to solicit additional comment. Notes, videotape, and photography from observations and commentary are to be compiled separately from the cultural monitoring report and will be withheld from public release and maintained as confidential. The cultural monitors stopped sending written reports over 18 months ago citing a lack of administrative time in their contracts to write up notes. The Army has recently awarded a separate contract to cover these cultural monitor responsibilities. Their concerns have continued to be transmitted through emails and meetings but lack the specificity of the daily and weekly logs that would allow Garrison CRM staff to react quickly to matters of concern.

9.     Consultation under Section 106 of the NHPA is only required when historic properties are present. Historic properties are sites, buildings, structures and objects that meet the criteria for listing on the National Register of Historic Places (NRHP). All sites that have been identified (through survey or inadvertent discoveries) are treated as though they are eligible for the National Register of Historic Places and therefore covered by the provisions of Section 106 of the National Historic Preservation Act of 1966, as amended,

even when trained archaeologists do not necessarily agree with that designation. The treatment of all sites therefore is a matter for consultation with regulators, Native Hawaiian groups and individuals and other interested parties. Any concerns with sites that are near project areas are being addressed through further consultation and protective measures if they are determined to be necessary. To show a good faith effort to address all types of sites, the Army is also consulting on areas of traditional importance that may not meet the NRHP criteria but are areas important to Native Hawaiians. These sites and areas have been examined through the preparation of Traditional Cultural Places surveys for Pohakuloa and Kahuku (and attempted for Schofield) and through continuing consultation with the community and the use of the cultural monitors. The assumption underlying the PA is that site significance will continue to be determined through on-going consultation with numerous interested parties, lineal descendents where they can be identified, cultural monitors and the greater community. In order to make sure this consultation is on-going and will continue into the future, all sites currently identified are also being protected. The sites currently being protected range from a single petroglyph boulder to large occupation/agricultural/religious complexes. The Army understands the concept of *wahipana, wahi kupuna* and cultural landscapes and also understands how an individual site can contribute to the understanding of the landscape as a whole.

10.    Other precautions that the Army is taking to fully protect previously identified and newly discovered cultural sites include the following:

(a) Updates of cultural survey maps that are shared and coordinated with cultural monitors, consulting parties, project designers, trainers and archaeological monitors.

(b) Cultural Monitoring and Archaeological Monitoring Plans are developed for each Task Order.

(c) Long Term Site Management Plans (Cultural Monitors will participate in development of these plans).

(d) Site-specific Protection Plans for UXO that must be detonated in place within close proximity to Cultural Resources (so far this has not been necessary).

(e) Creation of 10-meter buffer zones around cultural sites.

(f) Cultural site overlays used during design phase in order to work around sites.

(g) Continued modification of maneuver corridors and/or target array in order to avoid identified archeological sites.

(h) Attendance of Garrison Cultural Resources Staff at SBCT project design meetings.

(i) Insertion of cultural resource protection language into A&E contracts for design and construction.

11.     Contrary to the statement in the Emergency Motion on Page 14 and the declarations of Dr. Cachola-Abad, Mr. Tengan and Ms. Quitevis, archaeological surveys undertaken by archaeologists that meet the Secretary of the Interior's Standards for professional archaeologists were conducted, sometimes more than once, in all potential construction footprints and many areas adjacent to the construction footprints. Some of this survey process has been on-going since the late 1980's. While good-faith efforts were made to identify all historic properties within the various areas of potential effects, the early surveys were hampered by the presence of dangerous ordnance and heavy vegetation cover, especially in the gulches. The more times the area was cleared by burning or removal of vegetation by heavy equipment, the more exposed the ground

7

surface became and smaller features and isolated artifacts were more likely to be found. The list of survey reports generated since the beginning of the SBCT EIS development is provided at Attachment 5. No indications of extant cultural resources and/or historic properties were found in the construction footprint of the following projects: the Tactical Vehicle Wash, Virtual Training Fighting Facility (now known as the Training Support Facility), The Motorpool Complex, the Multiple Deployment Facility, Qualifying Training Range 1, Qualifying Training Range 2, Urban Assault Course, Range Control Facility, the Upgrade of the Wheeler Airfield, the Fixed Tactical Internet, and the Schofield to Helemano Trail Route at Schofield; and the Tactical Vehicle Wash, Range Maintenance Facility, Fixed Tactical Internet, Installation Information Infrastrucutre, and the Bradshaw Airfield Upgrade at Pohakuloa Training Area  Consistent with the survey results, no historic properties have been located within the construction footprint of these projects during monitoring of the environmental and geological testing, UXO clearance and/or construction activities.

12.      Contrary to statements by Mr. Henkin on Page 14 of the Emergency Motion and Ms. Quitevis in her declaration on page 7, work has been stopped at least twice on the Schofield BAX complex so additional survey by the cultural monitors could take place. The first time, in August 2006, the monitors did not take advantage of the time allotted to them.   Twenty-two days of survey time has also been set aside in October 2006. The monitors have concentrated their survey efforts this time in the gulches outside the construction footprint in areas of heavy vegetation cover and heavy UXO. The cultural monitor and archaeologist are each accompanied by an EOD escort for this work because of the danger level. A total of 211 temporary site numbers were assigned

to sites located during surveys of the SB BAX area. Many of these temporary site numbers were discarded because they were assigned to features that were later found to be affiliated with other sites. The 191 sites cited by Ms. Quitevis in her declaration on Page 6 are numbers given to individual features within site complexes by an Army archaeologist during the most recent surveys. These features are almost entirely outside the construction footprint of any of the projects. The Army policy against data recovery meant that archaeologists doing the initial surveys did not collect isolated artifacts, especially broken pieces of *ulu maika*, and adze fragments, unless they were intact and could yield information. The archaeologists and cultural monitors were directed initially to also leave artifacts on the ground surface and just describe them and GPS their location. Cultural monitors were concerned about the loss of these artifacts and began to collect them. The claims of the cultural monitors that they are collecting items missed by the archaeologists are simply not true. It must also be pointed out that monitors are accompanied by archaeologists on virtually all surveys so site identifications are dual identifications. It is not a case of cultural monitors finding sites archaeologists missed.

13.     Contrary to the statement on Page 13 of the Emergency Motion and declarations of Dr. Cachola-Abad (Page 12), and Mr. Tengan (Page 4) the chief mitigation to avoid adverse effects to historic properties (per 36 CFR Part 800.5) in the Programmatic Agreement for SBCT EIS, January 30, 2004 is in Stipulation IV(E)(6). This Stipulation states, "If implementation of the proposed project or activity will result in an adverse effect, the Installation will modify the project or activity to mitigate the adverse effect wherever possible and practical as determined by the Installation." In other words, the chief mitigation called out in the PA is not data recovery but avoidance of sites in design,

construction and training. It is only if the project cannot be modified, and after substantial

consultation with interested parties, that data recovery would even be considered as

mitigation. It is against Army policy to do data recovery because of issues with curation.

There is currently no curation facility in the State of Hawaii that totally meets the federal

curation standard. Other proposed mitigations include site protection measures, archival

research, gathering of oral histories, and recordation of historic buildings. The consistent

referrals in the declarations of Dr. Cachola-Abad and Mr. Tengan to data recovery being

the proposed mitigation for adverse effects to archaeological sites are therefore simply

untrue. Recommendation by a contractor for data recovery does not constitute the

position of the Army on this issue. As detailed below, the Army has in fact gone to great

lengths to avoid all known cultural resources.

14.    As evidence that data recovery is not the preferred mitigation proposed for sites

that may be adversely affected by UXO clearance and/or construction for projects in

which cultural resources and/or historic properties were found during survey in the

construction footprint of the projects,   changes have been made to project designs to

accommodate the preservation of these sites.   The placement of some of the Schofield

BAX targets and roads have already been modified to avoid sites identified in the

surveys, as well as sites identified during pre-construction activities. In fact, the Garrison

shifted a proposed roadway to avoid non-human (probably cow) remains that had been

reburied in the BAX footprint, knowing that they were not human. The footprint of the

Pohakuloa BAX was actually moved in its entirety to avoid archaeological sites and

sensitive plant species. When sites were discovered during monitoring activities, the

Garrison did its best to revise the project footprint so they could be avoided or developed

mitigations, These include the proposed berm to protect Hale'au'au Heiau which is

outside the construction footprint of the SB BAX, the redesign of the CACTF at Kahuku

and the relocation of targets at QTR1 to avoid firing over Site 210 (a possible burial area

outside the construction footprint of QTR1) which was discovered when trees were being

removed to get a clear line of sight.. These revisions were all documented in written

correspondence and Section 106 consultation. The Garrison has voluntarily temporarily

ceased construction and/or UXO clearance activities when issues of concern have been

brought to its attention on specific project areas until concerns could be addressed.

Contrary to footnote 5 of the emergency motion, it implies ground softening by

bulldozers will occur on, and destroy, lava tubes and other cultural resources at

Pohakuloa Training Area. The citation offered for this assertion actually says that ground

softening will only occur on existing ranges which are already heavily disturbed."

15.      Contrary to statements contained on Page 14 of the Emergency Motion and Page

8 of Ms. Quitevis' declaration the cultural monitors have not been unduly restricted from

their oversight roles and responsibilities. All cultural monitors have received a 40-hour

hazardous waste operators (HAZWOPER) training, UXO recognition training and have

been certified for CPR and first aid.   They are given Kevlar helmets, flack jackets, safety

glasses, respirators and gloves to wear where this is required. This training and

equipment was provided to the cultural monitors so that they could go anywhere the

UXO and construction contractors and archaeologists could go within the project area.

Cultural monitors have been present at the BAX since November 2004 observing UXO

clearance activities.   Due to the danger presented by the large amount of ordnance in the

BAX footprint, all non-essential personnel (range workers, archaeologists, and cultural

monitors) were initially required to remain approximately 200 feet away from all

intrusive activities related to UXO clearance. They were allowed to go down range to

check activities at set points during the day. When chemical weapons were discovered at

the BAX the exclusion zone increased to 650 feet and the archeological and cultural

monitors had to pass medical exams and fit tests for respirators to continue working.

Again, the monitors were allowed down range at set times to examine the areas where

earth-disturbing activities had taken place. When the monitors were not down range,

they had time to write up their field observations or do additional archaeological survey

in the general vicinity of the BAX footprint in areas outside the exclusion zone with an

EOD escort. This was changed in July 2006 and cultural and archaeological monitors are

now allowed to be embedded in the UXO clearance operation if they desire to do so.

However, this is extremely dangerous work and not all archaeological monitors have

agreed to participate. Only one cultural monitor has participated in UXO clearance as an

embedded member of the UXO team.

16.     Contrary to statements in the Emergency Motion on Page 15  and Ms. Quitevis'

declaration on Page 9, construction has not begun on the footprint of the SB BAX.   The

large amount of ordnance in the BAX footprint resulted in the requirement for additional

UXO clearance in specific areas of the BAX footprint before construction could begin.

Many of the areas scheduled for construction failed the quality assurance/quality control

inspections. This additional clearance activity began on June 22, 2006. When the

cultural monitors informed the Army about concerns regarding the nature of the UXO

clearance, which included using bulldozers for grubbing and clearing of vegetation from

the project area, site protection measures identical to those outlined in the draft site

protection plan for construction, which was sent out for comment in 2005 were put in place. We chose to implement these measures prior to the completion of consultations for the draft plan because the measures clearly provided greater protections than those called for in the site protection plan for UXO clearance. These measures include the use of orange plastic construction fencing to delineate 10 meter buffers around all archaeological sites within 50 meters of the work footprint and flagging to delineate a 10 meter buffer around archaeological sites within 100 meters of the work footprint. Contrary to the statement on Page 15 of Emergency Motion about damage to Hale'au'au Heiau, the buffers have been effective in protecting known sites in the BAX footprint. Even though a piece of a boulder landed on the buffer fence at the SB BAX, above the site complex containing Hale'au'au Heiau, this boulder came no close than 25 feet from a remnant terrace labeled T-200 and more than 200 feet from the Heiau complex. A number of large boulders were in the vicinity of the UXO clearance activity above Hale'au'au but they had not been identified as objects of concern prior to the clearance in June 2006 even though many small scale surveys had taken place in this area beginning in 2004, when the Heiau was first identified by archaeologists from Garcia and Associates. Therefore the Army is not aware of any sites that were damaged during this activity.

17.    To clarify statements made by Mr. Henkin in the Emergency Motion on Page iv and Ms. Quitevis in her declaration on Page 12, it must also be noted that the Army does not intend to utilize high explosive rounds at any of the ranges covered by the SBCT EIS. In addition to the potential impacts to cultural and natural resources, these rounds would damage and destroy very expensive target arrays. At the QTR1, the MK-19 weapons

being used are practice munitions that do not have a high explosive charge. They are clearly identifiable as practice rounds by their blue color. However, the 40-mm rounds found in Hale'au'au gulch and other gulches are real high explosive rounds that were used in the past. Their small size makes survey in areas where they have been identified particularly dangerous.

18.    Contrary to the statement on Page 14 of the Emergency Motion, general Native Hawaiian access to cultural sites is controlled, as has always been the case, but it has not ceased. In fact, UXO clearance activities have opened up previously inaccessible areas for limited cultural access. In accordance with the PA, controls are imposed based on safety concerns and training requirements. Currently, most sites are accessed on a regular basis upon request. If the site is in an unsafe area, we are looking at ways to provide a safe access in the future. We once again reference Attachment 4 as proof of continued cultural access at Garrison training  ranges.

19.    Contrary to numerous statements in the declarations of Dr. Cachola-Abad and Mr. Tengan concerning damage to burials areas, the Army is striving to avoid any impact to burials through the use of cultural monitors who are lineal descendents from the various project areas and continuous consultation. The possible burials at the South Range Acquisition Area were marked off-limits in July 2003. The off-limits area is designated a "no-dig" area and was not even tested during archaeological survey at the request of the Native Hawaiian community. As other possible burial areas are identified, they are also marked off-limits without further testing. All identified mounds, cairns, ahu, and other stone structures that may be burials and all areas even without surface indications that have been said to contain burials are being treated with the greatest respect and are kept

14

off-limits.    It is the policy of the Garrison to not deliberately disturb burials and to leave

them in place if they are inadvertently located.  The Army has left all inadvertently

located burials in place in the eleven years I have been Cultural Resources Manager.  If a

burial is unearthed, meaning inadvertently discovered, it is treated in accordance with the

Native American Graves Protection and Repatriation Act and left in place if that is the

wish of the consulting parties.  At no time does the Army have complete discretion over

the disposition of any human remains.  Cultural monitors would be present at any

inadvertent   discovery and would have an immediate say in how burials are treated.  The

reburials of *iwi* from Fort Shafter, Waianae Recreation Center, Fort DeRussy and

Pohakuloa Training Area were of remains removed before the appointment of a Cultural

Resources Manager at the Garrison.  No remains have been removed/reburied from

Kahuku.

DR. LAURIE LUCKING                                DATE

1/30/04

## Programmatic Agreement (PA)
### among the United States Army Garrison, Hawaii,
### the Hawai'i State Historic Preservation Office and the Advisory Council on Historic
### Preservation for Section 106 Responsibilities for the Army Transformation of
### the 2nd Brigade, 25th Infantry Division (Light) to a Stryker Brigade Combat Team
### (SBCT)

WHEREAS, on April 11, 2002, the Department of the Army (Army) issued its Record of Decision to proceed with a multi-year, phased, and synchronized process to transform the Army; and

WHEREAS, Army Transformation initially involves converting six Army brigades to Stryker Brigade Combat Teams (SBCT); and

WHEREAS, one of the six brigades identified by the Army for conversion to an SBCT is the Second (2nd) Brigade of the 25th Infantry Division (Light) (25 ID (L)), subject to evaluation of the potential effects of project and site specific proposals for transformation actions pursuant to the National Historic Preservation Act of 1966, as amended; and

WHEREAS, the U.S. Army Garrison, Hawaii (Installation), by and through the Garrison Commander, proposes to implement the Department of the Army decision to transform the 2nd Brigade of the 25th ID (L) to an SBCT; and

WHEREAS, twenty-eight (28) currently planned SBCT projects, listed in Appendix A, the introduction of the Stryker vehicle, and any future SBCT projects or activities, with potential adverse effects to historic properties within their areas of potential effects (APEs) are located at various Installations and sites on the islands of O'ahu and Hawai'i; and

WHEREAS, the Installation has determined that the implementation of these projects has the potential to adversely affect historic properties within their respective areas of potential effect (APEs) as indicated in Appendix A; and

WHEREAS, the Installation has determined that one of these projects is on Hickam Air Force Base National Historic Landmark and addressed in a separate EA; and one project is on the Wheeler Army Airfield National Historic Landmark and the Installation has determined that there are "no historic properties affected;" and

WHEREAS, the Installation has consulted with the Advisory Council on Historic Preservation (ACHP) and the State Historic Preservation Officer (SHPO), pursuant to Section 800.14 of the regulations (36 CFR Part 800) implementing Section 106 of the National Historic Preservation Act (16 USC 470f), and invites them to execute this programmatic agreement (PA); and

1

Attachment 1
to Attachment 1

1/30/04

WHEREAS, the Installation has consulted with the Office of Hawaiian Affairs (OHA), National Park Service (NPS), Royal Order of Kamehameha I (ROOK), O'ahu Council of Hawaiian Civic Clubs (OCHCC), Hui Malama I Na Kupuna 'O Hawai'i Nei, O'ahu Island Burial Council (OIBC), Hawai'i Island Burial Council (HIBC), Historic Hawai'i Foundation (HHF), and Native Hawaiian organizations, families and individuals identified in Appendix D that attach traditional religious and cultural importance to cultural sites within the various project APEs and invites them to concur in this programmatic agreement (PA); and

WHEREAS, the consulting parties agree that because of the long time period and broad geographical extent of projects required to convert the 2nd Brigade of the 25th ID (L) to an SBCT, it is appropriate to set forth processes in this PA for the identification, evaluation, treatment, and management of historic properties (the Act, Section 301(5), 16 USC 470w) including properties of traditional religious and cultural importance to Native Hawaiian organizations, families and individuals (the Act, Section 101(d)(1)(A),16 USC 470a); and

WHEREAS, the Installation has provided the public an opportunity to comment on this undertaking through the Agency's National Environmental Policy Act process and has incorporated the recommendations of the public and reviewing agencies into this agreement; and

WHEREAS, the definitions provided in 36 CFR Part 800 are applicable throughout this Programmatic Agreement.

NOW THEREFORE, the Installation, the SHPO, ACHP, NPS, OHA, ROOK, OCHCC, Hui Malama I Na Kupuna 'O Hawaii Nei, HHF, HIBC, and OIBC agree that Section 106 compliance for potential historic properties within the areas of potential effects of SBCT projects on the islands of O'ahu and Hawai'i will be administered according to the following stipulations to satisfy Installation's Section 106 responsibilities for all individual undertakings associated with the conversion of the 2nd Brigade of the 25th ID (L) to an SBCT.

## STIPULATIONS

The U. S. Army Garrison, Hawaii will insure that the following measures are carried out:

## I. Applicability.

A.  The terms of this agreement apply to a program to convert the 2nd Brigade of the 25th ID (L) to an SBCT at various Installations and sites on O'ahu and Hawai'i, listed in Appendix A, and to take into account the effects of this program on historic properties within the areas of effect of projects associated with SBCT.

1/30/04

B.  Only those resources that are listed on or meet the eligibility criteria for listing in the National Register of Historic Places (National Register) are historic properties, and a subset of these are of traditional religious and cultural importance.

C.  This PA is subordinate to any rights Native Hawaiians and Native Hawaiian organizations may have under federal law as set described in 36 CFR 800.2 (c) (ii) (B).

## II.  Planning and Coordination of Installation Activities to Implement SBCT.

A.  Personnel.

(1)  The Installation will employ, maintain a contract with, or obtain through other means, qualified professionals who meet the Secretary of the Interior's Professional Qualifications Standards (48 FR 44738-9) in disciplines appropriate to carry out the Installation's NHPA responsibilities regarding identification and evaluation of historic properties and assessment and treatment of effects to such properties.  Consultation with Native Hawaiians concerning the identification of sites of traditional religious and cultural importance is recognition of their expertise in these areas.

(2)  The Installation will ensure that the Cultural Resources Manager (CRM) participates in Installation-level planning for proposed projects and activities related to SBCT that may affect historic properties.

B.  Planning.

(1)  The Installation will ensure that documents pertaining to the proposed SBCT projects are analyzed by the CRM to identify specific undertakings that may be subject to review pursuant to the terms of this PA throughout conversion of the 2nd Brigade of the 25th ID (L) to an SBCT.  The documents to be analyzed will include, but are not limited to, military construction plans, troop training and range operation plans, Integrated Natural Resource Management Plans, ITAM program plans, tenant activities, and historic property renovation and demolition plans, insofar as these pertain to the conversion of the 2nd Brigade of the 25th ID (L) to an SBCT.

(2)  The Installation will ensure that schedules and priorities are established and documented for identification, evaluation, and treatment of historic properties within the 28 APEs. The Installation will ensure that all relevant Installation offices are informed of the schedules and priorities, the potential of these undertakings to affect historic properties, the requirement to ensure that an analysis of alternatives is fully considered as early as possible in project planning, and of the requirement to complete the review of the undertaking pursuant to this PA.

(3)  The Installation will ensure that the undertakings identified herein and all related activities are planned, reviewed, and carried out according to the terms of this PA.

## III.  Consultation with Native Hawaiians

3

1/30/04

A.    The Installation will identify Native Hawaiian organizations, families and individuals that may ascribe traditional religious and cultural importance to historic properties within the APEs of the SBCT projects.

B.    The Installation will consult with such Native Hawaiian organizations, families and individuals to solicit their assistance and advice in identifying properties of traditional religious and cultural importance within the proposed projects' APEs and in resolving concerns regarding confidentiality of information on historic properties.

C.    In recognition of the historic and cultural significance of the lands in the areas of potential effect for SBCT to Native Hawaiians and others, the Installation will generally look favorably on affording access for preservation and protection of historic sites to individuals and organizations, including any Native Hawaiian organization that attaches cultural significance to historic properties. Requests for such access need to be submitted in writing and will be considered in light of military operational requirements and anti-terrorist / force-protection security conditions and other pertinent circumstances as determined by the Installation at the time. Final approval or disapproval will be provided by the Installation in writing. Upon request, the Installation will consider events that celebrate and interpret historic activities tied to these lands.

D.    When an undertaking may affect properties of traditional religious and cultural importance to Native Hawaiians, the Installation will afford Native Hawaiian organizations, families and individuals the opportunity to participate as consulting parties in identification and evaluation of properties, and assessment and treatment of effects.

E.    The Installation, to show an understanding of the significance and respect properties of traditional religious and cultural importance, including burials and landscapes, play in the lives of Native Hawaiians, will work with a Cultural Monitor chosen from a list of available Cultural Monitors generated by Native Hawaiians from the area of concern, and provided to the Installation. These services will be obtained in accordance with applicable federal laws and guidance.

   (1) The Installation will provide timely notification of all site-specific projects and access for the participation of a Cultural Monitor.

   (2) A Cultural Monitor will demonstrate:

       a) a cultural affiliation with the affected project area;

       b) familiarity with the affected and anticipated cultural properties in the project area; and

       c) sensitivity and the ability to represent and communicate with the Installation on behalf of Native Hawaiians.

1/30/04

(3) During construction activities that are likely to impact properties of traditional religious and cultural importance, the Cultural Monitor will be utilized to provide additional assurances to Native Hawaiians that properties of traditional religious and cultural importance are being properly treated. A Cultural Monitor will act as an independent observer who is both knowledgeable and sensitive to Native Hawaiian site management and who has the trust of members of his community. The Cultural Monitor will work closely with archaeologists to provide a liaison with Native Hawaiians when properties of traditional religious and cultural importance are discovered or inadvertently impacted, and assist in the identification and treatment of such sites.

(4) The Cultural Monitor will be available for the duration of the construction phase of the project and coordinating closely with the Installation CRM. When the construction phase of a project is complete, the Installation will consult with signatory and concurring parties and consider whether to extend the services of the Cultural Monitor(s). Cultural Monitors must consider the working environment and dress accordingly.

## IV. Identification, Evaluation, Assessment, and Treatment of Historic Properties.

A.  General.

(1) All identification and evaluation of properties or potentially eligible properties for undertakings occurring as a result of SBCT will be conducted according to the Secretary of the Interior's Standards and Guidelines for Archaeology and Historic Preservation.

(2) The Installation will complete identification and evaluation of historic properties prior to implementation of SBCT undertakings.

B.  Inventory.

(1) Phase 1 inventory efforts will include, but are not limited to, the examination and synthesis of existing information such as photographs, maps, drawings, archival research, oral histories, condition assessments of buildings and data results of pedestrian surveys.

(2) Consult with Native Hawaiian organizations, families and individuals to assist with identifying properties of traditional religious and cultural importance.

(3) Phase 1 inventories to identify properties or potentially eligible properties within the APEs of all the SBCT Transformation project areas, as identified in Appendix A are complete. All draft and final reports will be submitted to signatory and concurring parties under cover letter by the Installation that explains the purpose of the report and the action requested of the signatory or concurring party.

C.  Evaluations of Significance for Properties - Phase II Inventory.

(1) Initial Phase 1 surveys have identified properties or potentially eligible properties that need to be evaluated in the proposed project APEs.

1/30/04

(2) For Phase II survey inventories of properties or potentially eligible properties, the Installation may apply the Installation historic context and/or other evaluation methods listed below to the criteria of eligibility outlined in 36 CFR Part 63 to make a determination of eligibility for the National Register of Historic Places for these, and any other properties or potentially eligible properties identified through future inventory surveys related to SBCT proposed projects or activities.

(a) Using the Installation historic context prepared for Integrated Cultural Resources Management Plan (ICRMP) (which includes the cultural landscape) as the basis for Installation identification, determinations of eligibility and treatment of all historic properties.

(b) Testing to determine the depth, extent, and age of cultural deposits at archeological sites to clarify site boundaries and determine site integrity.

(c) Assessing information provided by Native Hawaiian organizations, families, and individuals, and collecting further oral histories and archival information on identified traditional cultural properties and sacred sites, as required.

(d) Preparing historic structure reports and condition assessments to determine/assess the significance of historic buildings and structures.

(e) Employing such other methods as the parties may agree upon in this consultation.

(3) The results of these evaluations will form the basis for the Army to determine the eligibility of these properties for listing on the National Register of Historic Places.

D. Determinations of Eligibility

(1) The Installation will notify the SHPO of its determination(s) of eligibility. This notification will include a description of the respective APE.

(2) If SHPO disagrees with a determination of eligibility, they must notify the Installation within 30 days, documenting the reasons for the disagreement.

(a) The Installation reviews the documentation and revises the initial determination or consults with the SHPO to resolve the disagreement; or

(b) If the disagreement cannot be resolved through this consultation process, then the Army will forward to the Secretary of the Interior all disagreement documentation from SHPO along with all documentation resulting from the consultation process.

(c) The Secretary of the Interior reviews the documentation and makes a final determination.

1/30/04

(3) If evaluation efforts result in the identification of properties that are eligible for the National Register, the Installation will update its existing inventory to include these properties and, at the request of the appropriate Native Hawaiian organizations, families and individuals, the existence and location of such properties will be available only for Installation planning purposes and will not be disclosed to the public.

(4) Results of evaluations of site significance and determinations of eligibility by the Installation will be documented in an annual report, see Stipulation VI. B, which will be made available to all signatory and concurring parties to this PA.

E. Procedures for assessing effect

(1) The Installation's CRM, using available professional expertise, assesses effects of all undertakings on historic properties and properties of traditional religious and cultural importance.

(2) If a no effect to historic properties determination is made, CRM will document a finding of "no historic properties affected" and provide notice to the SHPO and other concurring parties. If within 30 days, or 45 days if the determination of effects is combined with the determination of eligibility, no objection to the "no historic properties affected" determination is made, then the Installation may proceed to implement the proposed project or activity.

(3) If a "no adverse effect to historic properties" determination is made, the CRM will notify the SHPO and other concurring parties and provide for a 30-day review. If within 30 days, or 45 days if the determination of effects is combined with the determination of eligibility, no objection to the "no adverse effect to historic properties" determination is made, then the Installation may proceed to implement the proposed activity.

(4) If SHPO or other concurring parties disagree with a "no historic properties affected" or a "no adverse effect to historic properties" determination, they must notify the Installation within the 30-day or 45-day review period documenting the reasons for the disagreement.

(a) The Installation reviews the documentation and revises the initial determination; or

(b) The Army will forward to the ACHP all disagreement documentation from SHPO or other concurring parties.

(c) ACHP reviews the documentation within 30 days and makes recommendations to the Installation. The Installation will consider ACHP's views before proceeding. If the ACHP does not provide a recommendation to the Army within the review period, the Army may assume that the ACHP concurs with the Army's findings.

7

1/30/04

(5) If implementation of the proposed project or activity will result in an adverse effect to a historic property, the Installation will modify the project or activity to avoid the adverse effect wherever possible and practical as determined by the Installation.

(6) The Installation will consult with SHPO and concurring parties when adverse effects to historic properties cannot be avoided and implement mitigation measures in accordance with the results of the consultation and/or Stipulation IV (7) (a-i).

(7) If a "historic properties adversely affected" determination cannot be resolved through project modification, the Installation will implement either the following mitigation measures or others developed in consultation with other signatory and concurring parties, as applicable, prior to the initiation of the activity affecting the historic property.

(a) For archaeological sites, data recovery measures may be implemented as mitigation. A data recovery plan will be developed by the CRM, in consultation with the SHPO and other consulting parties, and implemented by the Installation.

(b) For historic buildings, documentation of the affected structure will be carried out by the CRM, in accordance with appropriate HABS/HAER standards developed through consultation with the SHPO and any other concurring party as appropriate.

(c) For properties of traditional religious and cultural importance, information related to the property will be collected through oral history interviews and archival research in Hawaiian and English texts. The Army will consult with the SHPO and other consulting parties to discuss the scope and disposition of the materials.

(d) Archeological site protection measures may be developed and implemented by the Installation. Short-term measures, such as monitoring, will be followed during construction of SBCT Transformation projects and facilities. Long-term measures will be followed during training exercises and other on-going uses. Examples of Long-Term measures might include establishing buffer zones around archaeological and cultural sites or identifying such areas as mine fields for training purposes.

(e) Prior to any training exercise, existing site protection measures developed by the CRM will be reviewed by training personnel, summarized and disseminated to training units.

(f) Any mitigation measures developed in consultation will be documented in a formal mitigation plan, reviewed by all parties to this PA, signed and approved by the Garrison Commander, and implemented through the Installation Cultural Resources Management Program.

1/30/04

> (g) Historic properties, including properties of traditional religious and cultural importance, in SBCT Transformation training areas will be monitored by the Installation CRM or by personnel delegated by the CRM.  Monitoring will be done in accordance with Appendix B.
>
> (h) The Installation will provide all of its relevant offices at the Installation, including fire-fighting, range, and training personnel, with copies of the site protection measures that are developed.
>
> (i) The Installation will provide all consultation comments and mitigation treatment results in an annual report, see Stipulation VI. B.

F.  Treatment of Human Remains - If human remains are inadvertently discovered during implementation of an undertaking or program activity, the Installation will ensure that all activity in the area immediately surrounding the discovery ceases and the appropriate Installation CRM is notified of the find. The Installation will ensure that the remains are secured from further disturbance or vandalism and covered for protection from the elements until the Installation in accordance with NAGPRA procedures and Appendix C, Inadvertent Discovery Plan, has determined the appropriate treatment in consultation with the O'ahu and Hawai'i Island Burial Councils and identified lineal descendants.

### V. Additional Installation Management and Coordination Activities.

A. Project Monitoring.

(1) The Installation will insure that all excavations conducted as part of construction projects associated with the conversion of the 2nd Brigade of the 25th ID (L), especially those in areas of high archaeological sensitivity, are monitored by an archaeologist and a Cultural Monitor in accordance with Stipulation III.D.

(2) The Installation will insure that the CRM is staffed adequately to undertake these monitoring activities and produce written monitoring reports on an annual basis. The Installation will provide copies of these monitoring reports to all signatory and concurring parties to this PA. These reports will also be contained in the annual report on PA activities outlined in Stipulation VI (B).

B. Exempt Activities.

The parties to this PA have consulted and agree that certain routine activities may be exempt from consultation under this PA provided that the installation CRM finds that their effects on cultural resources in or eligible for the National Register will not be adverse based on criteria in 36 CFR Part 800.5. These activities include:

(1) Maintenance activities in areas that have been previously landscaped may be maintained by tree trimming, grass mowing and cutting, and similar basic landscape maintenance activities.

9

1/30/04

(2) Previously paved areas such as roads, parking areas, and paths may be maintained and repaved and/or resurfaced provided that heavy equipment is restricted to use in previously disturbed areas.

(3) Existing military facilities that have been determined not to be historic properties may be maintained and repaired. These facilities include but are not limited to buildings, water, sewer, telephone and communications lines and infrastructure, gas and electric utilities infrastructure.

(4) Continued use of impact areas, firing ranges, and other designated surface danger zones.

## VI. Administrative Stipulations

A. Anti-Deficiency Act Compliance.

The stipulations of this PA are subject to the provisions of the Anti-Deficiency Act. If compliance with the Anti-Deficiency Act alters or impairs Installation's ability to implement the stipulations of this PA, the Installation will consult according to the amendment and termination procedures found at Stipulations VI. F and E of this PA.

B. Reporting and Annual Review.

(1) The Installation will provide all signatory and concurring parties with an annual report on or before July 1 of each year summarizing activities carried out under the terms of this PA.

> (a) Annual reports will include a list of projects and program activities that summarize proposed project determinations of effect to historic properties, a summary of mitigation or treatment measures implemented to address the effects of undertakings, and a summary of consultation activities and the views of the SHPO and interested parties where appropriate. Determinations of Eligibility to the National Register of Historic Places will also be summarized. The annual monitoring report will be a part of this report.

> (b) Cultural Resources Inventory Reports, Archaeological Monitoring Plans, Preservation or Mitigation Treatment Plans, Data Recovery Plans, and oral histories or ethnographic studies will be submitted, as they are developed and finalized, to the signatories and concurring parties to this PA.

> (c) All annual reports will be produced through 2010 or completion of the transformation to a SBCT of the 2nd Brigade of the 25th ID (L).

> (d) The signatories to this PA will review the annual report's information to determine what, if any, revisions or amendments to the PA are necessary. After the parties have had an opportunity to review the annual report, the Installation will sponsor a meeting to discuss the report and/or any related matters if requested to do so by any signatory or concurring party to this PA.

C. Dispute Resolution

10

1/30/04

(1) Should any signatory or concurring party to this PA object to any action carried out or proposed by the Installation with respect to implementation of this PA, the objecting party will send the objection, in writing, to the Garrison Commander at Schofield Barracks. The Installation will consult with the objecting party to resolve the objection. If the objecting party and the Installation cannot resolve the dispute, the Installation will consult with the SHPO and the other concurring parties to resolve the objection. If the objection cannot be resolved through this consultation process, or if the objection is from the SHPO, the Installation will forward all documentation relevant to the dispute to the ACHP. Within thirty calendar days after receipt of all pertinent documentation. the ACHP will exercise one of the following options:

> (a) Advise the Installation that the ACHP concurs in the Installation's proposed final decision, whereupon the Installation will respond to the objection accordingly.

> (b) Provide the Installation with recommendations, which the Installation will take into account in reaching a final decision regarding its response to the objection; or,

> (c) Notify the Installation that the ACHP will comment pursuant to 36 CFR Part 800, and proceed to comment. The resulting comment will be taken into account by the Installation according to 36 CFR Part 800 and Section 110(l) of NHPA.

(2) Should the ACHP not exercise one of the above options within 30 days after receipt of all pertinent documentation, the Installation may assume the Council's concurrence with its proposed response to the objection.

(3) The Installation will take into account any ACHP recommendation or comment provided according to this stipulation with reference only to the subject of the objection; the Installation responsibility to carry out all actions under this PA that are not the subject of the objection will remain unchanged.

(4) Should an objection pertaining to this PA be raised at any time by a member of the public, including Native Hawaiian organizations, families and individuals, the objection will be submitted in writing to the Garrison Commander at Schofield Barracks. The Installation will notify the signatory and concurring parties to this PA and take the objection into account before proceeding with the undertaking at issue.

D. Monitoring of Programmatic Agreement

The SHPO and the ACHP Council may monitor any activities carried out pursuant to this Agreement, and the ACHP will review any activities if so requested. The Installation will cooperate with the SHPO and the ACHP should they request to monitor or to review project files for activities carried out pursuant to this Agreement.

E. Termination of the Programmatic Agreement.

11

1/30/04

(1) If the Installation determines that it cannot implement the terms of this PA, or if the SHPO or ACHP determines that the PA is not being properly implemented, the Installation, the SHPO, or ACHP may propose to the other parties to this PA that it be terminated.

(2) The party proposing to terminate this PA will so notify all parties to this PA, explaining the reasons for termination and affording them at least 30 days to consult and seek alternatives to termination.

(3) Should such consultation fail and the PA is terminated, the Installation will:

(a) Consult according to 36 CFR Section 800.14 to develop a new PA; or,

(b) Comply with 36 CFR Part 800 with regard to each undertaking.

F. Amendment of the Programmatic Agreement.

Any signatory or concurring party to this PA may propose to the Installation that the PA be amended, whereupon the Installation will consult with the other parties to this PA to consider such amendment. 36 CFR Section 800.14 will govern the execution of any amendment.

G. Expiration and Renewal of the Programmatic Agreement

This PA will take effect on the date it is signed by the last signatory and will remain in effect throughout the transformation of the 2nd Brigade of the 25th ID (L) to an SBCT in 2010. No extension or modification will be effective unless all signatories have agreed in writing.

H. This PA may be executed in counterpart signatures.

Execution and implementation of this PA evidences that the Installation has afforded the Council a reasonable opportunity to comment on the transformation of the 2nd Brigade 25th ID (L) to an SBCT at and by the US Army, Garrison, Hawai'i, and that the Installation has taken into account the effects of the undertaking on historic properties. Execution and compliance with this programmatic agreement fulfills the Installation's Section 106 responsibilities regarding the transformation of the 2nd Brigade of the 25th ID (L) to an SBCT.

1/30/04

**SIGNATORY PARTIES:**

UNITED STATES ARMY

By:                                     Date:

David L. Anderson                       3 0 JAN 2004

                                        Garrison Commander

STATE HISTORIC PRESERVATION OFFICER

By:                                     Date:
                                        FEB - 9 2004
Peter T. Young
                                        State Historic Preservation Officer

ADVISORY COUNCIL ON HISTORIC PRESERVATION

By:                                     Date:

John M. Fowler                          Executive Director

13

1/30/04

### SIGNATORY PARTIES:

UNITED STATES ARMY  -

By:

David L. Anderson

Date:

**3 0 JAN 2004**

Garrison Commander

### STATE HISTORIC PRESERVATION OFFICER

By:

Date:

Peter T. Young

State Historic Preservation Officer

### ADVISORY COUNCIL ON HISTORIC PRESERVATION

By:                              Date: 2/19/04

John M. Fowler

Executive Director

13

1/30/04

## CONCURRING PARTIES:

OFFICE OF HAWAIIAN AFFAIRS

By: Haunani Apoliona *with Reservations*    Date: 3/4/04

Haunani Apoliona    Chair, Board of Trustees

## HUI MALAMA I NA KUPUNA 'O HAWAI'I NEI

By:    Date:

Po'o Kunani Nihipali

## ROYAL ORDER OF KAMEHAMEHA I

By:    Date:

Alii Nui & Grandmaster Alii Sir Gabriel Makuakane, K.G.C. K.

## O'AHU COUNCIL OF HAWAIIAN CIVIC CLUBS

By:    Date:

President, Ms. Jalna Keala

## O'AHU ISLAND BURIAL COUNCIL

By:    Date

Chairman, Van Horn Diamond

14

1/30/04

# APPENDIX A
## SUMMARY OF SBCT TRANSFORMATION PROJECTS
## IN OʻAHU AND HAWAIʻI ISLANDS

This appendix summarizes the proposed SBCT Transformation projects with possible impacts in the islands of Oʻahu and Hawaiʻi. The information is presented in tabular form and sorted by Fiscal Year.

Summary of SBCT Transformation Projects in Oʻahu and Hawaiʻi Islands

| Fiscal Year | Project Number | Project Name | Sub-Installation of Project Location |
|---|---|---|---|
| 2005 | 57183 | Anti-armor Live Fire and Tracking Range | Pohakuloa |
| 2007 | 57197 | Battle Area Complex (BAX) | Pohakuloa |
| 2005 | 57305 | Combined Arms Collective Training Facility | Kahuku |
| 2007 | 57404 | Virtual Fighting Training Facility | Schofield |
| 2005 | 57406 | Road Construction, Schofield to Helemano | Schofield to Helemano |
| 2006 | 57412 | Construct Tank Trail, Pohakuloa to Kawaihae | Pohakuloa |
| 2004 | 57461 | Multipurpose Qualification Complex, QTR1 | Schofield |
| 2004 | 57802 | Land Easement, Schofield to Helemano | Schofield to Helemano |
| 2005 | 58143 | Urban Assault Course and Training Facilities | Schofield |
| 2006 | 58273 | Land Easement and Tank Trail, Pohakuloa to Kawaihae | Pohakuloa |
| 2004 | 55270 | South Range Land Acquisition | Schofield |
| 2006 | 56994 | Range Maintenance Facility | Pohakuloa |
| 2006 | 57408 | Runway Upgrade and Extension, Bradshaw Army Air Field | Pohakuloa |
| 2005 | 57416 | Tactical Vehicle Wash Facility | Schofield |
| 2005 | 57421 | Motor Pool Maintenance Shops | Schofield |
| 2005 | 57462 | Multipurpose Qualification Range, QTR 2 | Schofield |
| 2005 | 58144 | Battle Area Complex (BAX) | Schofield |
| 2006 | 58161 | Land Easement and Construction of Road | Schofield to Dillingham |
| 2005 | 58165 | Installation Information Infrastructure | Pohakuloa |
| 2005 | ????? | Fixed Tactical Internet | Pohakuloa |

1/30/04

| Fiscal Year | Project Number | Project Name | Sub-Installation of Project Location |
|---|---|---|---|
| 2005 | ????? | Fixed Tactical Internet | Schofield, Dillingham |
| 2007 | 56923 | Range Control Facility | Schofield |
| 2006 | 57405 | Upgrade Airfield for C-130 Aircraft | Wheeler |
| 2005 | 57411 | West PTA Maneuver Training Area Land Acquisition | Pohakuloa |
| 2006 | 57414 | Tactical Vehicle Wash Facility | Pohakuloa |
| 2006 | 57417 | Ammunition Storage | Pohakuloa |
| 2005 | 57422 | Multiple Deployment Facility | Wheeler |
| 2007 | 57415 | Tactical Vehicle Wash Facility | Kahuku |

1/30/04

# APPENDIX B
# ARCHAEOLOGICAL SITE MONITORING
# AND
# ARCHAEOLOGICAL SITE PROTECTION OPTIONS

**Archaeological Site Monitoring**

**Monitoring Sites for Major Training**
Archaeological sites located in areas of troop concentrations (e.g., favored bivouac sites, fixed firing points, maneuver areas) will be monitored (inspected) on a regular basis to identify impacts from training. If necessary, the Installation will implement site protection measures for threatened sites if prudent (e.g., flagging, fencing), and to monitor the effectiveness of such measures. For the first year after the signing of this Programmatic Agreement, this will be done whenever a unit departs a Training Area, or range, and immediately following the training exercise. The monitor may accompany Range Control personnel in their regular performance of the clearance inspection before the unit departs the field (U.S. Army 1993: Chapter 2, Section 2-4b). After the first year, the monitoring will occur quarterly or after every major exercise involving battalion or larger units.

**Monitoring Sites for Other Reasons**
Monitoring of archaeological site conditions will be scheduled for other actions that will permit large numbers of personnel into areas of concentrated archaeological sites for a protracted period of time (e.g., construction of a new firebreak road or upgrading facilities), or in response to any report of non-permitted site access or vandalism. All archaeological sites within the actively used training areas will be monitored quarterly after the first year of this Programmatic Agreement.

**Monitoring Records**
All site monitoring will be documented, including date, name and title or rank of inspector, reason for inspection (e.g., name of military training unit and/or maneuver), sites visited, observed site conditions, and recommended site protection actions as appropriate. Sketch maps and/or photographs showing changes in site conditions will be included in the monitoring documentation record. For particular sites it may be advantageous to establish photographic vantage points, with photographs taken during each monitoring episode. Site monitoring efforts will be reported by the Installation Cultural Resources Manager (CRM) in the annual report.

**Reporting Site Damage**
The CRM will report to the Range Officer within 48 hours of his or her notice that humans or natural agents have damaged an archaeological site. The CRM's report will include (1) the circumstances of the site damage such as how and when the damage occurred and who was responsible, (2) assessment of the nature and extent of site damage including first-hand observations made by the CRM and/or his or her representative, with

1/30/04

reference to site conditions documented prior to the damage, (3) recommendations for treatment of the damaged site such as data recovery excavation or site fencing, and (4) suggestions to avoid damage to other sites potentially threatened by similar circumstances. Acting as the Installation Commander's representative, the CRM will notify the Hawai'i SHPO and OHA telephonically, via e-mail, or with written correspondence within five working days of the discovery and consult about treatment of the damaged resource. All incidents involving damage to archaeological sites will be summarized in the annual report.

**Archaeological Site Protection Options.**

The three management options for protecting sites are:

1.  Manage sites in place as Training Restriction Areas
2.  Establish physical barriers
3.  Recover and document site data through the guided, intensive study of the research design.

Archaeological sites can be integrated into a military training scenario, for example, by assuming the role of training hazards (e.g., mine fields), thus protecting the sites while enhancing the training activity.

Individual archaeological sites or site concentrations threatened by military operations may be placed within designated *Exclusion Areas*, with corresponding land use regulations made part of the regular SOP for Installation users. The site concentration might be designated an exclusion area on updated versions of the Installation map, with users informed of the land use regulations via the *External SOP* or simple informative handouts. Site conditions within the exclusion area would be inspected periodically to ensure that this level of protection is adequate to preserve the resources.

Those archaeological resources subjected to ongoing or repeated, degrading impacts from human agents or other causes including feral game may best be managed by site fencing. Fenced sites will require periodic monitoring to ensure that the barriers remain in place and the markings do not unduly attract site vandals.

For less complex sites characterized by few data potentials and of no special importance to contemporary Native Hawaiians, data recovery study programs will be the most cost-effective management approach, especially for sites located in areas of more intensive military land-use.

1/30/04

# APPENDIX C
## INADVERTENT DISCOVERY PLAN

1. Any employee (or contractor in the employ) of the Installation who knows or has reason to know that human remains or cultural items have been inadvertently discovered on land owned or controlled by the Installation, shall provide immediate telephone notification of the discovery, with written back-up to the Garrison Commander and the Installation Cultural Resources Manager.

2. The employee or contractor shall also stop any activity in the area of the discovery and make a reasonable effort to protect the human remains and cultural items.

3. Once contacted regarding an inadvertent discovery, the Installation will make an in situ examination of the condition, antiquity and cultural affiliation of the human remains and cultural items based upon applicable professional standards to determine whether the remains and cultural items are Native Hawaiian.

4. If the examination determines that the human remains or cultural items are Native Hawaiian, the Installation shall notify the State Historic Preservation Division, OHA and the appropriate Burial Council telephonically, via e-mail, or with written correspondence within 48 hours.

5. If the human remains and cultural items cannot be left in situ, their excavation and removal shall be undertaken by professional archaeologists employed by the Installation within 15 working days from the initial contact between the Installation and the Burial Council.

6. Prior to disposition of the human remains and cultural items, the Installation shall publish a general notice of the proposed disposition in a newspaper of general circulation in the area in which the remains were recovered. The notice shall provide information as to the nature and cultural affiliation of the remains and cultural items and shall solicit further claims of ownership. The notice shall be published at least twice, at one-week intervals, and transfer shall not takes place until 30 days after the second notice to allow for any additional claimants to come forward.

7. If re-interment is on land owned or controlled by the Installation, the location of the re-interment shall only be reported to the claimant, the Garrison Commander, and the Cultural Resources Manager for the Installation.

1/30/04

## APPENDIX D
## CONSULTING PARTIES AND HAWAIIAN ORGANIZATIONS, GROUPS, AND INDIVIDUALS

Consulting Parties, Hawaiian organizations, families, and individuals include, but are not limited to:

Office of Hawaiian Affairs Trustees

Associations of Hawaiian Civic Clubs

Life of the Land

Kamehameha Schools Trustees

Royal Order of Kamehameha, Hilo

Mr. Tom Leuchanko, Kahu of Kukaniloko

Kalani Flores, Kahuokahiku

Royal Order Of Kamehameha I (Statewide Organization)

Royal Order Of Kamehameha I, Hawai`i Chapter

Friends Of Honouliuli

Hawaiian Civic Club Of Wahiawa

Northshore Community Land Trust

The Friends Of Kukaniloko

`Ike`Aina – Native Hawaiian Land Trust

Wahiawa Community Business Association

Pohakuloa Training Area Cultural Advisory Committee (PTACAC)

Paniolo Preservation Society

22

Chronology of Meetings with Native Hawaiians Groups, Organizations
and Individuals for SBCT – Related Issues

Summary:  Since the inception of the SBCT program, USAG-HI has had numerous formal and informal meetings, numerous cultural access site visits, continuous email and telephone communication with the group, and provided the group with reports, maps, and training.

Section 106/110  Development of PA for SBCT

3/8/02 - Brief to OHA on PA – Oahu

5/9/02 - Cultural access to Maunauna – WAAF (1 person)

5/13/02 - Brief to OHA – Kona office

6/26/02 - Brief to Sierra Club

8/19/ 02 - Cultural Advisory Committee PTA

8/20/02 - OHA Kona and Hilo

9/9/02 - Cultural Advisory Committee PTA

10/18/02 - Section 106 workshop and SBCT OHA Mauna Lani

10/21/02 - Cultural Advisory Committee PTA

11/4/02 - Royal Order of Kamehameha  Kona

11/18/02 - Meeting with PTA Cultural Advisory Committee

2003
1/13/03 - Cultural Advisory Committee tour PTA

3/12/03 - Meeting with Oahu Island Burial Council

3/20/03 - Meeting with Hawaii Island Burial Council

3/24/03 - Meeting with Cultural Advisory Committee PTA

*Attachment 2. to Attachment 1*

4/14/03 - Meeting with Cultural Advisory Committee PTA
Chronology continued

4/22/03 - Meeting with OHA, Honolulu Office

4/23/03 - Meeting with Oahu Island Cultural Advisory Committee.

5/5/03 - Meeting with Waimea Civic Club, Island of Hawaii

6/3/03 Cultural access to Schofield Barracks and South Range Land Acquisition Area

7/10/03 Consultation meeting at Bldg 105 WAAF regarding controlled burn on
McCarthy Flats and South Range Land Acquisition (3 people)

7/28/03 - Consultation meeting regarding South Range and McCarthy Flats (2 people)

9/23/03 - Oahu Island Cultural Advisory Committee Meeting (11 people)

10/18/03 - Cultural access and SBCT project area site visit to Kahuku Training Area (6
people)


Implementation of PA

2004

3/13/04 – Cultural access to SBCT project areas - Kolekole Pass, Kalakaua Golf Course,
Mauna Una, Ku Tree Dam and Oahunui  (8 people)

6/18/04 – Cultural access, SBCT project area site visit to Schofield Barracks East Range

6/22/04  - Meeting with Cultural Advisory Committee PTA

8/20/04 - Meeting with Cultural Advisory Committee PTA

8/11/04 – Meeting at Wahiawa Civic Club to discuss Cultural Monitoring Program

9/11/04 – Meeting at Waialua Courthouse to discuss Cultural Monitoring Program

9/14/04 – Fieldtrip with Leimaile, Elaine, & Keala to look at SBCT project areas

9/15/04  to  present - Cultural monitors start receiving daily info from GANDA/DPW
(telephonically at first, then email of daily logs)

9/24/04 - Meeting with Cultural Advisory Committee PTA

10/18/04 – 40 hour HAZWOPR training course for 20 cultural monitors

10/30/04 – Cultural Access to Maunauna site (13 people)

11/5/04 - Meeting with Cultural Advisory Committee PTA

11/4/04 – Cultural monitor Meeting at Waialua Courthouse

11/21/04 – Cultural Access / healing ceremony at Site 5448 (10 people)

11/28/04 – Cultural Access to QTR1 project area (9 people)

12/4/04 – Cultural Access to BAX project area (12 people)

12/9/04 - Meeting with Cultural Advisory Committee PTA

12/28/04 – Cultural Access to Site 6561 (9 people)

12/30/04 – Cultural Access to vicinity of Hale'au'au Heiau (10 people)


2005
1/19/05 – Meeting with Kahunana and Koa Mana at DPW

1/28/05 - Meeting with Cultural Advisory Committee PTA

1/31/05 – Garrison Commander meeting with Kahunana

2/4/05 – Meeting with Kahunana on cultural monitoring

2/19/05 – Cultural Access to Urban Assault Course Project Area and Site 5448 (5 people)

2/25/05 - Meeting with Cultural Advisory Committee PTA

2/26/05 – Cultural Access to Urban Assault Course vicinity and sites in SRLA area
(5437, 5438, 5439, 5440, and 5441) (3 people)

3/15/05 - Meeting between Kahunana, Koa Mana, OHA and Garrison Commnader

3/18/05 - Meeting with Cultural Advisory Committee PTA

3/22/05 - Garrison Commander meeting with Kahunana

4/13/05 – Meeting with Kahunana at Wahiawa Police Station

4/29/05  - Meeting with Cultural Advisory Committee PTA

5/11/05 – Meeting with Kahunana at Wahiawa Civic Club

5/15/05 – Cultural Access to South Range Land Acquisition Area

5/17/05 – Kahunana / Koa Mana meeting with Garrison Commander

5/26/05 – Meeting with cultural monitors

6/5/05 – Cultural access to Kahuku CACTF project area (2 people)

6/8/05 – Meeting with Kahunana 5-7 PM (5 people)

6/9/05 - Meeting with Cultural Advisory Committee PTA

6/11/05 – Cultural access to Kahuku CACTF project area (3 people)

6/25/05 – Cultural access to Helemano Road / Drum Road / KTA (7 people)

6/17/05 – Cultural access to Kahuku CACTF project area (16 people)

7/18/05 – 40 hour HAZWOPR training course for cultural monitors (8 people)

7/30/05 – Cultural access to Kahuku Training Area (8 people)

8/27/05 – Cultural access to Kahuku Training Area (32 people)

9/23/05 - Meeting with Cultural Advisory Committee PTA

9/27/05 – BAX mitigation meeting on berm to protect Hale'au'au Heiau held – Kahunana did not attend (3 people)

11/11/05 – BAX mitigation fieldtrip to overlook berm / Hale'au'au heiau (4 people)

12/22/05– Cultural access to Kahuku Training Area for plant collection (1 person)


2006
1/12/06 – Cultural Monitoring meeting

1/27/06 - Meeting with Cultural Advisory Committee PTA

2/2/06 – Cultural Monitoring meeting

2/22/06 – Cultural Access to the MDF project area

2/23/06 – Cultural Access to SB South Range / Shoothouse Trail project area

3/14/06 – Kahunana / Koa Mana meeting with COL Killian

3/19/06 – Koa Mana cultural access across Kolekole pass to Kukaniloko

4/11/06 – Cultural access to WAAF for equestrian trails and MDF projects

4/18/06 – Meeting with Kahunana regarding QTR1 and GANDA TS210

5/5/06  - Meeting with Cultural Advisory Committee PTA

5/11/06 – QTR1 new target location survey

5/19/06 – Cultural access for QTR1 new target site visit and vegetation clearance at
TS210

6/3/06 – Cultural access to Drum Road (4 people)

6/7/06 – Meeting with Kahunana (2 people)

6/10/06 – Cultural access to Drum Road (1 person)

6/12/06 – Cultural access to QTR1 Firebreak road project area (2 people)

7/21/06  - Meeting with Cultural Advisory Committee PTA

7/25/06 – Meeting between Garrison Commander, Koa Mana, and Kahunana.

8/10/06 - Meeting between Garrison Commander, Koa Mana, and Kahunana

8/24/06 - Meeting between Garrison Commander, Koa Mana, and Kahunana

8/28/06 – Garrison Commander met with Ahu Kukaniloko and OHA

8/28/06 – Meeting with Koa Mana on various issues including TCP survey for Lihue

9/14/06 - Meeting between Garrison Commander, Koa Mana, and Kahunana

9/26/06 - Meeting between Garrison Commander, Koa Mana, and Kahunana

# SBCT Report Distribution List
# for Island of Oahu

Mr. Peter Young
State Historic Preservation Officer
Kakuhihewa Building, Room 555
601 Kamokila Boulevard
Kapolei, HI 96707

Mr. John M. Fowler
Advisory Council on Historic Preservation
Old Post Office Building
1100 Pennsylvania Avenue, NW, Suite 809
Washington, DC 20004

Mr. Clyde Namuo
Administrator
Office of Hawaiian Affairs
711 Kapiolani Boulevard, Suite 500
Honolulu, HI 96813

Mr. Jace McQuivey
Oahu Island Burial Council
HRI
55-510 Kamehameha Highway
Laie, HI 96762

Mr. Edward Ayau, Po'o
Hui Malama I Na Kupuna O Hawai'i Nei
P.O. Box 365
Hoolehua, HI 96729

Mr. Charles Maxwell
Kahu, President Board of Directors
Hui Malama I Na Kupuna O Hawai'i Nei
157 'Ale'a Place
Pukalani, HI 96768

Mr. Tom Lenchanko
Waha olelo 'Aha Kukaniloko
931 Uakanikoo Street
Wahiawa, HI 96786

Ms. Elaine Jackson-Retondo
National Park Service
1111 Jackson Street, Suite 700
Oakland, CA  94607

Mr. Alika Silva
Koa Mana
85-140 Maiuu Road
Waianae, HI 96792

Ms. Kirsten Faulkner
Executive Director
Historic Hawaii Foundation
681 Iwilei Road
Suite 690
Honolulu, Hawaii  96817

Catherine Lentz
Environmental Specialist
National Park Service
300 Ala Moana Blvd.
Room 6-226
Box 50165
Honolulu, Hawaii  96850

Mrs. Leimaile Quitevis
136A Lakeview Circle
Wahiawa, HI 96786

*Attachment 3 to Attachment 1*

# SBCT Report Distribution List
## for Island of Hawaii

Mr. Peter Young
State Historic Preservation Officer
Kakuhihewa Building, Room 555
601 Kamokila Boulevard
Kapolei, HI 96707

Mr. John M. Fowler
Advisory Council on Historic Preservation
Western Office of Federal Agency Programs
12136 West Bayaud Avenue, #330
Lakewood, Colorado 80226

Mr. Clyde Namuo
Administrator
Office of Hawaiian Affairs
711 Kapiolani Boulevard, Suite 500
Honolulu, Hawaii 96813

Dr. Elaine Jackson-Retondo
Cultural Resources Team
National Park Service
1111 Jackson Street, Suite 700
Oakland, California 94607

Mr. Kunani Nihipali, Po`o
Hui Malama I Na Kupuna O Hawai`i Nei
417-H Uluniu Street
Kailua, HI 96734

Mr. Charles Kui Hin Young
Hawaii Island Burial Council
C/O Burials Program, Hawaii Historic
Preservation Division
Kakuihihewa Building, Room 555
601 Kamokila Boulevard
Kapolei, Hawaii 96707

Norman Gonsalvas
Kahu O Kahiko Inc.
65-1158 Mamalahoa Hwy. 8A
Kamuela, HI 96743

Ms. Kirsten Faulkner
Executive Director
Historic Hawaii Foundation
P. O. Box 1658
Honolulu, HI 96806

Wilmette Akima
President
Waimea Hawaiian Civic Club
P.O. Box 6305
Kamuela, HI 96743

National Park Service –
Pu'ukohola Heiau National Historic Site
62-3601 Kawaihae Road
Kawaihae, HI 96743

Laura Carter Schuster
Branch Chief, Cultural Resources
Hawaii Volcanoes National Park
1 Crater Rim Drive
P.O. Box 52
Hawaii National Park, Hawaii 96718

*Attachment 4*
*to Attachment 1*

# REPORTS GENERATED FOR SBCT RELATED PROJECTS

Buffum, Amy L. and John A. Peterson
  2005    *FINAL DRAFT: Intensive Archaeological Survey of McCarthy Flats and Battle Area Complex (BAX) Training Range Construction Projects for the Stryker Brigade Combat Team (SBCT), U.S. Army Hawaii, Schofield Barracks, Wai'anae Uka Ahupua'a, Wahiawā District, Island of O'ahu, Hawai'i (TMK 7-7-01).* Volume II: 2004 Survey Results. Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009. Garcia and Associates, Kailua, Hawai'i, March 2005.

  2005    *FINAL: Intensive Archaeological Survey of McCarthy Flats and Battle Area Complex (BAX) Training Range Construction Projects for the Stryker Brigade Combat Team (SBCT), U.S. Army Hawaii, Schofield Barracks, Wai'anae Uka Ahupua'a, Wahiawā District, Island of O'ahu, Hawai'i (TMK 7-7-01).* Volume II: 2004 Survey Results. Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009. Garcia and Associates, Kailua, Hawai'i, June 2005.

  2005    *PRELIMINARY DRAFT: Intensive Archaeological Survey of McCarthy Flats and Battle Area Complex (BAX) Training Range Construction Projects for the Stryker Brigade Combat Team (SBCT), U.S. Army Hawaii, Schofield Barracks, Wai'anae Uka Ahupua'a, Wahiawā District, Island of O'ahu, Hawai'i (TMK 7-7-01).* Volume III: 2005 Survey Results. Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009. Garcia and Associates, Kailua, Hawai'i, November 2005.

  2006    *FINAL: Intensive Archaeological Survey and Monitoring of McCarthy Flats and Battle Area Complex (BAX) Training Range Construction Projects for the Stryker Brigade Combat Team (SBCT), U.S. Army Hawaii, Schofield Barracks, Wai'anae Uka Ahupua'a, Wahiawā District, Island of O'ahu, Hawai'i (TMK 7-7-01).* Volume III: 2005 Survey Results. Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009. Garcia and Associates, Kailua, Hawai'i, March 2006.

Buffum, Amy L., Michael Desilets, Stephen Roberts, Jen Robins, and Alice K. S. Roberts
  2004    *FINAL REPORT: Archaeological Surveys of Proposed Training Areas for the Stryker Brigade Combat Team (SBCT) U.S. Army Hawaii, Schofield Barracks Hawaii.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0013. Task Order No. 0012. Garcia and Associates, Kailua, Hawai'i, July 2004.

DeBaker, C., M. Desilets

*Attachment 5.*
*to Attachment 1*

2006    *Archaeological and Cultural Monitoring of Soil Testing and Construction Related Activities for Stryker Brigade Combat Team Transformation Projects, Oahu and Hawaii Islands, Hawai'i* (Contract No. DACA83-01-D-0011, Task Order No. 0012). Report prepared for the U.S. Army Corps of Engineers by Garcia and Associates, Kailua.

Desilets, Michael
    2005    *Archaeological Monitoring Plan for Construction and Construction Related Activities on O'ahu and Hawai'i Island for Transformation to a Stryker Brigade Combat Team, U.S. Army Garrison, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0012. Garcia and Associates, Kailua, Hawai'i, Report No. 2064-3, February 2005.

    2005    *Archaeological Monitoring Plan for Construction and Construction Related Activities on O'ahu and Hawai'i Island for Transformation to a Stryker Brigade Combat Team, U.S. Army Garrison, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0012. Garcia and Associates, Kailua, Hawai'i, Report No. 2064-1, May 2005.

Desilets, Michael and Cassidy DeBaker
    2006    FINAL—*Archaeological and Cultural Monitoring Plan for Construction of the Battle Area Complex for the Stryker Brigade Combat Team, Schofield Barracks Military Reservation, Island of O'ahu, Hawai'i, TMK 7-7-01.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0014. Garcia and Associates, Kailua, Hawai'i, Report No. 2075-1, June 2006.

Desilets, Michael, David Lawrence Brown, and John A. Peterson
    2005    DRAFT—*Archaeological Monitoring Plan for Construction of the Battle Area Complex for the Stryker Brigade Combat Team at Schofield Barracks Military Reservation, Island of O'ahu, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0014. Garcia and Associates, Kailua, Hawai'i, Report No. 2075-AMP, June 2005.

Desilets, Michael and Esme Hammerle
    2005    DRAFT—*Archaeological and Cultural Monitoring Plan for Construction of the Multiple Deployment Facility at Wheeler Gulch for the Stryker Brigade Combat Team, Wheeler Army Air Field, O'ahu Island, Hawai'i, TMK 7-7-06.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. W9128A-05-P-0007. Task Order No. 0001. Garcia and Associates, Kailua, Hawai'i, Report No. 2081-ACMP, October 2005.

Desilets, Michael and John A. Peterson

2005   *DRAFT—Archaeological Monitoring Plan for Construction of Combined Arms Collective Training Facility, Kahuku Training Area, O'ahu Island, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0017. Garcia and Associates, Kailua, Hawai'i, Report No. 2078-AMP, July 2005.

2005   *DRAFT—Cultural Monitoring Plan for Construction of Combined Arms Collective Training Facility, Kahuku Training Area, O'ahu Island, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0017. Garcia and Associates, Kailua, Hawai'i, Report No. 2078-CMP, July 2005.

2005   *FINAL—Cultural Monitoring Plan for Unexploded Ordnance Surface and Subsurface Clearance Activities at Combined Arms Collective Training Facility, Kahuku Training Area, O'ahu Island, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0015. Garcia and Associates, Kailua, Hawai'i, Report No. 2076-CMP, July 2005.

Desilets, Michael and Jennifer J. Robins

2004   *Archaeological Monitoring Plan for Construction of the Qualification Training Range-1 for the Stryker Brigade Combat Team at Schofield Barracks, Wai'anae Uka Ahupua'a, O'ahu Island, Hawai'i (TMK 7-7-01).* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0010. Garcia and Associates, Kailua, Hawai'i, January 2004.

2005   *Archaeological Monitoring Plan for Construction of the Qualification Training Range-1 for the Stryker Brigade Combat Team at Schofield Barracks, Wai'anae Uka Ahupua'a, O'ahu Island, Hawai'i (TMK 7-7-01).* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0010. Garcia and Associates, Kailua, Hawai'i, Report No. 2061-1, February 2005.

Desilets, Michael and Karl Van Ryzin

2005   *DRAFT—Archaeological and Cultural Monitoring Plan for Construction of Qualification Training Range II, South Range Acquisition Area, Schofield Barracks Military Reservation, O'ahu Island, Hawai'i TMK 92-05:2.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0018. Garcia and Associates, Kailua, Hawai'i, Report No. 2080-ACMP, November 2005.

2006   *FINAL—Archaeological and Cultural Monitoring Plan for Construction of Qualification Training Range II, South Range Acquisition Area, Schofield Barracks Military Reservation, O'ahu Island, Hawai'i TMK 92-05:2.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0018. Garcia and Associates, Kailua, Hawai'i, Report No. 2080-ACMP, January 2006.

Garcia and Associates (GANDA)

2005   *DRAFT—Site Protection Plan During Construction in the Proposed Qualification Training Range-1 and Battle Area Complex for the Stryker Brigade Combat Team (SBCT) at Schofield Barracks, Hawaii U.S. Army Hawaii, Schofield Barracks, Wai'anae Uka Ahupua'a, Hawai'i (TMK 7-7-01).* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009. Garcia and Associates, Kailua, Hawai'i, March 2005.

2005   *DRAFT—Site Protection Plan During Construction in the Proposed Qualification Training Range-1 and Battle Area Complex for the Stryker Brigade Combat Team (SBCT) at Schofield Barracks, Hawaii U.S. Army Hawaii, Schofield Barracks, Wai'anae Uka Ahupua'a, Hawai'i (TMK 7-7-01).* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009. Garcia and Associates, Kailua, Hawai'i, April 2005.

Gilda, Laura

2005   *Archaeological Monitoring of Environmental Testing for STRYKER Brigade Combat Team (SBCT) Support Facilities Qualification Training Range II (QTR-2), Motor Pool, and Deployment Storage Area (DSA), O`ahu island (TMK: 9-2-05).* Prepared for Environmental Division, Directorate of Public Works, U.S. Army Garrison, Hawaii, Schofield Barracks.

Hammerle, Esme and Michael Desilets

2005   *DRAFT—Archaeological and Cultural Monitoring Plan for Construction of the Urban Assault Course at Schofield Barracks Training Range for the Stryker Brigade Combat Team, O'ahu Island, Hawai'i TMK 7-7-01.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. W9128A-05-D-0007. Task Order No. 0002. Garcia and Associates, Kailua, Hawai'i, Report No. 2082-ACMP, October 2005.

2005   *DRAFT—Archaeological and Cultural Monitoring Report for Construction of Alert Holding Area at Wheeler Gulch for the Stryker Brigade Combat Team, Wheeler Army Air Field, Wai'anae Uka Ahupua'a, O'ahu Island, Hawai'i TMK 7-7-06.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0020. Garcia and Associates, Kailua, Hawai'i, Report No. 2079-ACMR, December 2005.

2006    *Archaeological and Cultural Monitoring for Construction of Alert Holding Area and Soil Testing at the Proposed multiple Deployment Facility, Waiele Gulch, Wheeler Army Air Field, Wai'anae Uka Ahupua'a, O'ahu Island, Hawai'i TMK (1) 7-7-01:1.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. W9128A-05-P-0018. Garcia and Associates, Kailua, Hawai'i, Report No. 2079-1, March 2006.

2006    *FINAL—Archaeological and Cultural Monitoring Plan for Construction of the Urban Assault Course at Schofield Barracks Training Range for the Stryker Brigade Combat Team, O'ahu Island, Hawai'i TMK 7-7-01.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. W9128A-05-D-0007. Garcia and Associates, Kailua, Hawai'i, Report No. 2082-ACMP, March 2006.

McGerty, Leann and Laura C. O'Rourke

2005    *DRAFT REPORT—Phase II Archaeological Evaluation of Sites 5487 and 191, Dillingham Military Reservation, Island of O'ahu, Hawai'I [TMK 6-8-01, 02, 14].* Prepared for Environmental Division, Directorate of Public Works, U.S. Army Garrison, Hawaii, Schofield Barracks. Contract No. DAMD 17-01-2-0006, Task Order 0008. Scientific Consultant Services, Honolulu, Hawaii, December 2005.

McGerty, Leann and Robert L. Spear

2004    *DRAFT REPORT—A Planning-Level Traditional Cultural Places (TCP) Survey of Kahuku Training Area (KTA) and Kawailoa Training Area (KLOA), U.S. Army Garrison, Hawai'i, Island of O'ahu, Hawai'i.* Prepared for Environmental Division, Directorate of Public Works, U.S. Army Garrison, Hawaii, Schofield Barracks. Contract No. DAMD 17-01-2-0006, Task Order 0001. Scientific Consultant Services, Honolulu, Hawaii, October 2004.

Peterson, John A.

2005    *Cultural Monitoring Plan for Construction and Construction Related Activities on O'ahu and Hawai'i Island for Transformation to a Stryker Brigade Combat Team, U.S. Army Garrison, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0012. Garcia and Associates, Kailua, Hawai'i, Report No. 2064-1, April 2005.

Peterson, John A. and Michael Desilets

2005    *Cultural Monitoring Plan for Intensive Survey to Determine Significance of Cultural Resources in the Proposed Qualification Training Range-1 and Battle Area Complex for the Stryker Brigade Combat Team at Schofield Barracks, Wai'anae Uka Ahupua'a, O'ahu Island, Hawai'i (TMK 7-7-01).* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009, Modification 02. Garcia and Associates, Kailua, Hawai'i, Report No. 2059-1, May 2005.

2005    *DRAFT—Archaeological Monitoring Plan for Unexploded Ordnance Surface and Subsurface Clearance Activities at Combined Arms Collective Training Facility, Kahuku Training Area, O'ahu Island, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0015. Garcia and Associates, Kailua, Hawai'i, Report No. 2076-1, June 2005.

2005    *DRAFT—Cultural Monitoring Plan for Unexploded Ordnance Surface and Subsurface Clearance Activities at Combined Arms Collective Training Facility, Kahuku Training Area, O'ahu Island, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0015. Garcia and Associates, Kailua, Hawai'i, Report No. 2076-2, June 2005.

2005    *FINAL—Archaeological Monitoring Plan for Unexploded Ordnance Surface and Subsurface Clearance Activities at Combined Arms Collective Training Facility, Kahuku Training Area, O'ahu Island, Hawai'i.* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0015. Garcia and Associates, Kailua, Hawai'i, Report No. 2076-AMP, July 2005.

Peterson, John A. and Jennifer Robins
    2005    *DRAFT—Cultural Monitoring: For Intensive Survey to Determine Significance of Cultural Resources in the Proposed Qualification Training Range-1 and Battle Area Complex for the Stryker Brigade Combat Team (SBCT) at Schofield Barracks, Wai'anae Uka Ahupua'a, O'ahu Island, Hawai'i (TMK 7-7-01).* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009, Modification 02. Garcia and Associates, Kailua, Hawai'i, January 2005.

    2005    *Cultural Monitoring Plan: For Intensive Survey to Determine Significance of Cultural Resources in the Proposed Qualification Training Range-1 and Battle Area Complex for the Stryker Brigade Combat Team at Schofield Barracks, Wai'anae Uka Ahupua'a, O'ahu Island, Hawai'i (TMK 7-7-01).* Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0009, Modification 02. Garcia and Associates, Kailua, Hawai'i, February 2005.

Roberts, A.K.S., S. Roberts, M. Desilets, A. Buffum, and J. Robins
2004    *Archaeological Reconnaissance Survey of U.S. Army Schofield Barracks Military Reservation, South Range Land Purchase, Oahu Island, Hawaii* (Contract No. DACA83-01-D-0013, Task Order No. 0011 TMK 9-2-05:2, 13, 14). Report prepared for the U.S. Army Corps of Engineers by Garcia and Associates, Kailua.

Roberts, Stephen, Alice K. S. Roberts, and Laura Gilda
  2005   *Draft: Intensive Phase II Survey for Significance Determination of Cultural Resources, South Range Land Acquisition for the Stryker Brigade Combat Team, Schofield Barracks Military Reservation, Oahu Island, Hawaii (TMK 9-2-05)*. Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0002. Garcia and Associates, Kailua, Hawaiʻi, January 2005.

Robins, Jennifer J., Amy L. Buffum, Cassidy R. DeBaker, and Alice K. S. Roberts
  2004   *DRAFT REPORT: Intensive Archaeological Survey of McCarthy Flats and Battle Area Complex (BAX) Training Range Construction Projects for the Stryker Brigade Combat Team (SBCT), U.S. Army Hawaii, Schofield Barracks, Waiʻanae Uka Ahupuaʻa, Wahiawā District, Island of Oʻahu, Hawaiʻi (TMK 7-7-01)*. Volume I: 2003 Survey Results. Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0004. Garcia and Associates, Kailua, Hawaiʻi, February 2004.

  2004   *FINAL REPORT: Intensive Archaeological Survey of McCarthy Flats and Battle Area Complex (BAX) Training Range Construction Projects for the Stryker Brigade Combat Team (SBCT), U.S. Army Hawaii, Schofield Barracks, Waiʻanae Uka Ahupuaʻa, Wahiawā District, Island of Oʻahu, Hawaiʻi (TMK 7-7-01)*. Volume I: 2003 Survey Results. Prepared for U.S. Army Engineer District, Honolulu. Contract No. DACA83-03-D-0011. Task Order No. 0004. Garcia and Associates, Kailua, Hawaiʻi, October 2004.

Robins, J., C. DeBaker, and A.K.S. Roberts
  2005   *Intensive Archaeological Survey of McCarthy Flats and Battle Area Complex (BAX) Training Range Construction Projects for the Stryker Brigade Combat Team (SBCT) U.S. Army Hawaii, Schofield Barracks, Waianae Uka Ahupuaa, Wahiawa District, Island of Oahu, Hawaii (TMK 7-7-01): Volume I- 2003 Survey Results* (Contract No. DACA83-03-D-0011, Task Order No. 0004). Report prepared for the U.S. Army Corps of Engineers by Garcia and Associates, Kailua.

Zulick, Loren
  2005   *DRAFT REPORT—Significance Evaluations of Four Cultural Sites Within the Stryker Brigade Combat Team Proposed Tactical Vehicle Wash and Combined Arms Collective Training Facility Footprints, Kahuku Training Area, Kahuku, Hawaii*. Prepared for Environmental Division, Directorate of Public Works, U.S. Army Garrison, Hawaii, Schofield Barracks. U.S. Army Corps of Engineer District, Honolulu, Hawaii.

2006   *FINAL REPORT—Significance Evaluations of Four Cultural Sites Within the Stryker Brigade Combat Team Proposed Tactical Vehicle Wash and Combined Arms Collective Training Facility Footprints, Kahuku Training Area, Kahuku, Hawaii.* Prepared for Environmental Division, Directorate of Public Works, U.S. Army Garrison, Hawaii, Schofield Barracks. U.S. Army Corps of Engineer District, Honolulu, Hawaii.