cates a clear probability that he "would be" persecuted upon his return to post-Duvalier Haiti.[9] Desir has referred to, but did not submit to the BIA nor to this court, materials indicating that repression continues in Haiti despite the exit of the Duvalier regime and the order that the Macoutes be disbanded. We do not doubt that this failure was due to the fact that, when Desir presented his evidence to the IJ, the events of which we now take judicial notice had not yet occurred. Given our holding that resistance to official government extortion may constitute expression of a political opinion for the purpose of section 101(a)(42), it follows that facts which Desir has not yet had an opportunity to develop may form the basis for a valid claim under section 243(h)(1). Accordingly, we vacate the determination of the district court as to this claim, and remand for a determination of whether Desir now faces a clear probability of persecution should he be returned to Haiti.[10] See, e.g., Del Valle, 776 F.2d at 1414. Upon remand, Desir will have the opportunity to demonstrate facts regarding the treatment of persons like himself in post-Duvalier Haiti.

V

We reverse the district court's denial of Desir's habeas petition. The case is remanded to the district court, with instructions to remand to the Attorney General for the exercise of his discretion under section 208(a) of the Act and for further proceedings on the prohibition of deportation claim under section 243(h) of the Act, not inconsistent with this opinion.

REVERSED and REMANDED.

---

9. As did the district court, we take judicial notice of the fact that President Duvalier fled Haiti on February 6, 1986, and that the successor government ordered that the Macoutes be disbanded.

10. Nor is this question foreclosed by our holding that Desir established prima facie eligibility for a grant of asylum. Despite prima facie eligibility, the Attorney General still has discretion to refuse a grant of asylum. 8 U.S.C. § 1158(a). Prohibition against deportation under section 243(h)(1), however, is mandatory; once the alien has established eligibility therefore, the Attorney General has no discretion to deport the alien. See Bolanos-Hernandez, 767 F.2d 1277.

---

KERN OIL & REFINING CO.,
Plaintiff/Counter-Defendant/Appellee,

v.

TENNECO OIL COMPANY,
Defendant/Counter-Claimant/Appellant.

Nos. 86-6674, 87-5743.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1987.

Decided March 7, 1988.

Oil refiner brought breach of contract action against supplier. The United States District Court for the Central District of California, Laughlin E. Waters, J., held for refiner, and supplier appealed. The Court of Appeals, Sneed, Circuit Judge, held that: (1) district court had jurisdiction to enter findings of fact and conclusions of law; (2) contract claim was not time barred; (3) refiner did not waive claim of breach by its course of performance; (4) refiner did not violate duty to mitigate damages; and (5) equitable prejudgment interest was available under Texas law.

Affirmed.

1. Federal Courts ⚖=681

District court had jurisdiction to enter findings of fact and conclusions of law after entering final judgment, notwithstanding intervening filing of notice of appeal; divestiture of jurisdiction upon appeal is judicial doctrine which would not be employed to defeat its purposes or induce needless paper shuffling.

2. Federal Civil Procedure ⚖=2280

District court's near complete acceptance of findings and conclusions prepared

by litigant was not objectionable absent showing that findings and conclusions were not supported by record.

### 3. Federal Civil Procedure ⇐758

Failure to raise res judicata as an affirmative defense prior to trial constituted waiver of that defense. Fed.Rules Civ. Proc.Rule 8(c), 28 U.S.C.A.

### 4. Limitation of Actions ⇐127(3, 4)

Oil refiner's fraud and breach of contract claims against crude oil supplier related back to refiner's regulatory complaint, which arose out of same factual situation; initial complaint put supplier on notice that refiner believed that it had right to certain oil, and later claims only added other legal theories to support refiner's asserted right. Fed.Rules Civ.Proc.Rule 15(c), 28 U.S.C.A.

### 5. Federal Courts ⇐776, 859

When district court's decision is based on analysis of contractual language and application of principles of contract interpretation, that decision is matter of law and reviewable de novo; when inquiry focuses on extrinsic evidence of related facts, however, trial court's conclusions will not be reversed unless they are clearly erroneous.

### 6. Federal Courts ⇐859

Question of waiver of contractual right is question of fact, subject to clearly erroneous standard of review.

### 7. Sales ⇐176(1)

Party's continued performance subsequent to defective performance by other party does not waive performing party's contractual rights, under Texas law, as long as he complies with statutory notice requirements. V.T.C.A., Bus. & C. § 2.607(c).

### 8. Sales ⇐176(3)

Oil refinery gave crude oil supplier good-faith notice of its breach of supply contract, under Texas law, when refiner gave supplier notice of regulatory breach; federal regulations only applied because supplier had contracted to sell oil to refiner, and thus supplier was on notice that refiner was dissatisfied with supplier's performance under contract. V.T.C.A., Bus. & C. § 2.607(c).

### 9. Damages ⇐121

Damages due to continuing partial breach of contract are not limited to period within which contract allows termination by either party without cause; notice period determines amount of damages only where one party has ceased all performance under contract.

### 10. Damages ⇐62(4)

Oil supplier could not assert that refiner failed to mitigate its damages from supplier's breach of contract by failing to assert its right to purchase oil at controlled prices, which allegedly would have resulted in immediate termination of contract and reduction of damages, in that supplier had concealed refiner's right to purchase oil at controlled price.

### 11. Sales ⇐417

Award of damages to oil refiner for supplier's breach of contract was sufficiently supported by evidence, though refiner asserted theory in subsequent regulatory hearing, as to how it would have used oil that supplier failed to deliver, which was different than theory asserted at trial.

### 12. Interest ⇐31

Texas law allows courts to set equitable prejudgment interest rates even in cases to which statute setting prejudgment interest rate applies. Vernon's Ann.Texas Civ.St. art. 5069-1.03.

### 13. Federal Civil Procedure ⇐2721

Rule 11 sanctions were properly imposed upon crude oil supplier which moved to dismiss refiner's breach of contract action on improper grounds; allegation that statute was unconstitutional ignored portion of existing laws, and allegation of res judicata was without merit. Fed.Rules Civ. Proc.Rule 11, 28 U.S.C.A.

---

James R. Martin, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant/counter-claimant/appellant.

Richard E. Sherwood, Suzanne F. Duff, O'Melveny & Myers, Los Angeles, Cal., for plaintiff/counter-defendant/appellee.

Appeal from the United States District Court for the Central District of California.

Before SNEED and PREGERSON, Circuit Judges, and INGRAM,[*] District Judge.

SNEED, Circuit Judge:

Tenneco Oil Company appeals from a district court judgment awarding $32 million in damages, interest, and attorneys' fees to Kern Oil & Refining Company for Tenneco's breach of contract and fraud. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

Kern Oil & Refining Company (Kern) is a crude oil refiner whose refinery is located in Bakersfield, California. Kern has no crude oil production of its own and therefore must acquire from others the crude it runs through its refinery. Tenneco Oil Company (Tenneco) is an "integrated" oil company with crude production in California and elsewhere, a refinery in Louisiana, and marketing facilities around the country.

In October 1975, Kern and Tenneco agreed that Kern would purchase oil from Tenneco's fields in Yowlumne, California. As Tenneco brought new Yowlumne fields into production, it sold most of that oil to Kern as well. In May 1977, Kern and Tenneco entered into a contract that formally committed Tenneco to sell Kern all crude produced by Yowlumne properties from which Kern was already purchasing crude.[1] The trial court found that at about the same time, "Kern and Tenneco orally agreed that Tenneco would sell to Kern, under the terms of the May 1977 contract, crude from all Yowlumne properties coming into production after May 1977." Findings of Fact and Conclusions of Law, Excerpt of Record (E.R.) at 263.

Circumstances changed in the spring of 1978. Tenneco then learned that a pipeline would soon be open which could transport Tenneco's Yowlumne crude across the Rockies. From east of the Rockies, the oil could be easily traded for crude supply for Tenneco's Louisiana refinery. The court found that "Tenneco wanted to keep for itself the Yowlumne crude that it had agreed to sell to Kern." E.R. at 265. Tenneco faced two obstacles in attempting to keep the Yowlumne oil for itself.

The first obstacle was a practical one pertaining to Tenneco's access to the new pipeline. Tenneco's only way to the new pipeline was through a small Texaco pipeline, to which Tenneco did not have access. Kern, however, did have a contractual right to use the Texaco pipeline. Therefore, Tenneco proposed to Kern that Kern transport Tenneco's oil through the Texaco pipeline. This proposal also brought into focus the second obstacle—Kern's contractual and regulatory claims to Tenneco's Yowlumne oil. Because at the time of this proposal Tenneco's Yowlumne fields were producing more oil than Kern could refine, it did not meet with a flat rejection. Kern argued at trial that Tenneco met its concerns by fraudulently promising Kern that Tenneco would not leave Kern without a sufficient supply for Kern's refinery. Relying on that promise, and believing that it was not jeopardizing its own supply, Kern agreed in July 1978 to transport some of Tenneco's Yowlumne crude through the Texaco pipeline. Tenneco's interpretation of the July 1978 contract substantially differs from Kern's. Tenneco argued at trial that the May 1977 contract already gave Kern title to Tenneco's Yowlumne oil, and that the July 1978 contract was not a transportation agreement but a straight sale of some of the Yowlumne oil back to Tenneco. The district court agreed with Kern, and found that the July 1978 contract was a transportation agreement, which Tenneco fraudulently induced Kern to sign.

---

[*] Honorable William A. Ingram, United States District Judge, Northern District of California, sitting by designation.

1. Kern and Tenneco agreed that Texas law would govern disputes as to this and subsequent contracts between them.

By January 1979, Kern was aware that Tenneco did not agree with Kern's interpretation of the May 1977 and July 1978 contracts, and did not intend to supply the Kern refinery's needs. This became of greater importance to Kern than previously because it contemplated expanding its refinery capacity. In February 1979, Kern filed a complaint with the U.S. Department of Energy alleging that Tenneco had violated federal regulations. In the same month, Kern and Tenneco replaced the July 1978 agreement with an explicit transportation agreement, "fulfilling the same function and serving the same purpose as the July 1978 agreement." E.R. at 269. The February 1979 agreement was not intended to affect any claims either party might have under the earlier agreements. It remained in effect until 1981.

Tenneco's conduct did not damage Kern until April 1979, when Kern completed the expansion of its refinery. From April 1979 through November 1980, Kern would have processed nearly two million barrels of the Yowlumne crude that Tenneco failed to deliver. As a result, it lost nearly $17 million in profit.

In July 1981, five months after the filing by Kern of a suit against Tenneco alleging that Tenneco overcharged Kern under the May 1977 contract, Kern filed a complaint against Tenneco in the Central District of California alleging violations of federal regulations. In December 1982, Kern filed a complaint based on the same acts and alleging contractual breaches. In 1983, the district court consolidated the two latter complaints. The overcharge case proceeded separately.

This case was tried in December 1985 and January 1986. In November 1986, the court entered judgment for Kern and awarded it some $32 million in damages, interest, and attorneys' fees, including sanctions under Federal Rule of Civil Procedure 11. The court held that by failing to sell Kern all of the oil produced by the Yowlumne fields in question, Tenneco violated the Mandatory Petroleum Allocation Regulations, 10 C.F.R.Pt. 211 (1987), and breached the May 1977 contract. E.R. at 276–85. In addition, the court held that Tenneco had committed fraud and misrepresentation in convincing Kern to sign the July 1978 contract. E.R. at 285–86.

Tenneco appealed the decision on the regulatory cause of action to the Temporary Emergency Court of Appeals and the decision on the contractual causes of action to this court.

## II.

### JURISDICTION

The district court had diversity jurisdiction under 28 U.S.C. § 1332 (1982). This court's jurisdiction rests on 28 U.S.C. § 1291 (1982).

## III.

### DISCUSSION

Tenneco presents numerous arguments. Their descriptive designations, which this opinion will employ, are as follows:

A. Absence of Jurisdiction of District Court to Enter Findings of Fact and Conclusions of Law.

B. Grounds for Dismissal of Kern's Claims.
 1. Res Judicata.
 2. Statute of Limitations.
 3. Waiver by Kern's Course of Performance.

C. Damages Erroneously Determined.
 1. 90-Day Notice Period as a Limitation on Damages.
 2. Kern's Duty to Mitigate.
 3. Evidentiary Support for Damages.

D. Prejudgment Interest Not Allowable.

E. Rule 11 Sanctions Not Proper.

We now turn to these arguments in the order set out above.

A. *Absence of Jurisdiction of District Court to Enter Findings of Fact and Conclusions of Law*

On October 10, 1986, the district judge signed his findings of fact and conclusions of law, as well as his final judgment. The latter was filed on November 5 but the

findings of fact and conclusions of law were not entered until November 24, 1986. Tenneco's notice of appeal was filed on November 21, three days before the findings and conclusions were entered.

[1] Tenneco argues that filing its notice of appeal stripped the district court of its jurisdiction to enter findings of fact and conclusions of law. It is true that filing a notice of appeal usually divests the district court of jurisdiction over the matters appealed. *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). We have, for example, refused to consider amended findings of fact and conclusions of law filed after a notice of appeal. *See Sumida v. Yumen*, 409 F.2d 654, 656–57 (9th Cir.1969).

This divestiture of district court jurisdiction does not rest on a statute. *See Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir.1976). Rather, it is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time. It should not be employed to defeat its purposes nor to induce needless paper shuffling." 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.11, at 3–45 n. 1 (2d ed. 1987). Tenneco's argument would "induce needless paper shuffling." Our acceptance of Tenneco's position would not lead to a decision on the merits for Tenneco but only to a remand to the district court to file its findings and conclusions. Another appeal would then be taken by Tenneco and next year, perhaps, we would get the case back. A better example of "needless paper shuffling" would be hard to imagine.

This case differs from *Sumida, supra*, in which the district court filed both an order and findings and conclusions, and, after the notice of appeal was filed, attempted to amend both. We properly treated the appeal as one from the earlier filed order. The appellate court is entitled to review a fixed, rather than a mobile, record. Here the district court did not attempt to move the target; it merely set one in place. It is clear to us that the findings and conclusions were intended to be filed at the same time as the final judgment. We will treat them as having been so filed.

Tenneco insists that it was deprived of its opportunity to move for amended findings and conclusions, Fed.R.Civ.P. 52(b), and to move for a new trial or an amended judgment, Fed.R.Civ.P. 59(b), (e). We are unpersuaded. Tenneco knew that the district court was preparing findings and conclusions; indeed, it had filed a lengthy memorandum in opposition to Kern's proposed findings and conclusions. Neither did it inform the court that it had not received the findings and conclusions nor did it ask for an extension of time. Doing neither of these things indicates that Tenneco was unconcerned about the deadlines for a Rule 52 or 59 motion and suffered no harm by the late filing. To remand to the district court to enable Tenneco to file still another opposition, styled a motion to amend, to the same findings and conclusions would be pointless.

[2] Tenneco also complains of the district judge's near-complete acceptance of the findings and conclusions prepared by Kern. In *Unt v. Aerospace Corp.*, 765 F.2d 1440 (9th Cir.1985), this court said, "We have previously disapproved of the mechanical adoption of findings and conclusions prepared by the victorious party. The verbatim adoption of findings suggested by a party is not automatically objectionable, however, so long as those findings are supported by the record." *Id.* at 1444–45 (citation omitted). Tenneco points to no evidence to show that the findings and conclusions were not supported by the record.

B. *Grounds for Dismissal of Kern's Claims*

1. *Res Judicata*

We have already mentioned the regulatory case now on appeal to the Temporary Emergency Court of Appeals. In addition to that case there was yet another. In January 1981, five months before the filing

## KERN OIL & REFINING CO. v. TENNECO OIL CO. 735
Cite as 840 F.2d 730 (9th Cir. 1988)

in this case, Kern filed suit against Tenneco in district court, alleging that Tenneco breached the May 1977 contract by charging excessive prices. In the summer of 1984, Kern received a judgment in its favor. This court affirmed the judgment in *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380 (9th Cir.1986), *cert. denied*, ___ U.S. ___, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987). We shall refer to this, the earlier case, as the "price case," and to the case before us as the "supply case."

Tenneco now invokes res judicata and argues that the price case should bar recovery by Kern in the supply case. Kern responds that Tenneco has waived its right to invoke res judicata. We review this issue *de novo*. *See Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984).

[3] Tenneco's principal obstacle is Fed. R.Civ.P. 8(c), which includes res judicata as an affirmative defense that must be raised in the pleadings. Tenneco admits that it did not do so. Therefore, the defense is waived. *Fount-Wip, Inc. v. Reddi-Wip, Inc.*, 568 F.2d 1296, 1300 n. 1 (9th Cir.1978); *Weekes v. Atlantic Nat'l Ins. Co.*, 370 F.2d 264, 271 (9th Cir.1966); *Hernandez v. Heckler*, 621 F.Supp. 439, 442 n. 2 (N.D. Cal.1985).

It is true that we have allowed a party to raise res judicata after the initial pleadings by construing the attempt as a motion to file a supplemental answer. *See Harbeson*, 746 F.2d at 520. This does not help Tenneco because we have always required that it be raised before trial. Tenneco did not raise it until after the end of the trial.[2] Moreover, Tenneco, by never objecting to separate trials of the price and supply cases,[3] cannot now object to their being split. *Restatement (Second) of Judgments* § 26(1)(a) (1982).[4]

### 2. *The statute of limitations*

Tenneco next invokes statutes of limitations with respect to Kern's contract and fraud claims. The contract claim is subject to a four-year statute of limitations, Tex. Bus. & Com.Code Ann. § 2.725 (Vernon 1968), and the fraud claim is subject to a three-year statute of limitations. Cal.Civ. Proc.Code § 338(4) (Deering 1972). The contract claim was filed in December 1982, and the complaint was amended to include a fraud claim in September 1983. The date of accrual of these claims is disputed. Tenneco asserts that the contract claim accrued by June 1978, when the breach of the contract occurred, and that the fraud claim accrued by February 1979, when Kern admittedly was aware of the fraud. Thus, as Tenneco sees it, both claims are barred by limitations.

[4] The district court rejected those accrual dates and found that Kern's contract claim did not accrue until January 1979. We choose a different course. We conclude that under Federal Rule of Civil Procedure 15 the fraud and contract claims relate back to Kern's regulatory complaint filed in July 1981, and are therefore not barred by the statute of limitations.

Rule 15(c) states that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Rule 15 allows relation back even when the original claim is itself

---

2. In July 1986, two years after the district court's decision in the price case, seven months after the court had ruled in Kern's favor on the liability issues in the supply case, and immediately after we affirmed the price case, Tenneco moved the court to dismiss Kern's claims on res judicata grounds. The court pointed out that Tenneco had not needed to wait until the appeal of the price case was decided to bring up the issue. E.R. at 1893. *See Restatement (Second) of Judgments* § 13 comment (f) (1982).

3. From January 1983 to June 1984, the price case and the supply case were both before federal courts in the Central District of California.

Tenneco never moved to consolidate them. In a hearing in October 1984, Judge Waters asked the parties why the cases had never been consolidated and a Tenneco attorney replied, "the parties both seemed to think that that was the way to proceed, the supply issues being tried here and the price issues being tried in the other case." E.R. at 1869.

4. Because of our resolution of this issue, we need not reach Kern's argument that the price case and the supply case did not involve the same cause of action.



time barred. *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir.1982).

Tenneco argues that the initial claim must give the defendant "fair warning that he might later be accused of some other offense than that raised in the first pleading." Tenneco is incorrect. Under Rule 15, the only question is whether the later claims arise out of the conduct, transaction, or occurrence brought to the defendant's attention by the initial claim. When this is so later-filed claims may relate back, even if they rest on a different legal theory than that of the first claim. *See Santana*, 686 F.2d at 739; *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*, 690 F.2d 1240, 1259–60 n. 29 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983); 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[3], at 15–151 (2d ed. 1987).

The regulatory, contract, and fraud claims did arise out of the same factual situation. In its initial complaint, Kern alleged that Tenneco had a obligation under DOE regulations to sell Kern all of its Yowlumne oil, and that beginning in June 1978 Tenneco breached that obligation. The complaint thus put Tenneco on notice that Kern believed it had a right to all of the Yowlumne oil. Kern's later claims only added other legal theories to support its asserted right. Thus, Kern's initial claim rests on the same conduct that supports Kern's contract and fraud claims.

### 3. Waiver by Kern's Course of Performance

Tenneco argues that Kern's course of performance under the May 1977 and July 1978 contracts dooms its claims. First, Tenneco argues that Kern's course of performance is inconsistent with the claim that Tenneco breached the May 1977 contract. Second, Tenneco argues that Kern waived its contractual rights by not notifying Tenneco of the alleged breach.

[5, 6] Our standard of review in matters of this kind is not simple. Our position is as follows: "When the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable de novo. When the inquiry focuses on extrinsic evidence of related facts, however, the trial court's conclusions will not be reversed unless they are clearly erroneous." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir.1985). The question of waiver of a contractual right is also a question of fact and subject to the clearly erroneous standard. *CBS, Inc. v. Merrick*, 716 F.2d 1292, 1295 (9th Cir.1983).

[7] The district court found that from April 1979 to November 1980, Kern experienced a shortage of crude oil because Tenneco was not performing its obligations under the May 1977 contract. While it is undisputed that Tenneco delivered to Kern title to all of the Yowlumne oil, Kern received title, after July 1978, to some of the oil solely for transportation purposes,[5] pursuant to a contract Tenneco fraudulently induced Kern to sign.[6] Therefore, when Kern experienced a shortage of oil, its sales of oil back to Tenneco under the

---

5. Tenneco disputes the district court's finding that the July 1978 contract was a transportation agreement. We apply the clearly erroneous standard, because the district court looked to the parties' intent in agreeing to the contract. The finding was far from clearly erroneous.

6. Tenneco argues that because Kern argued in its initial complaint before the Department of Energy that Tenneco coerced Kern into signing and performing under the July 1978 contract, Kern cannot now argue that it was defrauded into signing and performing under the contract. Tenneco does not attack the factual findings of the district court that "Tenneco assured Kern that Tenneco would not leave Kern without a sufficient refinery supply"; that "Tenneco's objective was eventually to take all of the Yowlumne production for itself, but it concealed that intent from Kern"; and that "Tenneco induced Kern to enter into the July 1978 agreement by falsely representing to Kern that Tenneco would continue supplying Kern with sufficient Yowlumne crude to meet Kern's refinery needs." E.R. at 266–67. These findings are not clearly erroneous, and support Kern's fraud claim. Tenneco cites no support for the proposition that Kern's having argued a different basis for relief before a different court in a different action should defeat its claim here.

terms of the transportation agreement neither evidenced satisfaction of Tenneco's contractual obligations nor were they a waiver of Kern's rights under the May 1977 contract. Moreover, a party's continued performance subsequent to defective performance by the other party does not waive the performing party's contractual rights as long as he complies with notice requirements. *See Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir.1976).

[8] Tenneco argues, however, that Kern did not comply with notice requirements, and that §§ 2.208 and 2.607 of the Tex.Bus. & Com.Code (Vernon 1968) bar Kern from recovering under the contract.[7] The district court found that "Kern protested Tenneco's continuing breach of supply obligations at the inception and during the entire lifespan of the February 1979 agreement." E.R. at 269.

Section 2.607's notice requirement should not be applied stringently. "As is noted in the draftsmen's comments, 'the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.' ... [N]otice under section 2-607 need not be a specific claim for damages or an assertion of legal rights." *Eastern Air Lines*, 532 F.2d at 976; *see Reynolds Metals Co. v. Westinghouse Elec. Corp.*, 758 F.2d 1073, 1078 (5th Cir.1985) (§ 2.607's notice requirements "are not stringent and are liberally construed by the Texas courts"); *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 889 (Tex.Civ.App.1979).[8] The good faith of the buyer is the "governing criterion" under the section. *Eastern Air Lines*, 532 F.2d at 977.

We hold that Kern gave Tenneco good faith notice of its contractual breach.[9] First, Kern raised the subject of Tenneco's contractual obligation before a January 1979 meeting with Tenneco. Second, Kern gave Tenneco ample notice of Tenneco's breach of its regulatory obligations. The regulatory breach was very closely related to the contractual breach. The regulations only applied because Tenneco had contracted to sell oil to Kern. Therefore, the underlying purposes of the section were accomplished: Tenneco knew that Kern was dissatisfied with its tender of goods, and the two parties had the opportunity to negotiate their differences. *See Eastern Air Lines*, 532 F.2d at 976; *T.J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 361 (5th Cir.1980).

C. *Damages Erroneously Determined*

1. *90-day Notice Period As a Limitation of Damages*

[9] The May 1977 contract allowed either party to terminate the contract without cause after a 90-day notice period.

---

7. Section 2.208 states:
   (a) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.
   . . .
   (c) Subject to the provisions of the next section on modification and waiver, such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance.
   Section 2.607(c) states "[w]here a tender has been accepted (1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy...."
   Tenneco bases its arguments primarily on § 2.607. We therefore do likewise.

8. In addition, we note that the notice provisions of the U.C.C. were not designed for a heavily regulated, monopolistic relationship of the type that existed between Kern and Tenneco. Under the DOE regulations, the parties found themselves in a relationship that neither could easily leave. They signed and performed under the February 1979 contract, for example, at the same time that they were disputing claims against one another. We agree with the Fifth Circuit that even when two parties are effectively "married," "the buyer must decide whether the benefits of claiming a breach of contract outweigh the need for a close rapport with the seller." *Eastern Air Lines*, 532 F.2d at 979 n. 62. But we should not expect a married party to complain as loudly as one who is free to play the field.

9. We therefore find it unnecessary to reach Kern's argument that Tenneco waived its notice argument by not raising it below.

Tenneco argues that when a contract allows termination by either party without cause, damages for a material breach are limited to those that would accrue during the damage period.

Tenneco states this proposition too broadly. It applies when one party has ceased all performance under a contract. Under these circumstances the notice period will determine the proper amount of future damages. See, e.g., Cottman v. State Dep't of Natural Resources, 51 Md. App. 380, 443 A.2d 638 (1982); Student Transit Corp. v. Board of Educ., 76 Ill. App.3d 366, 32 Ill.Dec. 122, 395 N.E.2d 69 (1979). But the damages due to a continuing partial breach are not limited to the contract's notice period. Such a breach is not the equivalent of a cessation of all performance.

### 2. Kern's Duty to Mitigate Damages

[10] Tenneco sold some of the Yowlumne oil (referred to as Section 33/34 oil) to third parties at uncontrolled prices. Kern had the right to purchase this oil at controlled prices, which were much lower than uncontrolled prices. Tenneco argues that if Kern had asserted its right to purchase the Section 33/34 oil at controlled prices, Tenneco would have immediately terminated the May 1977 contract, thereby greatly reducing its damages. Despite its resemblance to the refrain, "You made me love you, I didn't want to do it," Tenneco argues that the district court erred in refusing to hear its offer of proof as to this point.

"Trial court rulings on the admissibility of evidence are reviewed for abuse of discretion. A reviewing court will not reverse for an abuse of discretion unless it has a definite and firm conviction that the court below committed an error." Maddox v. City of Los Angeles, 792 F.2d 1408, 1412 (9th Cir.1986) (citation omitted).

The district court did not abuse its discretion. Kern produced evidence that Tenneco concealed Kern's right to purchase the Section 33/34 oil. As Kern points out, because it did not know it had the right to purchase the oil, it could not have protested Tenneco's selling the oil to others. It was Tenneco, not Kern, who caused Kern not to purchase Section 33/34 oil. Therefore, it was not an abuse of discretion for the district court to conclude that Tenneco's offer of proof was irrelevant.

### 3. Evidentiary Support for Damages

[11] This court "will not disturb an award of damages on appeal unless it is clearly unsupported by the evidence." Chalmers v. City of Los Angeles, 762 F.2d 753, 760 (9th Cir.1985). Tenneco makes two contentions that the evidence does not support the award of damages. First, it argues that the Energy Department's post-trial proceeding against Kern demonstrates that some of the evidence Kern relied on in computing its damages was incorrect. Second, it argues that Kern's damage claim was speculative.[10]

Tenneco, relying on the linkage between the regulatory and this proceeding, says that it "discovered documents which demonstrated that Kern had systematically defrauded the Department of Energy by engaging in a series of illegal transactions which substantially reduced Kern's obligation under the DOE regulations to purchase 'entitlements' on price-controlled crude oil it refined." Tenneco argues that because the district court did not allow it to reveal these documents to the DOE until after the trial, the court based its award of damages on incorrect assumptions as to Kern's rights to purchase entitlements. The short answer to this argument is that the district court allowed Tenneco to produce at trial the evidence it later submitted to the DOE. Kern argued at trial that even if the Department of Energy held that Kern had acted unlawfully it would not revoke Kern's unused exception relief eligibility, which excused Kern from having to

---

10. In addition, Tenneco captions one of its headings "The Court Violated Tenneco's First Amendment Rights By Preventing It From Petitioning The Department Of Energy." Appellant's Brief at 38. Tenneco never discusses this rather eye-opening contention.

KERN OIL & REFINING CO. v. TENNECO OIL CO.     739
Cite as 840 F.2d 730 (9th Cir. 1988)

purchase entitlements for the Yowlumne oil. The district court therefore had this dispute directly before it. We cannot say that its resolution of the dispute was unsupported by the evidence.

Tenneco points to Kern's statement of objections to the DOE Proposed Remedial Order that resulted from Tenneco's disclosure of documents to the DOE, and argues that Kern's statement directly contradicts the district court's findings underlying its damage award. In particular, Tenneco argues that although Kern argued to the district court, and the district court found, that Kern would have refined, not sold, the Yowlumne oil it should have received from Tenneco, E.R. at 271, Kern is now arguing before the DOE that Kern would not have processed the oil, but would have sold it. The district court heard a great deal of evidence on how Kern would have disposed of the oil it did not receive. It concluded that "[h]ad the Yowlumne crude been made available to Kern, sound business practice dictates that it would have been processed by Kern and not sold." E.R. at 256. That Kern is now arguing a different theory to a different tribunal certainly weakens its new position, but it does not make the district court's earlier conclusion clearly unsupported by the evidence.

Tenneco argues that because Kern's damage theories changed several times during trial, its final damage claim must have been speculative. It points to nothing else in the record to support this conclusion. While inconstancy of theories may suggest the weakness of each, a damage award is not speculative merely because of such inconstancy.

### 4. Prejudgment Interest Not Allowable

[12] The district court awarded Kern equitable prejudgment interest at the rate of ten percent. Tenneco argues that Texas law precludes an award of equitable prejudgment interest when a statute sets the rate. It then points to Tex.Civ.Stat.Ann. art. 5069-1.03 (Vernon 1987), which provides that prejudgment interest on "accounts and contracts ascertaining the sum payable" shall be six percent.

Texas courts disagree over whether art. 5069-1.03 prevents courts from awarding equitable prejudgment interest at a higher rate than six percent on "contracts ascertaining the sum payable." Some courts have held that it does. See, e.g., Baker Marine Corp. v. Weatherby Eng'g Co., 710 S.W.2d 690, 695 (Tex.Ct.App.1986); Missouri-Kansas-Texas R.R. v. Fiberglass Insulators, 707 S.W.2d 943, 945 (Tex.Ct.App. 1986). The district court held that Texas law allows courts to set equitable prejudgment interest rates even in cases to which art. 5069-1.03 applies. We agree.[11]

Like the district court, we rely on *Crown Central Petroleum Corp. v. National Union Fire Ins. Co.*, 768 F.2d 632 (5th Cir. 1985). In *Crown Central*, the Fifth Circuit canvassed Texas law and concluded that "the availability of statutory prejudgment interest in no way foreclose[s] an award of equitable prejudgment interest." Id. at 637; see *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex. 1978).[12]

*Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985), instructs courts awarding prejudgment equitable interest to look to Tex.Civ.Stat.Ann. art. 5069-1.05 (Vernon 1987) to determine

---

11. We note that several Texas courts have avoided this debate by narrowly construing the scope of the phrase "contracts ascertaining the sum payable." See, e.g., *McCann v. Brown*, 725 S.W.2d 822, 825 (Tex.Ct.App.1987); *Perry Roofing Co. v. Olcott*, 722 S.W.2d 538, 544 (Tex.Ct. App.1986), aff'd, 744 S.W.2d 929, 31 Tex.S.Ct.J. 213, Feb. 13, 1988 (1988). Our resolution of this issue makes it unnecessary for us to determine whether the contract in this case is one "ascertaining the sum payable."

12. In *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 31 Tex.S.Ct.J., Feb. 13, 1988 (1988), the Texas Supreme Court held that courts could award prejudgment interest at the equitable, ten-percent rate in cases that involve contracts not ascertaining the sum payable—that is, contracts to which art. 5069-1.03 could not apply. The Court did not address whether courts had discretion to award equitable interest in cases involving contracts that do ascertain a sum payable. We therefore continue to be guided by *Crown Central* and *Phillips Petroleum*.

the interest rate.[13] Thus, the district court correctly awarded ten percent interest pursuant to *Cavnar* and art. 5069–1.05.[14]

### 5. Rule 11 Sanctions Not Proper

The district court awarded Rule 11 sanctions to Kern for "attorneys' fees and costs incurred in resisting defendant's post-trial motions heard on August 4, 1986." E.R. at 196. Tenneco made three motions on August 4: (1) to dismiss Kern's regulatory claim on the ground that the Emergency Petroleum Allocation Act of 1973 (EPAA) is unconstitutional; (2) to dismiss Kern's claims on the res judicata grounds discussed in III. B. 1 above; and (3) to unseal the trial transcript and exhibits so that Tenneco could release documents about possible Kern wrongdoing to the Department of Energy. Tenneco now argues that the district court erred in awarding sanctions to Kern for these motions.

The underlying facts the district court relied upon in making its determination are not in dispute. We therefore review *de novo* the district court's legal conclusions about the applicability of Rule 11. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986).

[13] The EPAA, under which the regulations in question in Kern's regulatory claim were promulgated, includes a legislative veto provision. In *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), the Supreme Court declared the legislative veto unconstitutional. The Temporary Emergency Court of Appeals (TECA) has held that the EPAA is constitutional on two separate grounds: (1) the legislative veto provision is severable from the rest of the act; and (2) *Chadha* does not apply retroactively to the act. *See, e.g., United States v. Exxon Corp.*, 773 F.2d 1240 (T.E.C.A.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986).

In its August 1986 motion, Tenneco rejected TECA's position and argued that the EPAA was unconstitutional because the legislative veto could not be severed from the rest of the statute. It argued that, although the TECA had not changed its position or been overruled on the question of severability, the question was open because the Supreme Court had just granted certiorari in *Alaska Airlines, Inc. v. Brock*, 475 U.S. 1044, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986). We need not reach the question whether the grant of certiorari in *Alaska Airlines*, a case that did not involve the EPAA, would justify Tenneco's petitioning the district court to disregard the position of the TECA. Tenneco's motion did not discuss, or even mention, TECA's alternative holding that the EPAA could stand on retroactivity grounds. This Tenneco should not have done. The trial court's award of Rule 11 sanctions for this motion was justified because the motion, by ignoring a portion of existing law, was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R. Civ.P. 11.

Tenneco's res judicata arguments before the district court are identical to its res judicata arguments before this court, and have been discussed. The arguments do not support Tenneco's position. Rule 11 sanctions were justified because Tenneco had acquiesced to the claim splitting for nearly four years before it made the motion.

The trial court granted Tenneco's request to unseal the trial transcript. It therefore seems unlikely, to say the least, that the court also awarded sanctions

---

13. *Cavnar* is a tort case, but its reasoning as to interest rates applies to all equitable interest cases. *See Crown Central*, 768 F.2d at 638; *McCann*, 725 S.W.2d at 825–26.

14. Tenneco argues that any legislative attempt to impose a higher interest rate on parties to a contract after the parties have entered the contract would be unconstitutional under the Supreme Court's decision in *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). It argues further that this court should hold that the Texas Supreme Court is similarly prevented from imposing new interest rates for contract damages after the parties agreed to the contract. Tenneco does not dispute Kern's contention that Tenneco did not raise this issue below. We therefore decline to review it. *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985).

against Tenneco for making the motion. Unfortunately, however, the court's order refers only to the motions of August 4, and does not specify which motions it covers. E.R. at 196. Nevertheless, after the court awarded Kern sanctions, Kern did not ask for attorneys' fees for time spent defending this motion. Because Tenneco did not have to pay sanctions in the form of fees for making this motion, the district court's imprecision in specifying the motions for which sanctions were appropriate becomes moot.

AFFIRMED.



RAINIER VIEW ASSOCIATES, et al., Plaintiffs-Appellants,

v.

UNITED STATES, Defendant-Appellee.

No. 86-3685.

United States Court of Appeals, Ninth Circuit.

March 7, 1988.

Prior report: 830 F.2d 1017.

Before WALLACE, ANDERSON, TANG, SCHROEDER, ALARCON, REINHARDT, BEEZER, BRUNETTI, NOONAN, THOMPSON and O'SCANNLAIN, Circuit Judges.

ORDER

The order filed October 16, 1987, is vacated and this case is reassigned to the three-judge panel.

BRUNETTI, THOMPSON and O'SCANNLAIN, JJ., dissent.



David Ralph BLANKENSHIP, Plaintiff-Appellant,

v.

Larry P. MEACHUM; David C. Miller; E.K. McDaniels; David Morris, Sr.; Sammy Earls, Defendants-Appellees.

No. 87-1858.

United States Court of Appeals, Tenth Circuit.

Feb. 23, 1988.

Inmate brought action against prison officials under § 1983, alleging that being placed in general prison population at transferee prison, instead of continuing in protective custody, was cruel and unusual punishment in violation of Eighth Amendment. The United States District Court for the Western District of Oklahoma, Thomas R. Brett, J., dismissed complaint for failure to state claim, and inmate appealed. The Court of Appeals held that: (1) prison officials' inadvertence or good-faith error did not rise to level of Eighth Amendment violation, and (2) refusal to appoint counsel to represent inmate was not abuse of district court's discretion.

Affirmed.

1. Criminal Law ⚖1213.10(1)

Failure of prison officials to protect inmate from attacks by other inmates may rise to level of Eighth Amendment violation. U.S.C.A. Const.Amend. 8.

2. Civil Rights ⚖13.12(6)

Allegations that officials of transferor prison and transportation officer were aware that inmate had been placed in protective custody at transferor prison and medical intake report indicating that inmate was in protective custody status were insufficient to support inmate's claim against prison officials under § 1983, alleging that he was subjected to cruel and unusual punishment in violation of Eighth Amendment when he was placed with gen-

