NATIONAL FOREST PRESERVATION GROUP, a Montana nonprofit corporation and Lester C. Baldwin, Appellants,

v.

Earl L. BUTZ, Individually and as Secretary of Agriculture, et al., Appellees,

and

Big Sky of Montana, Inc., and Burlington Northern, Inc., Intervening Defendants-Appellees.

No. 72-1998.

United States Court of Appeals, Ninth Circuit.

Sept. 10, 1973.

Action by forest preservation group challenging on procedural and substantive grounds the decision of the forest service to exchange national forest lands for lands of railroad. The United States District Court for the District of Montana, Butte Division, William D. Murray, J., 343 F.Supp. 696, granted defendants' motions for summary judgment, and plaintiffs appealed. The Court of Appeals, Alfred T. Goodwin, Circuit Judge, held that question whether requirements of 1926 act extending boundaries of Yellowstone Park and prescribing conditions for exchange of park lands were satisfied with respect to the "non mineral" and "equal-value" limitations was one to be resolved by an evidentiary hearing in the district court and could not be resolved by summary judgment.

Reversed and remanded.

1. Woods and Forests ⟐8

Members of forest preservation group who were recreational users of national forest lands which forest service proposed to exchange for lands of railroad had standing to bring action challenging the decision of the forest service on procedural and substantive grounds. Wilderness Act, §§ 2, 3, 16 U.S.C.A. §§ 1131, 1132 and § 38; National Environmental Policy Act of 1969, § 2 et seq., 42 U.S.C.A. § 4321 et seq.

2. Appeal and Error ⟐781(4)

Fact that during pendency of appeal from judgment refusing injunction against exchange of national forest land for railroad lands the government issued patents to the land to railroad and railroad conveyed the contested tracts to developer did not place the legality of the transfers beyond the jurisdiction of the reviewing court. Wilderness Act, §§ 2, 3, 16 U.S.C.A. §§ 1131, 1132 and § 38; National Environmental Policy Act of 1969, § 2 et seq., 42 U.S.C.A. § 4321 et seq.

3. Administrative Law and Procedure ⟐701

Woods and Forests ⟐8

Although decision of Secretary of Agriculture to enter into exchange of national forest lands for lands of railroad might be nonreviewable under the administrative procedure act, judicial review was available on specific questions raised by members of forest preservation group that agency did not comply with specific statutory limitations on its authority. 5 U.S.C.A. § 701(a); Wilderness Act, §§ 2, 3, 16 U.S.C.A. §§ 1131, 1132.

4. Administrative Law and Procedure ⟐669

Woods and Forests ⟐8

Issue of compliance with the Wilderness Act in proposed exchange of national forest lands for railroad lands would not be considered on appeal from judgment denying injunctive relief where the act was not raised by the plaintiff members of forest preservation group in its administrative appeals. 5 U.S.C.A. § 701(a); Wilderness Act, §§ 2, 3, 16 U.S. C.A. §§ 1131, 1132.

5. Health and Environment ⟐25.5

In view of duty of forest service to receive assurances of plans of private developer of national forest lands which were to be exchanged for railroad lands prior to the exchange, ignorance of the federal authorities prior to the exchange of the plans the private party might have for the land did not excuse need for compliance with national environ-

mental policy act. National Environmental Policy Act of 1969, §§ 2 et seq., 102(2)(C), 42 U.S.C.A. §§ 4321 et seq., 4332(2)(C); Wilderness Act, § 2 et seq., 16 U.S.C.A. § 1131 et seq.

**6. Health and Environment ⚖=25.10**

Normally, an environmental impact statement must be prepared prior to the initial decision to commit resources. National Environmental Policy Act of 1969, § 102(2)(B); 42 U.S.C.A. § 4332(2)(B); Clean Air Act, § 309 as amended 42 U.S.C.A. § 1857h–7.

**7. Health and Environment ⚖=25.10**

Where environmental impact statement on exchanges of national forest lands for railroad lands was not prepared until after the decision of regional forester approving the exchanges, but regional forester did consider environmental factors and when chief forester's attention was called to the lack of statement he ordered one prepared, there was no prejudicial failure to comply with the national environmental policy act. National Environmental Policy Act of 1969, §§ 2 et seq., 102(2)(C), 42 U.S.C.A. §§ 4321 et seq., 4332(2)(C); Wilderness Act, § 2 et seq., 16 U.S.C.A. § 1131 et seq.

**8. Health and Environment ⚖=25.10**

Where environmental impact statement prepared with respect to proposed exchange of national forest lands for railroad land was submitted to the environmental protection agency, fact that statement did not contain written comments from the administrator who had nothing to say was not ground for penalizing the forest service. National Environmental Policy Act of 1969, § 102(2)(B), 42 U.S.C.A. § 4332(2)(B); Clean Air Act, § 309 as amended 42 U.S.C.A. § 1857h–7.

**9. Health and Environment ⚖=25.10**

Fact that environmental impact statement prepared with respect to proposed exchange of national forest service lands for railroad lands could be improved by hindsight and sophisticated editing did not render the statement insufficient. National Environmental Policy Act of 1969, § 102(2)(B); 42 U.S.C.A. § 4332(2)(B); Clean Air Act, § 309 as amended 42 U.S.C.A. § 1857h–7.

**10. Woods and Forests ⚖=8**

Substantial evidence supported decision of Secretary of Agriculture to accept values ascribed to lands involved in exchange of national forest lands within boundaries of Yellowstone Park for railroad lands. 16 U.S.C.A. §§ 21c, 38, 39, 485, 486.

**11. Mines and Minerals ⚖=2**

One of the principal purposes of the 1925 addition to the general exchange act was to legalize the administrative practice of conveying lands believed to contain minerals but reserving the rights thereto to the United States. 16 U.S.C.A. §§ 21c, 38, 39, 485, 486.

**12. Mines and Minerals ⚖=2**

Exchange of national forest lands for railroad lands under a reservation of mineral rights to the United States was not a "conveyance" of mineral rights in violation of the General Exchange Act. 16 U.S.C.A. §§ 21c, 38, 39, 485, 486.

See publication Words and Phrases for other judicial constructions and definitions.

**13. Woods and Forests ⚖=8**

Purpose of the General Exchange Act was to relieve Congress of the burden of considering new legislation every time an exchange authority was proposed for a federal tract. 16 U.S.C.A. §§ 21c, 38, 39, 485, 486.

**14. Woods and Forests ⚖=8**

Court was bound to give effect to specific congressional restriction in act of May 26, 1926, containing exchange authority with respect to lands within boundaries of Yellowstone Park and prescribing equal value limitation and conditions more restrictive than those in the General Exchange Act. 16 U.S.C.A. §§ 21c, 38, 39, 485, 486.

**15. Federal Civil Procedure ⚖=2549**

Question whether the "equal-value" requirement of the General Exchange

485 F.2d—26½

Act and the "non-mineral" and "equal-value" limitations of 1926 Act extending boundaries of Yellowstone Park were satisfied with respect to national forest lands which government proposed to exchange for railroad lands was one to be resolved by an evidentiary hearing in the district court and could not be resolved by summary judgment. 16 U.S.C.A. §§ 21c, 38, 39, 485, 486.

---

James H. Goetz (argued), Bozeman, Mont., for appellants.

Eva R. Datz (argued), Kent Frizzell, Asst. Atty. Gen., Land & Natural Resources Div., Dept. of Justice, Washington, D. C., Otis Packwood, U. S. Atty., Billings, Mont., R. E. Murray, Asst. U. S. Atty., Butte, Mont., Gerald Fish, Jacques B. Gelin, Dept. of Justice, Washington, D. C., for appellees.

Richard V. Wicka, Asst. Gen. Counsel (argued), Burlington Northern Railroad, St. Paul, Minn., Cale Crowley (argued), Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., Kendrick Smith, Corette, Smith & Dean, Butte, Mont., for intervening defendants-appellees.

Before DUNIWAY and GOODWIN, Circuit Judges, and WOLLENBERG,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

National Forest Preservation Group (NFPG) challenges on procedural and substantive grounds the decision of the Forest Service to exchange certain government land for lands of the intervenor, Burlington Northern.

The lands are in southwest Montana. The United States agreed, in three separate transactions, to exchange lands within the Gallatin National Forest for lands within and adjacent to the Forest and within Yellowstone National Park. A part of the lands being acquired by Burlington Northern are to be used b[y] Big Sky of Montana, Inc., in a propose[d] recreational development in the area[.] Two of the exchanges are challenged i[n] this appeal. We will refer to them a[s] Exchange No. 2 and Exchange No. 3.

NFPG asserts that the exchanges ar[e] void because the Forest Service did n[ot] comply with the National Environment[al] Policy Act of 1969, 42 U.S.C. § 432[1] et seq., and with the Wilderness Act, 1[6] U.S.C. §§ 38, 1131, 1132, and that th[e] exchanges exceed the statutory authorit[y] of the Forest Service.

Three preliminary issues are raised b[y] the intervenors and the Justice Depar[t]ment.

## I. STANDING

[1] Burlington Northern urges tha[t] plaintiffs have no standing to bring thi[s] action. The plaintiffs have brough[t] themselves within Sierra Club v. Morto[n], 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2[d] 636 (1972), by alleging that they ar[e] recreational users of the lands in que[s]tion. Burlington Northern attempts t[o] distinguish Sierra Club by arguing tha[t] there will be no net loss of forest acr[e]age in this case and that NFPG's "sel[f]ish interest in preference in speciall[y] selected sections of land" is insufficie[nt] to confer standing. The Supreme Cou[rt] indicated in Sierra Club, however, tha[t] precisely such intangible, subjective i[n]terests are sufficient to confer standin[g] 405 U.S. at 734, 92 S.Ct. 1361. Th[e] plaintiffs have standing.

## II. MOOTNESS

The district court, 343 F.Supp. 69[,] granted the defendants summary jud[g]ment on May 23, 1972, and that sam[e] day refused NFPG's request for an i[n]junction pending appeal. Two days la[t]er, the government issued patents to t[he] land to Burlington Northern. Immed[i]ately upon recording the patents, Bu[r]lington Northern conveyed to Big S[ky] certain of the contested tracts.

---

* The Honorable Albert C. Wollenberg, United States District Judge for the Northern Distric[t] of California, sitting by designation.

[2] Under various legal headings, Burlington Northern (but not the Justice Department) urges that the speedy patent and sale of the lands from one party to the litigation to another during the pendency of the appeal placed the legality of the transfers beyond the jurisdiction of this court. Nonsense.

" * * * [A]fter a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided * * *." Jones v. SEC, 298 U.S. 1, 17, 56 S.Ct. 654, 658, 80 L.Ed. 1015 (1936).

Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed. 1199 (1946). See Griffin v. County School Board, 363 F.2d 206 (4th Cir.) (en banc) (school board held in civil contempt for disbursing money to private school pending appeal of judgment denying injunction against disbursement), cert. denied, 385 U.S. 960, 87 S.Ct. 395, 17 L.Ed.2d 305 (1966).

### III. REVIEWABILITY—AGENCY DISCRETION

The defendants argue that the Secretary of Agriculture has broad discretion to decide whether to enter into a land exchange, and that all aspects of such exchanges are "committed to agency discretion" and therefore unreviewable under Administrative Procedure Act § 10 (a), 5 U.S.C. § 701(a). The second proposition, however, by no means follows from the first.

[3] Although the basic decision whether or not to enter into an exchange may be nonreviewable, Lewis v. Hickel, 427 F.2d 673 (9th Cir. 1970), cert. denied, 400 U.S. 992, 91 S.Ct. 451, 27 L.Ed.2d 440 (1971), judicial review may be available on specific questions. East Oakland-Fruitvale Planning Council v. Rumsfeld, 471 F.2d 524 (9th Cir. 1972); Rockbridge v. Lincoln, 449 F.2d 567 (9th Cir. 1971). See Saferstein, Nonreviewability: A Functional Analysis of "Committed to Agency Discretion," 82 Harv. L.Rev. 367 (1968).

In this case NFPG contends that the agency did not comply with specific statutory limitations on its authority. There is clearly "law to apply" on the issues raised, and thus the allegations are reviewable. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

### IV. THE ISSUES

[4] Three purported issues are raised by NFPG: compliance with the Wilderness Act, 16 U.S.C. §§ 1131, 1132; compliance with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 et seq.; compliance with the statutes and regulations authorizing the exchanges. The Wilderness Act was not raised by NFPG in its administrative appeals; hence, we decline to consider it here. United States v. Consolidated Mines & Smelting Co., 455 F.2d 432, 438–439, 453 (9th Cir. 1971).

NFPG argues both that there has been noncompliance with specific requirements of the National Environmental Policy Act of 1969 and that the environmental-impact statements prepared were generally insufficient. Defendants, on the other hand, "doubt" whether any statement was required at all, apparently on the theory that the mere shuffling of titles could have no significant impact on the environment.

### V. NEPA STATEMENT

[5] We do not "doubt" that NEPA applies to this massive land exchange. While the federal defendants are not themselves planning to take action "significantly affecting the quality of the human environment," 42 U.S.C. § 4332 (C), the private defendants plan such action, and the exchange is an act without which such action could not be taken. The land exchange is thus analogous to the licensing of or granting of federal funds to a nonfederal entity to enable it to act. Such federal "enablement" has

consistently been held to be subject to NEPA. Brooks v. Volpe, 460 F.2d 1193 (9th Cir. 1972); Natural Resources Defense Council, Inc. v. Morton, 148 U.S. App.D.C. 5, 458 F.2d 827 (1972); Lathan v. Volpe, 455 F.2d 1111 (9th Cir. 1971); Greene County Planning Board v. Federal Power Comm., 455 F.2d 412 (2d Cir.), cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972). Nor would compliance with NEPA be excused by the ignorance of the federal authorities prior to the exchange of the plans the private party may have for the land he will receive. The short answer is that Congress has imposed an affirmative duty on the federal party to the exchange to receive assurances of the plans of the private developer prior to the exchange. See Public Land Law Review Comm'n, One Third of the Nation's Land 266-67 (1970).

[6] The NEPA statement on these exchanges was not prepared until after the decision of the Regional Forester approving the exchanges. When the decision of the Regional Forester was appealed, the Chief Forester refused to review the decision until an adequate environmental statement had been prepared. A statement was prepared and thereafter accompanied the proposed exchange through all levels of administrative consideration. Normally, an impact statement must be prepared prior to the initial decision to commit resources. 42 U.S.C. § 4332(B); Calvert Cliffs Coordinating Comm., Inc. v. Atomic Energy Comm., 146 U.S.App.D.C. 33, 449 F.2d 1109, 1128 (1971).

[7] Although proper timing was not followed in this case, we decline to remand on this ground. While the Regional Forester did not prepare a formal enviromental-impact statement, his written explanation of his decision to those who had expressed concern about the exchange shows that he did consider environmental factors. When the lack of a NEPA statement was called to the attention of the Chief Forester, he ordered one prepared. There has been no prejudicial failure to comply with NEPA, and the sterile exercise of having the Regional Forester consider the impact statement on an exchange which has already been approved by all levels of the administrative hierarchy would serve no useful purpose. See Calvert Cliffs Coordinating Comm. Inc. v. Atomic Energy Comm., 449 F.2d 1120.

[8] The second specific deficiency NFPG urges on us is the failure of the NEPA statement to contain written comments from the Administrator of the Environmental Protection Agency (required by § 309 of the Clean Air Act, 42 U.S.C. § 1857h—7). However, the statement was duly submitted to the E.P.A. The Forest Service should not be penalized because the Administrator had nothing to say.

[9] NFPG also attacks generally the sufficiency and completeness of the statement. However, although the statement, like most of its fellows, can be improved by hindsight and sophisticated editing, we believe that the statement satisfied the intent of the statute. Environmental Defense Fund v. Corps of Engineers, 342 F.Supp. 1211 (E.D.Ark. 1972), aff'd, 470 F.2d 289 (8th Cir. 1972).

VI STATUTORY AUTHORITY

A rather complex set of exchange authorities governs land exchanges in the area in and near Yellowstone Park. For his authority in carrying out all phases of these exchanges, the Secretary relied on the General Exchange Act of 1922, 16 U.S.C. § 485. NFPG argues that the Secretary did not comply with the conditions of the General Exchange Act. NFPG also contends that, with reference to Exchange No. 2, the Secretary should have used the exchange authority made applicable by statute to the lands within the boundaries of Yellowstone Park.

The General Exchange Act permits the Secretary of the Interior to "accept * * * title to any lands within the exterior boundaries of the national forests which, in the opinion of the Secretary of

Agriculture, are chiefly valuable for national-forest purposes, and in exchange therefor may patent not to exceed an equal value of such national-forest land, in the same State, surveyed and nonmineral in character * * *." 16 U.S.C. § 485. The Act requires notice of the exchange to be published in a newspaper of general circulation for four successive weeks before the exchange is effected. In 1925 a provision was added to the General Exchange Act permitting either party to an exchange under that Act to reserve timber, minerals, or easements. Act of February 28, 1925, Pub.L.No.513, 43 Stat. 1090, codified as 16 U.S.C. § 486.

The General Exchange Act was an innovation; prior to that Act exchanges had been authorized on an individual basis by special bills which often contained their own restrictions on the authority of the Secretary or the private exchanger. House Public Lands Committee, H.R. Rep.No.748, 67th Cong., 2d Sess. (1922). The previous pattern was reverted to in connection with a 1926 extension of the boundaries of Yellowstone Park to provide a winter range for elk. This special exchange authority was similar to the General Exchange Act, as amended, but contained no provision permitting the reservation of mineral or timber rights by the United States. Act of May 26, 1926, Pub.L. 295, §§ 2 and 3, 44 Stat. 655, 656, codified as 16 U.S.C. §§ 38, 39.

In 1929, the boundaries of Yellowstone Park again were extended. This extension did not contain a separate exchange authority, but provided that "the provisions of the Act of March 20, 1922 [General Exchange Act], as amended shall continue to be applicable to the areas included within the Yellowstone National Park by this Act." Act of March 1, 1929, Pub.L.No.888, § 3, 45 Stat. 1436, codified as 16 U.S.C. § 21c.

[10] NFPG attacks the sufficiency of compliance with these statutes in a number of particulars. First, it asserts that the "equal value" limitation was not complied with in either of the challenged exchanges because the agency's appraisers improperly valued the land involved. However, the Secretary's decision to accept those values is supported by substantial evidence. Accordingly, it is final.

[11, 12] Next, NFPG urges that because the General Exchange Act prevents the United States from conveying mineral land the Secretary had no authority to exchange lands under a reservation of mineral rights. However, one of the principal purposes of the 1925 addition to the Act was to legalize the administrative practice of conveying lands believed to contain minerals but reserving the rights thereto to the United States. H.R. Rep. 1176, 68th Cong., 2d Sess. (1925). A reservation is not a conveyance. The exchanges cannot be challenged on this score.

Finally, NFPG urges that the Forest Service violated the authorizing statutes and its own regulations by failing to itemize the lands in Exchange No. 2 according to the statutory authorities for that exchange.

The Forest Service Manual requires itemization, Forest Service Manual § 5431.4, but we need not decide whether a violation of the manual alone would invalidate an authorized exchange. The manual merely expresses the intent of the relevant statutes. Congressional intent was not satisfied here. It was therefore error to grant summary judgment with reference to Exchange No. 2 (the Yellowstone Park exchange).

[13] The purpose of the General Exchange Act was to relieve Congress of the burden of considering new legislation every time an exchange authority was proposed for a federal tract. Against this burden was balanced the difficulty of making certain, without Congressional consideration of each exchange, that the terms of the exchange were responsive to local needs. To allay these fears, western Congressmen were careful to insert into the legislative history of the General Exchange Act the statement that "special provisions will not be changed by the passing of this * * * [Act]." 64 Cong.Rec. 3451 (remarks of Represen-

tative Raker of California), and the General Exchange Act itself provided the means for local interests to be notified of each exchange by newspaper notices "reciting the lands involved." The obvious purpose of the notification procedure was to enable local persons opposed to an exchange to protest to the Secretary of the Interior and to their representatives in Washington.

[14] The Act of May 26, 1926, extending the boundaries of Yellowstone Park, included its own exchange authority with its own equal-value limitation and with conditions more restrictive than those in the General Exchange Act as amended. We cannot assume that Congress acted inadvertently in providing this separate exchange authority for lands within Yellowstone National Park. We are therefore bound to give effect to specific Congressional restrictions.

[15] The government in its brief on appeal urges that the "nonmineral" and "equal-value" limitations of the 1926 Act were in fact satisfied with respect to those portions of Exchange No. 2 involving lands within Yellowstone Park, and that the separate "equal-value" requirement of the General Exchange Act was satisfied with respect to the remaining portions of Exchange No. 2. They may have been, but the record does not show that they were. This question is one to be resolved by an evidentiary hearing in the district court. It cannot be resolved by summary judgment. Congress was careful to ensure, in both the 1926 and General Exchange Acts, that local objections, if any, were to be heard. In the proceedings below, the right to object was rendered meaningless by the failure of the Forest Service to indicate in its notices that part of the proposed exchange was to be carried out under the authority of the 1926 Act and part under the General Exchange Act.

We must, therefore, remand for further proceedings. NFPG has urged only that it be given an opportunity to present evidence of noncompliance with limitations in the exchange authorities either before the administrator or before the district court. Therefore, if the Secretary wishes, he may defend against NFPG's charges in district court rather than repeat the entire administrative process as to Exchange No. 2. Upon remand, the court will first have to itemize the various tracts involved in Exchange No. 2 according to the various exchange statutes. It will then have to decide whether the "nonmineral" and "equal-value" limitations of the 1926 Act have been complied with with respect to the lands exchanged pursuant to its authority, and whether the "equal-value" requirement of the General Exchange Act was satisfied with respect to the remaining lands.

After the cause had been argued and submitted, counsel for the appellants represented to this court that he had newly discovered evidence which might, in the interests of justice, require reopening the case in the district court with respect to both Exchange No. 2 and Exchange No. 3. In view of the necessity for a remand of this case, that matter can now be addressed to the district court.

Reversed and remanded for further proceedings.



Jerome B. GUINAND, Plaintiff-Appellant,

v.

ATLANTIC RICHFIELD COMPANY, Defendant-Appellee.

No. 73-1040.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 12, 1973.

Decided Oct. 12, 1973.

Assignor of oil and gas lease brought diversity action, against successor in interest to assignee, under con-