§ 651.11                                              32 CFR Ch. V (7-1-02 Edition)

(e) Actions that require licenses for operations or special material use, including a Nuclear Regulatory Commission (NRC) license, an Army radiation authorization, or Federal Aviation Administration air space request (new, renewal, or amendment), in accordance with AR 95-50.

(f) Materiel development, operation and support, disposal, and/or modification as required by DOD 5000.2-R.

(g) Transfer of significant equipment or property to the ARNG or Army Reserve.

(h) Research and development including areas such as *genetic engineering*, laser testing, and electromagnetic pulse generation.

(i) Leases, easements, permits, licenses, or other entitlement for use, to include donation, exchange, barter, or Memorandum of Understanding (MOU). Examples include grazing leases, grants of easement for highway right-of-way, and requests by the public to use land for special events such as air shows or carnivals.

(j) Federal contracts, grants, subsidies, loans, or other forms of funding such as Government-Owned, Contractor-Operated (GOCO) industrial plants or housing and construction via third-party contracting.

(k) Request for approval to use or store materials, radiation sources, hazardous and toxic material, or wastes on Army land. If the requester is non-Army, the responsibility to prepare proper environmental documentation may rest with the non-Army requester, who will provide needed information for Army review. The Army must review and adopt all NEPA documentation before approving such requests.

(l) Projects involving chemical weapons/munitions.

§ 651.11 Environmental review categories.

The following are the five broad categories into which a proposed action may fall for environmental review:

(a) *Exemption by law.* The law must apply to DOD and/or the Army and must prohibit, exempt, or make impossible full compliance with the procedures of NEPA (40 CFR 1506.11). While some aspects of Army decision-making may be exempted from NEPA, other aspects of an action are *still subject to* NEPA analysis and documentation. The fact that Congress has directed the Army to take an action does not constitute an exemption.

(b) *Emergencies.* In the event of an emergency, the Army will, as necessary, take immediate actions that have environmental impacts, such as those to promote national defense or security or to protect life or property, without the specific documentation and procedural requirements of other sections of this part. In such cases, at the earliest practicable time, the HQDA proponent will notify the ODEP, which in turn will notify the ASA(I&E). ASA(I&E) will coordinate with the Deputy Under Secretary of Defense for Installations and Environment (DUSD(IE)) and the CEQ regarding the emergency and subsequent NEPA compliance after the emergency action has been completed. These notifications apply only to actions necessary to control the immediate effects of the emergency. Other actions remain subject to NEPA review (40 CFR 1506.11). A public affairs plan should be developed to ensure open communication among the media, the public, and the installation. The Army will not delay an emergency action necessary for national defense, security, or preservation of human life or property in order to comply with this part or the CEQ regulations. However, the Army's on-site commander dealing with the emergency will consider the probable environmental consequences of proposed actions, and will minimize environmental damage to the maximum degree practicable, consistent with protecting human life, property, and national security. State call-ups of ARNG during a natural disaster or other state emergency are excluded from this notification requirement. After action reports may be required at the discretion of the ASA(I&E).

(c) *Categorical Exclusions (CXs).* These are categories of actions that normally do not require an EA or an EIS. The Army has determined that they do not individually or cumulatively have a substantial effect on the human environment. Qualification for a CX is further described in Subpart D and Appendix B of this part. In accordance with

394

**Department of the Army, DoD** §651.12

§ 651.29, actions that degrade the existing environment or are environmentally controversial or adversely affect environmentally sensitive resources will require an EA.

(d) *Environmental Assessment.* Proposed Army actions not covered in the first three categories (paragraphs (a) through (c) of this section) must be analyzed to determine if they could cause significant impacts to the human or natural environment (see § 651.39). The EA determines whether possible impacts are significant, thereby warranting an EIS. This requires a "hard look" at the magnitude of potential impacts, evaluation of their significance, and documentation in the form of either an NOI to prepare an EIS or a FNSI. The format (§ 651.34) and requirements for this analysis are addressed in Subpart E of this part (see § 651.33 for actions normally requiring an EA). The EA is a valuable planning tool to discuss and document environmental impacts, alternatives, and controversial actions, providing public and agency participation, and identifying mitigation measures.

(e) *EIS.* When an action clearly has significant impacts or when an EA cannot be concluded by a FNSI, an EIS must be prepared. An EIS is initiated by the NOI (§ 651.22), and will examine the significant environmental effects of the proposed action as well as accompanying measures to mitigate those impacts. This process requires formal interaction with the public, a formal "scoping" process, and specified timelines for public review of the documentation and the incorporation of public comments. The format and requirements for the EIS are addressed in Subpart F of this part (see § 651.42 for actions normally requiring an EIS).

**§ 651.12  Determining appropriate level of NEPA analysis.**

(a) The flow chart shown in Figure 1 summarizes the process for determining documentation requirements, as follows:

395