EDWARD H. KUBO, JR. (2499)
United States Attorney
THOMAS HELPER (5676)
 Assistant United States Attorney
Room C-242, U.S. Courthouse
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 440-9290; Facsimile (808) 541-3752

SUE ELLEN WOODRIDGE
Assistant Attorney General
BARRY A. WEINER
JAMES D. GETTE
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
General Litigation Section, PO Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0469; Facsimile (202)305-0274
Email: Barry.Weiner@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ILIO'ULAOKALANI COALITION, a Hawai'i, nonprofit corporation; NA IMI PONO, a Hawaii unincorporated association; and KIPUKA, a Hawai'i unincorporated association, | ) CIVIL NO.04-00502 DAE BMK ) ) FEDERAL DEFENDANTS' ) SECOND RESPONSE TO ) PLAINTIFFS' FIRST SET OF ) INTERROGATORIES AND REQUEST ) FOR PRODUCTION OF DOCUMENTS ) AND THINGS AND SECOND |
| Plaintiffs, | ) SUPPLEMENTAL RESPONSE ) |
| v. | ) ) |
| DONALD H. RUMSFELD, Secretary of United States Department of | ) ) |


EXHIBIT 66

```
Defense; and FRANCIS HARVEY        )
Secretary of the United States     )
Department of the Army,            )
                                   )
                     Defendants.   )
                                   )
```

Pursuant to Rule 33 of the Federal Rules of Civil

Procedure, Defendant United States of America (United States),

hereby submits its Second Response to Plaintiffs First Set of

Interrogatories and Requests for Production of Documents dated

November 20, 2006.

## PRELIMINARY STATEMENT

The Responses that follow are based upon the best knowledge,

information, and belief of the United States at this time. The

United States reserves the right to amend or supplement this

Response if different or additional information is subsequently

discovered, or if the relevance or significance of information

currently known is subsequently ascertained.  Nothing in the

response shall be construed as, or considered to be, final or

exhaustive, nor shall this Response prejudice the United States'

right to further discover, research, analysis, or presentation

of evidence at trial.

## GENERAL OBJECTIONS

The United States makes the following general objections,

which are continuing in nature:

2

In this response, per agreement between the parties, the United States in its second response will reply to interrogatories 6, 8, 9, 11 to 21, 23 to 28. It also makes a second supplemental response to its initial response to interrogatory 5.

Subject to and without waiving each of its General Objections, i.e. asserting each such objection for each Response set forth below as if fully stated therein, the United States responds to the Interrogatories as follows:

INTERROGATORY NO. 5: Please describe with particularity each Stryker-specific training exercise you contend the 2nd Brigade must conduct in Hawai'i to be mission deployable as an SBCT, including, but not limited to, a description, with respect to each exercise, of the number of days the exercise would last, the number of soldiers that would participate, the number and type of weapons that would be employed, the surface danger zones for the weapons that would be employed with respect to the range or other location where the weapons would be used, the number and type of munitions that would be expended, the number and type of Stryker vehicles that would participate, and the ranges or other locations where each exercise would take place.

SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

8

In its First Supplemental response to Interrogatory No. 5, the Army indicated that 2/25 SBCT would only fire blank ammunition at Ranges KR-4, 5, and 6 for Stryker-specific training. However, 2/25 does intend to conduct live-fire Stryker-specific training on these ranges using .50 caliber machine guns. The .50 caliber ammunition on these ranges would be limited to Short Range Training Ammunition (SRTA) with a maximum range of 900 meters. The SRTA rounds are plastic and contain less gunpowder than a standard round. A detailed description of the training scenario is attached.

As noted in the Army's First response to Interrogatory No. 5, live-fire exercises involving Stryker-specific training would occur on Range 8 at PTA. To clarify an issue that arose during Plaintiffs' site-visit, these live-fire exercises could involve Strykers moving approximately 150 meters down range on existing course roads, stopping, firing and then moving to another target and repeating the process. This sometimes is referred to "firing on the move". This type of moving, stopping, firing, and moving at Range 8 is required in order to test and train on a new weapons stabilization system for the Stryker vehicles.

As noted in the Army's First Supplemental Response to Interrogatory #5, maneuver areas at Dillingham Training Area will consist of existing roads, old airfield taxiways, aircraft

9

parking areas or previously disturbed areas within the old Nike site. For clarification, maneuver will be limited to the areas described above that are within the shaded orange area on the attached Dillingham Training Area map.

REQUEST FOR PRODUCTION NO. 5: Please identify and produce all documents that support, contradict, discuss or are in any way related to your response to Interrogatory No. 5, including, but not limited to, any schedules for Stryker-specific training and any maps of ranges or other locations where you propose to conduct Stryker-specific training.

SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.5:

1. Briefing containing description of training scenarios for Ranges KR 3 -6.

2. Dillingham Training Area map

3. Memorandum, SUBJECT: Stryker Operator New Equipment Training (OPNET) Entrance and Exit Criteria, 2 August 2005.

4. Powerpoint Presentation: Long Range Training Calendar, 2d SBCT.
5. Map of Range 8, PTA

INTERROGATORY NO. 6: please state and explain fully all facts on which you base your contention that the training exercises described in response to Interrogatory No. 5 would not cause any harm to the human environment, including, but not

10

adjusted to avoid all known archaeological sites.

No Stryker maneuver training will occur at the Urban Assault Course (UAC). Small arms live fire will be limited to inside of the Shoot House which is designed to keep all ordnance within its confines. Non-explosive training 40mm munition will be fired from the M-203 grenade launcher at the Grenadier Range. While Breach Course will use only the smallest C-4 charge with a 35 meter SDZ. The SDZs depicted on the map for the UAC will not impact any archaeological sites.

Section 7 of the Federal Endangered Species Act of 1973 states that a Federal agency must complete a formal consultation when any activity it proposes may have an effect on a listed species. The Army completed a formal Section 7 consultation with the US Fish and Wildlife Service for all activities contained within the Final Transformation Environmental Assessment for Pohakuloa Training Area and all Training Areas on Oahu except Makua Military Reservation. The outcomes of both formal consultations were non-jeopardy Biological Opinions. This means that the US Fish and Wildlife Service, the Federal agency authorized by Congress to assess the impacts to endangered species from Federal activities, found that the Army's actions were not likely to jeopardize the continued existence of any of the species found within its installations.

15

RESPONSE TO INTERROGATORY NO.12:

See the Response to Interrogatory 6.

Additionally, Use of UAC was analyzed by the USFWS.  The
outcome of that formal consultation was a non-jeopardy
biological opinion.


REQUEST FOR PRODUCTION NO. 12:  Please identify and produce
all documents that support, contradict, discuss or are in any
way related to your response to Interrogatory No. 12, including,
but not limited to, any documents depicting or discussing the
surface danger zone for proposed training at the UAC, any
archaeological or biological surveys, any biological assessments
or biological opinions prepared pursuant to the Endangered
Species Act, any environmental documents prepared pursuant to
the National Environmental Policy Act, and any analyses prepared
pursuant to the PA.

RESPONSE TO REQUEST FOR PRODUCTION NO.12:

See the Response to Request for Production No. 6.


INTERROGATORY NO. 13:  With respect to each type of
exercise described in response to Interrogatory No. 5, 7, or 10,
please identify all military facilities, whether in the United
States or abroad, that can support training that would satisfy

47

the training requirement you propose to satisfy via conducting
such exercise in Hawai'i.

RESPONSE TO INTERROGATORY NO.13:

With respect to the Stryker specific exercises described in
the responses to interrogatories 5, 7, or 10, Fort
Richardson/Fort Wainwright in Alaska, Fort Lewis in Washington
State, the National Training Center, California and Fort Polk,
Louisiana are the only facilities that can support Stryker
specific exercises because they are the only facilities that
have done an environmental analysis of Stryker specific
training.


REQUEST FOR PRODUCTION NO. 13:  Please identify and produce
all documents that support, contradict, discuss or are in any
way related to your response to Interrogatory No. 13.

RESPONSE TO REQUEST FOR PRODUCTION NO.13:

1.  See the response to request for production NO. 8.

2.  A web link to the Alaska EIS can be accessed at:
http://www.usarak.army.mil/conservation/Transformation_EIS.htm

3. In April 2004, the Army completed an FEIS entitled *Final
Environmental Impact Statement for the 2d Armored Cavalry
Regiment Transformation and Installation Mission Support, Joint
Readiness Training Center (JRTC) and Fort Polk, Louisiana and
Long-Term Military Training Use of Kisatchie National Forest
Lands.* The FEIS was prepared in accordance with NEPA and
applicable Army, Forest Service and Federal Aviation
Administration (FAA) regulations. The Army was the lead agency
for preparation of the FEIS and the Forest Service and FAA were

cooperating agencies. The FEIS is available online at
http://notes.tetratech-ffx.com/PolkEIS.nsf

3.  Figure, LESCHI TOWN (Under Construction)

4.  APPENDIX 1 (Implementation Plan for Fixed Tactical
Internet (FTI) at Fort Lewis, WA and Yakima Training Center
YTC) to ANNEX K (Signal) to OPORD 02-03 (Transformation)

5.  Fixed Tactical Internet (FTI), powerpoint presentation.

6.  FTI Definition (Annex B-BCTE)


INTERROGATORY NO. 14:  Please state and explain fully all

facts upon which you base your response to Interrogatory No. 13.

RESPONSE TO INTERROGATORY NO.14:

See the response to Interrogatory 13.


REQUEST FOR PRODUCTION NO. 14:  Please identify and produce

all documents that support, contradict, discuss or are in any

way related to your response to Interrogatory No. 14.

RESPONSE TO REQUEST FOR PRODUCTION NO.14:

1.  See the response to Request for Production No. 8.

2.  See the response to request for production NO. 13.

INTERROGATORY NO. 15:  With respect to each military

facility identified in response to Interrogatory No. 13, please

describe and explain fully the efforts, if any, you made during

the period from October 5, 2006 to the present to secure

opportunities at that facility for elements of the 2nd Brigade to

conduct training exercises that satisfy one or more of the training requirements you propose to satisfy by conducting training in Hawai'i.

RESPONSE TO INTERROGATORY NO.15:

USARPAC has not engaged in any efforts from 5 October 2006 to the present to secure training opportunities at the training facilities listed in Interrogatory 13.

The possibility of having to train the 2/25th SBCT on the mainland is a totally disruptive course of action to contemplate given the brigades' current transformational timeline. Having this SBCT train on the mainland would create a degree of uncertainty and chaos that no one would want in a time of peace let alone a time of war as we are experiencing today. Being forced to train on the mainland would place enormous stress on our Army families and the lack of predictability for the soldiers and their families given the short notice that our unit would get to execute a course of action such as this would be incredibly demoralizing for the brigade. The 2/25 SBCT would be completely disjointed given that we would have units on the mainland, Oahu and PTA all trying to train for war with a complete lack of unity of command and unity of effort that are so important in our profession of arms. As a result, this brigade would have units that are less trained and less prepared

50

California (NTC), and The Joint Readiness Training Center at
Fort Polk, Louisiana (JRTC). Even if these sites were
available, the unit, as noted above, would ultimately be less
combat effective than if they trained in Hawaii. Training in
Hawaii reduces risk, provides for more training, keeps Soldiers
closer to their families during the critical period prior to
combat, and costs less to train over the coming year.

The military facilities where Stryker training has been
previously conducted, from the USARPAC perspective, cannot
support the training requirements proposed in Hawaii.

Loss of Training Time: To deploy units to and from an
alternate training site would result in a loss of up to four (4)
weeks or more of total training time due to the preparatory
requirements of moving equipment and personnel to and from an
alternate location (2 weeks on each end). At best, this Brigade
will lose at least 2 months of essential training time already
as a result of the injunction. The training time lost due to
movement to and from an alternate site, will proportionally
reduce training opportunities for Soldiers.

Soldier and Family Impact: Movement to alternate training
sites, even if kept to a minimum time for training, will almost
double the amount of time that Soldiers will spend separated
from their families prior to deploying on their one-year combat

4.  Army Unit Set Fielding Directive, 6 July 2006.

5.  FY 2007 CTC Calendar, As of 29 Nov 06.

6.  FY 2008 CTC Calendar, As of 29 Non 06.

7.  Fort Lewis Command Briefing.

8.  Information Paper, Subject: SBCT 7 Stand Up, 29 Nov 06.

9.  End State Chart.

See also response to request for production NO. 17.


INTERROGATORY NO. 17:  Please describe in detail the process for standing up SBCT 7 at Fort Lewis, Washington, including, but not limited to, describing the schedule for activating and training SBCT 7.

RESPONSE TO INTERROGATORY NO.17:

The current Long Range Transformation Plan V2.2 dated 13 November 2006 establishes the time line to stand up, equip, train, and prepare for combat operations the SBCT # 7, 5th brigade 2nd Infantry Division . This timeline spans approximately 29 months from beginning to end and is representative of the time required to establish a SBCT.  The stand up of SBCT 7 at Fort Lewis will begin on April 16, 2007.

The timeline to create is divided into three phases: 1) Force Generation and Team Building, 2) Unit Set Fielding (USF) and New Equipment Training (NET) and 3) Collective Training and

60