IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI‘I

| | |
|---|---|
| MĀLAMA MĀKUA, a Hawai‘i non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DONALD H. RUMSFELD, Secretary of Defense; and FRANCIS J. HARVEY, Secretary of the United States Department of the Army,<br><br>Defendants. | ) Civil No. 00-00813 SOM LEK<br>)<br>) DECLARATION OF FREDERICK A.<br>) DODGE, M.D.; EXHIBIT "44"<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DECLARATION OF FREDERICK A. DODGE, M.D.

I, FREDERICK A. DODGE, M.D., declare under penalty of perjury that:

1.　I am a long-time resident of Wai‘anae, O‘ahu, a medical doctor by profession, and a member of Mālama Mākua. If called as a witness, I could and would testify competently to the matters set forth herein.

2.　I have been actively involved for over 12 years in the efforts by Mālama Mākua and the larger community to protect Mākua Valley and its natural



EXHIBIT _79_

and cultural resources from the impacts of military activities. I have regularly participated in the community access events at the valley, have traversed as much of the valley as the Army has permitted, and am intimately familiar with the features of the valley and the Mākua Military Reservation ("MMR") located there.

3.      Over the years, I have heard the Army insist time and again that it has taken all necessary precautions to ensure military activities at MMR will not harm the natural and cultural resources of the valley. The historical record, however, shows quite the opposite. While the major mishaps, like the most recent catastrophic fires in September 1998 and July 2003, are more widely known, there are many other incidents that refute the Army's blanket claims that we have no reasons for concern.

4.      On October 18 and 19, 2001, I participated as a civilian observer of the first combined-arms live-fire exercises ("CALFEXs") at MMR authorized under the October 4, 2001 Settlement Agreement and Stipulated Order ("Settlement"). These were the first exercises conducted in three years, since September 1998, when a mortar round fired during training at MMR landed outside the firebreak road and started a blaze that burned about 800 acres.

5.      At around 7 a.m. on October 18, 2001, I and other civilian observers were watching from the MMR Range Control observation tower as the mortars

2

began firing at the impact area towards the center of the valley. I took many pictures during the firing exercise, including shots of the mortar impacts. After the third mortar round was fired, I saw a puff of smoke appear outside the south firebreak road, near "C-Ridge," the ridge separating Mākua Valley from Kahanahāiki Valley, which is the area where the Marines started the September 1998 fire. I immediately took a photograph of the smoke cloud.

      6.      Attached hereto as Exhibit "44" is a true and correct copy of a photograph I took on October 18, 2001, that accurately depicts what I saw. The photograph shows the impact area, which is the flat, grassy expanse, with the targets circled on the right side of the image. The cloud of smoke from the misfired mortar (in the circle on the left) rises beyond the outer limit of the impact area and beyond the firebreak road, which is the thin brown line at the edge of the grassy area.

      7.      Although the Army initially denied any mortar rounds landed outside the firebreak road, subsequent investigation confirmed the contrary, consistent with what I saw and documented.

      8.      On October 19, 2001, I saw Army helicopters mistakenly fire 50-caliber machine guns at targets that were not in the impact area, but in the area called "Objective Elk," which is across a large gully from the impact area.

3

Numerous cultural sites dating back to pre-Contact times are located in the Elk area, in the direct vicinity of the targets upon which the helicopters fired.

9.    On April 24 and 25, 2003, I participated as a civilian observer of a CALFEX at MMR that was part of a string of six CALFEXs that took place during April and May 2003. These CALFEXs were the last ones conducted before the July 2003 fire, in which a routine "prescribed burn" spread out of control and burned at least 2,100 acres.

10.    On April 24, I observed a mortar round land short of the impact area, in the gully between the impact area and Objective Elk. On April 25, I observed at least two more mortar rounds miss the impact area and hit this gully.

11.    On May 10, 2003, I participated in a cultural access to MMR that immediately followed the six CALFEXs in April and May 2003. During the access, I and other participants visited the Elk area. We discovered a newly formed crater in the dirt and a mortar tailfin lying on the surface of the ground. This scene was identical to numerous others I have seen, which the Army's Explosive Ordinance Disposal ("EOD") escorts have pointed out to me as indication of a recent mortar explosion.

12.    On April 9, 2004, I participated in a cultural site inspection after the Marines conducted a CALFEX at MMR, which was the only live-fire exercise

4

using mortars and artillery conducted at MMR in the period from the July 2003 fire to the present. Civilian observers had reported that, the previous day, stray mortar rounds had hit areas on "C-Ridge" and in the valley of Mākua Stream, where cultural resources are known to exist. The Army did not give Mālama Mākua's observers the opportunity to inspect these impact sites to assess whether any cultural sites had been damaged. My understanding is that such inspection was prohibited due to safety concerns related to the presence of unexploded ordnance.

13.     While the Army claims there will be no chance of environmental harm if it is allowed to resume live-fire training at MMR, it is very telling that both the first and last live-fire exercises the Army conducted with mortars and artillery under the Settlement, as well as many of the exercises in between, resulted in mortar rounds landing in areas where they threatened harm to natural and cultural resources through catastrophic fires or explosive impact.

14.     Since the entry of the Settlement, I have been primarily responsible for submitting on behalf of various community groups requests for the cultural access to MMR that is guaranteed under paragraph 13 of the Settlement. I have also participated in literally dozens of accesses in the more than four years since entry of the Settlement. Based on these experiences, I am very familiar with the cultural sites at MMR to which the Army has allowed the community access and

5

also with the cultural sites at MMR to which the community has requested access,

but been denied.

15.    From entry of the Settlement in 2001 until January 2005, the Army

allowed the community, pursuant to paragraph 13 of the Settlement, to access the

following thirteen sites at MMR, which I have referenced by official site number:

4536, 4537, 4538, 4539, 4541, 4542, 4543, 4544, 4545, 4546, 4547, 5456, and

5924. I personally have visited all of these sites on one or more occasion.

16.    General descriptions of the sites listed in the preceding paragraph –

which include heiau (Hawaiian temples), pohaku ki'i (petroglyph rocks), imu

(earthen ovens), and shrines – are provided in Table 3-28 of the March 2005 draft

environmental impact statement ("DEIS") the Army prepared pursuant to the

Settlement. These sites are located within Mākua and Ko'iahi Valleys, in the

southern portion of MMR, as depicted on Figure 3-25 from the DEIS. Copies of

the relevant pages from the DEIS are attached to plaintiff's opposition as Exhibit

"[]."

17.    On February 27, 2005, I participated in a regularly scheduled cultural

access to MMR. Pursuant to established protocols for such accesses, I had

submitted to the Army more than a month ahead of time a description of the areas

6

the community wished to access, including site numbers 4537 and 4546, sites I and others had routinely accessed in the past.

18.     Upon arriving at MMR, the Army's representative, Tom Piskel, informed the community members who had arrived for the access that, due to alleged safety concerns, the Army had denied access to the requested sites listed in the preceding paragraph and, until further notice, was restricting cultural access to a single site at the entrance to MMR, site number 5926. The Army would not even allow access participants to view cultural sites from a distance by walking along the graded, coral firebreak roads, as we had often done in the past.

19.     From February 27, 2005, until the present, the Army has continued to limit cultural access to only site number 5926, rejecting repeated requests to re-open access to sites the community had routinely visited in the past, without incident. Before imposing these drastic restrictions, the Army failed to comply with the Settlement's requirement to consult native Hawaiian cultural practitioners, including Mālama Mākua. Since virtually eliminating access to cultural sites at MMR, the Army has rebuffed Mālama Mākua's efforts to establish a timetable for restoring access.

//

//

7

I declare under penalty of perjury that I have read the foregoing declaration and know the contents thereof to be true of my own knowledge.

DATED: Honolulu, Hawai'i, <u>December 31, 2005</u>.

_____
FREDERICK A. DODGE, M.D.

Mālama Mākua v. Donald H. Rumsfeld, et al.; Civil No. 00-00813 SOM LEK (D. Haw.); DECLARATION OF FREDERICK A. DODGE, M.D.



EXHIBIT 44