# Declaration of Michelle Mansker

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| 'ILIO'ULAOKALANI COALITION, a Hawaii nonprofit corporation; NA 'IMI PONO, a Hawaii unincorporated association; and KIPUKA, a Hawaii unincorporated association<br><br>                    Plaintiffs,<br><br>     v.<br><br>ROBERT GATES, Secretary of Defense; and  FRANCIS HARVEY, Acting Secretary of the Untied States Department of the Army<br><br>                    Defendants. | CIVIL NO. 04-00502 DAE BMK<br><br>DECLARATION OF MICHELLE MANSKER |

## DECLARATION OF MICHELLE MANSKER

1.    I am the Natural Resource Manager for the 25th Infantry Division and U.S. Army, Hawaii, Schofield Barracks, Oahu, Hawaii, and I make this declaration based on personal knowledge unless otherwise indicated.

2.  Mr. Castillo is not formally trained as a botanist. See Dep. Tr. of John Castillo, December 11, 2006 (12/11/06 Castillo Dep. Tr."), pages 36:22-23, attached hereto as Attachment "1." He was hired as a biologist by the United States Fish and Wildlife Services ("USFWS"), with a focus on forestry, not botany.

3.  As set forth in ¶ 2 of my Declaration of December 15, 2006 ("Mansker 12/15/06 Dec.) filed herein, I have conducted extensive

research on the plant communities on the seven (7) main Hawaiian Islands. Indeed, during the first three (3) years of my employment with USFWS as a botanist, I was heavily involved in developing and mapping the critical habitat of 292 plant species on the seven (7) main Hawaiian Islands. Mr. Castillo's commentary about my experience and background is, therefore, made with no basis in fact or knowledge.

4. Mr. Castillo's commentary regarding the Army's management of invasive species, listed species status on the installation, and the fountain grass located in the impact area is not credible given that he admitted during deposition testimony that he did not completely and fully review the: (i) Biological Opinion prepared by the USFWS; (ii) Army's Integrated Wildfire Management Plan, and/or (iii) Army's Implementation Plan. See Attachment "1", 12/11/06 Castillo Dep. Tr. 9:22-23 and 46:8-15, 18-23.

5. In ¶ 8 of Mr. Castillo's Declaration dated December 17, 2006 ("12/17/06 Dec."), Mr. Castillo refers to "This study" when in fact he is referring to his "Approximate Distribution of Fountain Grass At Pohakuloa Training Area in 1997 and 2005." I reviewed the Pu'u Anahulu Wildfire Management Study, and there is no reference to the vegetation map identified above and attached as Exhibit "A" to his 12/17/06 Dec. Further, Mr. Castillo does not indicate the methodology he used in developing this "generalized" mapping. Without a description of the methodology used in developing this

2

vegetation map, it is impossible to determine the accuracy of this mapping. Additionally, Mr. Castillo states that approximately 14,900 acres was covered by fountain grass. His term "Covered with" is not a scientifically recognized description of vegetation type or prevalence. Typically, botanists use the percent cover of each individual plant type to classify a vegetation type. For instance, if a forest was 51% Ohia, one would classify it as dominated by Ohia. Once the dominant vegetation type is identified, one can form a hypothesis as to how this vegetation would respond to a wildfire threat. Mr. Castillo's description begs the question of exactly how much fountain grass is present and therefore just how vulnerable an area is to wild fire. From a botanist's perspective, Mr. Castillo's statements are virtually meaningless.

6.  The core of Mr. Castillo's opinion that I and the Army relied on outdated data is factually inaccurate, and his opinion that the threat from wild fire has dramatically increased due to the dramatic increase in the presence of fountain grass has no merit. Exhibit A (map) and the descriptions of Pohakuloa that form the basis of Mr. Castillo's opinion in his December 17, 2006 declaration are both inaccurate and unsubstantiated. I personally observed the Kipuka Kalawamauna area on the western border of PTA in July 2005. Contrary to Exhibit A which Mr. Castillo says portrays the areas "covered by" fountain grass, Kipuka Kalawamauna is an area the Army currently intensively manages for fountain grass control and as stated in my

3

December 15, 2006, declaration, this area is now dominated by native plants due to this effort.

7.    Additionally, Mr. Castillo states that "approximately" 5,519 acres of the impact area is now "covered" with fountain grass. Likewise the remainder of Mr. Castillo's description of the spread of fountain grass at PTA as depicted in Exhibit A is also inaccurate. The spread of fountain grass into new areas at PTA is very different from the total domination of an area by fountain grass.  Clumps of fountain grass intermittently spaced across a landscape does not constitute a wildfire threat above that of the dominant vegetation type.  My biologist for PTA, Mr. Darryl York, whose work and analysis I rely on regularly, has been in the areas identified on Mr. Castillo's map in red, confirms that the areas Mr. Castillo asserts are "covered" by fountain grass are in fact areas with widely spaced intermittent clumps of fountain grass and does not constitute a wild fire threat.

8.    Finally, as stated in earlier declarations, the impact area is littered with unexploded ordinance and therefore, inaccessible for vegetation surveys from the ground.  This calls into question how Mr. Castillo can arrive at this percentage of the impact area being covered by fountain grass.  One could use aerial photos to get a general idea of the vegetation covering an area, however, on the ground, physical observations, are necessary to determine the dominance of individual species and the under story species.

4

9.   The photo attached as "Attachment 3" to my December 15, 2006, declaration is an aerial photo of PTA.  This photo clearly illustrates the areas dominated by lava by their coloration on the map.  The darkest areas of the aerial photo are those dominated almost entirely by unvegetated lava flows.  The map clearly shows that there are large flows on the western and eastern portions of the impact area that bisect the central impact area from the areas containing listed species to the east of Red Leg Trail and the west of the impact area boundary.  Therefore, as indicated in my December 15, 2006, declaration, a catastrophic fire is not likely to result from Stryker-related training at PTA because much of the barren lava separates endangered species habitat in the western and eastern portions of PTA from impact areas.   See Mansker 12/15/06 Dec. at ¶ 11.

10.   The "2006 Center for Environmental Management of Military Lands Annual Report" ("CEMML") and the Biological Opinion both substantiate my earlier opinion and table set forth in my December 15, 2006, declaration that the majority of listed plants at PTA are increasing in number.  Mr. Castillo either failed to review and/or is ignoring the above documents and the most current status data on listed plants.

11.   The remaining assertions not addressed here but made in Mr. Castillo's 12/17/06 declaration suffer from the same flaws of factual inaccuracy and lacks a scientific basis.

5

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 18th day of December 2006.


Michelle Mansker

MICHELLE MANSKER

6