DAVID L. HENKIN          #6876
ISAAC H. MORIWAKE        #7141
EARTHJUSTICE
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
Telephone No.: (808) 599-2436
Fax No.: (808) 521-6841
Email: dhenkin@earthjustice.org
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| 'ĪLIO'ULAOKALANI COALITION, a Hawai'i nonprofit corporation; NĀ 'IMI PONO, a Hawai'i unincorporated association; and KĪPUKA, a Hawai'i unincorporated association, | ) Civil No. 04-00502 DAE BMK )<br>) PLAINTIFFS' MEMORANDUM IN<br>) SUPPORT OF MOTION TO<br>) CLARIFY DECEMBER 29, 2006<br>) ORDER SETTING INTERIM<br>) INJUNCTION |
| Plaintiffs, | ) |
| v. | ) ) |
| ROBERT M. GATES, Secretary of Defense; and FRANCIS J. HARVEY, Secretary of the United States Department of the Army, | ) ) ) ) ) |
| Defendants. | ) ) |

PLAINTIFFS' MEMORANDUM IN
SUPPORT OF MOTION TO CLARIFY
DECEMBER 29, 2006 ORDER SETTING INTERIM INJUNCTION

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................ 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ...................................3

      A.    The Ninth Circuit Remands For "A Fact-Intensive Inquiry"
            Into Which SBCT-Related Activities May Proceed Pending
            Compliance With NEPA ......................................................3

      B.    On Remand, The Army Identifies The SBCT-Specific
            Training It Contends Is Time-Critical ...................................5

            1.    Training at Schofield Barracks ...................................6

                  a.    Kolekole Ranges ..........................................6

                  b.    Qualification Training Range 1 .......................6

                  c.    Urban Assault Course ...................................7

            2.    Maneuver Training at Dillingham Training Area ....................7

            3.    Maneuver Exercises at East Range and KTA ...........................7

            4.    Training at Pōhakuloa Training Area .........................8

                  a.    PTA Ranges 1, 8/8B, and 10 ........................8

                  b.    Mortars .......................................................8

                  c.    PTA Range 11T ...........................................9

            5.    Use of Unmanned Aerial Vehicles ...........................9

      C.    The December 29, 2006 Order Does Not Clearly Identify
            Which SBCT-Specific Training Continues To Be Enjoined
            And Which Training May Proceed .......................................9

<u>Page</u>

III.    THE COURT SHOULD MODIFY ITS ORDER TO CLARIFY
        WHICH SBCT-SPECIFIC TRAINING MAY PROCEED
        DURING THE INTERIM INJUNCTION'S TERM ...................................11

IV.     CONCLUSION ...........................................................................................14

I.    INTRODUCTION

Plaintiffs ʻĪlioʻulaokalani Coalition, Nā ʻImi Pono, and Kīpuka (collectively, "the Hawaiian Groups") respectfully ask the Court to clarify its December 29, 2006 order and define with greater precision the Stryker Brigade Combat Team ("SBCT")-specific training it intended to allow during the term of the interim injunction.  In issuing its order, the Court appears to have intended to lift "the broad injunction issued by the Ninth Circuit" to allow defendants Robert M. Gates, Secretary of Defense, and Francis J. Harvey, Secretary of the United States Department of the Army, (collectively, "the Army") to engage in only those SBCT-specific training activities the Court concluded were "time-critical." 12/29/06 Order at 6, 60.  However, the portion of the order listing training that is no longer enjoined uses the open-ended phrase "including, but not limited to," introducing ambiguity regarding whether, in addition to the training discussed in the order, the Court intended to authorize unidentified training activities that the Army has never claimed are time-critical and the Court has never examined.  Id. at 57.  Moreover, while the order generally identifies the locations where SBCT-specific training may occur during the term of the interim injunction, it does not in most cases specify the types of training that may occur at those locations, introducing additional ambiguity.

In issuing its December 29, 2006 order, the Court concluded that the interim injunction it had fashioned "strikes the appropriate balance of allowing the [2nd

Brigade of the 25th Infantry Division] to move forward with transforming to a SBCT without delay, while at the same time protecting cultural and environmental resources from harm." Id. at 56. Obviously, the Court could not strike any balance unless it first analyzed the specific training activities it intended to allow to proceed. Clarification is needed to remove ambiguity about which SBCT-specific training in Hawaiʻi the interim injunction continues to enjoin, and which the Army may conduct.

The Hawaiian Groups respectfully submit that the requested clarification is necessary to comply with the Ninth Circuit's order remanding to this Court to determine "the appropriate scope of an interim injunction." ʻĪlioʻulaokalani Coalition v. Rumsfeld, No. 05-15915, slip op. at 2 (9th Cir. Oct. 27, 2006) ("Remand Order"). Unless the Court identifies with specificity which SBCT training may proceed and which is enjoined, the interim injunction's scope will remain subject to dispute, undermining the Ninth Circuit's intent that this Court conduct "a fact-intensive inquiry" to determine "which of the Stryker Brigade Combat Team transformation-related activities in Hawaii are time-critical and which activities can proceed without causing irreparable environmental and cultural harm." Id. at 3.

Fortunately, eliminating ambiguities from the December 29, 2006 order can easily be accomplished since the evidence the parties have already submitted to the

Court details the specific training the Army has claimed is needed to complete the 2nd Brigade's conversion to a Stryker unit prior to its deployment overseas.[1]

## II.   PROCEDURAL AND FACTUAL BACKGROUND[2]

### A.   The Ninth Circuit Remands For "A Fact-Intensive Inquiry" Into Which SBCT-Related Activities May Proceed Pending Compliance With NEPA.

On October 5, 2006, the Ninth Circuit held that "[t]ransformation of the 2nd Brigade outside of Hawaii was a reasonable alternative that the Army was obligated under NEPA to consider" and that "[i]ts failure to do so renders the Army's [environmental impact statements ("EISs")] inadequate."  ʻĪlioʻulaokalani Coalition v. Rumsfeld, 464 F.3d 1083, 1101 (9th Cir. 2006).  To bring the Army into compliance with NEPA, the court remanded "for supplemental analysis [in a supplemental site-specific EIS] of alternative locations" for converting the 2nd Brigade into a Stryker unit.  Id. at 1102.

Despite the Ninth Circuit's holding the Army had violated NEPA by failing to consider stationing and training the 2nd Brigade elsewhere, the Army continued

---

[1] In bringing this motion, the Hawaiian Groups do not concede that any SBCT-specific training in Hawaiʻi is time-critical or otherwise must be conducted here or that the activities they understand the Court to have authorized could proceed without violating the National Environmental Policy Act ("NEPA").  Rather, the Hawaiian Groups seek merely to clarify what training is, and is not, enjoined pursuant to the Court's December 29, 2006 order.

[2] Since the Court is familiar with this case, we focus here on only those aspects of the procedural and factual background that bear directly on the request for clarification.

to press forward with Stryker activities in Hawai'i, prompting the Hawaiian

Groups to file an emergency motion for temporary injunction.  On October 27,

2006, the Ninth Circuit granted that motion, enjoining the Army from:

> implementing, executing, or proceeding with the following activities
> associated with the transformation of the 2nd Brigade of the 25th
> Infantry Division (Light) to a Stryker Brigade Combat Team in
> Hawaii:  grading, grubbing, other ground disturbance, construction,
> land acquisition, project design, geotechnical testing, unexploded
> ordnance clearance, contract award, and Stryker Brigade Combat
> Team-specific training pending entry of an injunction by the district
> court.

Remand Order at 1-2.[3]

In remanding "for the purpose of determining the appropriate scope of an

interim injunction," the Ninth Circuit instructed this Court to undertake "a fact-

intensive inquiry" to "balance[e] the parties' equities."  Id. at 3.  It specified that

this Court "should consider, among other factors, which of the Stryker Brigade

Combat Team transformation-related activities in Hawaii are time-critical and

which activities can proceed without causing irreparable environmental and

cultural harm."  Id.

---

[3] The Remand Order defined "Stryker Brigade Combat Team-specific
training" as "that training specifically intended to familiarize soldiers with the
Stryker combat vehicle and does not limit in any way the ability of the Army to
train and qualify soldiers on and with weapons systems not mounted on Stryker
combat vehicles, nor does it restrict the Army from providing training to soldiers
that familiarizes them with the Stryker combat vehicle in a classroom or computer
simulation setting, nor does it prevent the Army from entering into negotiations
over non-Stryker Brigade Combat Team-specific training of soldiers at Makua
Military Reservation or other locations not located on Schofield Barracks Military
Reservation."  Id. at 2.

B.    On Remand, The Army Identifies The SBCT-Specific Training It
      Contends Is Time-Critical.

As part of the limited discovery this Court authorized at the November 20,

2006 status conference, the Hawaiian Groups sought detailed information from the

Army regarding the SBCT-specific training it claimed was time-critical and needed

to proceed prior to the Army's full compliance with NEPA.  In responding to the

Hawaiian Groups' interrogatories and document requests, the Army described

"each Stryker-specific training exercise [it] contend[ed] the 2nd Brigade must

conduct in Hawai'i to be mission deployable as an SBCT."  Exh. 1: 11/28/06 Defs'

Response to Plaintiffs' First Set of Interrogatories and Requests for Production of

Documents and Things at 8 ("11/28/06 Response"); see also id. at 8-18, 20-31;

Exh. 2: 11/29/06 Defs' First Supplemental Response to Plaintiffs' First Set of

Interrogatories and Requests for Production of Documents and Things at 3-9

("11/29/06 Response"); Exh. 3: 12/1/06 Defs' Second Response to Plaintiffs' First

Set of Interrogatories and Requests for Production of Documents and Things at 8-

10 ("12/1/06 Response").  In addition, in response to the Hawaiian Groups' Rule

30(b)(6) deposition notice, the Army provided further refinement regarding "[t]he

nature, scope, timing, and location of each training exercise defendants propose to

conduct in Hawai'i for the 2nd Brigade to be mission deployable as an SBCT."

Exh. 4: Plaintiffs' Notice of Taking Deposition Upon Oral Examination Pursuant

to Rule 30(b)(6) at 3.

In presenting arguments to this Court regarding the appropriate scope of interim injunctive relief, both the Hawaiian Groups and the Army focused on the specific training activities the Army had identified in discovery, addressing whether those activities were time-critical for converting the 2nd Brigade into an Stryker unit and whether they could proceed without causing irreparable environmental and cultural harm.  The full extent of the SBCT-specific training with respect to which the Court received evidence and heard argument is as follows:

      1.     Training at Schofield Barracks.

         a.     Kolekole Ranges

The Army sought leave to conduct a variety of training exercises at Ranges KR 3, 4, 5, and 6 at Schofield Barracks, including pre-Operational New Equipment Training, squad or section live-fire exercises ("LFXs"), platoon maneuver LFXs, platoon convoy LFXs, and gunnery exercises.  <u>See</u> 11/28/06 Response at 11-17; 12/1/06 Response at 9; Exh. 5: KR 3-6 Training Briefing.

         b.     Qualification Training Range 1

The Army asked to use Qualification Training Range 1 ("QTR1") to conduct a variety of weapons qualification and training, which it described in detail in its discovery responses.  <u>See</u> 11/28/06 Response at 11-12, 16-17, 20-24.

        c.      Urban Assault Course

The Army sought leave to conduct training in urban terrain combat at the Urban Assault Course ("UAC"), detailing the specific exercises in its discovery responses.  See 11/28/06 Response at 25-30; 12/1/06 Response at 15.

      2.      Maneuver Training at Dillingham Training Area.

At Dillingham Training Area ("DTA"), the Army sought to conduct non-live-fire maneuver exercises that would be limited to "existing roads, old airfield taxiways, aircraft parking areas or previously disturbed areas within the old Nike site."  12/1/06 Response at 9-10; see also 11/29/06 Response at 8-9.[4]

      3.      Maneuver Exercises at East Range and KTA.

At both Schofield Barracks East Range and Kahuku Training Area ("KTA"), the Army requested to carry out non-live-fire maneuver exercises with Stryker vehicles.  The only "critical tasks" the Army identified at East Range were Operation New Equipment Training at "the designated Stryker Drivers Training Course and adjacent areas," which involves Stryker vehicles driving on pre-existing dirt roads, as well as in three off-road locations.  11/29/06 Response at 9; see also Exh. 6: Borne Deposition at 19:2-24:23 & Depo. Exh. 2.  For KTA, the

---

[4] In responding to discovery, the Army clarified that "maneuver [at DTA] will be limited to the areas … that are within the shaded orange area on the … Dillingham Training Area map," which the Hawaiian Groups attached to their supplemental memorandum as Exhibit "68."  12/1/06 Response at 10.

Army described various maneuver exercises, which involve Stryker vehicles traveling off-road only in portions of training areas A1, B2, and C1.  11/29/06 Response at 4-9; Borne Deposition at 26:5-27:18 & Depo. Exhs. 3A & 3B.

    4.    Training at Pōhakuloa Training Area.

    a.    PTA Ranges 1, 8/8B, and 10

As part of proposed training at Pōhakuloa Training Area ("PTA"), the Army sought leave to conduct various field training exercises ("FTXs"), LFXs, and gunnery at Ranges 1, 8/8B, and 10, which were detailed in the Army's discovery responses.  <u>See</u> 11/28/06 Response at 13, 16-17; 11/29/06 Response at 3-4.  At Range 8, the Army also requested to conduct maneuver live-fire training.  <u>See</u> 12/1/06 Response at 9.

    b.    Mortars

In discussing requested SBCT-specific training with mortars, the Army specified that 120mm mortars would be fired "<u>only at PTA</u>."  11/28/06 Response at 17 (emphasis added).  The Army further stated that 120mm mortars would be fired only "from already established firing points (FPs 801, 802, 804, 808, and on Range 10) and [would] fire into the current PTA impact area."  <u>Id.</u>

      c.     PTA Range 11T

To train the variant of the Stryker vehicle known as the Mobile Gun System ("MGS"), the Army requested to build, and then train at, a temporary facility at PTA's Range 11T.  Id.  The Army specified it was not seeking to fire at Range 11T the MGS's advanced gunnery collective tables (i.e., Tables IX and X), which would be fired instead at the National Training Center in California.  Borne Deposition at 164:3-168:4 & Depo. Exh. 18.

      5.     Use of Unmanned Aerial Vehicles.

In connection with the 2nd Brigade's training as a Stryker unit, the Army sought to conduct air reconnaissance training with unmanned aerial vehicles ("UAVs").  See Exh. 7: AR-S 51325-26.  As discussed in the site-specific EIS, UAVs would not be launched or recovered at DMR, KTA, Kawailoa Training Area, or West PTA.  AR-S 51326.[5]

      C.     The December 29, 2006 Order Does Not Clearly Identify Which SBCT-Specific Training Continues To Be Enjoined And Which Training May Proceed.

The December 29, 2006 order reflects the Court's intent to comply with the Ninth Circuit's command "to determine the appropriate scope of [the] interim

---

[5] During discovery, the Army confirmed it was not asking to conduct any SBCT-specific training – or, for that matter, any other SBCT-related activities – at the West PTA lands it recently purchased from the Parker Ranch.  Borne Deposition at 29:15-30:4.

injunction" and identify "which time-critical Stryker activities could proceed" prior to the Army's compliance with NEPA and which would continue to be enjoined. 12/29/06 Order at 4, 54.[6]  The order's language, however, contains ambiguities that open the door to disputes regarding the scope of the injunction currently in force.

The portion of the order setting forth the interim injunction's terms begins clearly, restating the prohibition on Stryker-related activities in Hawai'i the Ninth Circuit established in its October 27, 2006 order and instructing that the blanket prohibition remains in effect "for the term of the interim injunction," except as specifically provided in the language that follows.  Id. at 57.  The next paragraph, however, introduces ambiguity when it states that the "New Equipment Fielding and Training and Soldier and Unit Level Training" in which the Army may engage "includ[e], but [are] not limited to," the list of SBCT-specific activities that follow. Id. (emphasis added).  The use of the open-ended phrase "but [are] not limited to" leaves uncertain whether the Court intended to allow the Army, during the interim injunction's term, to engage in training activities in addition to those included on the list, training the Army has never claimed is time-critical or otherwise sought the Court's leave to conduct prior to complying with NEPA.

_____

[6] Notably, the Army did not ask the Court to lift the Ninth Circuit's blanket injunction on Stryker activities in Hawai'i entirely.  Rather, the Army sought only to "narrow the broad injunction issued by the Ninth Circuit" to allow only projects the Army claimed were "the most time critical and [bore] directly on soldier safety" to proceed.  Id. at 6 & n.1.

Furthermore, in most cases, the December 29, 2006 order does not identify the specific SBCT training in which the Army may engage, introducing additional uncertainty. For example, the order states the Army may conduct "training with Mortars," but does not restrict the mortar training to the specific firing points and impact area at PTA the Army identified during discovery. Id.; see also 11/28/06 Response at 17 (120mm mortar would be fired only "from already established firing points (FPs 801, 802, 804, 808, and on Range 10) and [would] fire into the current PTA impact area"). Likewise, the order gives the Army leave to conduct "training" at QTR1, the UAC, East Range, KTA, and PTA Ranges 1, 8, 10, and 11T, but provides no specifics regarding the types of training that are authorized. 12/29/06 Order at 57-60. The order thus leaves the door open to disputes over whether the Army may conduct SBCT-specific training that the Court has never analyzed to determine whether it is "time-critical" or "can proceed without causing irreparable environmental and cultural harm." Remand Order at 3.

III.   THE COURT SHOULD MODIFY ITS ORDER TO CLARIFY WHICH SBCT-SPECIFIC TRAINING MAY PROCEED DURING THE INTERIM INJUNCTION'S TERM

To eliminate the ambiguity regarding the scope of the interim injunction, the Hawaiian Groups respectfully ask the Court to define with particularity the SBCT-specific training that is excluded from the blanket prohibition on Stryker activities in Hawai'i that otherwise applies. This would be easy to accomplish. First, the

11

order should be modified to eliminate from paragraph (1) the term "including, but not limited to." 12/29/06 Order at 57. The order must be clear that only the enumerated training is exempt from the blanket prohibition on SBCT-related activities that otherwise applies during the interim injunction's term.

In addition, the order should be modified to define with reference to the evidence in the record before the Court the specific SBCT training that may proceed at each training location while the interim injunction is in force. The order already contains two examples of how this can be done. In authorizing training at Schofield Barracks' Ranges KR 3, 4, 5, and 6, the order expressly incorporates by reference the detailed descriptions of the requested training the Army provided in the course of discovery. Id. at 57-58 (referencing Exhibits 69 and 70 to the Hawaiian Groups' supplemental memorandum).[7] It also spells out that maneuver training at DTA is limited to "existing roads, old airfield taxiways, aircraft parking areas or previously disturbed areas within the old Nike site," precisely the areas the Army identified in responding to the Hawaiian Groups' discovery. Id. at 58. In this way, the order ensures that the training authorized at Schofield Barracks' KR ranges and at DTA during the interim injunction's term is the same training with respect to which the Court concluded it had struck "the appropriate balance of

---

[7] Exhibit "69" to the Hawaiian Groups' supplemental memorandum includes excerpts from the Army's November 28, 2006 discovery responses, which are attached hereto as Exhibit "1." Exhibit "70" to the Hawaiian Groups' supplemental memorandum is the detailed description of proposed training at the KR ranges, attached hereto as Exhibit "5."

allowing the [2nd Brigade] to move forward with transforming to a SBCT without delay, while at the same time protecting cultural and environmental resources from harm." Id. at 56.

To accomplish this level of specificity throughout paragraph (1), the first sentence of that paragraph should be modified to read:

> Defendants may engage in the following New Equipment Fielding and Training and Soldier and Unit Level Training:  (a) training at Qualification Training Range 1, the Urban Assault Course, and Pōhakuloa Training Area Ranges 1, 8/8B, and 10, as described in detail in Exhibits 66, 67, and 69 of the Plaintiffs' supplemental memorandum; (b) training with 120mm mortars at PTA from already established firing points (FPs 801, 802, 804, 808 and on Range 10), provided that mortars must fire into the current PTA impact area; (c) use of unmanned aerial vehicles ("UAVs") as described on pages 2-40 and 2-41 of the site-specific environmental impact statement, with the exception that no use of UAVs at the West PTA Acquisition Area is permitted; (d) training exercises at Ranges KR 3, 4, 5, and 6 at Schofield Barracks as described in detail in Exhibits 69 and 70 of the Plaintiffs' supplemental memorandum; and (e) non-live-fire maneuver exercises at the Dillingham Training Area that are limited to existing roads, old airfield taxiways, aircraft parking areas or previously disturbed areas within the old Nike site, as described in detail in Exhibits 66, 67 and 68 of the Plaintiffs' supplemental memorandum.

Similarly, the first sentence of paragraph (5) should be modified to read:

> Defendants may engage in non-live-fire Stryker training in the East Range and at Kahuku Training Area as described in Exhibit 67 of the Plaintiffs' supplemental memorandum, provided that off-road maneuvers at the East Range and KTA are limited to the areas circled in black on Exhibits "2" and "3-A," respectively, to the December 4, 2006 Deposition of Ronald L. Borne.

Finally, the first sentence of paragraph (7) should be modified to read:

Defendants may complete modification of Range 11T at Pōhakuloa Training Area and engage in training with the mobile gun system at Range 11T, as described in Exhibit 69 of the Plaintiffs' supplemental memorandum, but such training may not include firing the mobile gun system's advanced gunnery collective tables.

IV.    CONCLUSION

In remanding to this Court, the Ninth Circuit did not intend the Army would be given *carte blanche* to conduct whatever SBCT-specific training it wanted prior to complying with NEPA. Rather, based on "a fact-intensive inquiry" regarding "which of the Stryker Brigade Combat Team transformation-related activities in Hawaii are time-critical and which activities can proceed without causing irreparable environmental and cultural harm," this Court was to specify "the appropriate scope of an interim injunction." Remand Order at 2-3. The Hawaiian Groups respectfully submit that the requested clarification of the December 29, 2006 order is necessary to comply with the Ninth Circuit's instructions.

DATED:    Honolulu, Hawai'i, January 12, 2007.

EARTHJUSTICE
David L. Henkin
Isaac H. Moriwake
223 South King Street, Suite 400
Honolulu, Hawai'i 96813

By:    /s/ David L. Henkin
DAVID L. HENKIN
ISAAC H. MORIWAKE
Attorneys for Plaintiffs

14