EDWARD H. KUBO, JR. (2499)
United States Attorney
THOMAS HELPER (5676)
 Assistant United States Attorney
Room C-242, U.S. Courthouse
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 440-9290; Facsimile (808) 541-3752

SUE ELLEN WOODRIDGE
Assistant Attorney General
BARRY A. WEINER
JAMES D. GETTE
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
General Litigation Section, PO Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0469; Facsimile (202)305-0274
Email: Barry.Weiner@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ILIO'ULAOKALANI COALITION, a Hawai'i, nonprofit corporation; NA IMI PONO, a Hawaii unincorporated association; and KIPUKA, a Hawai'i unincorporated association,<br><br>            Plaintiffs,<br><br>    v.<br><br>DONALD H. RUMSFELD, Secretary of United States Department of | CIVIL NO.04-00502 DAE BMK<br><br>FEDERAL DEFENDANTS' SECOND RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS AND SECOND SUPPLEMENTAL RESPONSE |



EXHIBIT 3

In this response, per agreement between the parties, the United States in its second response will reply to interrogatories 6, 8, 9, 11 to 21, 23 to 28. It also makes a second supplemental response to its initial response to interrogatory 5.

Subject to and without waiving each of its General Objections, i.e. asserting each such objection for each Response set forth below as if fully stated therein, the United States responds to the Interrogatories as follows:

INTERROGATORY NO. 5: Please describe with particularity each Stryker-specific training exercise you contend the 2nd Brigade must conduct in Hawai'i to be mission deployable as an SBCT, including, but not limited to, a description, with respect to each exercise, of the number of days the exercise would last, the number of soldiers that would participate, the number and type of weapons that would be employed, the surface danger zones for the weapons that would be employed with respect to the range or other location where the weapons would be used, the number and type of munitions that would be expended, the number and type of Stryker vehicles that would participate, and the ranges or other locations where each exercise would take place.

SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:

8

In its First Supplemental response to Interrogatory No. 5, the Army indicated that 2/25 SBCT would only fire blank ammunition at Ranges KR-4, 5, and 6 for Stryker-specific training. However, 2/25 does intend to conduct live-fire Stryker-specific training on these ranges using .50 caliber machine guns. The .50 caliber ammunition on these ranges would be limited to Short Range Training Ammunition (SRTA) with a maximum range of 900 meters. The SRTA rounds are plastic and contain less gunpowder than a standard round. A detailed description of the training scenario is attached.

As noted in the Army's First response to Interrogatory No. 5, live-fire exercises involving Stryker-specific training would occur on Range 8 at PTA. To clarify an issue that arose during Plaintiffs' site-visit, these live-fire exercises could involve Strykers moving approximately 150 meters down range on existing course roads, stopping, firing and then moving to another target and repeating the process. This sometimes is referred to "firing on the move". This type of moving, stopping, firing, and moving at Range 8 is required in order to test and train on a new weapons stabilization system for the Stryker vehicles.

As noted in the Army's First Supplemental Response to Interrogatory #5, maneuver areas at Dillingham Training Area will consist of existing roads, old airfield taxiways, aircraft

9

parking areas or previously disturbed areas within the old Nike site. For clarification, maneuver will be limited to the areas described above that are within the shaded orange area on the attached Dillingham Training Area map.

REQUEST FOR PRODUCTION NO. 5: Please identify and produce all documents that support, contradict, discuss or are in any way related to your response to Interrogatory No. 5, including, but not limited to, any schedules for Stryker-specific training and any maps of ranges or other locations where you propose to conduct Stryker-specific training.

   SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.5:

   1. Briefing containing description of training scenarios for Ranges KR 3 -6.

   2. Dillingham Training Area map

   3. Memorandum, SUBJECT: Stryker Operator New Equipment Training (OPNET) Entrance and Exit Criteria, 2 August 2005.

   4. Powerpoint Presentation: Long Range Training Calendar, 2d SBCT.
   5. Map of Range 8, PTA


   INTERROGATORY NO. 6: please state and explain fully all facts on which you base your contention that the training exercises described in response to Interrogatory No. 5 would not cause any harm to the human environment, including, but not

10

adjusted to avoid all known archaeological sites.

No Stryker maneuver training will occur at the Urban Assault Course (UAC). Small arms live fire will be limited to inside of the Shoot House which is designed to keep all ordnance within its confines. Non-explosive training 40mm munition will be fired from the M-203 grenade launcher at the Grenadier Range. While Breach Course will use only the smallest C-4 charge with a 35 meter SDZ. The SDZs depicted on the map for the UAC will not impact any archaeological sites.

Section 7 of the Federal Endangered Species Act of 1973 states that a Federal agency must complete a formal consultation when any activity it proposes may have an effect on a listed species. The Army completed a formal Section 7 consultation with the US Fish and Wildlife Service for all activities contained within the Final Transformation Environmental Assessment for Pohakuloa Training Area and all Training Areas on Oahu except Makua Military Reservation. The outcomes of both formal consultations were non-jeopardy Biological Opinions. This means that the US Fish and Wildlife Service, the Federal agency authorized by Congress to assess the impacts to endangered species from Federal activities, found that the Army's actions were not likely to jeopardize the continued existence of any of the species found within its installations.

15

3. SDZ map - Schofield Barracks, Firing Point: 103, Weapon: 105 MM.

4. SDZ map - Schofield Barracks, Firing Point: 104, Weapon: 105 MM.

5. See Response to request for production No. 6.

REQUEST FOR PRODUCTION NO. 28: Please identify and produce any and all documents discussing or otherwise related to any and all identification, evaluation, or mitigation measures (including, but not limited to, any site protection plans) with respect to any cultural sites, areas of traditional importance or other cultural resources potentially affected by any of the training exercises described in response to Interrogatories Nos. 5, 7, or 10.

RESPONSE TO REQUEST FOR PRODUCTION NO.28:

1. Map - Residual Impact Area, Schofield Barracks.

2. See Response to request for production No. 6.

Robert M. Lewis, Attorney for Objections

Respectfully submitted this 1st day of December, 2006.

EDWARD H. KUBO, JR. (2499)
United States Attorney
THOMAS HELPER (5676)
Assistant United States Attorney
Room C-242, U.S. Courthouse
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 440-9290; Facsimile: (808) 541-3752

_____
Of Counsel
ROBERT M. LEWIS
Senior Trial Attorney
U.S. Army Environmental Law Division
Suite 400, 901 N. Stuart Street
Arlington, VA 22203
Telephone: (703) 696-1567; Facsimile: (703) 696-2940
Email: Robert.Lewis@HQDA.Army.Mil