EDWARD H. KUBO, JR.  (2499)
United States Attorney
District of Hawaii
HARRY YEE  (3790)
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: harry.yee@usdoj.gov

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
JAMES D. GETTE
BARRY A. WEINER
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, D.C.  20044-0663
Telephone: (202) 305-1461
Facsimile:  (202) 305-0274
Email: james.gette@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ILIO'ULAOKALANI COALITION, a Hawaii, nonprofit corporation; NA'IMI PONO, a Hawaiian unincorporated association; and KIPUKA, a Hawaii unincorporated association, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT M. GATES, Secretary of United States Department of Defense; and FRANCIS J. HARVEY, Secretary of the United States Department of the Army, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 04-00502 DAE BMK <br><br> DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CLARIFY; TABLE OF CONTENTS; TABLE OF AUTHORITIES; DECLARATION OF JAMES D. GETTE; EXHIBITS 1-5; CERTIFICATION OF WORD COUNT; CERTIFICATE OF SERVICE <br><br> (Non Hearing Motion) |

DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION TO CLARIFY

I.    INTRODUCTION

On December 29, 2006 this Court issued an injunction
("Injunction Order") that clearly and precisely identified
limitations on the Army's training to prepare the 2nd Brigade of
the 25th Infantry Division ("2/25") to go to war.  Plaintiffs now
request "clarification" of the Court's Order.  ("Pls. Motion for
Clarification" and "Pls. Clarification Mem.")  The Motion to
Clarify, however, fails to demonstrate that the Court's Order is
ambiguous and in need of clarification.  Thus, in reality, what
Plaintiffs are requesting is for this Court to reconsider its
prior order and to issue a new order that contains arbitrary
constraints that will unnecessarily restrain the Army's ability
to train soldiers for combat.  This more restrictive order is
exactly what Plaintiffs sought previously and what the Court
rejected.

Plaintiffs have presented no new evidence that suggests that
the Army has or even may breach the Court's Injunction Order and
that would justify reconsideration of the Court's Injunction
Order.  Undoubtedly this is because there are no changed
circumstances, and the Court has already ruled that the training
that may currently proceed does not pose a threat of incremental
harm to cultural or natural resources.

The Injunction Order issued by the Court strikes an
appropriate balance by allowing the Army to transform and train
the 2/25 as a Stryker Brigade Combat Team ("SBCT"), while

1

protecting cultural and environmental resources. Plaintiffs now seek to upset that balance by aggressively and arbitrarily cabining the training the Army may conduct to convert the 2/25 to a SBCT. In issuing the Injunction Order, this Court carefully considered the potential harms to cultural and natural resources from the limited transformation activities proposed by the Army, as well as the potential harms to the Army from an injunction prohibiting those activities while the Army prepares the 2/25 for deployment to Iraq in November 2007. The Court concluded that "Defendants have demonstrated that transforming the 2/25 to a SBCT without delay will in fact save the lives of the soldiers who are currently serving this country in Iraq or will be doing so soon." Injunction Order at 56-57.

The Court did not, however, give the Army carte blanche. As this Court noted, "[w]here Plaintiffs were able to establish incremental harm, this Court ordered mitigating measures be undertaken so that harm could be avoided by implementation of protective measures." Id. at 56. Despite the fact that the Court appropriately balanced the harms and defined specific restrictions and mitigation factors in its Injunction Order, exactly what the Ninth Circuit directed this Court to do, Plaintiffs again seek restrictions on training even where Plaintiffs never previously challenged that training and the Court found no harm as a result of the training.

The Army now has the responsibility to implement the Court's Order and, since its issuance, has been training the 2/25 fully

within the confines of the Court's injunction.  Plaintiffs do not contend otherwise.  Instead, under the guise that the Injunction Order is ambiguous and in need of clarification, Plaintiffs now ask the Court to reconsider the scope of the injunction and further restrict the Army's latitude to transform and train the 2/25.  Simply put, the Court's Order is neither ambiguous nor unclear and there is no need to clarify it.

Moreover, Plaintiffs have offered no basis for the selective prescriptions they seek.  The Army provided substantial discovery relating to the training necessary to convert the 2/25 to a SBCT, including written interrogatory responses, document production, and deposition testimony.  In their evidentiary presentation, Plaintiffs picked limited and selective pieces of that discovery to present to the Court to support their request for a broad injunction limiting training. The Court, however, concluded that the injunction sought by Plaintiffs was over broad.

Despite the clear decision of the Court, Plaintiffs now attempt to limit the Army's training by inserting their own selections from the Army's discovery responses as "clarifications" of the Injunction Order.  Plaintiffs thus seek to persuade the Court to ignore the remainder of the Army's voluminous discovery responses.

Plaintiffs' request for "clarification" is arbitrary, self-serving, and unjustified.  Further, to allow Plaintiffs to dictate the parameters of training would be contrary to the Court's Order and contrary to the well-settled principle that the

Army – charged by Congress with responsibility for training the military – is entitled to deference in defining and managing the training necessary to convert the 2/25 in time to meet its deployment obligations.  Plaintiffs' selective prescriptions would artificially and unnecessarily cabin the Army in its efforts to prepare the young men and women of the 2/25 for combat.

To illustrate the potential dangers of the Plaintiffs' request, the Army has carefully considered the limitations sought in Plaintiffs' Motion for Clarification and identified several training activities that are required to prepare the 2/25 to deploy to Iraq as a SBCT, that were identified in the discovery produced in this case, but yet, would arguably be precluded by Plaintiffs' requested modification to this Court's injunction. To prevent harm to the Army in preparing the 2/25 for combat and because there is no demonstrated need for modification of the Injunction Order, Plaintiffs' second attempt to limit the training of the 2/25 – through the guise of a Motion to Clarify – should be rejected by the Court.

II.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[1]

On April 29, 2005, this Court entered judgment in favor of

Defendants on Plaintiffs' allegations that Defendants had

violated the National Environmental Policy Act.  Plaintiffs

appealed and on October 5, 2006, the Ninth Circuit affirmed in

part and reversed in part.  <u>`Ilio `Ulaokalani Coalition v.</u>

<u>Rumsfeld</u>, 464 F.3d 1083 (9th Cir. 2006).  On October 27, 2006,

the Ninth Circuit issued a temporary injunction against certain

actions of the Army related to conversion of the 2/25.  The Ninth

Circuit directed this Court to expeditiously determine which SBCT

transformation activities were time-critical and could proceed

without causing irreparable cultural and environmental harm.

Order of October 27, 2006 at 3.

On November 20, 2006, this Court ordered expedited

discovery, to be completed by December 7, 2006.  <u>See</u> November 22,

2006 Joint Stipulation and Order.  On November 28, 2006,

Defendants served their Response to Plaintiffs' First Set of

Interrogatories and Request for Production of Documents, which

included 32 pages of responsive information and included the

---

[1]  Full recitations of the factual background of this case
have been presented to the Court in several previous filings and
summarized by the Court in its numerous rulings.  To avoid
needless repetition, Defendants hereby incorporate the Factual
Background sections previously presented to the Court in their
Cross-Motion for Summary Judgment dated February 4, 2005 and in
their opposition to Plaintiffs' Motion for a Preliminary
Injunction dated October 18, 2004, as well as the facts presented
to the Court in support of Federal Defendants' Memorandum on the
Scope of Interim Injunctive Relief filed on November 14, 2006 and
Defendants' Supplemental Brief on the Scope of Interim Injunctive
Relief filed on December 15, 2006.

production of numerous documents.  On November 29, 2006,
Defendants served a First Supplemental Response to Plaintiffs'
First Set of Interrogatories and Request for Production of
Documents, which provided another 10 pages of responsive
information and included additional document production.
Finally, on December 1, 2006, Defendants served their Second
Response to Plaintiffs' First Set of Interrogatories and Request
for Production of Documents.  This final production included 80
pages of responsive information and hundreds of pages of
documents were produced.  The United States also produced Ronald
Borne, the Army's director of transformation in Hawaii, and
Colonel Stefan Banach, Commander of the 2/25, as deponents
pursuant to Fed. R. Civ. P. 30(b)(6).

        Thereafter, based upon voluminous submissions by both
parties and after hearing argument, on December 29, 2006, this
Court concluded that the 2/25 was legally entitled to conduct
training activities to support the Army's conversion of the 2/25
to a SBCT in time to deploy as required by the Army.
Fundamentally, the Court rejected the exceedingly restrictive
injunction sought by Plaintiffs, finding that "[i]t is undisputed
that . . . training is essential to transforming 2/25 to a SBCT,
essential to soldier safety and time-critical."  Injunction Order
at 8.  The Court further held that "[i]t is undisputed that this
training is necessary for 2/25's deployment to Iraq as a SBCT,
and most importantly, for safety related purposes.  It is
undisputed that this training is time-critical."  Id. at 9.  The

Court's 61 page Order evaluated the parties' claims and set forth the projects and training in which Defendants were permitted to engage.  As required by the Ninth Circuit, the Court's inquiry was "fact-intensive."  <u>See</u> Order of October 27, 2006 at 3.

Despite the fact that this Court proceeded exactly as directed by the Ninth Circuit and issued an injunction that fairly identifies the training that may be conducted to transform the 2/25 to a SBCT, Plaintiffs have submitted a motion to clarify that Order.

III. <u>ARGUMENT</u>

> A.    Plaintiffs' Motion to Clarify Seeks to Obtain Relief Which has Already Been Properly Rejected by this Court

In its Injunction Order, this Court considered whether to grant Plaintiffs' request to place sweeping and stringent limits on the Army's ability to proceed with new "equipment fielding and training" and "training individual soldiers and units." Injunction Order at 6.  Ultimately, the Court rejected Plaintiffs' request for broad injunctive relief related to training, instead issuing a carefully and well-defined injunction that "strikes the appropriate balance of allowing the 2/25 to move forward with transforming to a SBCT without delay, while at the same time protecting cultural and environmental resources from harm." <u>Id</u>. at 56.

At its heart, Plaintiffs' motion for "clarification" is nothing more than a thinly veiled motion for reconsideration, which seeks not to clarify, but to modify the Court's Injunction

Order.  Indeed, Plaintiffs' motion "is based on Federal Rule[] of Civil Procedure . . . 59."  Pls. Motion for Clarification at 2. "While Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'"  <u>Carroll v. Nakatani</u>, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).  Indeed, relief under Rule 59(e) "'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'"  <u>Id.</u> (quoting <u>Kona Enters., Inc. V. Estate of Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000); <u>see also</u>, <u>Sch. Dist. No. 1J v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993), <em>cert. denied</em>, 512 U.S. 1236 (1994).  Plaintiffs have offered no justification for reconsideration of the Court's prior order under Rule 59(e)[2] and

---

[2]  As the Ninth Circuit has noted, there are two possible bases for a district court to reconsider a prior order: "Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)."  <u>Sch. Dist. No. 1J</u>, 5 F.3d at 1263.  Here, the sole basis cited by Plaintiffs is Rule 59(e).  Plaintiffs' request for reconsideration, however, fares no better under Rule 60(b) which "provides for reconsideration only upon a showing of (1) mistake, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgement; or 'extraordinary circumstances' which would justify relief."  <u>Fuller v. M.G. Jewelry</u>, 950 F.2d 1437, 1441 (9th Cir. 1991).  Even if Plaintiffs relied upon Rule 60(b), which they do not, they have not raised any of the additional bases for reconsideration contained in Rule 60(b) such as fraud, void judgment, satisfaction of judgment, or other extraordinary circumstances.

could not meet the standards for reconsideration even if some justification had been offered.

Plaintiffs simply do not meet any of the exceptional circumstances to alter or amend a judgment under Rule 59(e). There is no suggestion of changed circumstances or newly discovered facts in Plaintiffs' Motion for Clarification. Moreover, while Plaintiffs may disagree with the Court's Injunction Order, they make no effort to suggest, nor could they, that the decision represents clear error or is manifestly unfair. The Court went to great lengths to ensure that the relative harms to the parties were carefully and assiduously considered. Finally, there have been no subsequent decisions by either the Ninth Circuit or the Supreme Court that have resulted in an intervening change in the law.

"[A] motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." Brown v. Kinross Gold, U.S.A., 378 F. Supp. 2d 1280, 1287 (D. Nev. 2005) (citation omitted); see also Morgan v. Chicago Title Ins. Co., 2006 WL 523472 *3 (D. Haw. 2006) (denying motion for reconsideration, in part, because the plaintiffs were simply attempting to re-litigate the court's prior decision). A motion for reconsideration is properly denied when it presents no arguments that were not previously raised by the moving party. Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985); Boone v. United States, 743 F. Supp. 1367, 1371 (D. Haw. 1990). As untimely as they might be, there simply are no

9

new arguments why the Court should rescind its prior Order and now adopt Plaintiffs' new extremely prescriptive injunction that improperly and unnecessarily limits the Army's ability to prepare the 2/25 for combat.

Plaintiffs attempt broadly to constrain the training that the Army can conduct to prepare the 2/25 for combat.  The Court rejected such a broad prohibition when last requested by Plaintiffs and they present nothing new in the instant motion that would allow the Court to revisit these issues or further confine the preparation of the 2/25 for combat.  In short, the Army must be given appropriate latitude to prepare this unit for battle.  The Court recognized this fact in issuing its Injunction Order and should not upset the current Order simply to appease Plaintiffs' desire for ever greater restrictions on the Army's conversion of the 2/25 in the critical months of its preparation for battle.

B. Plaintiffs' Motion to Clarify Seeks to Impose Unnecessary and Overly Restrictive Limitations on the Army's Ability to Prepare the 2/25 for Combat

1. Plaintiffs' "Clarification" Based Upon Limited Information of Their Choosing May Preclude Training that Was Clearly Disclosed by the Army and Approved by the Court

In the course of the expedited but extensive discovery granted by the Court prior to issuing its Injunction Order, the Army provided to Plaintiffs dozens of pages of interrogatory responses, hundreds (if not thousands) of pages of records, and two 30(b)(6) deponents.  The majority of this discovery was

focused on providing Plaintiffs with detailed information regarding how and where the Army planned to conduct training to prepare the 2/25 for combat.  Plaintiffs now would like to selectively and surgically choose from this wealth of information, and use selected quotes, maps, and interrogatory responses to cabin the Army's ability to prepare its young men and women for combat.

This selective attempt to pigeonhole the Army's training may cause serious harm to the Army and its soldiers, is contrary to the public interest, will force this Court into the position of micro-managing the Army's preparation of its soldiers for battle and, as discussed above, has already been rejected by this Court.

Without showing any cause for such restrictions, Plaintiffs' "clarification" may prevent the 2/25 from conducting important training maneuvers that are described in the discovery provided to Plaintiffs, but which is not within the confines of the restrictions that Plaintiffs now attempt to foist upon Defendants.  For example, Plaintiffs attempt to limit "off-road maneuvers at the East Range . . . to those areas circled in black on Exhibit[ ] 2 . . . to the December 4, 2006 Deposition of Ronald L. Borne."  Pls. Clarification Mem. at 13.  At his deposition Mr. Borne, the Army's director of transformation in Hawaii, was asked to circle the areas that would be used by the 2/25 for off-road maneuvers at the East Range.  In that deposition, Mr. Borne admitted that he could not recall what areas of the East Range would be used for all types of maneuver

training, but did his best – from memory, on a small 8½ by 11 map, using a thick black marker – to mark the off-road areas that would be used for individual driver OPNET training by the 2/25 at East Range.[3]  Of course, the Army had already described to Plaintiffs in interrogatory responses that off-road maneuvers would take place on the East Range "in those areas designated for Stryker off road maneuver listed in Figure 2-3 of the May 2004, Final EIS. . . ."  Pls.' Supp. Mem. Re. Interim Inj., Ex. 67 at 9; Figure 2-3 (Ex. 2 to Gette Dec.).

Plaintiffs now seek to limit the Army to the areas marked by Mr. Borne at his deposition.  Plaintiffs offer no principled reason why the inexact demarcation of off-road maneuver areas done by memory at a deposition should be selected over the

------

[3]  Mr. Borne specifically testified that there may be collective training at the East Range that went beyond the area he marked on the map:

> Q.  [By Mr. Henkin] For purpose of the request to the court for Stryker off-road maneuver training at East Range, these are the only areas that the Army believes that it needs, is that correct?
> A.  [By Mr. Borne] For Stryker drivers OPNET training, that is correct.
> Q.  In terms of what the Army is currently asking the court for leave to do, is there any other training at Schofield East Range that is being requested?
> [A.] I am not aware for Stryker OPNET driver's training, but there may be collective training the brigade may ask to do.

Borne 12/4/2006 Dep. 24:18-25:5 (Ex. 1 to Gette Dec.).  Despite the discussion of collective training at East Range on page 25 of the transcript of  Mr. Borne's deposition, this page was omitted from Plaintiffs' submissions to the Court in support of their request for injunctive relief.

detailed and exceedingly more precise information provided by the Army in its written discovery responses and document production. Indeed, in their motion to clarify, Plaintiffs offer absolutely no reason why this "clarification" – defining training limitations based upon selective pieces of a much larger discovery record – is necessary or appropriate.[4]

This is a very clear, but not unique, example of why Plaintiffs' selective attempt to limit the training previously approved by the Court must be rejected. For example, Plaintiffs also attempt to limit training at the East Range to the limited description of the training that is presented in "Exhibit 67 of the Plaintiffs' supplemental memorandum." Pls. Clarification Mem. at 13. Exhibit 67 contains a limited portion of one set of interrogatory responses and describes Operator New Equipment Training ("OPNET") at the East Range and KTA. Ex. 67 at 9. Colonel Stephan Banach, Commander of the 2/25, and Mr. Borne both testified at deposition that in addition to individual driver OPNET training the Army planned to conduct "squad maneuver

---

[4] Plaintiffs attempt to impose the same type of limitations at the Kahuku Training Area ("KTA"). Pls. Clarification Mem. at 13 ("provided that off-road maneuvers at . . . KTA are limited to the areas circled in black on Exhibit[] '3A,' . . . to the December 4, 2006 Deposition of Ronald L. Borne."). The Army had previously disclosed that off-road maneuvers at KTA would take place in the portions of areas A1, B2, and C1 "listed in Figure 2-5 of the May, 2004 Final Environmental Impact Statement (EIS)." Pls.' Supp. Mem. Re. Interim Inj., Ex. 67 at 4-5; Figure 2-5 (Ex. 3 to Gette Dec.). Again, Plaintiffs attempt to limit the Army to Mr. Borne's deposition sketches done from memory instead of the complete and detailed information that was provided to them in written discovery responses and document production.

training." Banach Dep. at 129:2-8 (Ex. 4 to Gette Dec.); see also Borne Dep. at 24:24-25:5 (Ex. 1 to Gette Dec.).[5]

This is just a handful of limitations that the Army has thus far identified that would be created by Plaintiffs' "clarification" despite the lack of a basis in the record for such limitations.[6] The Army fully expects that in the fullness

_____

[5] Again, despite the fact that Colonel Banach's deposition testimony at page 129 related to the Army's off-road maneuvers at the East Range, this testimony was left out of the exhibits submitted to the Court by Plaintiffs in support of their request for an injunction.

[6] Other instances in which the Plaintiffs' "clarification" may inappropriately interfere with training include:

- The current order does not mention Ex. 66 to Pls.' Supp. Mem. Re. Interim Inj. when describing the training that may take place at the KR ranges. Ex. 66 clearly indicates that the Army plans to fire SRTA rounds at the KR ranges. This activity was never challenged by Plaintiffs and there is no indication that the Court intended to preclude such training. However, with Plaintiffs' suggested removal of the language "including, but not limited to" from the Injunction Order and no specific mention of Ex. 66 in relationship to the KR ranges, this training may be unnecessarily and inappropriately restricted.

- Plaintiffs' clarification would preclude all "use of UAVs [unmanned aerial vehicles] at the West PTA acquisition area" (WPAA). Pls. Clarification Mem. at 13. This "clarification" might arguably prohibit UAV overflights of the WPAA. Plaintiffs rely upon page "2-41 of the site specific environmental impact statement" to justify this request. Site Specific EIS at 2-40 to 2-41 (Ex. 5 to Gette Dec.). That document, however, merely indicates that the Army will not launch or recover UAVs at the WPAA. The document never states that UAVs will not fly over the property and the Court rejected Plaintiffs request for a ban on the use of such vehicles as part of the 2/25 conversion because "Plaintiffs cannot establish incremental irreparable harm from . . . use of Unmanned Aerial

of time, if the Court were to adopt Plaintiffs' attempt to arbitrarily define training based solely upon selected pieces of the discovery record, additional instances of unintended, inappropriate, and unnecessary restrictions would become apparent.

> 2.    Plaintiffs' "Clarification" Would Impose Restrictions that Plaintiffs Have Not Justified on Training that Plaintiffs Elected Not to Challenge

Plaintiffs also seek to place restrictions on training that Plaintiffs elected not to challenge.  This result is nonsensical. Defendants understandably did not address, in their presentations to the Court, training that was never challenged by Plaintiffs. In the end, Plaintiffs' "clarification" runs the risk of precluding training that was clearly identified by Defendants during discovery, but was never challenged by Plaintiffs.

For example, Plaintiffs affirmatively represented to the Court that they were not challenging 2/25 training that included "classes associated with battle command and digital sustainment training, leader development courses, and combat medical training."  Pls.' Supp. Mem. Re. Interim Inj. at 8.  Because this training was not challenged by Plaintiffs, it was not addressed by Defendants in their briefs and does not appear to have been a focus of the Court's consideration.  Indeed, the Court's Order does not specifically mention this training, which will be conducted by the 2/25.  Arguably, Plaintiffs' "clarification" –

_____

Vehicles."  Injunction Order at 31.

which would strike the "including, but not limited to" language employed by the Court in its Injunction Order – could preclude the 2/25 from conducting this training, which even Plaintiffs admit "would have no apparent adverse impacts." <u>Id</u>.

There are also instances in which the Army identified training in its discovery responses that Plaintiffs neither affirmatively endorsed nor affirmatively challenged and, thus, was not specifically delineated in the Court's Order. For example, the Army disclosed in discovery that the 2/25 would conduct "advanced marksmanship training" at "the Schofield Barracks Match Shoot House, the Grenade House, and the Infantry Demo Range as well as the PTA Match Shoot House." Pls.' Supp. Mem. Re. Interim Inj., Ex. 69, p. 14.[7]

Plaintiffs' Motion effectively seeks to preclude all Stryker-specific training that was not specifically endorsed by the Court. However, by failing to challenge this training at the injunction hearing, Plaintiffs themselves caused this omission. Further, Plaintiffs deprived the Army of an opportunity to address the potential harm from the broad injunction Plaintiffs now seek. Finally, Plaintiffs neglected their burden of

---

[7] The Army's use of Range 20 at PTA falls into this same category. The Army clearly identified Range 20 at PTA as a training location for 2/25. See Ex. 69, pp. 13 and 17. While the Army later refined the type of training that would occur at Range 20, it never withdrew Range 20 from its list of training facilities for the 2/25. Ex. 67, p. 4. Plaintiffs never challenged the use of Range 20 and the Court did not ultimately mention Range 20 in its Injunction Order. By removing the language "including, but not limited to" from the Injunction Order, Plaintiffs may interfere with training at Range 20 that they never actually challenged.

justification to support such a broad injunction.  See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 442-443 (1974) (plaintiff bears the burden of proving the appropriateness of an injunction, which is an extraordinary remedy, by clear and convincing evidence).  In the end, an injunction should not be issued unless the party seeking such extraordinary relief can prove compelling reasons to justify its use.  Id.  Plaintiffs have not done so here, and the Court should reject Plaintiffs' request to broaden the injunction by eliminating the Army's latitude to conduct training "including, but not limited to" the specific activities enumerated in the Injunction Order.  Without the latitude that language provides for the Army to conduct essential training, such training – including advanced marksmanship training, that was never challenged by Plaintiffs – could be adversely impacted.

> 3.   Plaintiffs' "Clarifications" Are Unnecessary Because the Army Has Been Fully Able to Understand and Implement the Injunction Order and There Is No Evidence that the Army Has Failed to Abide by the Current Injunction

The Court's Injunction Order specifically allows the Army to proceed with "New Equipment Fielding and Training and Soldier and Unit Level Training" with limited and well-defined exceptions. Injunction Order at 57.  The Army has re-initiated Stryker-specific training pursuant to the Court's Injunction Order and has been actively and expeditiously training since the new year. To date, the new equipment training and soldier and unit level

17

training has proceeded without the need for clarification of the Court's Injunction Order.

Plaintiffs' current motion makes no attempt to identify cultural or environmental resources that would be served by the arbitrary restrictions sought and any attempt to do so would be nothing more than a second attempt to obtain that which they already sought in their motion for an injunction.  Moreover, Plaintiffs have offered no rationale for these selective and arbitrary restrictions, and make no suggestion that the Army has been violating either the letter or the spirit of the Injunction Order.

C.   The Current Injunction Order Provides Appropriate Latitude to the Experts and Avoids Taxing the Court with Micro-management of the 2/25's Conversion

The Court's Injunction Order appears to be carefully crafted to avoid micro-management of the Army's effort to prepare the 2/25 for combat.  Plaintiffs' requested "clarification," on the other hand, would foist detailed oversight of Army training onto the Court.

In fashioning the parameters of its Injunction Order, this Court properly recognized that the effort to prepare a 4,000 person combat brigade for war is both highly technical and dynamic.  The language chosen by the Court in its Injunction Order recognized these complexities when it ordered that the Army could proceed with training, "including, but not limited to" a broad set of identified training components on numerous training facilities.  The Court did not attempt to define every aspect of

18

training including the exact duration of each training exercise, the number of rounds of ammunition fired, and other logistical aspects of training, appropriately leaving these specifics to the Army.  Indeed, an injunction that reaches into such minutia is a recipe for constant oversight by the Court and guaranteed to prevent the Army from meeting the deployment obligations that make this training time critical.

For example, Plaintiffs seek to limit training at the East Range "as described in Exhibit 67 of the Plaintiffs' supplemental memorandum."  Pls. Clarification Mem. at 13.  Exhibit 67 is a limited portion of the Defendants' First Supp. Response to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents.  The limited portion of the Army's extensive discovery production arbitrarily selected by Plaintiffs to confine Army training at the East Range, indicates that Initial Operating Capacity Training at the East Range will last "up to three hours daily" per operator.  What if the 2/25's commander finds that certain operators require four hours in a given day to complete their training?  Plaintiffs' incorporation of limited and prescriptive interrogatory responses into the Court's Injunction Order are likely to hamstring the Army by preventing reasonable training that might arguably fall outside the specific description that the Army provided in its expedited discovery responses.  Alternatively, if Plaintiffs' modified order were to be entered, each time the Army finds that it needs a very limited, but logical and reasonable, extension of the

training allowed in that order, it would need to come back to the Court for a modification.  Certainly the Court does not intend to impose such detailed restrictions on the Army.  The Court could not have intended to monitor this level of detail and to put itself in the position of having to repeatedly revisit and modify its Injunction Order.  Furthermore, such judicial oversight would not only be unnecessary, but would inevitably cause delays that will impact training and might impair the 2/25's ability to deploy on time.

Given the complexity of preparing a 4,000 person brigade for combat, during the course of preparing the 2/25 to deploy the Army may determine that it must make slight adjustments to its training plan.  It could not have been the Court's intention to require the Army to come back to the Court every time some small adjustment to the training regimen must be made.  Such a draconian approach is an unnecessary incursion into the Army's expertise in military matters.  The Court should not indulge an itemization and monitoring of every minute detail of the 2/25's training program, which will cover the better part of a year, involve 4,000 soldiers, and span facilities on Oahu and the Island of Hawaii.

Moreover, it is the military leadership, not the Plaintiffs or the Court, who have the responsibility and expertise to define properly the training that is appropriate and necessary to prepare soldiers to defend our country.  Indeed, management of the military is an area where the Court must grant great

deference to the experts that are charged with the responsibility to prepare for war.  <u>See</u> <u>Jaffee v. United States</u>, 663 F.2d 1226, 1237 (3rd Cir. 1981) ("The complex, subtle, and professional decisions as to composition, training, equipping, and control of a military force are essentially professional judgments."); <u>Hamdi v. Rumsfeld</u>, 124 S.Ct. 2633, 2647 (2004) (citing <u>Department of the Navy v. Egan</u>, 484 U.S. 518, 530 (1988)) ("Without doubt, our Constitution recognizes that core strategic matters of warmaking belong in the hands of those who are best positioned and most politically accountable for making them.").

When left to establish the limits of training, anyone untrained in military training is likely to make errors that impose limitations that obstruct the preparation of soldiers for combat.  Plaintiffs' uninformed attempt to control preparation of soldiers for battle is particularly problematic where, as here, the Court has addressed, through mitigation, the issue of any alleged harm to the environment.  <u>See</u> Injunction Order at 56 ("Given the nature of the certain harm which will befall 2/25 soldiers if they are sent into combat without appropriate training against the potential of mitigated harm to the environment during this discrete period of time, this Court cannot believe that any composition of Congress would have intended or approved the cessation of all Stryker training under these circumstances.").

Plaintiffs have demonstrated no basis for the alleged "clarifications" that they seek.  In many instances the

"clarifications" may interfere with training that was already identified by the Army and never challenged by the Plaintiffs. Given these facts, and the clear limitations that the Injunction Order places on the Army's preparation of the 2/25 for combat, the technical decisions and fine tuning related to the implementation of the Court's Order must be left to the military leadership which has the expertise to properly prepare our young men and women for battle.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion to Clarify December 29, 2006 Injunction Order should be denied.

DATED:  February 13, 2007, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

/s/ Harry Yee

_____
HARRY YEE
Assistant United States Attorney


MATTHEW J. MCKEOWN
Acting Assistant Attorney General

JAMES D. GETTE
BARRY A.  WEINER
Trial Attorneys
Natural Resources Section
Environment & Natural Resources
Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C.  20044-0663
Email: james.gette@usdoj.gov
Telephone: 202-305-1461
Facsimile: 202-305-0274

Of Counsel:
Robert M. Lewis, Senior Trial Attorney
Army Environmental Law Division
901 North Stuart Street, Suite 400
Arlington, VA 22203
Telephone: 703-696-1567
Facsimile: 703-696-2940

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

'ILIO'ULAOKALANI COALITION, a )    CIVIL NO. 04-00502 DAE-BMK
Hawai'i nonprofit corporation; )
NA 'IMI PONO, a Hawai'i )    CERTIFICATE OF SERVICE
unincorporated association; )
and KIPUKA, a Hawai'i )
unincorporated association, )
                   )
         Plaintiffs, )
                   )
      vs. )
                   )
ROBERT M. GATES, Secretary of )
Defense; and FRANCIS J. )
HARVEY, Secretary of the )
United States Department of )
the Army, )
                   )
         Defendants. )
_____ )

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that, on the date and by the method of

service noted below, a true and correct copy of the foregoing was

served on the following at their last known addresses:

     Served Electronically through CM/ECF:

         David L. Henkin      dhenkin@earthjustice.org

         Isaac H. Moriwake     imoriwake@earthjustice.org

            Attorneys for Plaintiffs

     DATED:  February 13, 2007, at Honolulu, Hawaii.

                 /s/ Jan Yoneda

              _____