DAVID L. HENKIN          #6876
ISAAC H. MORIWAKE        #7141
EARTHJUSTICE
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
Telephone No.: (808) 599-2436
Fax No.: (808) 521-6841
Email: dhenkin@earthjustice.org
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| 'ĪLIO'ULAOKALANI COALITION, a Hawai'i nonprofit corporation; NĀ 'IMI PONO, a Hawai'i unincorporated association; and KĪPUKA, a Hawai'i unincorporated association,<br><br>    Plaintiffs,<br><br>    v.<br><br>ROBERT M. GATES, Secretary of Defense; and FRANCIS J. HARVEY, Secretary of the United States Department of the Army,<br><br>    Defendants. | Civil No. 04-00502 DAE BMK<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CLARIFY DECEMBER 29, 2006 ORDER SETTING INTERIM INJUNCTION; SUPPLEMENTAL DECLARATION OF DAVID L. HENKIN; EXHIBITS "8"- "9;" CERTIFICATE OF SERVICE<br><br><u>Non-Hearing Motion</u> |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CLARIFY
<u>DECEMBER 29, 2006 ORDER SETTING INTERIM INJUNCTION</u>

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...............................................................................................1

II. THE HAWAIIAN GROUPS PROPERLY SEEK CLARIFICATION PURSUANT TO RULE 59(e) ...............................................................................2

III. CLARIFYING THE INTERIM INJUNCTION'S SCOPE WOULD NOT PRECLUDE ANY CRITICAL TRAINING ......................................................4

    A. Maneuver Training At East Range And Kahuku Training Area ..........5

    B. Training At The Kolekole Ranges ......................................................9

    C. Use of Unmanned Aerial Vehicles........................................................10

    D. Training Other Than SBCT-Specific Training ...................................11

IV. IF, IN THE FUTURE, THE ARMY IDENTIFIES ADDITIONAL STRYKER-SPECIFIC TRAINING IT CLAIMS IS CRITICAL, IT CAN SEEK MODIFICATION OF THE INTERIM INJUNCTION ....................12

V. CONCLUSION................................................................................................14

## TABLE OF AUTHORITIES

Page

**PUBLISHED CASES**

Barry v. Bowen,
    825 F.2d 1324 (9th Cir. 1987) ................................................................. 2

Bowen v. Kendrick,
    487 U.S. 589 (1988) ................................................................................. 2

Hamdi v. Rumsfeld,
    542 U.S. 507 (2004) ............................................................................... 13

Haskell v. State Farm Mut. Auto. Insur. Co.,
    187 F. Supp. 2d 1241 (D. Haw. 2002) ................................................. 2, 4

Jernigan v. Stuchell,
    304 F.3d 1030 (10th Cir. 2002) ............................................................... 2

Malama Makua v. Rumsfeld,
    163 F. Supp. 2d 1202 (D. Haw. 2001) .................................................. 13

National Audubon Soc'y v. Department of Navy,
    422 F.3d 174 (4th Cir. 2005) ....................................................... 3, 13, 14

**UNPUBLISHED CASES**

ʻĪlioʻulaokalani Coalition v. Rumsfeld,
    No. 05-15915 (9th Cir. Oct. 27, 2006) .......................... 1, 2, 3, 8, 11, 13, 14

Morgan v. Chicago Title Ins. Co.,
    Civ. No. 00-00145 BMK, 2006 WL 523472 (D. Haw. March 2, 2006) ......... 2

Page

## CODE OF FEDERAL REGULATIONS

40 C.F.R. § 1500.1(b) ...............................................................................................1

40 C.F.R. § 1506.1(a)..........................................................................................1, 14

40 C.F.R. § 1506.1(a)(1) .........................................................................................14

I.  INTRODUCTION

The Hawaiian Groups do not, as the Army claims, seek relief the Court intended to deny in its December 29, 2006 order. Rather, their motion asks only for clarification of the order's terms to provide the specificity the Court promised at the interim injunction hearing. Exh. 8: 12/18/06 Tr. at 60:5 (noting "my order will be specific"). Such specificity is necessary to comply with the Ninth Circuit's remand order, which required this Court to identify "which of the Stryker Brigade Combat Team transformation-related activities in Hawaii are time-critical and which activities can proceed without causing irreparable environmental and cultural harm." ʻĪlioʻulaokalani Coalition v. Rumsfeld, No. 05-15915, slip op. at 3 (9th Cir. Oct. 27, 2006) ("Remand Order"). Delineating with precision which Stryker-specific training may proceed – and, accordingly, which training remains enjoined – is also necessary to implement Congress's intent that all federal agencies, including the Army, comply fully with the National Environmental Policy Act ("NEPA") "before decisions are made and before actions are taken" that may cause significant, irreparable cultural and environmental harm. 40 C.F.R. § 1500.1(b); see also id. § 1506.1(a).

In contrast, giving the Army complete freedom to conduct whatever Stryker-specific training it wants, wherever it wants, would be at odds with this Court's obligation to ensure the Army abides by Congress's mandates. As the Ninth Circuit emphasized in issuing its temporary injunction on all Stryker-specific

training, "the Army has violated NEPA and must come into compliance before proceeding with its plan to transform the 2nd Brigade into a Stryker unit at its Hawaii base." Īlio'ulaokalani Coalition v. Rumsfeld, No. 05-15915, slip op. at 1-2 (9th Cir. Oct. 27, 2006) (Addendum to Order Granting Temporary Injunction and Remanding) ("Addendum to Remand Order").  The Hawaiian Groups respectfully submit that eliminating the interim injunction's ambiguities is necessary to "enforce[] the policy choices articulated in NEPA."  12/29/06 Order at 54.

II.     THE HAWAIIAN GROUPS PROPERLY SEEK CLARIFICATION PURSUANT TO RULE 59(e)

That the Hawaiian Groups have brought their motion under Rule 59(e) does not, as the Army inaccurately claims, evince an intent to secure relief this Court previously denied.  Rather, it is standard practice to bring a Rule 59(e) motion to seek clarification.  See, e.g., Bowen v. Kendrick, 487 U.S. 589, 600 (1988) (Rule 59(e) motion to clarify scope of injunction); Barry v. Bowen, 825 F.2d 1324, 1328 n.1 (9th Cir. 1987) ("a motion seeking minor alterations in the judgment is properly one under Rule 59(e)"); Jernigan v. Stuchell, 304 F.3d 1030, 1031 (10th Cir. 2002) (motion to clarify construed as Rule 59(e) motion).  Moreover, in ruling on Rule 59(e) motions, this Court often avails itself of the opportunity to clarify or correct its orders' terms.  See, e.g., Haskell v. State Farm Mut. Auto. Insur. Co., 187 F. Supp. 2d 1241, 1243-44 (D. Haw. 2002); cf. Morgan v. Chicago Title Ins. Co.,

2

Civ. No. 00-00145 BMK, 2006 WL 523472, at *1 (D. Haw. March 2, 2006) (granting, in part, motion for relief from judgment to correct court's order).

The Hawaiian Groups respectfully submit the Court should clarify that, in issuing its December 29, 2006 order, it did not intend to allow the Army to carry out Stryker-specific training beyond the limited set of exercises the Army had argued was necessary to prepare the 2nd Brigade for deployment as a Stryker unit. The order's use of the open-ended phrase "including, but not limited to," 12/29/06 Order at 57, and its failure to describe authorized training with specificity violated the Ninth Circuit's instructions to fashion an interim injunction that allows only Stryker-related activities that are "time-critical … and can proceed without causing irreparable environmental and cultural harm." Remand Order at 3.[1] Moreover, giving the Army *carte blanche* to conduct whatever Stryker-specific training it wants prior to complying with NEPA, with no judicial review to evaluate the irreparable harm that unidentified training may cause, would improperly abdicate the Court's responsibility to "strike[] the appropriate balance" in crafting injunctive relief. 12/29/06 Order at 56; see also National Audubon Soc'y v. Department of Navy, 422 F.3d 174, 203 (4th Cir. 2005) (to craft injunction where military violated NEPA, court's "inquiry focuses on specific types of activities that

---

[1] Use of the term "including, but not limited to" renders meaningless the injunction's general prohibition on "Stryker Brigade Combat Team-specific training," which immediately precedes it, and renders superfluous the Court's enumeration of specific training that is exempt from the interim injunction's scope. 12/29/06 Order at 57.

the [military] has requested permission to pursue") (emphasis added).  Clarification of the interim injunction's scope is necessary to correct what would otherwise be "manifest error" and avoid "manifest injustice."  Haskell, 187 F. Supp. 2d at 1244.

III.    CLARIFYING THE INTERIM INJUNCTION'S SCOPE WOULD NOT PRECLUDE ANY CRITICAL TRAINING

In drafting their proposed clarifying language, the Hawaiian Groups were careful to include all allegedly critical Stryker-specific training that the December 29, 2006 order indicated the Court intended to allow.[2]  The language expressly incorporates by reference the descriptions the Army provided in response to discovery seeking detailed information about the Stryker-specific training the Army was requesting leave to conduct and, thus, accurately reflects the Army's own assessment of its training needs.  The purpose of the requested clarification is solely to ensure the interim injunction clearly defines the Stryker-specific training that may proceed in Hawai'i pending the Army's compliance with NEPA, to avoid any dispute about which training the Court intended would remain enjoined.  See

---

[2] Like the interim injunction order, the Hawaiian Groups' proposed clarification did not reference non-live-fire training at Pōhakuloa Training Area ("PTA") Range 20, which barely rated a mention in the Army's discovery responses.  If the Court intended to allow this training, the proposed clarifying language for Paragraph 1(a) should be amended to read:  "training at Qualification Training Range 1, the Urban Assault Course, and Pōhakuloa Training Area Ranges 1, 8/8B, 10, and 20, as described in detail in Exhibits 66, 67, and 69 of the Plaintiffs' supplemental memorandum."

4

12/18/06 Tr. at 59:13-14 ("the Ninth Circuit's injunction will remain in place unless otherwise lifted").

    A.    <u>Maneuver Training At East Range And Kahuku Training Area.</u>

The Army is simply wrong when it claims the Hawaiian Groups' requested clarification would prevent the 2nd Brigade from "conducting important training maneuvers that are described in the discovery" the Army provided. Opp'n at 11. The Army focuses on maneuver training at Schofield Barracks East Range, which the proposed clarification specifies would be conducted "as described in Exhibit 67 of the Plaintiffs' supplemental memorandum, provided that off-road maneuvers at the East Range … are limited to the areas circled in black on Exhibit[] '2' … to the December 4, 2006 Deposition of Ronald L. Borne." Plfs' Memo. at 13. Review of the Army's discovery responses confirms the description the Hawaiian Groups propose captures all training at East Range that the Army claimed was "time-critical," which is precisely what the Ninth Circuit remanded to this Court to identify and this Court said it intended to allow to proceed. 12/29/06 Order at 25; <u>see also id.</u> at 54 (Court determined "which time-critical Stryker activities could proceed").

The Army's November 29, 2006 discovery responses – which were attached as Exhibit "67" to the Hawaiian Groups' supplemental memorandum and as Exhibit "2" to the pending motion – clearly state that, for the East Range, the only

5

allegedly "critical tasks related to 2/25 SBCT Initial Operating Capacity (IOC) training" (i.e., training the Army claimed was needed to complete the 2nd Brigade's timely conversion to a Stryker unit) "are limited to … initial drivers training of one Stryker at a time … during Operation New Equipment Training (OPNET)." 11/29/06 Response at 9 (emphasis added). While the Army now asserts there may be unspecified additional training it may want to conduct at East Range, it did not identify any such training in response to discovery seeking descriptions of "each Stryker-specific training exercise [the Army] contend[s] the 2nd Brigade must conduct in Hawai'i to be mission deployable as an SBCT." Id. at 3.[3] Having failed to identify other training at East Range as critical, the Army "effectively abandoned [it] … for the purposes of [the interim injunction] proceeding." 12/18/06 Tr. at 59:19-21; see also id. at 59:24-60:1 (if "Army has not asked to move forward with [specific] projects, those projects will not move forward").[4]

---

[3] At deposition, U.S. Army Garrison Hawaii Director of Transformation Ronald Borne said only that there "may be collective training the brigade may ask to do" at East Range, but did not identify any collective training the Army actually was seeking leave to conduct. 12/4/06 Borne Deposition at 25:4-5 (emphasis added). Neither Mr. Borne nor Colonel Banach (who similarly provided no specifics) claimed other maneuvers at East Range were critical to the 2nd Brigade's conversion into a Stryker unit, and the Army never amended its discovery response that the only "critical task[]" it was seeking leave to conduct at East Range was individual OPNET training. 11/29/06 Response at 9.

[4] The Court emphasized the abandonment was "not for the purposes of this entire case," but only for purposes of crafting its initial injunction. Id. at 59:19-20. The Court made clear that it would consider modifying the interim injunction's scope should the Army later claim additional training is vital to complete the 2nd Brigade's Stryker conversion. By its own terms, the order "remain[s] in place until

During his deposition, Director of Transformation Borne – who the Army produced to respond to the Hawaiian Groups' questions about the nature and scope of requested training – expressly refuted the Army's newly minted claim it needs all off-road maneuver areas at East Range to complete OPNET training. Exh. 6: Borne Depo. at 21:25-22:13; see also id. at 23:2-7 (only areas presently being used are needed).[5] Mr. Borne circled only three off-road areas on Exhibit 2, affirming these were the only areas the Army needed to conduct the requested training. Borne Depo. at 24:13-23. While the Army now tries to cast doubt on the reliability of Mr. Borne's testimony, the Army did not, at any time after Mr. Borne's deposition, supplement his testimony by identifying additional areas allegedly needed for requested training.[6] Nor did Mr. Borne, who had time, after his deposition, to review his transcript and make corrections before certifying it was "a

---

either [the Army has] complied with the National Environmental Policy Act, or the parties return to this Court with changed circumstances, whichever occurs sooner." 12/29/06 Order at 2 (emphasis added). Thus, if the Army discovers the injunction constrains it from training it believes to be critical, it would "come back to this court … to get that injunction lifted." 12/18/06 Tr. at 59:15-18

[5] The purple areas in Figure 2-3 of the site-specific environmental impact statement ("SEIS") represent potential "[u]nrestricted Stryker maneuver areas" for all the long-term training needs of a Stryker brigade permanently stationed in Hawai'i, not the more limited off-road areas needed to complete the OPNET training the Army claimed was critical, in the short-term, to convert the 2nd Brigade into a Stryker unit. Exh. 2 to Gette Dec.: SEIS at Fig. 2-3.

[6] In contrast, the Army supplemented its initial responses to clarify the subset of the off-road maneuver areas the SEIS identified at Dillingham Training Area ("DTA") where the Army was asking the Court to allow allegedly critical maneuver training in the short term. See 11/29/06 Response at 8; Exh. 68 to 12/14/06 Plfs' Supp. Memo (map of DTA).

7

true and correct transcript of [his] testimony," ever amend any of his statements regarding the nature or scope of the training the Army sought to conduct at East Range, including his testimony that only the three areas circled on Exhibit "2" were needed for that training.  See Exh. 9: 12/12/06 Borne Witness Certificate and Correction Sheet.  The Hawaiian Groups' proposed clarification accurately reflects the information the Army provided during discovery, which was the only information before the Court when it determined "the appropriate scope of [its] interim injunction."  Remand Order at 2.

    Likewise, the proposed clarification includes all areas the Army sought for maneuver training at Kahuku Training Area ("KTA").  At deposition, Mr. Borne testified he both was familiar with the areas at KTA where the Army proposed to have Stryker vehicles go off established roads and could identify on Exhibit 3-A the locations of such areas.  Borne Depo. at 26:14-17; id. at 26:23-27:1.  He then affirmed that the four areas he had outlined on Exhibit 3-A were "the only ones that the Army is currently asking the court for permission to use" for off-road maneuvers.  Id. at 27:15-18.  As with training areas at East Range, the Army never supplemented Mr. Borne's testimony to claim it needed additional off-road training areas, and Mr. Borne certified his deposition transcript was "true and correct" without altering any of his testimony about off-road training at KTA.

    The Army's citation to its written discovery gives the Court no reason to discredit Mr. Borne's sworn testimony.  See Opp'n at 13 n.4.  In responding to the

8

Hawaiian Groups' interrogatories, the Army stated that off-road maneuvers at KTA would be "limited to the designated <u>larger sections</u> of Stryker Maneuver areas in training areas A1, B2 and C1," but did not specify which portions of the enumerated training areas the Army considered to be "larger sections."  11/29/06 Response at 5 (emphasis added).  That is why the Hawaiian Groups asked Mr. Borne at deposition to clarify the Army's response.  Only Exhibit 3-A provides the requisite clarity regarding the locations at KTA where the Army sought to conduct off-road maneuvers.

      B.    <u>Training At The Kolekole Ranges.</u>

Granting the Hawaiian Groups' request to clarify would not, as the Army asserts, restrict "training that may take place at the [Kolekole ("KR")] ranges."  Opp'n at 14 n.6.  The Hawaiian Groups' proposed language does not reference the Army's December 1, 2006 discovery responses (Exhibit "66" to the Hawaiian Groups' supplemental memorandum and Exhibit "3" to the pending motion), but it nonetheless makes clear the Army's plans to fire short-range training ammunition ("SRTA") rounds at the KR ranges.  <u>See</u> 12/1/06 Response at 9.  Like the interim injunction order, the proposed clarification references Exhibit "70" to the Hawaiian Groups' supplemental memorandum (attached to the pending motion as Exhibit "5"), a detailed description of the Army's proposed training at the KR ranges that specifies the Army's intent to use SRTA rounds.  <u>See</u> KR 3-6 Training Briefing

9

(pages describing training at KR 4/5 and KR 6). If the Army would prefer an express reference to Exhibit "66" in the amended order, the Hawaiian Groups have no objection, but its inclusion is unnecessary to describe fully the training the Army sought leave to conduct.[7]

      C.    <u>Use of Unmanned Aerial Vehicles.</u>

Whether the SEIS contemplates unmanned aerial vehicles ("UAVs") might fly over the West PTA Acquisition Area ("WPAA") is irrelevant, since the SEIS describes all future Stryker-specific training the Army proposes to conduct in Hawai'i in the event it makes a lawful decision to station a Stryker brigade here permanently. See Opp'n at 14 n.6. In contrast, the interim injunction focuses solely on the Stryker-specific training the Army may conduct in the short-term, until it has "complied with [NEPA]." 12/29/06 Order at 2.

In responding to discovery regarding the training it alleged was critical for the 2nd Brigade's Stryker conversion in the short-term, the Army consistently stated it was not "asking the court for use of the Keamuku parcel" – an alternate name for the WPAA – "for training involving Stryker vehicles" or "for any other purpose." Borne Depo. at 29:15-30:4. The Hawaiian Groups' proposed clarification regarding UAV training therefore accurately reflects the scope of training the

---

[7] Paragraph 1(d) would then read: "training exercises at Ranges KR 3, 4, 5, and 6 at Schofield Barracks as described in detail in Exhibits 66, 69 and 70 of the Plaintiffs' supplemental memorandum."

10

Army requested and the Court apparently intended to authorize. 12/18/06 Tr. at 59:9-19 (any activity Army did "not ask[] this court to allow … a matter of necessity" deemed "abandoned for the immediate future").[8]

### D. Training Other Than SBCT-Specific Training.

The Army's claim the requested clarification would preclude training that does not involve Stryker vehicles (such as classroom training, leader development courses, combat medical training, and marksmanship training) ignores that the only training the Ninth Circuit enjoined – and which, unless specifically permitted under this Court's order, would remain enjoined – is "Stryker Brigade Combat Team-specific training." 12/29/06 Order at 57; see also Opp'n at 15-17. By definition, "Stryker Brigade Combat Team-specific training" includes only:

> training specifically intended to familiarize soldiers with the Stryker combat vehicle and <u>does not limit in any way the ability of the Army to train and qualify soldiers on and with weapons systems not mounted on Stryker combat vehicles, nor does it restrict the Army from providing training to soldiers that familiarizes them with the Stryker combat vehicle in a classroom or computer simulation setting</u> … .

Remand Order at 2 (emphasis added). The clarifying language the Hawaiian Groups propose would not restrict the Army's ability to carry out the training the

---

[8] The Army's objection to the requested clarification suggests a lack of familiarity with local geography. The only training authorized at PTA will take place on ranges at the far eastern side of the installation, far from the WPAA, and UAVs involved in that training will generally be launched from Bradshaw Army Airfield, which is likewise on the eastern side of PTA. SEIS at 2-40.

11

Army lists in Part III.B.2 of its opposition, which is not "Stryker Brigade Combat Team-specific training."

IV.  **IF, IN THE FUTURE, THE ARMY IDENTIFIES ADDITIONAL STRYKER-SPECIFIC TRAINING IT CLAIMS IS CRITICAL, IT CAN SEEK MODIFICATION OF THE INTERIM INJUNCTION**

As discussed above, the Army has failed to identify any Stryker-specific training it had claimed was critical that the Hawaiian Groups' proposed clarification would preclude.  Aware of this, the Army suggests that, "in the fullness of time," it might be able to come up with something.  Opp'n at 14-15. The Army, however, already secured two time extensions, allegedly to allow it "to <u>fully analyze</u> all limitations that would be created by the proposed order" and "to prepare a complete and thoughtful response that <u>fully addresses</u> each of the proposed modifications."  1/30/07 Defs' 2nd Unopposed Motion for Extension of Time to Respond to Plfs' Motion to Clarify at 2-3 (emphasis added).

If the Army has not come up with better reasons to oppose the requested clarification by now, it is unlikely it ever will.  Should, however, the Army later contend the clarified order precludes it from conducting Stryker-specific training it believes is critical for the 2nd Brigade's conversion, it could always seek appropriate relief, on an expedited basis, if need be.  The proper procedure, as the Court explained at the interim injunction hearing, is "to come back to this court or to the Ninth Circuit … to get that injunction lifted."  12/18/06 Tr. at 59:15-18; <u>see</u>

also 12/29/06 Order at 2 (interim injunction "will remain in place until … the parties return to this Court with changed circumstances").

Deference to the Army's military expertise does not mean letting the Army do whatever training it pleases prior to complying with NEPA.  See National Audubon Soc'y, 422 F.3d at 207 ("Executive decisionmaking must fully comply with the environmental policy mandate that Congress has expressed through NEPA").[9]  If it did, the Ninth Circuit would have flatly denied the Hawaiian Groups' request for injunctive relief, leaving the Army free to do whatever it chose.  Instead, it granted a temporary injunction on all Stryker training and remanded to this Court to conduct "a fact-intensive inquiry" to determine "which of the Stryker Brigade Combat Team transformation-related activities in Hawaii are time-critical and which activities can proceed without causing irreparable environmental and cultural harm."  Remand Order at 3.  Judicial oversight of any new activities the Army may, in the future, seek to carry out is likewise necessary to "enforce[] the policy choices articulated in NEPA" and "protect[] cultural and environmental resources from harm" associated with Stryker training.  12/29/06

---

[9] That courts defer to military expertise does not mean they relinquish their constitutional role to ensure the executive branch, including the military, complies with the law.  Thus, in Hamdi v. Rumsfeld, 542 U.S. 507 (2004),  the Supreme Court reviewed the military's detention of an alleged enemy combatant and held it violated due process.  In this case, "there is no national defense exemption to NEPA," and the Court has an obligation to ensure the Army complies fully with NEPA's mandates.  Malama Makua v. Rumsfeld, 163 F. Supp. 2d 1202, 1222 (D. Haw. 2001) (quoting Wisconsin v. Weinberger, 745 F.2d 412, 425 (7th Cir. 1984)).

Order at 54, 56; see also Addendum to Remand Order at 2 (NEPA requires "reasonable alternatives be considered <u>before environmentally damaging projects are undertaken</u>"); 40 C.F.R. § 1506.1(a).

That the Court concluded the mitigation measures it required for the Stryker-specific training the Army had identified – and, thus, the Court had the opportunity to evaluate – would be adequate to avoid "incremental harm," 12/29/06 Order at 56, does not mean that whatever other unspecified (and, thus, unevaluated) training the Army may want to conduct in the future similarly would avoid violating NEPA's prohibition on activities that "[h]ave an adverse environmental impact." 40 C.F.R. § 1506.1(a)(1). Even when the military is involved, "a court must balance the harms <u>particular to each case</u> in assessing whether an injunction is justified and how far it should reach." National Audubon, 422 F.3d at 202 (emphasis added). This Court cannot fulfill its constitutionally mandated role to uphold adherence to the laws unless the Army is required to come before it to seek approval for the "specific types of activities" it wants to pursue prior to completing the supplemental SEIS that NEPA requires. Id. at 203.

V.   CONCLUSION

Where, as here, the Army has violated NEPA, it is the province of the courts to determine whether any Stryker-related activities may proceed in Hawai'i pending the Army's compliance with the law, and, if so, which activities and under

14

what conditions.  The Hawaiian Groups respectfully submit that clarification of the Court's December 29, 2006 order is necessary to provide certainty regarding which Stryker-specific training the Court concluded may proceed and which training remains enjoined.

DATED:     Honolulu, Hawai'i, February 26, 2007.

                    EARTHJUSTICE
                    David L. Henkin
                    Isaac H. Moriwake
                    223 South King Street, Suite 400
                    Honolulu, Hawai'i 96813

By:     /s/ David L. Henkin
        DAVID L. HENKIN
        ISAAC H. MORIWAKE
        Attorneys for Plaintiffs