DAVID L. HENKIN          #6876
ISAAC H. MORIWAKE        #7141
EARTHJUSTICE
223 South King Street, Suite 400
Honolulu, Hawaiʻi 96813
Telephone No.: (808) 599-2436
Fax No.: (808) 521-6841
Email: dhenkin@earthjustice.org
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ʻĪLIOʻULAOKALANI COALITION, a Hawaiʻi nonprofit corporation; NĀ ʻIMI PONO, a Hawaiʻi unincorporated association; and KĪPUKA, a Hawaiʻi unincorporated association,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT M. GATES, Secretary of Defense; and PETE GEREN, Acting Secretary of the United States Department of the Army,<br><br>Defendants. | Civil No. 04-00502 DAE BMK<br><br>PLAINTIFFS' MEMORANDUM IN SUPPORT OF STATEMENT OF APPEAL FROM MARCH 23, 2007 ORDER DENYING PLAINTIFFS' REQUEST FOR SUPPLEMENTAL DISCOVERY |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF STATEMENT
OF APPEAL FROM MARCH 23, 2007 ORDER
DENYING PLAINTIFFS' REQUEST FOR SUPPLEMENTAL DISCOVERY

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................1

II.   PROCEDURAL BACKGROUND ..................................................2

      A.    Proceedings In The District Court.......................................2

      B.    Proceedings On Appeal .....................................................4

      C.    Proceedings On Remand To The District Court ...................5

            1.    The Court Issues Its Interim Injunction Based On
                  Limited, Expedited Discovery, Promising That More
                  Extensive Discovery Would Follow ...........................5

            2.    Magistrate Kurren Denies The Hawaiian Groups'
                  Request For Supplemental Disclosures Of Material
                  Changes To Training...............................................8

III.  THE HAWAIIAN GROUPS ARE ENTITLED TO
      SUPPLEMENTAL DISCLOSURES AS PART OF THE
      "SUBSTANTIAL ADDITIONAL DISCOVERY" THE COURT
      PROMISED WOULD BE PERMITTED FOLLOWING ISSUANCE
      OF THE INTERIM INJUNCTION...............................................10

IV.   REQUIRING SUPPLEMENTAL DISCLOSURES WOULD NOT
      MICRO-MANAGE ARMY TRAINING........................................14

V.    CONCLUSION........................................................................17

i

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

E. & J. Gallo Winery v. Andina Licores S.A.,
　　No. CV F 05-0101, 2007 WL 333386 (E.D. Cal. Jan. 31, 2007)..................12

ʻĪlioʻulaokalani Coalition v. Rumsfeld,
　　464 F.3d 1083 (9th Cir. 2006) ..........................................................................4

Īlioʻulaokalani Coalition v. Rumsfeld,
　　No. 05-15915, (9th Cir. Oct. 27, 2006) ........................................................3, 4

Īlioʻulaokalani Coalition v. Rumsfeld,
　　No. 05-15915, (9th Cir. Nov. 15, 2006) ...........................................................5

U.S. v. Goodyke,
　　No. CV-S-05-1154, 2006 WL 4013390 (D. Nev. Nov. 13, 2006)...............12

**CODE OF FEDERAL REGULATIONS**

40 C.F.R. § 1506.1(a)(1) .......................................................................................1, 17

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 26(e)(2).........................................................................................1, 14

**MISCELLANEOUS**

Fed. R. Civ. P. 26(e) Advisory Committee's Note (1993) .................................10, 11

I.    INTRODUCTION

The Hawaiian Groups appeal from Magistrate Judge Barry M. Kurren's March 23, 2007 denial of their request for an order requiring the Army to provide supplemental disclosures if there are material changes in the Stryker training the Army plans to conduct in Hawaiʻi prior to complying with the National Environmental Policy Act ("NEPA").  See Fed. R. Civ. P. 26(e)(2).  Because Stryker training takes place on military installations off-limits to the Hawaiian Groups, unless the Army is required to make such disclosures, the Hawaiian Groups may never learn of "changed circumstances" that might warrant modifying the interim injunction to prevent irreparable harm.  12/29/06 Order at 2.  The Court, in turn, would be unable to ensure the Army's compliance with NEPA's prohibition on actions that "[h]ave an adverse environmental impact."  40 C.F.R. § 1506.1(a)(1).

The Hawaiian Groups respectfully submit that Magistrate Kurren's denial of this necessary discovery was clearly erroneous and contrary to law.  There is no way to square Magistrate Kurren's conclusion that the time has passed for such discovery with this Court's prior decision that, following the issuance of the interim injunction, the Hawaiian Groups would be permitted "substantial additional discovery."  Exh. 1: 11/20/06 Tr. at 26:21.  See Part III, infra.

Magistrate Kurren also erred in finding that requiring supplemental disclosures would constitute impermissible "micro-management" of the Army's

affairs.  3/23/07 Order at 3; <u>see</u> Part IV, <u>infra</u>.  Disclosure of material changes to training would not, in itself, impose any limitation on Stryker activities.  It would simply allow this Court to consider in a timely manner whether those changes warrant modification of the injunction, such as requiring "mitigating measures" to "protect[] cultural and environmental resources from harm" associated with the new training.  12/29/06 Order at 56.  Requiring such protective measures, as the Court did in its December 29, 2006 order with respect to previously disclosed training, does not improperly meddle in the Army's affairs.  Rather, it fulfills the judiciary's responsibility to "enforce[] the policy choices articulated in [the National Environmental Policy Act ("NEPA")] and strike[] the appropriate balance" in fashioning injunctive relief.  <u>Id.</u> at 54.

II.    PROCEDURAL BACKGROUND

    A.    <u>Proceedings In The District Court.</u>

    On August 17, 2004, the Hawaiian Groups filed a complaint in this Court, challenging the Army's failure to consider alternate stationing locations outside Hawai'i before deciding to convert 2nd Brigade into a Stryker brigade in Hawai'i.

    On November 5, 2004, the Court denied the Hawaiian Groups' motion for preliminary injunction.  In opposing preliminary injunction, the Army relied on declarations from two Pentagon officials to support its claims regarding alleged harm to national security from enjoining Stryker conversion in Hawai'i.

Anticipating they would need to refute similar assertions when seeking an injunction following resolution of the merits, the Hawaiian Groups noticed the officials' depositions.

The depositions, as well as all other discovery related to remedy, did not take place, because the parties reached an agreement "to address [the Hawaiian Groups'] interest in maintaining the status quo while the litigation was pending as well as the Army's interest in deferring remedy-related discovery." Īlioʻulaokalani Coalition v. Rumsfeld, No. 05-15915, slip op. at 2-3 (9th Cir. Oct. 27, 2006) (Addendum to Order Granting Temporary Injunction and Remanding).  On November 22, 2004, this Court entered the parties' stipulated agreement, bifurcating resolution of the merits of the Hawaiian Groups' NEPA challenge from "the determination of the appropriate remedy should the Court find a NEPA violation."  11/22/04 Stipulated Order ¶ 1.  The Stipulated Order deferred all discovery related to the remedy phase until after a finding the Army violated NEPA.  Id. ¶ 6.

On April 25, 2005, the Court denied the Hawaiian Groups' motion for summary judgment and granted the Army's cross-motion for summary judgment. Judgment in the Army's favor was entered on April 29, 2005, and the Hawaiian Groups appealed on May 3, 2005.

B.    Proceedings On Appeal.

On October 5, 2006, the Ninth Circuit reversed this Court's decision, holding that "[t]ransformation of the 2nd Brigade outside of Hawaii was a reasonable alternative that the Army was obligated under NEPA to consider" and that "[i]ts failure to do so renders the Army's [environmental impact statements] inadequate." ʻĪlioʻulaokalani Coalition v. Rumsfeld, 464 F.3d 1083, 1101 (9th Cir. 2006). To bring the Army into compliance with NEPA, the court remanded "for supplemental analysis of alternative [stationing] locations" in a supplemental site-specific environmental impact statement. Id. at 1102.

On October 27, 2006, the Ninth Circuit granted the Hawaiian Groups' emergency motion for a temporary injunction on Stryker activities in Hawaiʻi. Īlioʻulaokalani Coalition v. Rumsfeld, No. 05-15915 (9th Cir. Oct. 27, 2006) (Order). The Court instructed that, on remand, the district court must undertake "a fact-intensive inquiry" to "balance[e] the parties' equities." Id., slip op. at 3. It specified the district court "should consider, among other factors, which of the Stryker Brigade Combat Team transformation-related activities in Hawaii are time-critical and which activities can proceed without causing irreparable environmental and cultural harm." Id.

4

C.    Proceedings On Remand To The District Court.

1.    The Court Issues Its Interim Injunction Based On Limited, Expedited Discovery, Promising That More Extensive Discovery Would Follow.

On November 6, 2006, this Court held a status conference to establish a schedule for resolving issues related to injunctive relief on remand.  In light of the Ninth Circuit's instructions to "proceed expeditiously," the Court initially denied the Hawaiian Groups' request for discovery related to the remedy phase.  Exh. 2: 11/6/06 Tr. at 27:18-19.   However, the Court also encouraged the Hawaiian Groups to seek clarification from the Ninth Circuit whether it intended to permit discovery prior to a ruling on an interim injunction.  Id. at 29:13-16.  The Hawaiian Groups promptly did so, and, on November 15, 2006, the Ninth Circuit issued an order clarifying that this Court retained "its discretion to determine what information is critical to its determination of the scope of the interim injunction," including the discretion to require discovery.  Ilio'ulaokalani Coalition v. Rumsfeld, No. 05-15915, slip op. at 2 (9th Cir. Nov. 15, 2006).

In light of the Ninth Circuit's clarification, at the November 20, 2006 status conference, this Court announced it would permit discovery related to the scope of injunctive relief.  Noting the need to issue an interim injunction expeditiously, the Court saw "no immediate need for extensive discovery" on the Stryker-related training the Army proposed to conduct in Hawai'i prior to coming into compliance with NEPA.  11/20/06 Tr. at 10:7-8 (emphasis added).  Accordingly, "pending the

issuance of an interim injunction," the Court allowed only expedited discovery and advised the parties to focus their discovery on activities that would take place in the short-term.  Id. at 26:18; see also id. at 11:18-19 (interim injunction to focus on "the immediate meantime").  The Court promised, however, that, following the issuance of its interim injunction order, it would permit "substantial additional discovery in this case as we move forward."  Id. at 26:21-22.

In compliance with the Court's instructions, the Hawaiian Groups focused their expedited discovery on identifying the specific Stryker-related activities in Hawai'i the Army contended were critical to convert the 2nd Brigade into a Stryker unit and examining the potential for those activities to cause irreparable harm to cultural and biological resources.  Among other things, the Hawaiian Groups propounded interrogatories and document requests asking the Army to "describe with particularity each Stryker-specific training exercise [it] contend[s] the 2nd Brigade must conduct in Hawai'i to be mission deployable as [a Stryker brigade]," including "the ranges or other locations where each exercise would take place." Exh. 3: 11/20/06 Plfs' First Set Of Interrogatories And Requests For Production Of Documents And Things at 12.  Based on the Army's disclosures, the Hawaiian Groups presented to the Court a detailed analysis of the specific Stryker-related training the Army sought to carry out in Hawai'i prior to complying with NEPA. See 12/29/06 at 26-27 (summarizing Hawaiian Groups' review of "the limited

activities that Defendants seek to proceed with"); see generally 12/14/06 Plfs'

Supp. Memo.[1]

   To fashion its interim injunction, the Court examined the evidence the

parties presented regarding potential harm from the specific training exercises the

Army had disclosed.  See 12/29/06 Order at 27-32, 35-39, 44-53.  Where it

concluded the evidence "establish[ed] incremental harm, this Court ordered

mitigating measures be undertaken so that harm could be avoided by

implementation of protective measures."  Id. at 56.  Required mitigations included

the implementation of best management practices ("BMPs") "to minimize erosion

[from Stryker maneuver training] at East Range and Kahuku Training Area

---

   [1] The Hawaiian Groups respectfully disagree with the Court's statement in
its March 1, 2007 Order Denying Plaintiffs' Motion To Clarify that the Hawaiian
Groups failed to argue "that the Army should only be allowed to proceed with
certain types of training in certain areas, or that certain aspects of SBCT training
were not time-critical."  3/1/07 Order at 4.  The Hawaiian Groups clearly stated
their position that any training the Army had not specifically identified in its
discovery responses as critical "should continue to be enjoined."  Exh. 4: 12/18/06
Tr. at 59:5-6; see also id. at 60:15-18 ("we've been careful to assume that what
they mean by 'training' is specifically what they have disclosed is necessary.  But
everything else should be enjoined"), 61:14-15 (focus on "specific training" to
determine "appropriate scope of injunctive relief").  Thus, they urged the Court to
enjoin Stryker training in areas like "the 24,000 acres purchased from Parker
Ranch," since the Army's discovery responses conceded it was not asking the
Court to permit training there.  Id. at 60:11, see also Exh. 5: Borne Deposition at
29:15-30:4.  The Hawaiian Groups also challenged the Army's claim that training
with the Mobile Gun System – which no deployed Stryker brigade had ever used –
was essential.  See 12/29/06 Order at 16; 12/14/06 Plfs' Supp. Memo. at 29.
Moreover, they questioned the Army's fundamental premise that any training in
Hawai'i was needed, as alternate training locations were available.  12/29/06 Order
at 21-22; 12/14/06 Plfs' Supp. Memo. at 35-39.

[("KTA")]," flagging of the boundaries of off-road maneuver areas to protect cultural sites, implementation of "all necessary mitigation measures to protect known cultural sites that are within the Surface Danger Zone of the mobile gun system at Range 11T," and a prohibition on "any activities," including training, "that would disturb Site 23621 in any manner." Id. at 59-60.

In entering its order, the Court recognized the potential for changed circumstances that might warrant modification of the injunction and, accordingly, specified the injunction would "remain in place until either Defendants have complied with [NEPA], or the parties return to this Court with changed circumstances, whichever occurs sooner." Id. at 2 (emphasis added). The interim injunction makes clear that the changed circumstances that might warrant modification include future changes in the Army's training plans. For example, the Court stated that the Hawaiian Groups "may return to this Court" to request relief if the Army "begins to use" land recently purchased from Parker Ranch and the Campbell Estate for training. Id. at 56 n.9.[2]

>            2.     Magistrate Kurren Denies The Hawaiian Groups' Request For
>                   Supplemental Disclosures Of Material Changes To Training.

On March 1, 2007, pursuant to an earlier agreement among the parties, the Army provided notice that, as of March 15, 2007, it would no longer limit Stryker

---

[2] Since the Army's discovery responses confirmed it "has no present need to use the lands" for anything other than construction of the SBCT Motor Pool, a decision to commence Stryker training would constitute a material change. Id.

training in Hawai'i to the set of exercises the parties had previously discussed. Exh. 6: 3/1/07 Gette Letter; see also Exh. 7: 1/22/07 Gette Letter.  To ensure they would be able to apprise the Court in a timely fashion about any changed circumstances that threatened irreparable harm, the Hawaiian Groups immediately contacted the Army to seek agreement about supplementation of its prior discovery responses in the event of any material changes to Stryker training in Hawai'i prior to the Army's compliance with NEPA.  Henkin Dec. ¶ 3.  The Army refused to consider any such agreement or, even, to indicate whether it agreed Federal Rule of Civil Procedure 26(e)(2) obliged the Army to supplement its prior responses should it plan to carry out Stryker training that differed materially from its previous disclosures.  Id.  The Hawaiian Groups therefore sought expedited discovery assistance from Magistrate Kurren pursuant to Local Rule 37.1(c).

As instructed by Magistrate Kurren's courtroom manager, the Hawaiian Groups filed their letter brief on March 14, 2007.  Id. ¶ 5.  The Army instead filed a motion questioning whether it was required to file a letter brief, which Magistrate Kurren denied in a March 16, 2007 minute order.  The minute order set a March 19, 2007 deadline for the Army to file its letter brief and a March 20, 2007 discovery conference.

After hearing additional argument at the discovery conference, on March 23, 2007, Magistrate Kurren issued his Order Denying Plaintiffs' Request For Supplemental Discovery on the grounds the Hawaiian Groups were not "entitled to

use pre-trial discovery mechanisms as a mode for ascertaining post-decision compliance" with the interim injunction and that requiring such disclosures would improperly micro-manage the Army's training.  3/1/07 Order at 2.  This appeal followed.

III.    THE HAWAIIAN GROUPS ARE ENTITLED TO SUPPLEMENTAL
        DISCLOSURES AS PART OF THE "SUBSTANTIAL ADDITIONAL
        DISCOVERY" THE COURT PROMISED WOULD BE PERMITTED
        FOLLOWING ISSUANCE OF THE INTERIM INJUNCTION

Magistrate Judge Kurren's finding that the time for discovery had passed and, accordingly, the Hawaiian Groups were not entitled to additional disclosures regarding the Army's training plans cannot be reconciled with this Court's instructions at the November 20, 2006 status conference.  See 3/23/07 Order at 2. With the issuance of the interim injunction, the exigencies the Court previously found justified severely limiting discovery have evaporated.  Now that the Army is proceeding with the Stryker activities the Court found to be time-critical, there is no justification for denying the Hawaiian Groups the "far more extensive and far more broad" discovery the Court had promised would be allowed  at this stage of the litigation.  Id. at 26:22-23.

Federal Rule of Civil Procedure 26(e) was amended in 1993 to impose an "obligation to supplement disclosures and discovery responses … whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect."  Fed. R. Civ. P. 26(e) advisory committee's note (1993).

10

The Hawaiian Groups merely seek the Court's assistance to ensure the Army complies with that obligation and does so in a timely manner.  See id. (scheduling order may "specify the time or times when supplementation should be made").  Magistrate Kurren's conclusion that this "pre-trial discovery mechanism[]" is not available to the Hawaiian Groups ignores this case's unique procedural posture. 3/23/07 Order at 2; see also 11/20/06 Tr. at 10:15 (noting "this is a very unusual case").  As discussed in Part II, supra, due to the parties' agreement to bifurcate resolution of the merits from issues related to remedy and the Court's subsequent ruling for the Army on the merits, no remedy-related discovery took place prior the Ninth Circuit's reversal and remand.  On remand, this Court determined that discovery regarding injunctive relief should proceed in two phases, with discovery on an "expedited basis" preceding the interim injunction's issuance and "far more extensive and far more broad" discovery following it.  11/20/06 Tr. at 26:13, 22-23.  Whether denominated as supplementation pursuant to Rule 26(e)(2) or as some other form of discovery, the Hawaiian Groups' request for the Army to disclose future training that differs materially from the descriptions in its previous responses falls squarely within the scope of the "substantial additional discovery" the Court previously determined was appropriate at this phase of the case.  Id. at 26:21.[3]

---

[3] In its arguments to Magistrate Kurren, the Army made much of the Court's announcement at the December 18, 2006 interim injunction hearing that it was

The Hawaiian Groups do not, as Magistrate Kurren assumed, seek this additional information simply "to ensure compliance with the Court's Interim Injunction." 3/23/07 Order at 2.[4] Rather, discovery of material changes in training is vital to allow the Hawaiian Groups to keep the Court apprised of "changed circumstances" that might warrant modification of the interim injunction to prevent irreparable harm to cultural and environmental resources. 12/29/06 Order at 2. Since Stryker training takes place on military installations that are off-limits to the Hawaiian Groups, discovery is the only way to guarantee the Hawaiian Groups will learn of material changes in training and be in a position to bring them to the Court's attention.[5] Absent timely supplemental disclosures, the Hawaiian Groups

---

closing the record. See 12/18/06 Tr. at 18:18-19; see also id. at 14:18-15:12 (noting Court's efforts to be as "well informed about the facts and the arguments as possible" given the "extremely short fuse from the Ninth Circuit") (emphasis added). While that announcement ended the initial, expedited phase of post-appeal discovery, it did not preclude the additional discovery following the interim injunction's issuance that the Hawaiian Groups now seek.

[4] Even if that were the case, this Court has the discretion to authorize post-decision discovery "directed to compliance with and enforcement of [its] injunction." E. & J. Gallo Winery v. Andina Licores S.A., No. CV F 05-0101, 2007 WL 333386, at *5 (E.D. Cal. Jan. 31, 2007); see, e.g., U.S. v. Goodyke, No. CV-S-05-1154, 2006 WL 4013390, at *3 (D. Nev. Nov. 13, 2006).

[5] The Army's argument to Magistrate Kurren that the periodic progress reports the interim injunction requires will provide the information the Hawaiian Groups seek is baseless. The periodic reports relate solely to the implementation of measures required to mitigate harm from previously disclosed training and construction activities. 12/29/06 Order at 58-60. As the initial report the Army provided on March 30, 2007 confirms, the periodic reporting will provide no information whatsoever regarding previously undisclosed training. Moreover, the Army has confirmed that, absent an order from this Court, it will not inform the

likely would remain ignorant if, for example, Strykers were to begin training in fragile endangered species habitat and culturally sensitive areas on lands recently purchased from Campbell Estate on Oʻahu and from Parker Ranch on Hawaiʻi Island, which the Army previously said would not be used.  See Borne Deposition at 29:15-30:4; see, e.g., Exh. 9: Site-Specific Administrative Record at 24195-96, 51527, 51753, 51756, 52285,  52293-94 (describing significant impacts to cultural and biological resources from Stryker training on former Campbell Estate ("SRAA") and Parker Ranch ("WPAA" or "Keamuku Parcel") lands).[6]

The interim injunction's express language refutes the Army's claim the Court intended its December 29, 2006 order to be the final word on all issues related to Stryker training in Hawaiʻi prior the Army's compliance with NEPA. The injunction provides that it "will remain in place until either Defendants have complied with [NEPA], or the parties return to this Court with changed circumstances, whichever occurs sooner."  12/29/06 Order at 2 (emphasis added). The order makes clear that changed circumstances warranting modification might include material changes in the training the Army intends to conduct in Hawaiʻi,

---

Hawaiian Groups if it intends to carry out training that was not previously disclosed.  See Exh. 8: 4/2/07 Weiner Letter.

[6] Magistrate Kurren's suggestion that the Hawaiian Groups could obtain discovery only after filing another lawsuit challenging previously undisclosed training puts the cart before the horse.  3/23/07 Order at 2-3.  Without an opportunity for discovery, the Hawaiian Groups likely would never learn about new training threatening irreparable harm, in violation of NEPA.

specifying that the Hawaiian Groups "may return to this Court" to seek appropriate relief if, for example, the Army "begins to use" former Campbell Estate or former Parker Ranch lands for training,. Id. at 56 n.9.

Since the Army is the sole source of timely information about changes to its training plans (i.e., before training causes irreparable harm), the Hawaiian Groups respectfully submit that supplemental discovery is not only appropriate, but necessary. Consistent with Rule 26(e)(2), the Hawaiian Groups seek an order requiring the Army to supplement its prior discovery responses only if they are incomplete or incorrect "in some material respect," such as if the Army plans to begin training at locations – like the former Parker Ranch and Campbell Estate lands – that have not previously been disclosed or if, at a particular location, the Army plans to train with different weapons or ammunition. Fed. R. Civ. P. 26(e)(2) (emphasis added). If the Army conducts only training that is consistent with its previous disclosures, no supplementation would be required.

IV.    REQUIRING SUPPLEMENTAL DISCLOSURES WOULD NOT MICRO-MANAGE ARMY TRAINING

Decisions about the training the 2nd Brigade will conduct to convert to a Stryker unit are not made in the field on the spur of the moment. Rather, the brigade's commanders plan when, where, and how each of the brigade's unit will train weeks, if not months, in advance. See, e.g., Exh. 10: Long Range Training Calendar (Sept. 2006) at 2-3, 16, 30, 33, 37-38, 81-82. The Hawaiian Groups seek

14

an order that provides that, once the Army makes a decision to conduct previously undisclosed training, that decision triggers the Army's duty to disclose any material changes within a reasonable time thereafter, giving the Hawaiian Groups time to seek relief, if needed, before irreparable cultural or environmental harm occurs.

Ordering the Army to disclose in a timely fashion material changes in training would not, as Magistrate Kurren concluded, constitute impermissible "micro-management." 3/23/07 Order at 3. Merely requiring the Army to provide information would not, in itself, impose any restrictions. The Hawaiian Groups do not seek, as the Army argued to Magistrate Kurren, an order that enjoins previously undisclosed training unless the Army satisfies a 24-hour advance notification requirement.[7] Rather, they merely ask the Court to ensure the Army discloses material changes to training in a timely fashion.[8]

---

[7] The Hawaiian Groups believe that requiring supplemental disclosures within twenty-four hours of a decision to conduct previously undisclosed training would be reasonable. In the unlikely event the Army were to make a decision to conduct previously undisclosed training less than twenty-four hours before the training would take place, the Hawaiian Groups further ask that disclosures take place before the training occurred. The training would not be delayed until the expiry of twenty-four hours, as the Army has asserted. Rather, to ensure the Hawaiian Groups and the Court are aware of the material change before the training proceeds as scheduled, the disclosure would take place less than twenty-four hours after the decision was made.

[8] If the Court concludes that twenty-four hours is too short, it should allow a longer period of time, rather than deny discovery altogether. The important thing is to ensure the Hawaiian Groups are aware of material changes in time to bring concerns to this Court's attention before irreparable harm occurs.

15

Nor would a decision by the Court, after reviewing evidence of potential impacts from newly disclosed training, to require implementation of measures to avoid irreparable harm improperly meddle in the Army's affairs. While this Court has made clear it "give[s] great deference to the military in their decisions as to which … training [is] appropriate or necessary for them to best accomplish their mission," it likewise has taken care to require the Army to implement mitigations when the Court has determined such measures are needed to "protect[] cultural and environmental resources from harm" from Stryker-related training. 12/29/06 Order at 13, 56. Thus, the interim injunction allowed training the Army had identified as time-critical to proceed, but also "ordered mitigation measures be undertaken so that harm could be avoided by implementation of protective measures." Id. at 56; see also id. at 59 (requiring implementation of BMPs to control erosion from training at East Range and KTA and flagging of off-road areas to protect cultural sites), 60 (requiring "all necessary mitigation measures to protect known cultural sites" from training at Range 11T and prohibiting "any activities, construction, or training that would disturb site 23621 in any manner"). The Court clearly did not believe the mitigation measures it ordered interfered impermissibly with the Army's ability to train.

Complete disclosure regarding the training the Army plans to conduct in Hawai'i prior to complying with NEPA is necessary to allow the Court to tailor adequate mitigation measures to "protect[] cultural and environmental resources

16

from harm." Id. at 56. Since, by definition, the training about which the Hawaiian Groups seek discovery was not previously disclosed, the Court has not yet had any occasion to evaluate that training. Even if it defers to the Army's views regarding the necessity of new training, the Court still must determine whether – like maneuver training at East Range and KTA and mobile gun system exercises at Range 11T – protective measures are needed to "enforce[] the policy choices articulated in NEPA and strike[] the appropriate balance." Id. at 54.

V.    CONCLUSION

The Army has flatly refused to provide "notice of any modification to Stryker-related training that was not previously disclosed during discovery or in prior court filings." 4/2/07 Weiner Letter. Without an order requiring supplemental disclosures, this Court will have no way to ensure new training (which the Army did not previously disclose or claim was essential to the 2nd Brigade's conversion) will not cause irreparable harm to cultural or environmental resources, in violation of NEPA's prohibition on actions that "[h]ave an adverse environmental impact." 40 C.F.R. § 1506.1(a)(1).

The Hawaiian Groups respectfully submit that Magistrate Kurren's March 23, 2007 order conflicts with this Court's prior determinations that the Hawaiian Groups are entitled to "substantial additional discovery" and that judicial review of Stryker training is both proper and necessary to ensure compliance with Congress's

intent in enacting NEPA. 11/20/06 Tr. at 26:21. Accordingly, the Hawaiian Groups ask the Court to grant this appeal and issue an order requiring the Army to provide timely supplementation if there are any material changes in the Stryker-related training it plans to conduct in Hawai'i prior to complying with NEPA.

DATED:    Honolulu, Hawai'i, April 2, 2007.

> EARTHJUSTICE
> David L. Henkin
> Isaac H. Moriwake
> 223 South King Street, Suite 400
> Honolulu, Hawai'i 96813

By:    /s/ David L. Henkin
DAVID L. HENKIN
Attorneys for Plaintiffs