```
                                                                    1

 1           IN THE UNITED STATES DISTRICT COURT FOR THE

 2                        DISTRICT OF HAWAII

 3   'ILIO'ULAOKALANI COALITION,  )  CIVIL NO. 04-00502DAE
     a Hawaii nonprofit           )
 4   corporation; NA 'IMI PONO, a )
     Hawaii unincorporated        )
 5   association; and KIPUKA, a   )
     Hawaii unincorporated        )
 6   association,                 )
                 Plaintiffs,      )  Honolulu, Hawaii
 7                                )  December 18, 2006
          vs.                     )  9:51 a.m.
 8                                )
     DONALD H. RUMSFELD, Secretary)  ORAL ARGUMENT
 9   of Defense; and Les Brownlee,)
     Acting Secretary of the U.S. )
10   Department of the Army,      )
                 Defendants.      )
11   _____)

12                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE DAVID ALAN EZRA,
13                UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15   For the Plaintiffs:        DAVID L. HENKIN, Esq.
                                Earthjustice
16                              223 South King Street, Suite 400
                                Honolulu, Hawaii 96813
17

18   For the Defendants:        HARRY YEE, Esq.
                                Assistant U.S. Attorney
19                              Office of the U.S. Attorney
                                PJKK Federal Building
20                              300 Ala Moana Blvd., Rm. 6-100
                                Honolulu, Hawaii 96850
21
                                JAMES D. GETTE, Esq.
22                              Trial Attorney
                                U.S. Department of Justice
23                              Environment & Natural Resources
                                 Division
24                              General Litigation Section
                                P.O. Box 663
25                              Washington, D.C.  20044-0663
```



EXHIBIT 4

```
 1   APPEARANCES (Continued):

 2   For the Defendants:         MARK J. KATKOW, Esq.
                                 Attorney-Adviser
 3                               ELENA ONAGA, Esq.
                                 Attorney-Adviser
 4                               Office of the Staff Judge
                                   Advocate
 5                               25th Infantry Division (L) &
                                   U.S. Army Hawaii
 6                               Bldg. 178; Stop 126
                                 Fort Shafter, Hawaii 96858
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20   Official Court Reporter:    Cynthia Fazio, RMR, CRR
                                 United States District Court
21                               P.O. Box 50131
                                 Honolulu, Hawaii  96850
22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

```
 1              "Answer:  No."
 2              Your Honor, we had no knowledge that we were going to
 3    receive anything other than the deposition we had already
 4    received.  We did in fact receive a declaration and we
 5    responded with rebuttal testimony immediately upon receiving
 6    it.
 7              MR. HENKIN:  Your Honor, I think that there's -- was
 8    never a question in defendant's mind.  Mr. Hood is not a career
 9    witness --
10              THE COURT:  All right.  Okay.  Well, we can -- we can
11    play tennis here with each of you going back and forth all
12    morning long --
13              MR. HENKIN:  Yes, Your Honor.
14              THE COURT:  -- as to each of your respective versions
15    of what is and what is not your view of the record, but it will
16    get us absolutely nowhere.
17              You can be seated.
18              Part of the problem, of course, is that because of the
19    -- the manner in which the matter was remanded to me with what
20    I would call an extremely short fuse from the Ninth Circuit, in
21    addition to which the government, for I think legitimate
22    reasons, is also interested in expediting this matter, I have
23    had to put this case on an extremely fast track.  And therefore
24    what we are doing here is we're ending up attempting to build
25    what will be a significant and already is a significant record
```

1   in a relatively short time. We're doing essentially 6 months
2   or a year's worth of record building here in a matter of weeks.
3   And of course that's what causes these types of disagreements.
4       Normally we would resolve these disagreements by
5   simply referring the matter down to the magistrate, the
6   magistrate would take the matter under advisement, you'd have a
7   hearing, somebody would be allowed to take a follow-up
8   deposition and all of that would happen in the normal course
9   and it would take place over a period of weeks or months. We
10  don't have that kind of time obviously.
11      Now, my interest here is to make sure that I am as
12  well informed about the facts and the arguments as possible. I
13  also have an obligation to make sure that the record is clear
14  and complete so that when this matter is reviewed on appeal, as
15  we all know it will be, both at the Ninth Circuit level and
16  possibly en banc and possibly even by the Supreme Court, that
17  there is a solid record, and that we don't have the appellate
18  court trying to divine out of outer space what I made my
19  decision on or what the arguments were by the parties.
20      I mean as you -- as both of you know I sit on the
21  Court of Appeals by designation on a regular basis. So I am
22  quite aware of what the requirements are in order to have a
23  complete and accurate appellate record. And I'm trying to
24  build that record here. So it isn't just for me. It's also so
25  that we can have a more accurate record on appeal. Because we

18

```
1          THE COURT:  See, here we go again.
2          MR. HENKIN:  Exactly, Your Honor.
3          THE COURT:  Right back in the, you know, same spot we
4    were before, you know.
5          MR. GETTE:  Your Honor, if you're asking --
6          THE COURT:  I don't know how many supplement -- I mean
7    not an hour goes by that I don't have somebody knocking at the
8    door with a supplemental memorandum of some sort or other in
9    this case.
10         Very, very difficult for me, you know, in the parlance
11   of my old days in the service myself, we got a moving target
12   here and I'm having a hard time sighting in on it.  And I need
13   to do that in order to render a judgment in this case because
14   the landscape keeps shifting.  Somebody submits something, then
15   somebody else wants an opportunity to rebut it and then
16   somebody says well, they've submitted a rebuttal, they've added
17   something new and now we need an opportunity to rebut it.
18         I'll tell you what.  We are going to close this record
19   tomorrow afternoon at 4 o'clock.  You have this afternoon to
20   look at what they've submitted and you each have by tomorrow
21   afternoon at 4 o'clock to submit a no more than 20-page
22   memorandum addressing the issues.  I don't want any further or
23   additional declarations other than the one that Mr. Henkin is
24   going to submit in response to the declaration of, I believe
25   it's Mr. Kawasaki?
```

1  kind of preempt what I'm sure will be a request for rebuttal,
2  they would argue that they have 28 important projects to go
3  forward with and that they went up to the Ninth Circuit
4  believing each and every one of those 28 projects was
5  essential.  That as a result of the ruling by the Ninth
6  Circuit, which they obviously disagree with but nonetheless are
7  bound by, that they have pared this down to only five projects
8  that they're asking to go forward with.
9        So, their -- their argument is going to be that they
10 have made a significant concession to the ruling and they're
11 not coming back here suggesting to this court that I ought to
12 allow each one of these 28 projects to go forward on national
13 security grounds on the basis that somehow the sliding scale,
14 which by the way still applies in this case, that's regardless
15 of what stage of the proceedings we're on.  In the Ninth
16 Circuit this court must apply a sliding scale in determining
17 whether an injunction is appropriate.  That is, the likelihood
18 of success on the merits versus the degree of the irreparable
19 harm.  And their argument is that they've -- and I'm asking you
20 this because I want you to address it.
21        MR. HENKIN:  Sure.
22        THE COURT:  Just as I had something I wanted them to
23 address.  That they've pared this down to just five projects.
24        MR. HENKIN:  My first response with respect to the
25 paring down, and I might add it's five construction projects

1    plus training.  And we went at great lengths in our briefs to
2    attach all of the discovery responses that define with
3    particularity what that training is because our first response
4    to Your Honor's question is, obviously everything that is not
5    on that list of allegedly critical actions should continue to
6    be enjoined.  And to the extent that this court allows any
7    Stryker training to proceed, and we did indicate some limited
8    training that we --
9            THE COURT:  No, I don't think that -- look, there's
10   absolutely no question about it, Mr. Henkin, to the extent that
11   the Army has not come forward on the projects that they have
12   said they are not asking this court to allow them as a matter
13   of necessity to move forward with, the Ninth Circuit's
14   injunction will remain in place unless otherwise lifted.  They
15   would have to come back to this court or to the Ninth Circuit
16   if appropriate, depending upon where we are --
17           MR. HENKIN:  Yes, Your Honor.
18           THE COURT:  -- to get that injunction lifted.  So they
19   have effectively abandoned for the immediate future, not for
20   the purposes of this entire case, but for the purposes of this
21   proceeding, any argument that this court ought to allow them to
22   go forward with any of those projects other than the five.
23           So to the extent, and I think this has to be
24   understood, to the extent that the Army has not asked to move
25   forward with 23 of the 28 projects, those projects will not

1    move forward.

2              MR. HENKIN:  Yes, Your Honor, I appreciate that.  We
3    believe it's also and we would respectfully ask the court to
4    order with specificity based on the information --

5              THE COURT:  Oh, my order will be specific.

6              MR. HENKIN:  Okay.  Because, for example, at
7    Pohakuloa, in the category of training, which as you may recall
8    when we came before you in November, they just said we want
9    these projects plus training.  And then we said:  Well, what
10   training?  They excluded in their responses any training at any
11   of the 24,000 acres purchased from Parker Ranch, they excluded
12   any training in very sensitive habitat at Pohakuloa, and that's
13   good that they don't believe that that's necessary because
14   otherwise a lot of endangered species would be imperiled.

15             So when the court -- and we've been careful to assume
16   that what they mean by "training" is specifically what they
17   have disclosed is necessary.  But everything else should be
18   enjoined.

19             THE COURT:  Well, this court doesn't have jurisdiction
20   over United States Army training which has nothing to do with
21   with the Stryker Brigade.

22             MR. HENKIN:  This is Stryker training, Your Honor,
23   that was disclosed in EIS as part of the overall project --

24             THE COURT:  To the extent that the 25th Infantry
25   Division or somebody else is out there training and that has

61

```
 1   nothing to do with Stryker, that's not part of this case if it
 2   doesn't have anything to do with Stryker.
 3            MR. HENKIN:  I guess I'd respectfully disagree with
 4   respect to the 24,000 acres that were purchased specifically as
 5   part of Stryker training.  With respect to the rest of
 6   Pohakuloa --
 7            THE COURT:  I'm not talking about that.
 8            MR. HENKIN:  Okay.
 9            THE COURT:  I'm talking about the other areas where
10   they have been training previously.
11            MR. HENKIN:  Yes, Your Honor.  Now, back to your
12   question.  They've pared things down from the entirety down to
13   specific projects and specific training.  That helps the
14   parties and the court focus on the appropriate scope of
15   injunctive relief.  And I guess if we were in a bargaining
16   session, parties, as they often do, would look at the
17   litigation risk and figure out how much they're going to give.
18            But in terms of this court because --
19            THE COURT:  In my -- in my dreams, Mr. Henkin --
20            MR. HENKIN:  It is a matter of public record --
21            THE COURT:  -- that the parties -- that the parties
22   could resolve this other than my making a decision, but I'm
23   afraid not.
24            MR. HENKIN:  Well, Your Honor, it is a matter of
25   public record that we have asked them to have that opportunity
```

```
                                                              92

 1                      COURT REPORTER'S CERTIFICATE
 2
 3          I, CYNTHIA FAZIO, Official Court Reporter, United
 4   States District Court, District of Hawaii, Honolulu, Hawaii, do
 5   hereby certify that the foregoing pages numbered 1 through 91
 6   is a correct transcript of the proceedings had in connection
 7   with the above-entitled matter.
 8
            DATED at Honolulu, Hawaii, January 5, 2007.
 9
10
11                           /s/ Cynthia Fazio
                          CYNTHIA FAZIO, RMR, CRR
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```