# EXHIBIT "1"



**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-4-11334

*Natural Resources Section*
*P.O. Box 663*
*Washington, DC 20044-0663*

*Telephone (202) 305-0469*
*Facsimile (202) 305-0274*

March 20, 2007

*Via Facsimile Transmission (808) 541-3500*

The Honorable Barry M. Kurren
Magistrate Judge
United States District Court for the District of Hawai'i
300 Ala Moana Boulevard
Honolulu, HI 96850-0001

> Re:    Ilio'ulaokalani Coalition et al. v. Robert M. Gates, et al.
>           Case No. CV-04-00502 DAE BMK (D. Hawai'i)

Dear Judge Kurren:

On March 14, 2007, Plaintiffs in the above-referenced matter submitted letter briefing on an alleged discovery dispute and requested that the Court order Federal Defendants to supplement their discovery responses twenty-four (24) hours prior to any modifications to the Army's training of the 2nd Brigade. For the reasons set forth herein and in Federal Defendants' Motion for Clarification dated March 14, 2007, Federal Defendants object to Plaintiffs' demand for discovery supplementation. Plaintiffs are utilizing Local Rule 37.1© to raise as a putative discovery dispute an issue concerning the remedy recently entered by this Court and reaffirmed when the Court denied Plaintiff's motion for reconsideration. Both liability and remedy have been fully adjudicated in this case and the underlying matter is on remand to the Federal Defendants. Federal Defendants respectfully submit that this Court should not countenance Plaintiffs' efforts to do an end-run around the Court's orders through a fabricated discovery dispute.

BACKGROUND

Plaintiffs in this action asserted claims under the National Environmental Policy Act ("NEPA") concerning the Army's decision to transform the 2nd Brigade, 25th Infantry Division into a Stryker Brigade Combat Team ("SBCT") at an Army training facility in Hawaii. On April 25, 2005, this Court granted Federal Defendants' Cross Motion for Summary Judgment, holding that the Army had properly met its obligations under NEPA. Plaintiffs appealed the Court's decision and on October 5, 2006, the Ninth Circuit reversed and remanded to the Army to prepare a Supplemental Environmental Impact Statement examining the alternative of relocating the 2nd Brigade to a facility outside of Hawaii. `Ilio`Ulaokalani Coalition v. Rumsfeld, 464 F.3d 1083, 1102 (9th Cir. 2006) ("We conclude that the practical solution is to remand, requiring the preparation of a supplemental SEIS."). Plaintiffs then filed an Emergency Motion Under Circuit Rule 27-3(a) for Interim Injunctive Relief. The Ninth Circuit addressed the issue of a remedy in response to the Plaintiffs' Emergency Motion and remanded to this Court "to determin[e] the appropriate scope of an interim injunction and ente[r] such injunction pending" Federal Defendants compliance with NEPA on remand. Ninth Circuit Order of October 27, 2006 at 2-3. See also Addendum to Ninth Circuit Order of October 27, 2006 at 9.



**EXHIBIT**

**1**

On remand, this Court issued a comprehensive decision pursuant to the Ninth Circuit's instruction to "ente[r] an interim injunction pending Defendants' compliance with NEPA . . . ." December 29, 2006 Order Setting Interim Injunction ("Dec. 29, 2006 Order") at 4. On January 12, 2007, Plaintiffs challenged several aspects of the Court's Injunction Order in a Motion to Clarify. This Court denied Plaintiffs motion, stating, "Plaintiffs assert that the Army identified time-critical SBCT training in various discovery responses and that the Army should be limited to the training specific in those response. This Court disagrees." March 1, 2007 Order at 2. On March 1, 2007, Plaintiffs appealed the Court's Injunction Order.

## ARGUMENT

After several unsuccessful attempts to limit the critical training necessary to transform the 2nd Brigade to a Stryker Brigade Combat Team, Plaintiffs now raise an alleged discovery dispute in an effort, once again, to impose restrictions on Stryker training. Plaintiffs' recent discovery supplementation request relates to an aspect of Federal Defendants' compliance with the injunction – "Stryker-related training in Hawaii." See Plaintiffs' Letter Brief at 2. According to Plaintiffs, the Court "recognized the potential for 'changed circumstances,' including future changes in defendants' training plans, that might warrant modification of the injunction," id. at 2 (citing Interim Injunction dated December 29, 2006 at 56 n.9), and that Plaintiffs need discovery because:

> [a]bsent timely disclosures from defendants, plaintiffs likely would remain ignorant if, for example, Stryker units begin training in fragile endangered species habitat or culturally sensitive areas that defendants previously said would be off-limits or commenced live-fire training in areas that defendants' prior discovery responses had indicated would be used for only maneuvers.

Plaintiffs' Letter Brief at 2.

What Plaintiffs ignore is that this Court has already incorporated into its injunction requirements to ensure Federal Defendants' future compliance by requiring Federal Defendants to "provide periodic progress reports to this Court, in a schedule to be determined in consultation with the parties." See December 29, 2006 Order at 58-60. Federal Defendants have advised Plaintiffs that we intend to file our first progress report on March 30, 2007, after which Plaintiffs will have an opportunity to raise any issues they might have concerning the timing and substance of that report. Plaintiffs provide no explanation of why discovery supplementation is needed in addition to this court-ordered status reporting.

Further, inasmuch as the Court has already considered and denied Plaintiffs' request to limit Stryker training on two separate occasions, see December 29, 2006 Order and March 1, 2007 Order, Plaintiffs do not address how supplementation could lead to the discovery of admissible evidence. Instead, Plaintiffs suggest that this Court has already decided the issue and "promis[ed] that, after the interim injunction's issuance, 'substantial additional discovery' would be permitted." Plaintiff's Letter Brief at 2 & n.1 (citing 11/20/06 Tr. at 26). However, Plaintiffs' citation to a limited part of the record, out of context, misses a larger point subsequently decided by the Court. At the November 18, 2006 hearing cited by Plaintiffs, the Court contemplated that the discovery conducted at that time would be restricted to the six critical construction projects and Stryker-related training. See 11/20/06 Tr. at 10:5-9 (discovery limited to six construction projects and training); 12:3-7( "I have come to the conclusion that a certain amount of limited discovery on these six projects is probably appropriate"; and 26:16-17 ("This discovery that we're talking about is only discovery pending the issuance of an interim injunction.") (excerpts

-2-

attached).  In commenting that additional discovery may be permitted, the Court clearly contemplated that once the interim injunction issued, if additional construction were requested, leave of Court would be required and discovery on the nature of such construction would be permitted.  However, the Army has not sought leave to conduct more than was permitted by the Court's interim injunction and the Court has specifically rejected Plaintiffs' request to modify that interim injunction.  Thus, the scope of the interim injunction has been decided and no additional discovery is appropriate or likely to lead to the discovery of admissible evidence.  In fact, at the December 18, 2006 hearing, the Court confirmed that the record is complete and no additional discovery concerning the scope of the interim injunction is appropriate.  See 12/18/06 Tr. at 15:12-14; 15:1-3; and 18:18-19 ("I also have an obligation to make sure that the record is clear and complete" ... "We're doing essentially 6 months or a year's worth of record building in a matter of weeks." . . . "We are going to close this record tomorrow afternoon at 4 o'clock.") (excerpts attached).  After the hearing, on December 29, 2006, the Court issued its interim injunction pending NEPA compliance that permitted the Army to complete six construction projects and Stryker-related training.  As Judge Ezra stated, that record is now complete and it would be improper to re-open it and impose significant burdens on the Army that the Court has previously rejected.

Federal Defendants especially object to Plaintiffs' attempt to impose a 24-hour notice requirement.  Even if 'pre-trial' discovery supplementation were required here 'post-trial,' which Federal Defendants believe it is not, Plaintiffs' request for an order requiring Federal Defendants to "supplement their responses within twenty-four hours of deciding to carry out any previously undisclosed training and before such training occurs," see Plaintiff's Letter Brief at 3 (original emphasis), is an improper attempt to achieve oversight and control over the Army's ability to train and deploy the 2nd Brigade as a Stryker Brigade Combat Team.  Effectively this would result in an injunction that the Court has refused to impose.  See March 1, 2007 Order at 6.  On two separate occasions, Plaintiffs have sought to limit the Army's ability to train and deploy this critical military unit and on two separate occasions, the Court has specifically and unequivocally denied Plaintiffs' requests, including a request to eliminate language from the injunction allowing training "including, but not limited to" that specifically enumerated in the injunction.  In the Court's latest ruling, on Plaintiffs' Motion to Clarify the Injunction, the Court stated the following:

> This Court purposefully chose the words "including, but not limited to," when discussing the training, to avoid a situation that Plaintiffs now seek to impose, e.g., the Court's micro-management of time-sensitive combat training.  As noted in the interim-injunction order, this Court must give great deference to the military in their decisions as to which training is appropriate to best accomplish their mission, and thus, micro-management by this Court of how many hours of training may occur, how many rounds may be fired, the exact areas that can be used is inappropriate.  See Gilligan v. Morgan, 413 U.S. 1, 10-11 (1973).

See Court's March 1, 2007 Order denying Plaintiffs' Motion to Clarify December 29, 2006 Order Setting Interim Injunction ("March 1, 2007 Order") at 4-5.

Plaintiffs now seek to circumvent Judge Ezra's clear directive that neither the Court nor Plaintiffs should be permitted to micro-manage the training necessary to transform the 2nd Brigade to a SBCT through the guise of discovery supplementation.  At its core, this discovery request seeks information regarding activities that are permitted under Judge Ezra's interim injunction and effectively imposes the very injunction that has been previously rejected by the

Court. Id. at 1-6. Plaintiffs' request to impose a 24-hour notification requirement prior to any slight training modification would place an inappropriate burden on the Federal Defendants. Plaintiffs are effectively arguing that the Army should be prohibited from any training for which it does not provide Plaintiffs with 24 hours advanced notice. Rule 26(e) does not impose such a requirement, but requires only that a party "seasonably . . . amend." It simply is not reasonable to require the Army to curtail critical training operations for a 24 hour period so notice can be provided. Some training decisions must be made during training operations and a 24 hour notice requirement would effectively enjoin activities when Judge Ezra has specifically rejected such a request. See March 1, 2007 Order at 5-6.[1]

As Judge Ezra stated in his March 1, 2007 Order denying Plaintiffs' Motion for Clarification, "[t]his Court carefully analyzed each of Plaintiffs' claims . . . and placed upon the Army significant additional mitigation measures to reduce possible harm to the environment or to cultural resources." March 1, 2007 Order at 3 and 5. Plaintiffs have made no assertion that the Army has failed to abide by Judge Ezra's Order. Indeed, the Army is undertaking all of the mitigation measures required by Judge Ezra to protect cultural and natural resources. This Court has consistently said that the Army must have latitude to train its soldiers and that the Court does not intend to micro-manage the preparation of the 2nd Brigade for combat. See March 1, 2007 Order at 5 ("This Court takes seriously the Supreme Court's mandate not to attempt to direct and micro-manage the type of training necessary to ensure American soldiers the highest likelihood of completing their mission and surviving combat.").

In the end, for the reasons set forth in Federal Defendants' Motion for Clarification dated March 14, 2007 and in this letter brief, the Court should deny Plaintiffs' request for post-judgment discovery supplementation on training issues that have already been considered and decided by the Court. See Interim Injunction Order dated December 26, 2006 and Order denying Plaintiffs' Motion for Clarification dated March 1, 2007. Plaintiffs have already asked the Court on two occasions to enjoin anything outside of a tight training box, and the Court has refused. In rejecting these requests, the Court set certain well-defined parameters on the training necessary to convert the 2nd Brigade to a SBCT. Beyond those specifically defined parameters, the Court found that the Army must be provided latitude to define and conduct training that will protect our soldiers when they are deployed to combat in Iraq. Given that the Court has held that it is the Army, and not the Court, which should set the limits on the training necessary to prepare soldiers for combat, any further discovery on training is inappropriate and not likely to lead to the discovery of relevant admissible evidence. Furthermore, any requirement to provide advanced notice of training activities would effectively impose an injunction that the Court has already denied on two separate occasions. Thus, the Court should summarily reject any attempt by Plaintiffs, through the guise of an alleged discovery dispute, to impair the Army's ability to transform and deploy the 2nd Brigade in a timely manner.

---

[1] In denying Plaintiffs' motion for clarification, Judge Ezra concluded that "[t]o do what Plaintiffs now request would essentially shut down SBCT training for these soldiers and send them into combat only partially trained. Given the relatively short time left before training is completed and the troops deployed, and the severe cut back in training currently in place, as mandated by the Ninth Circuit's injunctive order and the mitigating actions ordered by this Court, no further restrictions can be placed upon current training." March 1, 2007 Order at 5-6.

Respectfully submitted this 20th day of March, 2007,

BARRY A. WEINER
JAMES D. GETTE
U.S. Department of Justice
Environment & Nat. Resources Div.
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663

cc:    David Henkin (by facsimile transmission 808-521-6841)

1

```
 1            IN THE UNITED STATES DISTRICT COURT FOR THE

 2                        DISTRICT OF HAWAII

 3   'ILIO'ULAOKALANI COALITION,   )   CIVIL NO. 04-00502DAE
     a Hawaii nonprofit            )
 4   corporation; NA 'IMI PONO, a  )
     Hawaii unincorporated         )
 5   association; and KIPUKA, a    )
     Hawaii unincorporated         )
 6   association,                  )
                    Plaintiffs,    )   Honolulu, Hawaii
 7                                 )   November 20, 2006
             vs.                   )   9:55 a.m.
 8                                 )
     DONALD H. RUMSFELD, Secretary )   STATUS CONFERENCE
 9   of Defense; and Les Brownlee, )    AND ORAL ARGUMENTS
     Acting Secretary of the U.S.  )
10   Department of the Army,       )
                    Defendants.    )
11   _____)

12                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE DAVID ALAN EZRA,
13                  UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15   For the Plaintiffs:        DAVID L. HENKIN, Esq.
                                Earthjustice
16                              223 South King Street, Suite 400
                                Honolulu, Hawaii 96813
17

18   For the Defendants:        THOMAS HELPER, Esq.
                                Assistant U.S. Attorney
19                              Office of the U.S. Attorney
                                PJKK Federal Building
20                              300 Ala Moana Blvd., Rm. 6-100
                                Honolulu, Hawaii 96850
21
                                BARRY A. WEINER, Esq.
22                              JAMES D. GETTE, Esq.
                                Trial Attorneys
23                              U.S. Department of Justice
                                Environment & Natural Resources
24                               Division
                                General Litigation Section
25                              P.O. Box 663
                                Washington, D.C.  20044-0663
```

2

```
 1   APPEARANCES (Continued):

 2

 3   For the Defendants:          ROBERT M. LEWIS, Esq.
                                  Senior Trial Attorney
 4                                Environmental Law Division
                                  U.S. Army Litigation Center
 5                                901 N. Stuart St., Suite 400
                                  Arlington, Virginia 22203
 6

 7                                MARK J. KATKOW, Esq.
                                  Attorney-Adviser
 8                                Office of the Staff Judge
                                    Advocate
 9                                25th Infantry Division (L) &
                                    U.S. Army Hawaii
10                                Bldg. 178; Stop 126
                                  Fort Shafter, Hawaii 96858
11

12

13

14

15

16

17

18

19

20   Official Court Reporter:     Cynthia Fazio, RMR, CRR
                                  United States District Court
21                                P.O. Box 50131
                                  Honolulu, Hawaii  96850
22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

10

1          THE COURT:  All right.  So --

2          MR. HENKIN:  But there may be flexibility in the

3    future if we have an opportunity to figure out exactly what

4    they propose.

5          THE COURT:  Now, what I am not entirely convinced of,

6    I should say, is the need for -- well, I can tell you one

7    thing.  I am convinced there is no immediate need for extensive

8    discovery on these six issues in light of the -- of the

9    requirement that the court expeditiously resolve the matter.

10         I mean if we were talking about a normal remand to

11   this court, in other words, the court issues an order, the

12   order is reversed 2-1, it comes back to this court, and people

13   are litigating, fine.  I mean you just do discovery and that's

14   what the court would do.  But that's not the posture, okay.

15   That's why I say that this is a very unusual case.  That's not

16   the posture that this has been remanded to me in.

17         I've been instructed, even in their clarification

18   order, to -- not yet, Mr. Henkin.  I know you're anxious.

19         MR. HENKIN:  I'm anxious, Your Honor.

20         THE COURT:  I will give you -- you've litigated before

21   me many times, Mr. Henkin.  You know you'll get a full

22   opportunity and you will have a full opportunity.

23         MR. HENKIN:  Thank you, Your Honor.

24         THE COURT:  The appellate court used the term

25   "expeditious" in their clarification order several times.

12

1    Okay?  I -- because what you have requested is, I think,

2    overbroad for the need the court has to move this case forward.

3         Now, that does not mean I'm not going to allow you any

4    discovery.  I have come to the conclusion that a certain amount

5    of limited discovery on these six projects is probably

6    appropriate, but I'm going to require that that discovery be

7    done on an extremely expedited basis.

8         MR. WEINER:  Your Honor, we appreciate the court's

9    concern with getting a full record, and we think the court has

10   that full record.  As reflected in our pleading, even a limited

11   amount of discovery that would delay the transformation of 2nd

12   Brigade would cause severe impact to the Army.  So we --

13        THE COURT:  Look, counsel, I understand what you're

14   talking about, but I also understand the realities that I am

15   facing with the record I have in front of me and I have to deal

16   with the Court of Appeals' injunction as it sits now.

17        I will tell you that if I rule in this case without

18   giving the plaintiff an opportunity to do at least the

19   essential discovery on a very expedited basis, I will be

20   reversed and you will find yourself in a worse position than

21   you are now.  Take it from somebody who's been there and done

22   that from both sides, as a trial judge and as an appellate

23   judge.  I can tell you, you are not doing yourself any favors.

24        There needs to be some opportunity for the other side

25   to do appropriate, very essential limited discovery on an

26

1    have me overturned or affirmed, and if I rule for you in whole

2    or in part you will seek the same thing.  You will all go right

3    back up to the Ninth Circuit and -- and at that time you can

4    seek clarification from them as to the scope of the order that

5    I've issued and what they intend to do with it.

6              MR. HENKIN:  Just with respect to framing the

7    discovery, Your Honor, it would be helpful to know if we're

8    briefing pending their compliance with NEPA and then issues of

9    how long they expect that will take would come into play, or

10   whether it's until the arrival of some other event.  The

11   issuance of the mandate, as you know, Your Honor, is --

12             THE COURT:  The easiest thing to do is to do discovery

13   because you're going to be doing it on an expedited basis.  I

14   intend to allow additional discovery, Mr. Henkin.  There will

15   be additional discovery in this case.

16             This discovery that we're talking about is only

17   discovery pending the issuance of an interim injunction.

18   That's all.  And I think you should look at the shorter period

19   of time.  That's the safest thing for you to do.  And then --

20   because you are going to be permitted, as the Army is,

21   substantial additional discovery in this case as we move

22   forward, which is going to be far more extensive and far more

23   broad.

24             The only question is:  What is the Army going to be

25   permitted to do in terms of training and in terms of combat

1

```
1                IN THE UNITED STATES DISTRICT COURT FOR THE

2                        DISTRICT OF HAWAII

3    'ILIO'ULAOKALANI COALITION,   )   CIVIL NO. 04-00502DAE
     a Hawaii nonprofit            )
4    corporation; NA 'IMI PONO, a  )
     Hawaii unincorporated         )
5    association; and KIPUKA, a    )
     Hawaii unincorporated         )
6    association,                  )
                  Plaintiffs,      )   Honolulu, Hawaii
7                                  )   December 18, 2006
             vs.                   )   9:51 a.m.
8                                  )
     DONALD H. RUMSFELD, Secretary )   ORAL ARGUMENT
9    of Defense; and Les Brownlee, )
     Acting Secretary of the U.S.  )
10   Department of the Army,       )
                  Defendants.      )
11   _____)

12                      TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE DAVID ALAN EZRA,
13                  UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15   For the Plaintiffs:        DAVID L. HENKIN, Esq.
                                Earthjustice
16                              223 South King Street, Suite 400
                                Honolulu, Hawaii 96813
17

18   For the Defendants:        HARRY YEE, Esq.
                                Assistant U.S. Attorney
19                              Office of the U.S. Attorney
                                PJKK Federal Building
20                              300 Ala Moana Blvd., Rm. 6-100
                                Honolulu, Hawaii 96850
21
                                JAMES D. GETTE, Esq.
22                              Trial Attorney
                                U.S. Department of Justice
23                              Environment & Natural Resources
                                 Division
24                              General Litigation Section
                                P.O. Box 663
25                              Washington, D.C.  20044-0663
```

14

1        "Answer:  No."

2              Your Honor, we had no knowledge that we were going to

3    receive anything other than the deposition we had already

4    received.  We did in fact receive a declaration and we

5    responded with rebuttal testimony immediately upon receiving

6    it.

7              MR. HENKIN:  Your Honor, I think that there's -- was

8    never a question in defendant's mind.  Mr. Hood is not a career

9    witness --

10             THE COURT:  All right.  Okay.  Well, we can -- we can

11   play tennis here with each of you going back and forth all

12   morning long --

13             MR. HENKIN:  Yes, Your Honor.

14             THE COURT:  -- as to each of your respective versions

15   of what is and what is not your view of the record, but it will

16   get us absolutely nowhere.

17             You can be seated.

18             Part of the problem, of course, is that because of the

19   -- the manner in which the matter was remanded to me with what

20   I would call an extremely short fuse from the Ninth Circuit, in

21   addition to which the government, for I think legitimate

22   reasons, is also interested in expediting this matter, I have

23   had to put this case on an extremely fast track.  And therefore

24   what we are doing here is we're ending up attempting to build

25   what will be a significant and already is a significant record

1    in a relatively short time.  We're doing essentially 6 months

2    or a year's worth of record building here in a matter of weeks.

3    And of course that's what causes these types of disagreements.

4         Normally we would resolve these disagreements by

5    simply referring the matter down to the magistrate, the

6    magistrate would take the matter under advisement, you'd have a

7    hearing, somebody would be allowed to take a follow-up

8    deposition and all of that would happen in the normal course

9    and it would take place over a period of weeks or months.  We

10   don't have that kind of time obviously.

11        Now, my interest here is to make sure that I am as

12   well informed about the facts and the arguments as possible.  I

13   also have an obligation to make sure that the record is clear

14   and complete so that when this matter is reviewed on appeal, as

15   we all know it will be, both at the Ninth Circuit level and

16   possibly en banc and possibly even by the Supreme Court, that

17   there is a solid record, and that we don't have the appellate

18   court trying to divine out of outer space what I made my

19   decision on or what the arguments were by the parties.

20        I mean as you -- as both of you know I sit on the

21   Court of Appeals by designation on a regular basis.  So I am

22   quite aware of what the requirements are in order to have a

23   complete and accurate appellate record.  And I'm trying to

24   build that record here.  So it isn't just for me.  It's also so

25   that we can have a more accurate record on appeal.  Because we

1    in a relatively short time.  We're doing essentially 6 months

2    or a year's worth of record building here in a matter of weeks.

3    And of course that's what causes these types of disagreements.

4         Normally we would resolve these disagreements by

5    simply referring the matter down to the magistrate, the

6    magistrate would take the matter under advisement, you'd have a

7    hearing, somebody would be allowed to take a follow-up

8    deposition and all of that would happen in the normal course

9    and it would take place over a period of weeks or months.  We

10   don't have that kind of time obviously.

11        Now, my interest here is to make sure that I am as

12   well informed about the facts and the arguments as possible.  I

13   also have an obligation to make sure that the record is clear

14   and complete so that when this matter is reviewed on appeal, as

15   we all know it will be, both at the Ninth Circuit level and

16   possibly en banc and possibly even by the Supreme Court, that

17   there is a solid record, and that we don't have the appellate

18   court trying to divine out of outer space what I made my

19   decision on or what the arguments were by the parties.

20        I mean as you -- as both of you know I sit on the

21   Court of Appeals by designation on a regular basis.  So I am

22   quite aware of what the requirements are in order to have a

23   complete and accurate appellate record.  And I'm trying to

24   build that record here.  So it isn't just for me.  It's also so

25   that we can have a more accurate record on appeal.  Because we

16

1    already know there is significant disagreement about the

2    disposition of this matter in the Ninth Circuit.  So it's

3    important that this go up as accurately as it can.

4         And that's why when both sides, quite frankly -- and

5    by the way, your motion to file an overextended brief is

6    granted.  The defense has come to me and plaintiff has come to

7    me and asked for extensions, we had a number of extensions

8    on -- late last week to some of the earlier deadlines, we had

9    requests for oversized filings.  I've granted every one of

10   those requests because of the importance of making sure that we

11   have an adequate and appropriate foundation here.

12        I am not of a mind that any party who has a legitimate

13   witness to provide to the court should be denied that

14   opportunity.  So I am not going to grant your request to strike

15   that witness' affidavit.

16        However, as much as I am reluctant to do so, I am

17   going to allow you to supplement the record after the hearing

18   by providing you an opportunity to take his deposition on just

19   the issues which are contained within his declaration.  And

20   I'll allow you to file a short memorandum addressing those

21   issues and I'll allow the government to do the same.

22        Now, I'm not interested in this delaying in any

23   significant way my resolution of my portion of this case.  This

24   gentleman I understand is available?

25        MR. GETTE:  I don't know.  He is here, Your Honor, and

18

1          THE COURT:  See, here we go again.

2          MR. HENKIN:  Exactly, Your Honor.

3          THE COURT:  Right back in the, you know, same spot we

4     were before, you know.

5          MR. GETTE:  Your Honor, if you're asking --

6          THE COURT:  I don't know how many supplement -- I mean

7     not an hour goes by that I don't have somebody knocking at the

8     door with a supplemental memorandum of some sort or other in

9     this case.

10         Very, very difficult for me, you know, in the parlance

11    of my old days in the service myself, we got a moving target

12    here and I'm having a hard time sighting in on it.  And I need

13    to do that in order to render a judgment in this case because

14    the landscape keeps shifting.  Somebody submits something, then

15    somebody else wants an opportunity to rebut it and then

16    somebody says well, they've submitted a rebuttal, they've added

17    something new and now we need an opportunity to rebut it.

18         I'll tell you what.  We are going to close this record

19    tomorrow afternoon at 4 o'clock.  You have this afternoon to

20    look at what they've submitted and you each have by tomorrow

21    afternoon at 4 o'clock to submit a no more than 20-page

22    memorandum addressing the issues.  I don't want any further or

23    additional declarations other than the one that Mr. Henkin is

24    going to submit in response to the declaration of, I believe

25    it's Mr. Kawasaki?