EDWARD H. KUBO, JR.  (2499)
United States Attorney
District of Hawai`i
HARRY YEE  (3790)
THOMAS A. HELPER  (5676)
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawai`i  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: harry.yee@usdoj.gov

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
JAMES D. GETTE
BARRY A. WEINER
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, D.C.  20044-0663
Telephone: (202) 305-1461
Facsimile:  (202) 305-0274
Email: james.gette@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ILIO'ULAOKALANI COALITION, a Hawaii, nonprofit corporation; NA'IMI PONO, a Hawaii unincorporated association; and KIPUKA, a Hawaii unincorporated association,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT M. GATES, Secretary of United States Department of Defense; and PETER GEREN, Secretary of the United States Department of the Army,<br><br>Defendants. | CIVIL NO.04-00502 DAE BMK<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPEAL OF THE MAGISTRATE JUDGE'S MARCH 23, 2007 ORDER; TABLE OF CONTENTS; TABLE OF AUTHORITIES; DECLARATION OF BARRY A. WEINER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPEAL OF THE MAGISTRATE JUDGE'S MARCH 23, 2007 ORDER; EXHIBITS 1-6; CERTIFICATE OF SERVICE |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPEAL OF
THE MAGISTRATE JUDGE'S MARCH 23, 2007 ORDER

I.   INTRODUCTION

On March 14, 2007, Plaintiffs in the above-referenced matter submitted a letter brief to Magistrate Judge Barry M. Kurren concerning an alleged discovery dispute, and requested that the Court order the United States Army ("Army") to supplement its responses to Plaintiffs' discovery requests prior to any modifications to the training of the 2nd Brigade. More specifically, Plaintiffs requested that the Army be required to provide advance warning to Plaintiffs of any modifications to training so that Plaintiffs could bring this information to the Court's attention and seek modifications to the existing interim injunction. See Plaintiffs' March 14, 2007 Letter Brief at 2.

Before the Magistrate Judge, Federal Defendants opposed Plaintiffs' application as an attempt to circumvent the Court's order entering an interim injunction. We asserted that Plaintiffs, under the guise of "discovery," were seeking to micro-manage the same Army training that the Court extensively considered and permitted to go forward in its interim injunction order, and reaffirmed in its order denying Plaintiffs' motion for clarification of the interim injunction. See Exhibit 1, Federal Defendants' March 20, 2007 Letter Brief at 2-4. In both orders, the Court concluded that deference is owed to the United States Army on issues related to military training, and that the Court

1

would not imperil soldiers by micro-managing such training.  See March 1, 2007 Order Denying Plaintiffs' Motion to Clarify ("March 1, 2007 Order")at 5 ("This Court takes seriously the Supreme Court's mandate not to attempt to direct and micro-manage the type of training necessary to ensure American soldiers the highest likelihood of completing their mission and surviving combat.").

As we explained to the Magistrate Judge, the Army has no plans at this time to materially modify Stryker training, see Exhibit 2, 3/27/07 Letter.  But, as this Court noted in denying Plaintiffs' clarification motion, the Army must have the latitude to alter training operations if needed.  See March 1, 2007 Order at 4-5.  We argued before the Magistrate Judge that Plaintiffs are seeking, through an improper discovery device, to impose an advance notice requirement on the Army.  Such a requirement would effectively impose on the Army an injunction not to alter training operations without advance notification.  This Court has rejected Plaintiffs' previous attempts to impose such an injunction and this third attempt should also be denied.  See March 1, 2007 Order at 4-5.

On March 23, 2007, Magistrate Judge Kurren denied Plaintiffs' request for supplemental discovery, finding that the use of "pre-trial discovery mechanisms as a mode for ascertaining post-decision compliance with a court order" was improper.[1]  See March 23, 2007

---

[1]  Despite Magistrate Judge Kurren's March 23, 2007 Order concluding supplemental discovery was improper, on April 6, 2007, Plaintiffs served additional discovery requests, including a deposition notice, interrogatories and a document request.  See

2

Order Denying Plaintiffs' Request for Supplemental Discovery ("March 23, 2007 Order") at 2-3.  In reaching this decision, Magistrate Judge Kurren cited comments from the Court's March 1 Order that "micro-management by this Court of how many hours of training may occur, how many rounds may be fired, [and] the exact areas that can be used, is inappropriate." March 23, 2007 Order at 2-3.

Plaintiffs now seek to appeal the Magistrate Judge's decision. The appeal should be denied because the Magistrate Judge's ruling is consistent with the Court's prior orders permitting the Army to conduct training in a manner necessary to ensure its soldiers are effectively trained and protected.  Furthermore, Magistrate Judge Kurren's decision is consistent with the Court's previously expressed view that the discovery necessary to resolve the parameters of an interim injunction is now closed and attempted Plaintiff micro-management of Stryker training under the guise of supplemental discovery would be improper.  Accordingly, and for the reasons set forth below and in the Federal Defendant's Letter Brief dated March 20, 2007(Exhibit 1), Magistrate Judge Kurren's March 23, 2007 Order denying Plaintiffs' supplemental discovery should be

---

Exhibit 3. Federal Defendants intend to file an appropriate motion with the Court to quash these improper discovery requests, but note these additional discovery requests for the Court as yet another attempt by Plaintiffs to micro-manage Stryker-related training and the Army's compliance with the Court's interim injunction.  As the Court would expect, the Army is fully committed to complying with the Court's Order and has no intention to do otherwise. See Exhibit 1 at 4.

3

upheld.

II. <u>PROCEDURAL BACKGROUND</u>

Plaintiffs in this action assert claims under the National Environmental Policy Act ("NEPA") concerning the Army's decision to transform the 2nd Brigade, 25th Infantry Division into a Stryker Brigade Combat Team ("SBCT") at an Army training facility in Hawaii. On April 25, 2005, this Court granted Federal Defendants' Cross Motion for Summary Judgment, holding that the Army had properly met its obligations under NEPA. Plaintiffs appealed the Court's decision and on October 5, 2006, the Ninth Circuit reversed and remanded the Army's decision to transform the 2nd Brigade, requiring the Army to prepare a Supplemental Environmental Impact Statement examining the alternative of relocating the 2nd Brigade to a facility outside of Hawaii. <u>`Ilio`Ulaokalani Coalition v. Rumsfeld</u>, 464 F.3d 1083, 1102 (9th Cir. 2006) ("We conclude that the practical solution is to remand, requiring the preparation of a supplemental SEIS.").

Plaintiffs then filed an Emergency Motion Under Circuit Rule 27-3(a) for Interim Injunctive Relief. In response to the Plaintiffs' Emergency Motion, the Ninth Circuit remanded to this Court the responsibility "to determin[e] the appropriate scope of an interim injunction and [to] ente[r] such injunction pending" Federal Defendants compliance with NEPA on remand. Ninth Circuit Order of October 27, 2006 at 2-3. <u>See also</u> Addendum to Ninth Circuit Order of October 27, 2006 at 9.

4

On remand, this Court allowed Plaintiffs discovery pertinent to the scope of the interim injunction and related matters. Following completion of that discovery, this Court issued a comprehensive decision pursuant to the Ninth Circuit's remand instructions.  See December 29, 2006 Order Setting Interim Injunction ("Dec. 29, 2006 Order") at 4.  Plaintiffs had sought to have the Court impose an injunction that would restrain all Stryker-related training and construction.  Significantly, the Court refused to impose such a blanket injunction and permitted the Army to conduct the construction projects and training necessary to ensure that the 2nd Brigade would be effectively trained as a SBCT. See December 29, 2006 Order at 57-61.  As the Court noted, to do otherwise "would reduce the number of SBCT units available and reduce the overall effectiveness of the Army's forces, leading to less training of soldiers and unnecessary loss of American soldiers' lives."  See December 29, 2006 Order at 20,60.

On January 12, 2007, Plaintiffs challenged several aspects of the Court's Injunction Order in a Motion to Clarify.  This Court denied Plaintiffs motion, stating, "Plaintiffs assert that the Army identified time-critical SBCT training in various discovery responses and that the Army should be limited to the training specified in those responses.  This Court disagrees."  March 1, 2007 Order at 2.  Moreover, the Court explained that it "purposefully chose the words 'including, but not limited to,' when discussing the training, to avoid a situation that Plaintiffs now

5

seek to impose, e.g., the Court's micro-management of time-sensitive combat training." Id. at 4. On March 1, 2007, Plaintiffs appealed the Court's Injunction Order to the Ninth Circuit.

With that appeal still pending with the Ninth Circuit, Plaintiffs submitted to this Court pursuant to Local Rule 37.1© a letter brief complaining about their inability to obtain supplementation of the discovery conducted prior to the Court's issuance of an interim injunction. In that letter brief, Plaintiffs requested that Federal Defendants be ordered to supplement their discovery requests in advance of any modifications to the Army's training of the 2nd Brigade. See Plaintiffs' March 14, 2007 letter brief at 1. Defendants opposed Plaintiffs' requests on the basis that the Court had closed discovery prior to the issuance of an interim injunction and that, in the United States' view, Plaintiffs were pursuing additional discovery from the United States (after the discovery period had ended) as an attempted end-run around the Court's orders declining Plaintiffs' invitation for judicial micro-management of the Army's Stryker-related training. See Defendants' Letter Brief dated March 20, 2007 (Exhibit 1).

On March 23, 2007, after hearing argument from the parties, Magistrate Judge Kurren denied Plaintiffs' request for supplemental discovery, finding that the use of "pre-trial discovery mechanisms as a mode for ascertaining post-decision compliance with a court

6

order" was improper. See March 23, 2007 Order at 2-3. Plaintiffs now appeal the Magistrate Judge's decision.

III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), a district court may reconsider a magistrate judge's order on a non-dispositive motion if the order is "clearly erroneous or contrary to law." Similarly, Federal Rule of Civil Procedure 72(a) provides that "[t]he district judge ... shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." See also Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991). The "clearly erroneous" standard applies to the magistrate's factual findings while the "contrary to law" standard applies to the magistrate judge's legal conclusions. See Wolpin v. Philip Morris, Inc., 189 F.R.D. 418, 422 (C.D.Cal. 1999).

Under this standard of review, a magistrate judge's order is "clearly erroneous" if, after considering all of the evidence, the district court is left with the definite and firm conviction that a mistake has been committed, and the order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law or rules of procedure. Tompkins v. R.J. Reynolds Tobacco Co., 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000); see also Wolpin, 189 F.R.D. at 422. In applying this standard of review and evidence presented to the Court, Magistrate Judge Kurren's Order is well founded, consistent with the Court's prior rulings and, therefore, entitled to affirmance.

IV. **ARGUMENT**

    A. <u>Magistrate Judge Kurren Properly Concluded that Plaintiffs Are Not Entitled to Use Pre-Trial Discovery as a Mode for Ascertaining Post-Decision Compliance with the Court's Interim Injunction</u>.

After several unsuccessful attempts to limit the critical training necessary to transform the 2nd Brigade to a SBCT, Plaintiffs have now precipitated an alleged discovery dispute in an effort, once again, to impose restrictions on Stryker training. Plaintiffs' recent discovery supplementation request relates to an aspect of Federal Defendants' compliance with the injunction – "Stryker-related training in Hawaii." <u>See</u> Plaintiffs' Memorandum in Support of Appeal from March 23, 2007 Order ("Plaintiffs' Brief") at 1. Seeking to justify additional discovery after the period has closed, Plaintiffs rationalize that the Court "recognized the potential for 'changed circumstances,' including future changes in defendants' training plans, that might warrant modification of the injunction," <u>id</u>. at 1-2 (citing Interim Injunction dated December 29, 2006 at 56 n.9). Without waiting for changed circumstances to develop, Plaintiffs speculate about imaginary, worst-case scenarios and assert that "[u]nless the Army is required to make such disclosures [regarding modifications to training], the Hawaiian Groups may never learn of changed circumstances that might warrant modifying the interim injunction..."). Plaintiffs' Brief at 1, 12. Based on these alleged concerns, Plaintiffs go on to argue that:

> discovery of material changes in training is vital to allow the Hawaiian Groups to keep the Court apprised of 'changed circumstances' that might warrant modification of the interim injunction to prevent irreparable harm to cultural and environmental resources.

Plaintiffs' Brief at 12.

Plaintiffs' effort to elicit additional discovery from the United States, after the period has ended, conflicts with what this Court has already considered the appropriate scope of an interim injunction and refused to impose the more stringent limitations on Stryker-related training that Plaintiffs proposed. As the Court noted in its March 1, 2007 Order,

> This Court carefully analyzed each of Plaintiffs' claims and determined whether or not irreparable harm would result from the specific training that Plaintiffs sought to enjoin...Moreover, this Court purposefully chose the words "including, but not limited to," when discussing the training to avoid a situation that Plaintiffs now seek to impose, e.g., the Court's micro-management of time-sensitive combat training.

March 1, 2007 Order at 3-4. Magistrate Judge Kurren appropriately relied on this language from the Court's March 1, 2007 order in concluding that Plaintiffs' attempt "to use pre-trial discovery mechanisms as a mode for ascertaining post-decision compliance with a court order" was improper. March 23, 2007 Order at 2.

In any event, and contrary to Plaintiffs' purported concerns about insufficient information, the Court has already incorporated reporting requirements into its injunction to ensure Federal Defendants' future compliance. In accordance with the Court's December 29, 2006 Order, the Federal Defendants must "provide

9

periodic progress reports to this Court, in a schedule to be determined in consultation with the parties." See December 29, 2006 Order at 58-60. Federal Defendants submitted their First Periodic Progress Report detailing the mitigation measures undertaken. We will continue to do so on a periodic basis as the Court required. Plaintiffs provide no explanation of why discovery supplementation is needed in addition to this court-ordered status reporting. To now permit Plaintiffs to engage in post-decisional discovery would lead to the very micro-management of Stryker-related training that the Court, in its March 1, 2007 order, denied the Plaintiffs. See March 1, 2007 Order at 3-4.

Throughout their brief, Plaintiffs cite the Army's potential use of Parker Ranch and the Campbell Estates property as a reason to allow them to pursue extensive post-decisional discovery from the United States. See Plaintiffs' Brief at 8, 13, and 14. However, as the Court noted in its December 29, 2007 Order, and as the Plaintiffs acknowledge, the Army has no plans to use these lands other than for construction of the SBCT Motor Pool as permitted by the Court's interim injunction. See Court's December 29, 2007 Order at 11-13, 56 fn.9.; see also Plaintiffs' Brief at 7, fn.1. Therefore, Plaintiffs' attempt to raise concerns about the possible use of these lands as leverage in their effort to engage in far reaching, post-decisional discovery on Stryker-related training as well as mitigation measures that the Army intends to implement is improper.

If allowed, Plaintiffs' pursuit of supplemental discovery would interfere with the Army's discretion and limit its flexibility in determining the appropriate training needed to create a SBCT. The Court has already heard from Plaintiffs on two separate occasions and denied their requests to impose further restrictions on Stryker-related training. This, their third attempt to impose such restrictions through post-decisional discovery mechanisms, fares no better. Magistrate Judge Kurren correctly concluded that Plaintiffs improperly sought discovery supplementation as a means to ascertain post-decision compliance with the Court's interim injunction, and his decision should be upheld.

    B.   <u>Supplementation is Not Likely to Lead to the Discovery of Admissible Evidence Since the Court Issued its Decision on the Scope of Interim Injunction and Closed Discovery</u>.

Inasmuch as the Court has already considered and denied Plaintiffs' request to limit Stryker training on two separate occasions, <u>see</u> December 29, 2006 Order and March 1, 2007 Order, Plaintiffs do not address how supplementation is likely to lead to the discovery of admissible evidence. Instead, Plaintiffs have over-interpreted statements by this Court from the bench as a "promise" that, "after the interim injunction's issuance, 'substantial additional discovery' would be permitted." Plaintiffs' Brief at 1, 6, 10-11 (citing 11/20/06 Tr. at 26). However, Plaintiffs' citation to that limited part of the record not only distorts the context in which the Court's statements were

made, but misses the larger point subsequently decided by the Court.

At the November 18-20, 2006 hearings cited by Plaintiffs, the Court addressed whether the discovery to be conducted at that time (i.e., before the interim injunction order issued) would be restricted to the six critical construction projects and Stryker-related training, as opposed to other potential future activities by the Army.  See Exhibit 4, 11/20/06 Tr. at 10:5-9 (discovery limited to six construction projects and training); 12:3-7( "I have come to the conclusion that a certain amount of limited discovery on these six projects is probably appropriate"; and 26:16-17 ("This discovery that we're talking about is only discovery pending the issuance of an interim injunction.") (excerpts attached).  In commenting that additional discovery was a possibility, the Court appeared to have been contemplating a potential discovery scenario that might arise if additional construction were requested after the interim injunction issued.  However, the Army has not sought leave to conduct more construction activities than was permitted by the Court's interim injunction and the Court, since then,  has specifically rejected Plaintiffs' request to modify that interim injunction to require further oversight of the Army's activities.  Thus, the scope of the interim injunction has been decided and no additional discovery is appropriate.[2]

---

[2]     At the December 18, 2006 hearing, the Court confirmed that

On December 29, 2006, after the discovery period ended and a hearing was held, the Court issued its interim injunction pending NEPA compliance that permitted the Army to complete six construction projects and Stryker-related training. As Magistrate Judge Kurren properly concluded in his March 23, 2007 Order, the record on an appropriate interim injunction is now complete and it would be improper to re-open it and impose significant burdens on the Army that the Court has previously rejected. See March 23, 2007 Order at 2-3.

    C.    <u>Plaintiffs' Demand for Advance Notice of Any Training Modifications is Improper and Effectively Imposes the Very Injunction this Court Rejected</u>.

Federal Defendants also object to Plaintiffs' attempt to elicit supplemental discovery by imposing a requirement that any training modifications in the Army's training operations be disclosed in advance. See Plaintiffs' Brief at 14-15. Plaintiffs wrongly assume that the rules of pre-trial discovery (including those requiring supplementation or responses) apply automatically to post-trial procedures. In any event, Plaintiffs' request for an order requiring Federal Defendants to supplement their responses

---

the record is complete and no additional discovery concerning the scope of the interim injunction is appropriate. See Exhibit 5, 12/18/06 Tr. at 15:12-14; 15:1-3; and 18:18-19 ("I also have an obligation to make sure that the record is clear and complete" ... "We're doing essentially 6 months or a year's worth of record building in a matter of weeks." . . . "We are going to close this record tomorrow afternoon at 4 o'clock.") (excerpts attached).

within twenty-four hours[3] of deciding to carry out any previously undisclosed training and **before** such training occurs, see Plaintiffs' Brief at 15, should be rejected as an improper attempt to achieve oversight and control over the Army's ability to train and deploy the 2nd Brigade as a SBCT. Effectively this would result in the micro-management and lack of deference that the Court has already declined to apply. Indeed, Plaintiffs' effort to require 24 hours notice flies in the face of this Court's rulings that:

> As noted in the interim-injunction order, this Court must give great deference to the military in their decisions as to which training is appropriate to best accomplish their mission, and thus, micro-management by this Court of how many hours of training may occur, how many rounds may be fired, the exact areas that can be used is inappropriate.

See Court's March 1, 2007 at 4-5 (citation omitted).

At its core, Plaintiffs' pursuit of additional discovery would effectively impose the very injunctive relief that has been previously rejected by the Court. Id. at 1-6. Plaintiffs' request to impose a mandatory notification requirement prior to any training modification, however slight, would place an inappropriate burden on the Federal Defendants. In essence, under a discovery rubric, Plaintiffs are effectively seeking an order prohibiting the

---

[3] Plaintiffs now suggest that they would accept notice that is less than twenty-four hours in advance of previously undisclosed training, see Plaintiffs' Brief at 15, fn.8. However, Plaintiffs' demand -- that such notice still be provided in advance of any undisclosed training -- conflicts with this Court's prior rulings on providing discretion to the Army on Stryker training and could delay or enjoin critical training exercises.

14

Army from any training activity for which it does not provide Plaintiffs with advance notice.

Even if the pre-trial discovery procedures were applicable here, which we do not believe is the case, Rule 26(e) would not impose such a requirement, but requires only that a party "seasonably . . . amend" prior discovery responses. This rule, even if applicable in this post-decisional context, must be applied reasonably. It simply is not reasonable to require the Army to curtail critical training operations whenever it makes adjustments so notice can be provided. Furthermore, Plaintiffs' claim (at Br. 14) that training schedules are made in advance and not altered in the field is erroneous.[4] Some training decisions must be made during training operations and any advance notice requirement would effectively enjoin activities when this Court has specifically rejected such a request. See March 1, 2007 Order at 5-6.[5]

---

[4] On page 14 of their brief, Plaintiffs cite to the Army's projected training calendar from September 2006 to claim that "[d]ecisions about the training the 2nd Brigade will conduct to convert to a Stryker unit are not made in the field on the spur of the moment." Plaintiffs' Brief at 14. This claim misperceives the reality of training in the field, which is planned ahead of time, but which is also subject to modification based upon other factors including weather, equipment status, and availability of ranges. Accordingly, Plaintiffs' reliance on this schedule to suggest that schedule modifications may not be needed in field during training exercises is misplaced.

[5] In denying Plaintiffs' motion for clarification, this Court correctly concluded that "[t]o do what Plaintiffs now request would essentially shut down SBCT training for these soldiers and send them into combat only partially trained. Given the relatively short time left before training is completed and the troops deployed, and the severe cut back in training currently in

15

As this Court stated in its March 1, 2007 Order denying Plaintiffs' Motion for Clarification, "[t]his Court carefully analyzed each of Plaintiffs' claims . . . and placed upon the Army significant additional mitigation measures to reduce possible harm to the environment or to cultural resources." March 1, 2007 Order at 3 and 5. Plaintiffs have made no assertion that the Army has failed to abide by this Court's Order. Indeed, the Army is undertaking all of the mitigation measures required by the Court to protect cultural and natural resources. See Exhibit 6, Federal Defendants' First Periodic Progress Report dated March 30, 2007. This Court has consistently said that the Army must have latitude to train its soldiers and that the Court does not intend to micro-manage the preparation of the 2nd Brigade for combat. See March 1, 2007 Order at 5 ("This Court takes seriously the Supreme Court's mandate not to attempt to direct and micro-manage the type of training necessary to ensure American soldiers the highest likelihood of completing their mission and surviving combat"). Plaintiffs seek to erode and undermine that latitude by imposing advance notice requirements on the Army.

In denying Plaintiffs' request for advance notice, Magistrate Judge Kurren properly concluded that Plaintiffs' attempt to oversee

---

place, as mandated by the Ninth Circuit's injunctive order and the mitigating actions ordered by this Court, no further restrictions can be placed upon current training." March 1, 2007 Order at 5-6. The Court's assessments are as correct today as they were when it issued its order denying clarification.

Stryker training through discovery and advance notice requirements was inconsistent with the Court's prior ruling that micro-management of "how many hours of training may occur, how many rounds may be fired, [and] the exact areas that can be used, is inappropriate." See March 23, 2007 Order at 3 citing Court's March 1, 2007 Order at 4. Accordingly, the Magistrate Judge's March 23, 2007 Order is well founded, consistent with the Court's prior rulings and entitled to affirmance.

V.   CONCLUSION

For the reasons set forth in Magistrate Judge Kurren's March 23, 2007 Order, in the Federal Defendants' March 20, 2007 Letter Brief, and this memorandum, the Court should deny Plaintiffs' request for post-judgment discovery supplementation on training issues.

Respectfully submitted this 13th day of April, 2007, at Honolulu, Hawaii.

> EDWARD H. KUBO, JR. (2499)
> United States Attorney
> District of Hawai`i
> HARRY YEE (3790)
> THOMAS HELPER (5676)
> Assistant United States Attorneys
>
> /s/ Barry Weiner by Thomas Helper
>
> _____
> BARRY A.  WEINER
> JAMES D. GETTE
> Trial Attorneys
> Natural Resources Section
> Environment & Natural Resources Division
> U.S. Department of Justice

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ILIO'ULAOKALANI COALITION, a Hawaii, nonprofit corporation; NA'IMI PONO, a Hawaii unincorporated association; and KIPUKA, a Hawaii unincorporated association,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT M. GATES, Secretary of United States Department of Defense; and PETER GEREN, Secretary of the United States Department of the Army,<br><br>Defendants. | CIVIL NO.04-00502 DAE BMK<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served electronically on the following at his last known address:

    David Henkin
    dhenkin@earthjustice.org

    Attorney for Plaintiffs

    DATED:    April 13, 2007, at Honolulu, Hawaii

                                /s/ Jan Yoneda
                              _____